Joshua A. Sussberg, P.C.
Christopher T. Greco, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Joseph M. Graham (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HOLLANDER SLEEP PRODUCTS, LLC, *et al.*,[1] | ) | Case No. 19-11608 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS RELATED THERETO, (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE, AND (C) CONTINUE TO PAY BROKERAGE FEES, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

**Relief Requested**

1.    By this motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto in the ordinary course of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Dream II Holdings, LLC (7915); Hollander Home Fashions Holdings, LLC (2063); Hollander Sleep Products, LLC (2143); Pacific Coast Feather, LLC (1445); Hollander Sleep Products Kentucky, LLC (4119); Pacific Coast Feather Cushion, LLC (3119); and Hollander Sleep Products Canada Limited (3477).  The location of the Debtors' service address is:  901 Yamato Road, Suite 250, Boca Raton, Florida 33431.

business, (ii) renew, amend, supplement, extend, or purchase insurance coverage in the ordinary course of business, and (iii) continue to pay Brokerage Fees (as defined herein), and (b) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background[2]

5.      Hollander Sleep Products is the largest pillow and mattress pad manufacturer in North America.  The Debtors also manufacture comforters and other basic bedding products.  The Debtors have their own brands, including Great Sleep®, I AM®, LC®, PCF®, and Restful

---

[2]      The facts and circumstances supporting this motion are set forth in the *Declaration of Marc Pfefferle, Chief Executive Officer of Hollander Sleep Products, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.

Nights®, and also manufacture and sell licensed brands, including Simmons®, Ralph Lauren®, CHAPS®, Calvin Klein®, Therapedic®, Nautica®, 37.5®, and Dr. Maas®. The Debtors are headquartered in Boca Raton, Florida, operate a main showroom in New York City, and have thirteen manufacturing facilities throughout the United States and Canada. The Debtors generated approximately $527 million in net revenue in fiscal year 2018 and currently employ more than 2,300 people across the United States and Canada. As of the date hereof, the Debtors have approximately $233 million in funded debt.

6.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have concurrently filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

**The Debtors' Insurance Policies**

7.      In the ordinary course of business, the Debtors maintain an insurance program consisting of approximately 22 insurance policies (collectively, the "Insurance Policies") administered by multiple third-party insurance carriers (collectively, the "Insurance Carriers"). The Insurance Policies provide coverage for, among other things, the Debtors' directors' and officers' liability, property, commercial crime, ocean cargo, automobile, network/privacy, and foreign commercial liability. A schedule of the Insurance Policies is attached hereto as **Exhibit B**.[3] In addition to the Insurance Policies, the Debtors maintain a workers' compensation policy that is

---

[3]      Although **Exhibit B** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Insurance Policies. By this motion, the Debtors request relief applicable to all Insurance Policies, regardless of whether such Insurance Policy is specifically identified on **Exhibit B**.

reflected in **<u>Exhibit B</u>**, but for which relief is not sought in this motion.[4]  To the extent that certain states require the Debtors to purchase workers compensation coverage directly from state operated plans, the Debtors will seek relief to maintain this coverage as may be required under the Bankruptcy Code.

## I.    Premiums.

8.    The Insurance Policies are generally one year in length and renew at various times throughout the year.  The Debtors either prepay the entire premium for the Insurance Policies (including applicable taxes and surcharges, the "<u>Premiums</u>") on or around the start date of each policy period, or pay it in monthly installments, depending on the policy.  The Debtors owe a total of approximately $11,000 in monthly payments for those Premiums that are paid in installments.

9.    As of the Petition Date, the Debtors believe that they do not owe any prepetition amounts on account of the Premiums.  Out of an abundance of caution, however, the Debtors seek the authority to honor any amounts owed on account of the Premiums and to continue honoring any amounts that become due and owing on account of their insurance program, including the Premiums, in the ordinary course of business to ensure uninterrupted coverage under the Insurance Policies.

10.    None of the Insurance Policies are subject to regular audits (the "<u>Insurance Policy Audits</u>") that may result in an adjustment of the premiums owed on account thereof.  Out of an abundance of caution, however, the Debtors seek the authority to honor any amounts owed on

---

[4]    The Debtors' policies and other coverage with respect to, among other things, workers' compensation and employee health, dental, disability, and life insurance benefits, and relief requested with respect to such policies, are described in the *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*, filed contemporaneously herewith.

account of any Insurance Policy Audits, including prepetition amounts, in the ordinary course of business.

11.    Certain of the Insurance Policies require the Debtors to post collateral or letters of credit (the "Collateral Requirements").  Under the terms of the Insurance Policies the Collateral Requirements may be modified from time to time.  Although the Debtors do not believe that the Collateral Requirements will be modified under the term of the current Insurance Policies, out of an abundance of caution, the Debtors seek the authority to comply with Insurance Carrier modifications to the Collateral Requirements in the ordinary course of business.

12.    Continuation of the Insurance Policies and entry into new insurance policies are essential to the preservation of the value of the Debtors' properties and assets.  Moreover, in many cases, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts governing the Debtors' commercial activities, including the requirement of the United States Trustee for Region 2 (the "U.S. Trustee") as provided in the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, the Debtors request authority to maintain their insurance program, pay prepetition obligations related thereto (if any), and enter into new insurance policies in the ordinary course of business without further Court approval.

## II.    Deductibles.

13.    Some of the Insurance Policies require the Debtors to pay a per incident deductible (each, a "Deductible").  For instance, one of the Debtors' property damage policies carries a $100,000 Deductible per claim.  Depending on the type of claim and the applicable Insurance Policy, the Debtors must ultimately pay up to the applicable Deductible threshold for each successful or settled claim against these particular Insurance Policies.  Generally, any claim

KE 61160839

amounts due in excess of the Deductible threshold for any given claim are the Insurance Carrier's responsibility.

14.    As of the Petition Date, the Debtors believe that they do not owe any Deductibles on account of prepetition claims under the Insurance Policies that will become due and owing within 25 days after the Petition Date.  Going forward, however, the Debtors will need to continue paying the Deductibles in the ordinary course of business (should they arise) to preserve the coverage provided under certain Insurance Policies.  Because the amount of Deductibles varies from month to month, the monthly (or aggregate) liability on account of Deductibles during the pendency of these chapter 11 cases cannot be ascertained with any degree of certainty as of the Petition Date.  Accordingly, the Debtors seek authority out of an abundance of caution to honor any amounts owed on account of Deductibles and to continue paying any amounts that become due and owing on account of the Deductibles in the ordinary course of business on a postpetition basis to ensure uninterrupted coverage under the Insurance Policies.

**III.    The Debtors' Brokers and Associated Fees.**

15.    In connection with the Insurance Policies, the Debtors obtain insurance brokerage services from Marsh, LLC and Lockton Companies (the "Brokers").  The Brokers assist the Debtors in obtaining comprehensive insurance coverage for their operations in the most cost-effective manner, negotiating policy terms, provisions, and premiums, assisting the Debtors with claims, and providing ongoing support throughout the applicable policy periods.

16.    The Debtors pay the Brokers fees for brokerage services (the "Brokerage Fees") in the ordinary course of business.  The fees and commissions due to the Brokers are included in the Premiums paid on account of the Insurance Policies.  As of the Petition Date, the Debtors do not anticipate remitting any Brokerage Fees separate from the Premium payments.  Out of an abundance of caution, however, the Debtors seek authority to honor any prepetition Brokerage

Fees that may arise to ensure uninterrupted coverage under their Insurance Policies and to continue to pay the Brokerage Fees in the ordinary course of business on a postpetition basis.

17.    The Debtors believe that continuation of the Broker's services is necessary to ensure the Debtors' ability to secure Insurance Policies on advantageous terms at competitive rates, facilitate the proper maintenance of the Debtors' Insurance Policies postpetition, and ensure adequate protection of the Debtors' property postpetition.

## Basis for Relief

**I.    The Bankruptcy Code and U.S. Trustee Guidelines Require the Debtors To Maintain Insurance Coverage and Satisfy Their Insurance Obligations.**

18.    As discussed above, the Debtors' existing Insurance Policies provide a comprehensive range of protection for the Debtors' businesses, properties, and assets.  As such, it is essential that the Debtors' insurance coverage continue in full force and effect during the course of these chapter 11 cases.  Under section 1112(b)(4)(C) of the Bankruptcy Code, "failure [of a debtor] to maintain appropriate insurance [where such failure] poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).  Similarly, certain of the Insurance Policies are required by various state and federal regulations.  In addition, the U.S. Trustee Guidelines require that a debtor "shall maintain" certain types of insurance coverage following the Petition Date.  *See* U.S. Trustee Guidelines, § 6.  To ensure that the Debtors comply with section 1112(b)(4)(C) of the Bankruptcy Code, applicable state and federal regulations, and the U.S. Trustee Guidelines, the Debtors respectfully request the authority to (a) pay the prepetition amounts currently due and owing under the Insurance Policies in the ordinary course of business, including any prepetition amounts due or that may come due in connection with Premiums, Deductibles, and Brokerage Fees, (b) continue

to honor obligations arising under the Insurance Policies, and (c) if necessary, renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business.

II.    **Renewing, Supplementing, Entering into New Insurance Policies, and Paying Obligations Related to the Insurance Program in the Ordinary Course of Business Are Each Warranted.**

19.    The Debtors' insurance program is maintained in the ordinary course of the Debtors' business.  Section 363(c)(1) of the Bankruptcy Code provides that a chapter 11 debtor in possession "may enter into transactions . . . [or] may use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The Bankruptcy Code does not define the "ordinary course of business." *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3rd Cir. 1992).  In determining whether a transaction is in the ordinary course of business, this court and others have adopted the two-part "horizontal dimension" and "vertical dimension" test. *In re Crystal Apparel, Inc.*, 207 B.R. 406, 409 (Bankr. S.D.N.Y. 1997).  Under the horizontal dimension test, the court must analyze whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry. *Id.*  Under the vertical dimension test, the court must analyze the transaction from the perspective of a hypothetical creditor and determine "whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit." *Id.*  In other words, under this two-part test, "the touchstone of ordinariness is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." *In re Drexel Burnham Lambert Grp., Inc.*, 157 B.R. 532, 537 (S.D.N.Y. 1993).

20.    Here, the Debtors seek to continue their existing Insurance Program and to continue to honor their obligations thereunder in the ordinary course of their businesses on a postpetition basis.  The Debtors' insurance program has been a part of their business operations (and their creditors either should or do know this fact) and all competitors in the Debtors' line of business

would be expected to maintain similar insurance programs to allow those competitors to engage in manufacturing and wholesale operations.  Moreover, as noted above, certain Insurance Policies are required by statute or regulation.  The Debtors' failure to maintain, renew, or timely replace the existing Insurance Policies may jeopardize the Debtors' ability to conduct their operations.

21.    Although the Debtors believe continuing their insurance program is within their authority to continue in the ordinary course of business, out of an abundance of caution, and to ensure authority to pay any prepetition obligations related to their insurance programs, the Debtors are seeking Court approval to maintain, continue, renew, revise, and supplement their insurance program under sections 105(a) and 363(b) of the Bankruptcy Code.  The use of estate property should be authorized under section 363(b) so long as a sound business purpose exists for the transaction.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  Once the debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

22.    Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions.  *See Integrated Res.*, 147 B.R. at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."); *In re First Wellington Canyon Assocs.*, No. 89-593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) (stating that "the debtor's business judgment . . . must be accorded deference

unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion."). In addition, section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

23.      Similarly, to the extent applicable, courts in this district generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See Ionosphere Clubs*, 98 B.R. at 175 (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as requested herein.

24.      Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

25.      In addition, under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News*

*Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization); *Ionosphere Clubs*, 98 B.R. at 176 (holding that a court may authorize payments of prepetition obligations under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity")).

26.      Here, the Debtors submit that there is sufficient business justification to grant the relief requested herein.  As an initial matter, maintaining their insurance program is critical to the Debtors' operations, as noted above.  Thus, there are clear business reasons for the Debtors to maintain their insurance program and allow the Debtors to renew or replace Insurance Policies in the ordinary course of business.  Indeed, the Debtors' Insurance Policies are essential to the preservation of the value of the Debtors' businesses, properties, and assets and their ability to successfully prosecute these chapter 11 cases.  Accordingly, in the event any of the Insurance Policies lapse or new coverage is required or necessary, it is imperative that the Debtors be able to renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business.  The Insurance Policies protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events.  In these circumstances, the Debtors submit that the relief sought herein is in the best interests of their estates.

27.      There is also sufficient basis to permit the Debtors to pay any prepetition obligations related to their insurance program.  The failure to pay Premiums and related insurance expenses when due may harm the Debtors' estates in a number of ways.  Specifically, the Insurance Carriers may refuse to renew the Debtors' Insurance Policies, which will require the Debtors to obtain replacement policies and possibly reconfigure their risk management program.  That

scenario would require the commitment of significant resources and could result in less favorable coverage or terms from the Debtors' insurers.  Additionally, the Insurance Carriers could attempt to terminate the Debtors' existing policies, which could threaten the Debtors' ability to continue operating their businesses given the Debtors' business reasons as well as regulatory and contractual obligations to maintain specific amounts and types of insurance coverage.

28.    Indeed, courts in this district have routinely granted relief similar to that requested herein.  *See, e.g.*, *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019) (authorizing debtors to pay prepetition premiums and enter into new insurance policies pursuant to sections 105(a) and 363(b) of the Bankruptcy Code); *In re Aegean Marine Petrol. Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 8, 2018); *In re Nine West Holdings, Inc.*., No. 18-10947 (SCC) (Bankr. S.D.N.Y. May 7, 2018) (same); *In re Cenveo Inc.*, No. 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2018) (same); *In re 21st Century Oncology Holdings, Inc.*, No. 17-22770 (RRD) (Bankr. S.D.N.Y. June 20, 2017).[5]

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

29.    The Debtors have sufficient funds to pay any amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and postpetition financing.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made.  Therefore, the Debtors respectfully request that the Court

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

KE 61160839

authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion; provided that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.

## **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

30.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Reservation of Rights**

31.     Nothing contained herein or any actions taken pursuant to such relief requested is intended to or should be construed as (a) an admission as to the validity of any prepetition claim against a Debtor entity, (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion, (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## Motion Practice

32.    This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this motion. Accordingly, the Debtors submit that this motion satisfies Local Rule 9013-1(a).

## Notice

33.    The Debtors will provide notice of this motion to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent for the Debtors' term loan facility and counsel thereto; (d) the administrative agent for the Debtors' asset-based loan credit facility and counsel thereto; (e) the administrative agent for the Debtors' proposed debtor in possession term loan financing facility and counsel thereto; (f) the administrative agent for the Debtors' proposed debtor in possession asset-based loan credit facility and counsel thereto; (g) the United States Attorney's Office for the Southern District of New York; (h) the Internal Revenue Service; (i) the attorneys general for the states in which the Debtors operate; (j) the Brokers; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

34.    No prior request for the relief sought in this motion has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

New York, New York
Dated:  May 19, 2019

/s/ Joshua A. Sussberg
Joshua A. Sussberg, P.C.
Christopher T. Greco, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900

- and -

Joseph M. Graham (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

KE 61160839

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| HOLLANDER SLEEP PRODUCTS, LLC., *et al.*,[1] | Case No. 19-11608 (___) |
| Debtors. | (Joint Administration Requested) |
| | **Re: Docket No. __** |

### ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS RELATED THERETO, (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE, AND (C) CONTINUE TO PAY BROKERAGE FEES, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto in the ordinary course of business, (ii) renew, amend, supplement, extend, or purchase insurance coverage in the ordinary course of business, and (iii) continue to pay Brokerage Fees, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Dream II Holdings, LLC (7915); Hollander Home Fashions Holdings, LLC (2063); Hollander Sleep Products, LLC (2143); Pacific Coast Feather, LLC (1445); Hollander Sleep Products Kentucky, LLC (4119); Pacific Coast Feather Cushion, LLC (3119); and Hollander Sleep Products Canada Limited (3477). The location of the Debtors' service address is: 901 Yamato Road, Suite 250, Boca Raton, Florida 33431.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing on the Motion were appropriate under the circumstances and no other

notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

and this Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.       The Motion is granted as set forth herein.

2.       The Debtors are authorized, but not directed, to continue the Insurance Policies,

including the Insurance Policies identified on **Exhibit B** to the Motion, and pay any prepetition or

postpetition obligations related to the Insurance Policies, Deductibles, and any amounts owed to

the Brokers on account of the Brokerage Fees.

3.       The Debtors are authorized, but not directed, to renew, amend, supplement, extend,

or purchase insurance policies or to modify any Collateral Requirements in the ordinary course of

business to the extent that the Debtors determine that such action is in the best interest of their

estates.

4.       The Debtors are authorized, but not directed, to honor any amounts owed on

account of any Insurance Policy Audits in the ordinary course of business.

5.       Notwithstanding the relief granted in this Order and any actions taken pursuant to

such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any

prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in

interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion or a finding that any particular claim is an administrative expense or other priority claim; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to Section 365 of the Bankruptcy Code; (f) a waiver or limitation of the rights of any party in interest under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

6.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

7.      Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court approving the Debtors' entry into any postpetition debtor in possession

financing facility and any budget in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith.

8.       The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

9.       Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

12.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2019

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Insurance Policies**

| Type of Coverage | Insurance Carrier | Policy Numbers | Term | Approximate Annualized Gross Premium |
|---|---|---|---|---|
| Property - includes Earth Movement, Flood | Westport Insurance Corporation (Swiss Re) | NAP 2003249-01 | 2/1/2019 - 2/1/2020 | $239,270.12 |
| 50% 1st Excess Property - includes Earth Movement, Flood | Ironshore Specialty Insurance Company | 003965000 | 2/1/2019 - 2/1/2020 | $59,409.62 |
| 50% 1st Excess Property - includes Earth Movement, Flood | Evanston Insurance Company (Markel) | MKLV11XP007156 | 2/1/2019 - 2/1/2020 | $54,243.90 |
| 2nd Excess Property - excludes Earth Movement, Flood | James River Insurance Company | 00081252-1 | 2/1/2019 - 2/1/2020 | $63,241.17 |
| 3rd Excess Property - excludes Earth Movement, Flood | Landmark American Insurance Company (RSUI) | LHD906954 | 2/1/2019 - 2/1/2020 | $49,595.35 |
| Terrorism | Lloyds of London (Hiscox) | UTS2555987.19 | 1/1/2019 - 2/1/2020 | $8,437.55 |
| Cargo & Stock Throughput (incl TRIA) | Lloyds of London | B0509MARCW1900022 | 1/1/2019 - 1/1/2020 | $344,994.65 |
| Workers Compensation / Employers Liability | Safety First Insurance Co. | FCL 4059909 | 1/1/2019 - 1/1/2020 | $3,336,791.00 |
| Commercial General Liability (incl TRIA) | Safety National Casualty Corp. | GLF 4059904 | 1/1/2019 - 1/1/2020 | $94,491.00 |
| Business Auto Liability & Physical Damage | Safety National Casualty Corp. | CAF 4059905 | 1/1/2019 - 1/1/2020 | $26,670.00 |

KE 61160839

| Type of Coverage | Insurance Carrier | Policy Numbers | Term | Approximate Annualized Gross Premium |
|---|---|---|---|---|
| Umbrella Liability (incl TRIA) | Continental Insurance Co (CNA) | 6050424429 | 1/1/2019 - 1/1/2020 | $63,306.00 |
| Excess Liability (incl TRIA) | The Ohio Casualty Insurance Co (Liberty Mutual) | ECO (20) 58458016 | 1/1/2019 - 1/1/2020 | $18,938.00 |
| International Package:<br><br>Foreign Commercial General Liability<br>Foreign Business Auto & Physical Damage<br>Foreign Voluntary Compensation & Employers Liab<br>Foreign Travel Accident and Sickness<br>Foreign Commercial Property - Scheduled location | Insurance Company of the State of Pennsylvania (AIG) | WS11001075 | 1/1/2019 - 1/1/2020 | $3,000.00 |
| Commercial Crime | Travelers | 106205672 | 1/1/2019 - 1/1/2020 | $40,168.00 |
| Cyber (Privacy & Network Liability) | ACE American Insurance Co | G25666707004 | 1/1/2019 - 1/1/2020 | $57,895.00 |
| Special Crime | National Union Fire Ins Co (AIG) | 82867529 | 1/1/2018 - 11/1/2019 | $7,703.00 |
| Employment Practices Liability | Travelers Casualty and Surety Company of America | 106876796 | 1/1/2019 - 1/1/2020 | $78,630.00 |
| D&O & Fiduciary | Chubb | G27974582 003 | 4/14/2019 - 7/14/2019 | $20,451.00 |
| Excess Executive D&O - Side A | RLI Insurance company | EPG0027268 | 4/14/2019 - 4/14/2020 | $22,206.00 |

| Type of Coverage | Insurance Carrier | Policy Numbers | Term | Approximate Annualized Gross Premium |
|---|---|---|---|---|
| Canada: Property (local underlyer p/o Global Master property policy with Swiss Re) | Westport Insurance Corporation (Swiss Re) | Policy to be issued | 2/1/2019 - 2/1/2020 | $14,556.00 |
| Canada: Commercial General Liability (local underlyer p/o Global Master Safety National GL policy) | Tokio Marine & Nichido Fire Insurance Co., Ltd. (Canadian Branch) | CBC0671648 | 1/1/2019 - 1/1/2019 | $23,000.00 |
| Canada: Employment Practices Liability | AIG Insurance Company of Canada | 01-144-48-19 | 2/28/2019 - 2/28/2020 | CDN $4,500.00 |