**Hearing Date and Time: July 17, 2019, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: July 12, 2019, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher T. Greco, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Joseph M. Graham (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HOLLANDER SLEEP PRODUCTS, LLC, *et al.*,[1] | ) | Case No. 19-11608 (MEW) |
| Debtors. | ) | (Jointly Administered) |

**DISCLOSURE OF FINANCING FEES AND NOTICE OF HEARINGS TO (A) CONSIDER APPROVAL OF THE DEBTORS' DIP TERM LOAN FACILITY ON A FINAL BASIS AND THE DEBTORS' ENTRY INTO EXIT FINANCING TERM LOAN COMMITMENT AND FEE LETTERS AND (B) CONSIDER APPROVAL OF THE DEBTORS' DIP ABL FACILITY ON A FINAL BASIS**

This submission addresses three matters. First, it explains the financing fees negotiated with the Debtors' proposed debtor in possession financing and exit facility lenders, as the Court directed the Debtors to do during the telephonic conference on June 26, 2019. Second, it addresses the comments made by the Court with respect to Debtors' counsel's compliance with Local Rule 4001-2(b) (Bankr. S.D.N.Y.). Third, this submission explains how the Debtors intend to move forward on the financing motions.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Dream II Holdings, LLC (7915); Hollander Home Fashions Holdings, LLC (2063); Hollander Sleep Products, LLC (2143); Pacific Coast Feather, LLC (1445); Hollander Sleep Products Kentucky, LLC (4119); Pacific Coast Feather Cushion, LLC (3119); and Hollander Sleep Products Canada Limited (3477). The location of the Debtors' service address is: 901 Yamato Road, Suite 250, Boca Raton, Florida 33431.

Debtors' counsel deeply regret the circumstances in which we find ourselves. It was not their intention to misdirect the Court, and we heard the Court's comments at the status conference loud and clear. While the Debtors had sought only to balance the lenders' demands for confidentiality together with the need to obtain approval of necessary financing, it is now clear, after a detailed review, that the timing, source, and nature of the Debtors' disclosures to the Court were not highlighted sufficiently when the unredacted copies were provided to chambers.

Debtors' counsel consistently strives—in every chapter 11 representations—to strike the right balance in these circumstances. Going forward, if the occasion arises when unredacted material must be shared with the Court, Debtors' counsel will ensure they are clearly and conspicuously flagged for the Court and not included with other submitted materials. Moreover, Debtors' counsel has explained and discussed this situation to its entire department to ensure necessary procedures are followed and adhered to with this Court and all Courts going forward.

**The Proposed Financing Fees**

The Debtors filed these chapter 11 cases on May 19, 2019. On the same day, the Debtors filed two motions seeking authority to enter into two DIP facilities and a separate exit facility. The first was a motion regarding DIP ABL and term loan financing facilities to fund the cases [Docket No. 13] (the "DIP Motion");[2] the second sought approval of an exit fee and backstop commitment letter [Docket No. 18] (the "Exit Financing Motion"). The Debtors also filed a supporting declaration by Saul Burian of Houlihan Lokey, their financial advisor [Docket

2 After the first day hearing in these cases, the Debtors revised the proposed interim DIP order based on the Court's rulings that day, and on May 23 the Court entered the revised interim DIP order [Docket No. 53], approving the DIP Motion on an interim basis.

No. 19]. The following describes the proposed fees ("Financing Fees"),[3] how and when they are triggered, and the specific amounts involved.

- ***DIP Term Loan Commitment Party Fees***. Each DIP Commitment Party will receive a fee equal to **1%** of the aggregate principal amount of such DIP Commitment Party's respective commitment in respect of the DIP Term Loan Facility, earned and payable in cash concurrently with the funding of the initial DIP Term Loans. The DIP Term Loan Commitment Party Fees totaled approximately $280,000 and were irrevocably earned and paid upon entry of the Interim DIP Order.

- ***DIP Term Loan Backstop Lender Fees***. Each scheduled DIP Backstop Lender will receive a fee equal to **5.0%** of the amount of such DIP Backstop Lender's commitment to fund its pro rata share of any remaining unsubscribed portion of the DIP Term Loan Facility, earned and payable in cash concurrently with the funding of the initial DIP Term Loans. The DIP Term Loan Backstop Lender Fees totaled approximately $495,000 and were irrevocably earned and paid upon entry of the Interim DIP Order.

- ***DIP Term Loan Contingent Exit Fee***. Each DIP Commitment Party will receive a non-refundable fee equal to **7.5%** of the aggregate principal amount of such DIP Commitment Party's respective commitment in respect of the DIP Term Loan Facility, earned and payable in cash only if (i) a plan of reorganization is confirmed that provides for new exit financing (other than the exit financing proposed by in the Exit Financing Motion) and does not convert the DIP Term Loan Facility into such exit financing facility or (ii) a sale of all or substantially all of the Debtors' assets is consummated. The fee would not be payable if the confirmed chapter 11 plan converts the DIP Term Loan into the exit financing facility proposed in the Exit Financing Motion. This Contingent Exit Fee has not been approved by the Bankruptcy Court. If approved, this fee will be earned only upon entry by the Bankruptcy Court of the Final DIP Order, and will be paid only in the circumstances described in this notice.

- ***DIP Term Loan Agent Fee***. Barings Finance LLC will receive an administrative agency fee in the amount of **$50,000** payable in full in cash concurrently with the funding of the initial DIP Term Loans.

- ***Exit Term Loan Backstop Commitment Fee***. Each Exit Backstop Commitment Party will receive a fee equal to **5.0%** of the aggregate principal amount of such Exit Backstop Commitment Party's respective commitment to fund the $30 million New Money Exit Term Loan Facility. Approval of this fee is sought in the Exit Financing Motion. If approved, this fee will be earned and payable in cash on the business day following the Bankruptcy Court's entry of the Final DIP Order. Importantly, the fee is refundable if the Exit Backstop Commitment Parties terminate the restructuring support agreement

[3] Capitalized terms used but not otherwise defined in the following summary have the meaning given to them in the DIP Motion, the Exit Financing Motion, or the applicable fee letters, as applicable.

with the Debtors if such termination is solely on account of a breach by one or more Consenting Term Loan Lenders that are also an Exit Backstop Commitment Party (or an affiliate of such Exit Backstop Commitment Party).

- ***DIP ABL Closing Fee***. Wells Fargo Bank, National Association, as agent and for the ratable benefit of the Lenders, will receive a closing fee of **$1,350,000**, which shall be fully earned and payable in full on the Debtors' entry into the DIP ABL Facility. This DIP ABL Closing Fee was calculated by taking 1.5% of the total DIP ABL Facility. This ABL Closing Fee was irrevocably earned and paid upon entry of the Interim DIP Order.

- ***DIP ABL Collateral Monitoring Fee***. Wells Fargo Bank, National Association, as agent under the DIP ABL Facility, will receive a quarterly collateral monitoring fee of **$8,750**, due and payable on the first day of each fiscal quarter following the Debtors' entry into the DIP ABL Facility through and including the first day of the fiscal quarter prior to the date on which the DIP ABL Facility has been paid in full and all commitments have been terminated.

The Financing Fees were the product of extended arm's-length, good faith negotiations between the Debtors and their lenders, and they are an integral component of the overall terms of the DIP facilities and the Debtors' committed term loan exit financing. The lenders would not have provided the commitments without the Debtors' agreement to pay the Financing Fees. Moreover, the DIP ABL lenders were only willing to provide DIP financing to fund the Debtors' proposed reorganization or sale process through a chapter 11 plan if the Debtors also were able to obtain sufficient DIP term loan funding. And, after extensive negotiations, the Debtors' DIP term loan lenders were only willing to provide the Debtors with the DIP term loan facility in exchange for the Debtors' commitment to pay the applicable Financing Fees.

The Debtors also sought to ensure that they would have a path to emergence if a sale of their assets did not materialize. The Debtors therefore demanded, and the term loan lenders agreed to provide, committed exit financing to fund the Debtors' emergence from chapter 11. The requested commitment was for a total of 120 days. Given that the exit term loan lenders would be committing capital that might never be used if there were to be an asset sale, the Debtors believed that agreeing to the 5% commitment fee was an exercise of reasonable business

judgment. The Debtors also negotiated for, and the exit term loan lenders agreed to, a provision that the commitment fee would be refundable as described above.

**The Fee Disclosure Process**

The lenders required that their proposed fees be kept confidential for business related reasons. The Debtors sought to accommodate that request while also informing the Court and the U.S. Trustee of the proposed fees in advance of the First Day hearing. The Debtors filed a motion [Docket No. 20] (the "Seal Motion") seeking to seal (i) the fee letter for the proposed DIP asset-based loan ("ABL") facility, entered into in connection with the relief requested in the DIP Motion, (ii) the fee letter for the proposed DIP term loan facility, entered into in connection with the relief requested in the DIP Motion, (iii) the fee letter for the exit commitment fee letter, entered into in connection with the relief requested in the Exit Financing Motion, and (iv) the backstop commitment letter for the exit commitment, entered into in connection with the relief requested in the Exit Financing Motion. Due to the lenders' confidentiality requests and the pending Seal Motion, neither the DIP Motion nor the Exit Financing Motion listed the amounts or percentages of the proposed fees. On June 6, the U.S. Trustee filed its objection [Docket No. 91] to the Seal Motion asserting, among other things, that the proposed fees should be disclosed publicly. On June 24, 2019, the Debtors, the U.S. Trustee, and the lenders under the DIP and exit facilities agreed to file substantially unredacted fee and commitment letters to resolve the U.S. trustee's objection. Those substantially unredacted fee letters were filed on June 25, 2019 [Docket No. 138].

Because Local Rule 4001-2(b) requires disclosure of the fees, on May 19—two days before the first day hearing—the Debtors sent unredacted copies of the fee and commitment letters to the U.S. Trustee. The day before the hearing, once these cases were assigned to this Court, Debtors' counsel delivered to chambers unredacted fee and commitment letters. These

pleadings, however, were included with all other filings that had been docketed to that point. This is a practice Debtors' counsel has followed in the past.

The Debtors failed to specifically alert chambers to the unredacted filings. The Debtors may have compounded the problem at the first day hearing by describing the fees for which approval was sought and then referring to the earlier submission to chambers in which all the fees were disclosed. Debtors' counsel noted the fact that the fee and commitment letters had been filed on the docket, subject to the Seal Motion, and that the letters themselves had been provided to chambers,[4] but, again, did not consider the possibility that the Court was unaware of the unredacted fee information

The Court asked some specific questions about fees, eliciting a discussion of the DIP term loan fee of approximately 3% in the form of an upfront commitment fee and backstop fee to parties funding the DIP term loan facility, as well as that there was a proposed related exit fee. Debtors' counsel also noted there was a 1.5% commitment fee related to the DIP ABL facility. In this exchange with the Court, Debtors' counsel erroneously assumed that the Court was familiar with the unredacted fee and commitment letters.[5] Debtors' counsel is establishing internal procedures to ensure that fees are transparent to the Court and the appropriate parties *even when* the lenders request confidentiality and the debtor has moved to seal, both here and in all other courts going forward.

---

4 May 21, 2019, Hr'g Tr. at 22:6–19 ("In addition, Your Honor, we'd be seeking authority to use cash—or to pay various fees, interest, principal and other amounts payable under the DIP documents and terms set forth in the letters that we've submitted to chambers but that were attached under seal, Exhibit D and Exhibit E.").

5 After the June 26 telephonic conference, Debtors' counsel contacted chambers and learned that not only was chambers unaware of the unredacted fee and commitment letters contained in the Debtors' advance submission but that the Court generally prefers not to receive courtesy copies of filings and other case-related materials such as these. The Debtors will conduct themselves accordingly.

**Proposed Hearings to Approve DIP Facilities and Exit Financing Motion**

Following the June 26 telephonic hearing, the Debtors and their stakeholders met and discussed the path forward with respect to the Debtors' proposed DIP financing facilities and exit term loan commitment. As a result of these discussions, the parties agreed to bifurcate final approval of the Debtors' DIP ABL facility and DIP term loan facility.

More specifically, the Debtors will seek approval on a final basis the DIP ABL facility, including all fees with respect to that facility, at the hearing scheduled for Monday July 1, 2019, at 2:00 p.m., prevailing Eastern Time. Debtors' counsel has confirmed that the fees sought under that facility were approved under the Interim DIP Order. The Debtors, the UCC, and the Debtors' lenders are working diligently to reach agreement on the terms of a consensual final order. If such a resolution cannot be reached, the parties will submit all briefing by no later than 12:00 p.m., prevailing Eastern Time, on Sunday, June 30, 2019.

The Debtors will also seek approval on Monday of a second interim DIP order with respect to the DIP term loan facility. The Debtors will seek final approval of the DIP term loan facility and the Exit Financing Motion at a hearing scheduled for **July 17, 2019, at 2:00 p.m., prevailing Eastern Time**. The objection deadline for final approval of the DIP term loan facility and the Exit Financing Motion will be **July 12, 2019, at 4:00 p.m., prevailing Eastern Time**. The Debtors are hopeful both orders duly will be submitted on a fully consensual basis. The Debtors are also hopeful that the productive discussions this week will yield global consensus on the path forward.

Copies of all documents filed in these chapter 11 cases, including the DIP Motion, the Exit Financing Motion, and the substantially unredacted fee letters [Docket No. 138] may be

obtained free of charge by visiting the website of Omni Management Group at http://www.omnimgt.com/hollander.

New York, New York
Dated: June 28, 2019

*/s/ Joshua A. Sussberg, P.C.*
Joshua A. Sussberg, P.C.
Christopher T. Greco, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

Joseph M. Graham (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*