Joshua A. Sussberg, P.C.
Christopher T. Greco, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Joseph M. Graham (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| HOLLANDER SLEEP PRODUCTS, LLC, *et al.*,[1] | ) |
| | ) |
| Debtors. | ) |
| | ) |

Chapter 11

Case No. 19-11608 (MEW)

(Jointly Administered)

**CERTIFICATE OF NO OBJECTION REGARDING**
**FINAL ORDER WITH RESPECT TO PREPETITION ABL SECURED PARTIES AND**
**DIP ABL SECURED PARTIES (A) AUTHORIZING THE DEBTORS TO OBTAIN**
**POSTPETITION FINANCING, (B) AUTHORIZING THE DEBTORS TO USE CASH**
**COLLATERAL, (C) GRANTING LIENS AND PROVIDING SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE STATUS, (D) GRANTING ADEQUATE**
**PROTECTION TO THE PREPETITION ABL SECURED PARTIES,**
**(E) MODIFYING THE AUTOMATIC STAY, AND (F) GRANTING RELATED**

Pursuant to 28 U.S.C. § 1746, Rule 9075-2 of the Local Bankruptcy Rules for the Southern

District of New York (the "Local Rules"), the undersigned proposed counsel for the

above-captioned debtors and debtors in possession (the "Debtors") hereby certifies as follows:

1.    On May 19, 2019, the Debtors filed the *Debtors' Motion for Entry of Interim and*

*Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Dream II Holdings, LLC (7915); Hollander Home Fashions Holdings, LLC (2063); Hollander Sleep Products, LLC (2143); Pacific Coast Feather, LLC (1445); Hollander Sleep Products Kentucky, LLC (4119); Pacific Coast Feather Cushion, LLC (3119); and Hollander Sleep Products Canada Limited (3477).  The location of the Debtors' service address is:  901 Yamato Road, Suite 250, Boca Raton, Florida 33431.

*Debtors to use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Lenders, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 13] (the "<u>Motion</u>") with the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>").

2.      The deadline for parties to object or file responses to the Motion was set for June 6, 2019, at 4:00 p.m., prevailing Eastern Time (the "<u>Objection Deadline</u>"). The Local Rules provide that a Motion may be granted without a hearing, provided that, after the passage of the Objection Deadline, the movant submits a proposed order granting the Motion to the Court along with a certificate that no objection or other response has been filed or served.

3.      More than forty-eight hours since the Objection Deadline has now passed and, to the best of my knowledge, no objections to the Motion have been filed with the Court on the docket of these chapter 11 cases or served on proposed counsel to the Debtors.

4.      On June 26, 2019, the Court held a telephonic hearing regarding certain financing fees negotiated with the lenders under the Debtors' proposed debtor in possession financing facilities and exit term loan facility. Following that hearing and as disclosed in a separately filed notice [Docket No. 150], the Debtors and the DIP Lenders[2] agreed to bifurcate final approval of the DIP Term Loan Credit Facility and the DIP ABL Credit Facility.

5.      Accordingly, at the hearing scheduled for July 1, 2019, at 2:00 p.m., prevailing Eastern Time, the Debtors will seek final approval of the DIP ABL Credit Facility and a second interim DIP order with respect to the DIP Term Loan Credit Facility.

---

[2]    Capitalized term used but not defined herein shall have the meaning ascribed to such terms in the DIP Motion.

6.      A proposed final order approving the DIP ABL Credit Facility is attached hereto as **Exhibit A** (the "Proposed Order").[3]  The Proposed Order has been negotiated by and between the Debtors, the Official Committee of Unsecured Creditors, and the DIP Lenders.  A redlined copy of the Proposed Order is attached hereto as **Exhibit B**, reflecting changes made from the entered interim order [Docket No. 53].

7.      Accordingly, the Debtors respectfully request entry of the Proposed Order, attached hereto as **Exhibit A**, at the Court's earliest convenience.  If not entered prior to the hearing, the Debtors will seek entry of the Proposed Order at the hearing scheduled for **July 1, 2019, at 2:00 p.m., prevailing Eastern Time**, before the Honorable Michael E. Wiles, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom No. 617, New York, New York 10004-1408.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[3]    The budget to be attached to the final order will be submitted with the version of the final order submitted to chambers and will be presented to the Court at the hearing.

New York, New York
Dated: June 29, 2019

*/s/ Joshua A. Sussberg, P.C.*

Joshua A. Sussberg, P.C.
Christopher T. Greco, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

Joseph M. Graham (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HOLLANDER SLEEP PRODUCTS, LLC, *et al.*,[1] | ) | Case No. 19-11608 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FINAL ORDER WITH RESPECT TO PREPETITION ABL SECURED PARTIES AND
DIP ABL SECURED PARTIES (A) AUTHORIZING THE DEBTORS TO OBTAIN
POSTPETITION FINANCING, (B) AUTHORIZING THE DEBTORS TO USE CASH
COLLATERAL, (C) GRANTING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (D) GRANTING ADEQUATE PROTECTION
TO THE PREPETITION ABL SECURED PARTIES, (E) MODIFYING THE
AUTOMATIC STAY, AND (F) GRANTING RELATED RELIEF**

Upon the motion, dated May 19, 2019 (the "DIP Motion") of Hollander Sleep Products,

LLC (the "DIP Term Loan Borrower") and Hollander Home Fashions Holdings, LLC, Hollander

Sleep Products Kentucky, LLC, Hollander Sleep Products Canada Limited, Pacific Coast

Feather, LLC and Pacific Coast Feather Cushion, LLC (collectively the "DIP ABL Borrowers"

and together with the Term Loan Borrower, the "Borrowers") on behalf of themselves and their

affiliated debtors and debtors-in possession (together with Dream II Holdings, LLC ("Parent"),

collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Cases"),

seeking entry of an order (this "Final Order") pursuant to sections 105, 361, 362, 363, 364(c)(l),

364(c)(2), 364(c)(3), 364(d), 364(e), 507 and 552 of chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), Local Rule 4001-2, *inter alia*:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Dream II Holdings, LLC (7915); Hollander Home Fashions Holdings, LLC (2063); Hollander Sleep
Products, LLC (2143); Pacific Coast Feather, LLC (1445); Hollander Sleep Products Kentucky, LLC
(4119); Pacific Coast Feather Cushion, LLC (3119); and Hollander Sleep Products Canada Limited (3477).  The
location of the Debtors' service address is:  901 Yamato Road, Suite 250, Boca Raton, Florida 33431.

(i)    authorizing on a final basis the Debtors to obtain $90 million senior secured postpetition financing on a superpriority basis (the "DIP ABL Credit Facility" and the loans under the DIP ABL Credit Facility, the "DIP ABL Loans") pursuant to the terms and conditions of that certain Debtor-in-Possession Credit Agreement (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP ABL Credit Agreement"), by and among  the DIP ABL Borrowers, Parent, as guarantor, and such other guarantors thereto from time to time (the "DIP ABL Guarantors"; together with the DIP ABL Borrowers, the "DIP ABL Loan Parties" or "DIP Parties"), Wells Fargo Bank, National Association, as agent (in such capacity, the "DIP ABL Agent"), for and on behalf of itself and the other lenders party thereto (the "DIP ABL Lenders"), the Issuing Lenders (as therein defined) and the Bank Product Providers (as therein defined) (collectively, the "DIP ABL Secured Parties"), substantially in the form of Exhibit B attached to the DIP Motion;

(ii)    authorizing on a final basis the Debtors party thereto to execute and deliver the DIP ABL Credit Agreement and any other agreements and documents related thereto (collectively with the DIP ABL Credit Agreement, the "DIP ABL Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP ABL Documents;

(iii)    granting on a final basis the DIP ABL Credit Facility and all obligations owing thereunder and under the DIP ABL Documents to the DIP ABL Agent and DIP ABL Secured Parties (collectively, and including all "Obligations" as described in the DIP ABL Credit Agreement (including the Last Out DIP Obligations[2]), the "DIP ABL Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein);

---

[2]   "Last Out DIP Obligations" shall have the meaning ascribed to the term "Last Out Obligations" in the DIP ABL Credit Agreement.

2

(iv)     [reserved];

(v)      [reserved];

(vi)     [reserved];

(vii)    granting on a final basis to the DIP ABL Agent, for the benefit of itself and the DIP ABL Secured Parties and the DIP ABL Obligations, automatically perfected security interests in and liens on all of the DIP ABL Collateral (as defined below), including, without limitation, all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the Carve Out and the priorities set forth herein;

(viii)   authorizing and directing the Debtors on a final basis to pay the principal, interest, fees, expenses and other amounts payable under the DIP ABL Documents as such become due, including, without limitation, letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP ABL Agent's and DIP ABL Secured Parties' respective attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the applicable DIP ABL Documents;

(ix)     authorizing the Debtors on a final basis to use the Prepetition Collateral, including the Cash Collateral (each as defined below) of the Prepetition ABL Secured Parties and Prepetition ABL Obligations under the Prepetition ABL Documents, and providing adequate protection to the Prepetition ABL Secured Parties and Prepetition ABL Obligations for any Diminution in Value (as defined below) of their interests in the Prepetition Collateral, including the Cash Collateral, as applicable, and subject to the Carve Out; and

3

(x)      vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP ABL Documents, the Interim Order, and this Final Order.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Saul Burian in Support of the Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Lenders, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 19], the DIP ABL Documents, the *Declaration of Marc Pfefferle, Chief Executive Officer of Hollander Sleep Products, LLC, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 3], and the evidence submitted and argument made at the interim hearing (the "Interim Hearing"); and the Court having entered after the Interim Hearing the *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Lenders, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 53] (the "Interim Order")[3] and notice of the Final Hearing having been given in

---

[3]    To the extent used herein, the following terms will have the meanings ascribed thereto in the Interim Order: DIP Term Loan Credit Facility, DIP Term Loans, DIP Term Loan Credit Agreement, DIP Term Loan Guarantors, DIP Term Loan Parties, DIP Term Loan Lenders, Required DIP Term Loan Lenders, DIP Term Loan Agent, DIP Term Loan Documents, DIP Term Loan Obligations, DIP Term Collateral, Prepetition Term Loan Credit Agreement, Prepetition Term Loan Documents, Prepetition Term Loan Borrower, Prepetition Term Loan Parties, Prepetition Term Loan Administrative Agent, Prepetition Term Loan Lenders, Prepetition Term Loan Credit Facility, Prepetition Term Loan Permitted Prior Liens, Prepetition Term Loan Obligations, DIP Term Collateral, DIP Term Loan Liens, Prepetition Term Loan Liens, Prepetition Term Loan Adequate Protection Liens, Prepetition Term Loan Superpriority Claim, and Prepetition Term Loan Adequate Protection Payments.

4

accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the final hearing (the "Final Hearing") with respect to the portion of the DIP Motion pertaining to the DIP ABL Credit Facility and the Prepetition ABL Credit Facility having been held on July 1, 2019, and concluded; and all objections, if any, to the relief requested in the DIP Motion pertaining to the DIP ABL Credit Facility and the Prepetition ABL Credit Facility having been withdrawn, resolved by modifications to the Final Order set forth herein, or overruled by the Court; and it appearing that approval of the relief requested in the DIP Motion pertaining to the DIP ABL Credit Facility and the Prepetition ABL Credit Facility is reasonable and in the best interests of the Debtors, their estates, and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and the Court having determined that the legal and factual bases set forth in the DIP Motion establish just cause for the relief granted herein; and it appearing that the Debtors' entry into the DIP ABL Credit Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

5

A.    **Petition Date**.  On May 19, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court").

B.    **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.

C.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief sought in the DIP Motion and granted in the Interim Order and this Final Order are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Rules.

D.    **Committee Formation**.  On May 30, 2019, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

E.    **Notice**.  Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.  The relief granted herein is necessary

6

for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets.

F.    **Debtors' Stipulations**.    After consultation with their attorneys and financial advisors, and without prejudice to the rights of the Debtors and parties-in-interest as set forth in paragraph 42 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xv) below are referred to herein, collectively, as the "Debtors' Stipulations"), which Debtors' Stipulations shall not constitute a finding of this Court in accordance with Local Bankruptcy Rule 4001-2(g)(4) and further, which Debtors' Stipulations shall be deemed not effective solely with respect to any Challenge timely brought or filed prior to the Challenge Period Termination Date, unless and until such Challenge is overruled, settled, or denied by Final Order of the Court:

(i)    *Prepetition ABL Facility*.    Pursuant to that certain Third Amended and Restated Credit Agreement dated as of June 9, 2017 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Credit Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Documents")), among (a) the borrowers thereunder (the "Prepetition ABL Borrowers" and together with the "Guarantors" as defined in the Prepetition ABL Credit Agreement, the "Prepetition ABL Loan Parties"), (b) Dream II Holdings, LLC as parent, (c) Wells Fargo Bank, National Association, as agent (in such capacity, the "Prepetition ABL Agent"), sole lead arranger and sole book runner, and (d) the lenders party thereto (the "Prepetition ABL Lenders;" and collectively with the Prepetition ABL Agent, the "Issuing Lenders" (as defined under the Prepetition ABL Credit Agreement), and the "Bank Product

7

Providers" (as defined under the Prepetition ABL Credit Agreement) the "Prepetition ABL Secured Parties" or "Prepetition Secured Parties"), the Prepetition ABL Secured Parties provided credit and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Borrowers pursuant to the Prepetition ABL Documents (the "Prepetition ABL Credit Facility" or "Prepetition Secured Facility").

(ii)    *Prepetition Put Agreement and Existing Participation Agreement.* Pursuant to that certain (i) Put Agreement dated as of November 27, 2018 (the "Put Agreement") among Sentinel Capital Partners V, L.P., Sentinel Dream Blocker, Inc., and Sentinel Capital Investors V, L.P. (the "Put Purchasers"), Wells Fargo Bank, National Association and SunTrust Bank, as lenders under the Prepetition ABL Credit Agreement, and the Prepetition ABL Agent, in consideration of providing the Prepetition ABL Borrowers with "Last Out Loans" (as defined in the Prepetition ABL Credit Agreement) (the "Last Out Loans") (the Last Out Loans and any interest, fees, costs, charges, indemnities and other amounts accrued thereon, the "Last Out Obligations"), the Put Purchasers agreed to purchase a one hundred percent subordinated participation interest in the Last Out Loans provided to the Prepetition ABL Borrowers pursuant to the Prepetition ABL Credit Agreement and (ii) Existing Participation Agreement (as defined in the DIP ABL Credit Agreement) and the occurrence of the "Exercise Date" (as defined in the Existing Participation Agreement),  upon the occurrence of the Petition Date and "Notice of Put Exercise" (as defined in the Put Agreement) provided by Prepetition ABL Agent, the Put Purchasers acquired the Participation Interest (as defined in the Existing Participation Agreement) in respect of the Last Out Loans and Last Out Obligations (as defined in the Prepetition ABL Credit Agreement).

8

(iii)    *Prepetition ABL Obligations.*  The Prepetition ABL Facility provided the

Borrowers with, among other things, (x) $125,000,000 in aggregate Commitments (as defined in

the Prepetition ABL Credit Agreement).  As of May 17, 2019, the aggregate principal amount of

loans outstanding under the Prepetition ABL Facility was not less than $61,697,731 plus

$5,136,180 in respect of letters of credit (together with accrued and unpaid interest, and

outstanding letters of credit, any reimbursement obligations (contingent or otherwise) in respect

of letters of credit, any fees, expenses and disbursements (including, without limitation,

attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and

related expenses and disbursements), treasury, cash management, bank product and derivative

obligations, indemnification obligations, guarantee obligations, and other charges, amounts, and

costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing,

due, owing, or chargeable in respect of any of the Prepetition ABL Borrower's and certain of the

Prepetition ABL Guarantors' obligations pursuant to the Prepetition ABL Documents, including

all "Obligations" as defined in the Prepetition ABL Credit Agreement, including the Last Out

Obligations, "Existing Secured Canadian Obligations" (as defined in the DIP ABL Credit

Agreement), and "Existing Secured US Obligations" (as defined in the DIP ABL Credit

Agreement) (collectively, the "Prepetition ABL Obligations" or "Prepetition Secured

Obligations").

(iv)    *Prepetition ABL Liens and Prepetition ABL Priority Collateral.*  As more

fully set forth in the Prepetition ABL Documents, prior to the Petition Date, the Prepetition ABL

Borrowers and the Prepetition ABL Guarantors granted to the Prepetition ABL Agent, for the

benefit of itself and the Prepetition ABL Secured Parties and Prepetition ABL Obligations, a

security interest in and continuing lien (the "Prepetition ABL Liens") on substantially all of their

9

assets and property, including, without limitation, (a) a first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in that certain DIP Intercreditor Agreement referred to and as defined below) and all substitutions, replacements, accessions, products, and proceeds of any of the ABL Priority Collateral, in any form, including insurance proceeds and all claims against third parties for loss or damage to, or destruction of, or other voluntary conversion (including claims in respect of condemnation or expropriation) of any kind or nature of any or all of the foregoing (the "Prepetition ABL Priority Collateral"), and (b) a second priority security interest in and continuing lien on the Term Loan Priority Collateral (as defined in that certain DIP Intercreditor Agreement referred to and as defined below) and all substitutions, replacements, accessions, products, and proceeds of any of the Term Loan Priority Collateral, in any form, including insurance proceeds and all claims against third parties for loss or damage to, or destruction of, or other voluntary conversion (including claims in respect of condemnation or expropriation) of any kind or nature of any or all of the foregoing (collectively, the "Prepetition Term Loan Priority Collateral," and together with the Prepetition ABL Priority Collateral, the "Prepetition Collateral").[5]

(v)    *Roll-Up of Obligations Under Prepetition ABL Credit Agreement.*  All Existing Secured Obligations (as defined under the DIP ABL Credit Agreement as "Obligations" under the Prepetition ABL Credit Agreement (as defined below)), including all accrued and unpaid interest thereon and fees, costs, other charges, and expenses are hereby repaid, deemed repaid, deemed issued or deemed incurred, or otherwise replaced, as applicable, as "Obligations" under the DIP ABL Credit Agreement, subject to the terms herein. Notwithstanding the foregoing, nothing in the Interim Order or this Final Order shall impact the ability for the Court

---

[5]    Prepetition Term Loan Obligations are not secured by any ABL Canadian Collateral (as defined in the Intercreditor Agreement).

10

to unwind or partially unwind, after notice and a hearing, the pay down of Obligations under the

Prepetition ABL Credit Agreement, in the event there is a timely and successful Challenge (as

defined below) to the validity, enforceability, extent, perfection, or priority of the Prepetition

ABL Lenders' liens or claims, or a determination that the Prepetition ABL Obligations were

undersecured as of the Petition Date, and that the roll-up of Obligations under the Prepetition

ABL Credit Agreement unduly advantaged the Prepetition ABL Lenders.

> (vi)    [Reserved]

> (vii)   [Reserved]

> (viii)  [Reserved]

> (ix)    *Priority of Prepetition ABL Liens; Prepetition Intercreditor Agreement;*

*DIP Intercreditor Agreement*.    The Prepetition ABL Agent and Prepetition Term Loan

Administrative Agent entered into that certain Intercreditor Agreement dated as of June 9, 2017

(as amended, restated, supplemented, or otherwise modified in accordance with its terms prior to

the Petition Date, the "Prepetition Intercreditor Agreement") to govern the respective rights,

interests, obligations, priority, and positions of the Prepetition ABL Secured Parties and

Prepetition Term Loan Parties with respect to the assets and properties of the Debtors and other

obligors, including the Prepetition ABL Priority Collateral and Prepetition Term Loan Priority

Collateral.    Each of the Prepetition ABL Borrowers and Prepetition Term Loan Borrower

acknowledged the Prepetition Intercreditor Agreement.    The Prepetition Intercreditor Agreement

is binding and enforceable against the Borrowers, the other "Grantors" thereunder, the

Prepetition ABL Secured Parties, and the Prepetition Term Loan Parties in accordance with its

terms and the Borrowers, such Grantors, the Prepetition ABL Secured Parties, and the Prepetition

Term Loan Parties are not entitled to take any action that would be contrary to the provisions

11

thereof.   On May 23, 2019, the DIP ABL Agent and DIP Term Loan Agent entered into the Amended and Restated Intercreditor Agreement, amending and restating the Prepetition Intercreditor Agreement in its entirety (the "DIP Intercreditor Agreement").    The DIP Intercreditor Agreement is binding and enforceable against the Borrowers, the other "Grantors" thereunder, the Prepetition ABL Secured Parties, the Prepetition Term Loan Parties, the DIP ABL Secured Parties and the DIP Term Loan Parties in accordance with its terms and the Borrowers, the Prepetition ABL Secured Parties, the Prepetition Term Loan parties, the DIP ABL Secured Parties and DIP Term Loan Parties are not entitled to take any action that would be contrary to the provisions thereof.

(x)      *Validity, Extent, Perfection and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.*   Subject to paragraph 42 of this Order, the Debtors acknowledge and agree that as of the Petition Date:  (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Secured Parties and Prepetition ABL Obligations, for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition Term Loan Liens on the Prepetition Term Loan Priority Collateral, (2) the Carve Out, and (3) certain liens otherwise permitted by the Prepetition ABL Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "Permitted Prior Liens"); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition ABL Loan Parties enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, challenges, objections, defenses, claims, or

12

counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL

Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations

(including the Last Out Obligations) is subject to any challenge or defense including, without

limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination

(equitable or otherwise)  pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or

choses in action, including, without limitation, avoidance claims under Chapter 5 of the

Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement,

against any of the Prepetition ABL Secured Parties or the Put Purchasers or any of their

respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees

arising out of, based upon or related to the Prepetition ABL Facility (including the Last Out

Obligations) or entry into the Put Agreement and Existing Participation Agreement (as to the Put

Purchasers, solely with respect to the Put Purchasers' interests in the Last Out Obligations and

entry into the Put Agreement and Existing Participation Agreement, and subject to and only

effective upon the Disinterested Director's Determination (as defined below) and the Challenge

Period Termination Date (as defined below)) and subject to the rights of the Creditors'

Committee set forth in paragraph 42; (f) the Debtors have waived, discharged, and released any

right to challenge any of the Prepetition ABL Obligations (including the Last Out Obligations),

the priority of the Prepetition ABL Loan Parties' obligations thereunder, and the validity, extent,

and priority of the liens securing the Prepetition ABL Obligations; and (g) the Prepetition ABL

Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the

Bankruptcy Code.  Notwithstanding the foregoing or anything to the contrary herein, all of the

Debtors' rights and remedies (whether at law or in equity) in connection with any potential claim

13

or cause of action against the Put Purchasers which are, or may be, subject to investigation by the Debtors' disinterested director or the Creditors' Committee in accordance with paragraph 42 are preserved (and nothing shall impair any of the Debtors' rights or remedies against the Put Purchasers) until (a) the completion of the investigation by the Debtors' disinterested director and the disinterested director's determination that there are no such claims or causes of action against the Put Purchasers or their respective affiliates or agents (the "Disinterested Director's Determination") and (b) the Challenge Period Termination Date (as defined herein).  For the avoidance of doubt, any potential claim or cause of action against Sentinel Capital Partners, LLC and its affiliated investment funds or investment vehicles managed or advised by it, and its affiliates that directly or indirectly hold interests in the Debtors, in each case unrelated to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement, are unaffected by this Final Order.

(xi)    [Reserved]

(xii)    *Default by the Debtors*.  The Debtors acknowledge and stipulate that the Prepetition ABL Loan Parties are in default of their obligations under the Prepetition ABL Documents.

(xiii)    *Releases*.  Subject to Paragraph 42 of this Order, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition ABL Secured Parties and the Put Purchasers (as to the Put Purchasers, solely with respect to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement, and subject to and only effective upon the Disinterested Director's Determination and the Challenge Period Termination Date and subject to the rights of the Creditors' Committee set forth in paragraph 42) and their respective affiliates and each of their

14

respective former, current or future officers, partners, directors, managers, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their respective capacity as such (collectively, the "Released Parties") from any and all obligations and liabilities to the Debtors (and theirs successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "Released Claims") of any kind, nature or description, whether known or unknown, foreseen or unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Prepetition ABL Documents or the Released Parties' entry into the Put Agreement and Existing Participation Agreement, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions reflected thereby and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order arising out of or related to (as applicable) the Prepetition ABL Documents or entry into the Put Agreement and Existing Participation Agreement, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions reflected thereby and the obligations and financial obligations made thereunder, whether such Released Claims are matured, contingent, liquidated, unliquidated, unmatured, known, unknown, or otherwise.

15

(xiv)  *Cash Collateral*.  All cash, securities, or other properties of the DIP Parties (and the proceeds therefrom) to the extent subject to the valid, perfected, enforceable, and unavoidable liens as of the Petition Date of the Prepetition ABL Secured Parties, including, without limitation, all cash, securities, or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the DIP Parties in any account or accounts were subject to rights of set-off under the Prepetition ABL Documents and applicable law, for the benefit of the Prepetition ABL Secured Parties and Prepetition ABL Obligations, subject to the terms of the DIP Intercreditor Agreement.   All proceeds of the Prepetition Collateral (including cash on deposit in any account or accounts as of the Petition Date, securities, or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) to the extent subject to the valid, perfected, enforceable, and unavoidable liens as of the Petition Date of the Prepetition ABL Secured Parties and/or Prepetition Term Loan Parties are "Cash Collateral" of the applicable Prepetition ABL Secured Parties, Prepetition Term Loan Parties, Prepetition Term Loan Obligations and Prepetition ABL Obligations within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral" and solely with respect to the Prepetition ABL Priority Collateral, the "ABL Cash Collateral"), subject to the Carve Out and the terms of the DIP Intercreditor Agreement.

(xv)  *DIP Intercreditor Agreement*.  Pursuant to section 510 of the Bankruptcy Code, except as expressly provided by the terms of the Interim Order, this Final Order, the DIP Intercreditor Agreement and any other intercreditor agreement or subordination agreement between and/or among any Prepetition ABL Loan Party, any Prepetition Term Loan Party, any Debtor or affiliate thereof, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition ABL Documents or Prepetition Term Loan Documents

16

(i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights and remedies of the Prepetition ABL Secured Parties and the Prepetition Term Loan Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under the Interim Order, this Final Order, or any other order entered in respect of the DIP Motion or otherwise and the modification of the automatic stay), and (iii) shall not be deemed to be amended, altered, or modified by the terms of the Interim Order, this Final Order, any other ordered entered in respect of the DIP Motion, the DIP ABL Documents, or the DIP Term Loan Documents, unless expressly set forth herein.  The DIP ABL Credit Facility is an ABL Document as that term is used in the DIP Intercreditor Agreement, and any repayment of the Prepetition ABL Obligations pursuant to the Interim Order or this Final Order shall not be deemed to constitute a "Payment in Full of ABL Debt" as such term is defined in the DIP Intercreditor Agreement.  The DIP Term Loan Credit Facility is a Term Loan Document as that term is used in the DIP Intercreditor Agreement.

G.    **Findings Regarding Postpetition Financing**

(i)    *Request for Postpetition Financing*.  The Debtors seek authority on a final basis to (a) enter into the DIP ABL Credit Facility on the terms described herein and in the DIP ABL Documents, and (b) use ABL Cash Collateral on the terms described herein to administer their Cases and fund their operations.

(ii)    *Priming of the Prepetition ABL Liens*.  The priming of the Prepetition ABL Secured Parties and Prepetition Term Loan Parties on the Prepetition ABL Priority Collateral (and the priming of the Prepetition ABL Secured Parties on the Prepetition Term Loan Priority Collateral) under section 364(d) of the Bankruptcy Code, as contemplated by the DIP ABL

17

Credit Facility, as authorized by the Interim Order and this Final Order, and as further described below, will enable the Debtors to continue borrowing under the DIP ABL Credit Facility and to continue to operate their businesses to the benefit of their estates and creditors. The Prepetition ABL Secured Parties and the Prepetition ABL Obligations are each entitled to receive adequate protection as set forth in the Interim Order and this Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, solely to the extent of any diminution in value ("Diminution in Value") of each of their respective interests in the Prepetition Collateral (including Cash Collateral), subject to the Carve Out.

(iii)    *Need for Postpetition Financing and Use of Cash Collateral*. The Debtors continue to have a critical need to obtain the financing pursuant to the DIP ABL Credit Facility and to continue to use the Prepetition ABL Priority Collateral (including ABL Cash Collateral) in order to, among other things, (i) permit the orderly continuation of the operation of their businesses, (ii) maintain business relationships with customers, vendors and suppliers, (iii) make payroll, and (iv) satisfy other working capital and operational needs. The access by the DIP Parties to sufficient working capital and liquidity through the use of ABL Cash Collateral and other Prepetition ABL Priority Collateral, incurrence of new indebtedness under the DIP ABL Documents and other financial accommodations provided under the DIP ABL Documents are necessary and vital to the preservation and maintenance of the going concern value of the DIP Parties and to a successful reorganization of the DIP Parties and DIP ABL Obligations. The terms of the proposed financing are fair and reasonable, reflect each DIP Parties' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The adequate protection provided in the Interim Order and this Final Order and

18

other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.

(iv)    *No Revolving Credit Available on More Favorable Terms*.  The DIP ABL Credit Facility is the best source of asset-based, revolving debtor in possession financing available to the Debtors.  Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain asset-based financing from sources other than the DIP ABL Secured Parties on terms more favorable than the DIP ABL Credit Facility.  The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been and are unable to obtain:  (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Asset-based financing on a postpetition basis is not otherwise available without granting the DIP ABL Agent, for the benefit of itself and the DIP ABL Secured Parties and on account of the obligations under the DIP ABL Credit Facility (including the Last Out DIP Obligations):  (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof, (2) superpriority claims and liens, and (3) the other protections set forth in the Interim Order and this Final Order.

(v)    *Use of proceeds of the DIP ABL Credit Facility*.  As a condition to entry into the DIP ABL Documents, the extension of credit under the DIP ABL Credit Facility, and the authorization to use ABL Cash Collateral, the DIP ABL Agent, the DIP ABL Secured Parties, and

19

the Prepetition ABL Secured Parties required, and the Debtors agreed, that proceeds of the DIP ABL Credit Facility shall be used, in each case in a manner consistent with the terms and conditions of the Interim Order, this Final Order and the DIP ABL Documents and in accordance with the budget attached hereto as **Exhibit A**, as the same may be modified from time to time consistent with the terms of the DIP ABL Documents and the DIP Term Loan Documents, and subject to such variances as permitted in the DIP ABL Credit Agreement (such budget, as so modified, the "Approved Budget"), solely for: (a) working capital and letters of credit; (b) other general corporate purposes of the Debtors; (c) permitted payment of costs of administration of the Cases; (d) payment of such prepetition expenses of the Prepetition ABL Secured Parties as consented to by the DIP ABL Agent in its sole discretion, in each case under clauses (1) and (2) as approved by the Court; (e) payment of interest, fees, and expenses (including without limitation, legal and other professionals' fees and expenses of the DIP ABL Agent) owed under the DIP ABL Documents; (f) payment of certain adequate protection amounts to the Prepetition ABL Secured Parties and Prepetition ABL Obligations, as set forth in paragraph 16 hereof; (g) the reduction of the Prepetition ABL Obligations in accordance with the Final Order (or as otherwise required under any recognition orders by the Canadian Court (as defined in the DIP ABL Credit Agreement)) in respect of the Canadian Borrower (as defined in the DIP ABL Credit Agreement) and payment in full of the Prepetition ABL Obligations as described in paragraph F(v) above (or as otherwise required under such recognition orders of the Canadian Court in respect of the Canadian Borrower); (h) the Canadian Borrower to borrow under the DIP ABL Credit Agreement and lend such borrowed amounts to any Debtor other than the Canadian Borrower on a superpriority administrative expense basis pursuant to section 507(b) of the Bankruptcy Code (the "Canadian Intercompany Superpriority Administrative Claims"); (i) upon

20

entry of this Final Order and delivery of the Participation Agreement (as defined in the DIP ABL Credit Agreement), deemed refinancing and replacement of the Last Out Obligations with the Last Out DIP Obligations (as defined by the DIP ABL Credit Agreement), subject to the rights preserved in paragraph 42 of this Final Order; and (j) payment of the Carve Out shall be in accordance with paragraph 39 of this Final Order.  The reduction of the Prepetition ABL Obligations from the ABL Cash Collateral in accordance with the Interim Order and the Roll-Up of the Prepetition ABL Obligations described in paragraph F(v) was necessary as the Prepetition ABL Secured Parties have not otherwise consented to the use of their ABL Cash Collateral or the subordination of their liens to the DIP ABL Liens (as defined below), and the DIP ABL Agent and the DIP ABL Secured Parties did not otherwise consent to providing the DIP ABL Credit Facility and extending credit to the Debtors thereunder.  Further, the DIP ABL Agent and DIP ABL Secured Parties were not willing to provide the DIP ABL Credit Facility unless the Canadian Borrower is a joint and several obligor with respect to the DIP ABL Obligations.

(vi)    *Application of Proceeds of Collateral*.  As a condition to entry into the DIP ABL Credit Agreement, the extension of credit under the DIP ABL Credit Facility and authorization to use ABL Cash Collateral, the Debtors, the DIP ABL Agent, the DIP Term Loan Agent, the DIP ABL Secured Parties, DIP Term Loan Lenders, the Prepetition ABL Secured Parties, and the Prepetition Term Loan Parties have agreed that, as of and commencing on the date of the Interim Hearing, the Debtors shall continue to apply the proceeds of DIP ABL Priority Collateral in accordance with the Interim Order, this Final Order and the DIP Intercreditor Agreement.

H.    **Adequate Protection**.  Subject to the Carve Out and solely to the extent of any Diminution in Value, the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL

Secured Parties on account of the Prepetition ABL Obligations (including the Last Out Obligations) is entitled to receive adequate protection in the Prepetition Collateral. Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection (but only to the extent of any Diminution in Value): the Prepetition ABL Secured Parties and Prepetition ABL Obligations will receive adequate protection liens and superpriority claims, as more fully set forth in paragraphs 11-14 herein and the Prepetition ABL Secured Parties (other than on account of the Last Out Loans and Last Out Obligations) shall receive current payment of interest at the default rate (provided the Last Out Loans and Last Out Obligations shall accrue payment of interest at the default rate as part of the Last Out Loans and Last Out Obligations and any payment to the Put Purchasers on account of the Last Out DIP Obligations or Last Out Obligations is subject to the rights of the Creditors' Committee set forth in paragraph 42 and subject to the occurrence of the Disinterested Director's Determination and the Challenge Period Termination Date for claims and causes of action against the Put Purchasers solely as it relates to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement as set forth in paragraph 42 of this Final Order or further Court Order), and reasonable and documented fees and expenses (including, without limitation, legal and other professionals' fees and expenses of the Prepetition ABL Agent, whether arising before or after the Petition Date) provided that the Put Purchasers' fees and expenses shall accrue and not be paid prior to substantial consummation of a plan or further Court Order.

I.      **Sections 506(c) and 552(b)**. In light of (i) the DIP ABL Agent's and DIP ABL Secured Parties' agreement that their liens and superpriority claims shall be subject to the Carve Out (including the caps and limitations set forth therein) and (ii) the Prepetition ABL Secured Parties' agreement that, with respect to the Prepetition ABL Priority Collateral, their liens shall

KE 61996516

be subject to the Carve Out (and the caps and limitations set forth therein), subordinate to the DIP ABL Liens, and, in the case of the Prepetition Term Loan Priority Collateral, subordinate to the DIP Term Loan Liens and the Prepetition Term Loan Liens, (a) the Prepetition ABL Secured Parties and Prepetition ABL Obligations are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) the DIP ABL Agent, DIP ABL Secured Parties, DIP ABL Obligations, Prepetition ABL Secured Parties and Prepetition ABL Obligations are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code, subject to the terms of the DIP Intercreditor Agreement.

J.    **Good Faith of the DIP ABL Agents and DIP ABL Secured Parties**.

(i)    *Willingness to Provide Financing.*  The DIP ABL Secured Parties have indicated a willingness to provide and to continue to provide financing to the Debtors subject to: (a) entry of the Interim Order and this Final Order; (b) final approval of the terms and conditions of the DIP ABL Credit Facility and the DIP ABL Documents; (c) satisfaction of the closing conditions set forth in the DIP ABL Documents; (d) entry of the Canadian Recognition Orders (as defined by the DIP ABL Credit Agreement); and (e) findings by this Court that the DIP ABL Credit Facility is essential to the Debtors' estates, that the DIP ABL Agent and DIP ABL Secured Parties are extending credit to the Debtors pursuant to the DIP ABL Documents in good faith, and that the DIP ABL Agent's and DIP ABL Secured Parties' claims, superpriority claims, security interests and liens, and other protections granted pursuant to the Interim Order and this Final Order and the DIP ABL Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)    *Business Judgment.*  Based on the DIP Motion, the declarations filed in support of the DIP Motion, and the record presented to the Court at the Interim Hearing and

KE 61996516

Final Hearing, (i) the terms of the financing provided by the DIP ABL Credit Facility, (ii) the adequate protection provided by the Interim Order, this Final Order, and DIP ABL Documents, and (iii) the terms on which the DIP Parties may continue to use the Prepetition Collateral (including Cash Collateral), in each case pursuant to the Interim Order, this Final Order, and the DIP ABL Documents, are in each case fair and reasonable, reflect the DIP Parties' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represents the best asset-based financing (and terms) presently available.

(iii)    *Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the DIP ABL Credit Facility were negotiated in good faith and at arms' length among the Debtors, DIP ABL Agent, and DIP ABL Secured Parties, with the assistance and counsel of their respective advisors.  The credit to be extended under the DIP ABL Credit Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP ABL Agent and DIP ABL Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

K.    **Immediate Entry**.  Sufficient cause existed for immediate entry of the Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

L.    **Final Hearing**.  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier, or hand delivery, to certain parties-in-interest, including, among others:  (i) the U.S. Trustee, (ii) those entities or individuals included on the Debtors' list of 50 largest unsecured creditors on a consolidated basis, (iii) counsel to the Prepetition ABL Agent, (iv) counsel to the Prepetition Term Loan Agent; (v) counsel to the Put Purchasers; (vi) the Creditors' Committee; and (vii) all other parties entitled to notice under the Local Rules.  The Debtors have made

24

reasonable efforts to afford the best notice possible under the circumstances and no other notice is required in connection with the relief set forth in the Interim Order or this Final Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      DIP ABL Credit Facility Approved.  The DIP Motion is granted on a final basis solely to the extent set forth below, the DIP ABL Credit Facility was authorized in part on an interim basis pursuant to the Interim Order as modified therein, and hereby is authorized and approved on a final basis as set forth below (including any modifications in this Final Order as to the Interim Order), and the use of Cash Collateral was authorized pursuant to the terms of the Interim Order and the use of the ABL Cash Collateral is hereby authorized on a final basis, in each case, subject to the terms and conditions set forth in this Final Order.  All objections to the Interim Order and this Final Order as they relate to the DIP ABL Credit Facility and use of ABL Cash Collateral, to the extent not withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Final Order shall become effective immediately upon its entry.  Nothing herein shall approve the DIP Term Loan Facility on a final basis.

**ABL DIP Credit Facility Authorization**

2.      Authorization of the ABL DIP Financing.  The DIP ABL Credit Facility was approved on an interim basis pursuant to the Interim Order (as described therein) and is hereby approved on a final basis on the terms set forth in this Final Order.  The Debtors were expressly and immediately authorized and empowered pursuant to the Interim Order to execute

25

and deliver the DIP ABL Documents and are hereby expressly and immediately authorized and empowered on a final basis to continue borrowing under the DIP ABL Documents, and to incur and to perform the DIP ABL Obligations in accordance with, and subject to, the terms of the Interim Order, this Final Order and the DIP ABL Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP ABL Credit Facility and the creation and perfection of the DIP ABL Liens (as defined below) described in and provided for by the Interim Order and this Final Order and the DIP ABL Documents.  The Debtors were authorized and directed pursuant to the Interim Order and are hereby authorized and directed on a final basis to pay, in accordance with the Interim Order and this Final Order, the principal, interest, fees, expenses and other amounts described in the DIP ABL Documents and all other documents comprising the DIP ABL Credit Facility as such become due and without need to obtain further Court approval, including, without limitation, closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, continuing commitment fees, backstop fees, servicing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP ABL Agent's attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated by the Interim Order or this Final Order are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in the Interim Order, this Final Order or the DIP ABL Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order and the DIP ABL Documents.  As of the date of

execution and delivery, the DIP ABL Documents continue to represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms. The Last Out DIP Obligations and Last Out Obligations (as applicable) shall include interest at the default rate and reasonable and documented fees and expenses of the Put Purchasers (such amounts not to be paid currently but to accrue as part of the Last Out DIP Obligations and Last Out Obligations (as applicable). Any payment to the Put Purchasers on account of the Last Out Obligations or Last Out DIP Obligations is subject to the rights of the Creditors' Committee set forth in paragraph 42 and subject to the occurrence of the Disinterested Director's Determination and the Challenge Period Termination Date for claims and causes of action against the Put Purchasers solely as it relates to the Put Purchasers' interest in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement as set forth in paragraph 42 of this Final Order or further Court Order, provided that the fees and expenses of the Last Out Obligations or Last Out DIP Obligations shall not be paid prior to substantial consummation of a plan or further Court Order).

3.    <u>Authorization to Borrow</u>.  From the entry of this Final Order through and including the Termination Declaration (as defined below), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP ABL Documents, the Interim Order and this Final Order, the Debtors were authorized pursuant to the Interim Order and are hereby authorized to (i) borrow money pursuant to the DIP ABL Credit Agreement on a final basis and the DIP ABL Guarantors were authorized pursuant to the Interim Order and are hereby authorized to guaranty the DIP ABL Obligations on a final basis, in each case up to $90 million under the DIP ABL Credit Facility, together with applicable interest, expenses, fees and other charges payable in connection with the DIP ABL Credit Facility, subject in each case to any

27

limitations on borrowing under the DIP ABL Documents, which shall be used for all purposes

permitted under the DIP ABL Documents, including, without limitation, to refinance the portions

of the  Prepetition ABL Credit Facility and Prepetition ABL Obligations as provided in this Final

Order, to provide working capital for the DIP Parties and to pay interest, fees, costs, charges, and

expenses in accordance with the Interim Order, this Final Order, the DIP ABL Documents and

the Approved Budget (subject to the variances permitted by the DIP ABL Credit Agreement and

the DIP Term Loan Credit Agreement).  In connection with obtaining and using funds to enable

the Debtors to pay the expenses set forth in the Approved Budget (subject to the variances

permitted by the DIP ABL Credit Agreement), the Debtors shall borrow and use (or in the case of

amounts borrowed under the DIP Term Loan Credit Facility pursuant to the Interim DIP Order or

any additional orders pertaining to the DIP Term Loan Credit Facility and acceptable to the DIP

Term Loan Agent), on a weekly and cumulative basis, an approximately equal amount from the

DIP ABL Credit Facility (subject to Availability) and the amounts borrowed under the DIP Term

Loan Credit Facility.

4.    <u>DIP ABL Obligations</u>.  The DIP ABL Documents, the Interim Order and

this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP

ABL Obligations, which DIP ABL Obligations shall be enforceable against the Debtors, their

estates and any successors thereto, including without limitation, any trustee appointed in the

Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the

Cases, or in any other proceedings superseding or related to any of the foregoing (collectively,

the "<u>Successor Cases</u>").  Upon entry of this Final Order, the DIP ABL Obligations will include

all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations,

contingent or absolute, which may now or from time to time be owing by any of the Debtors to

28

the DIP ABL Agent or any of the DIP ABL Secured Parties, under the DIP ABL Documents, the Interim Order or this Final Order, including, without limitation, all principal, accrued interest, costs, charges, fees, expenses, and other amounts under the DIP ABL Documents. Upon entry of this Final Order, all (i) Bank Products, (ii) Cash Management Services, and (iii) Letters of Credit (each as defined in the Prepetition ABL Credit Agreement) shall continue in place and all obligations under or in connection therewith shall be subject to the DIP ABL Credit Agreement and shall constitute DIP ABL Obligations. The DIP ABL Loan Parties shall continue to be jointly and severally liable for the DIP ABL Obligations. The DIP ABL Obligations, as applicable, shall be due and payable, without notice or demand, and the use of ABL Cash Collateral shall automatically cease on each applicable Termination Date, as applicable, except as provided in paragraph 30 herein. No obligation, payment, transfer, or grant of collateral security hereunder, under the Interim Order or under the DIP ABL Documents (including any DIP ABL Obligation or DIP ABL Liens, and including in connection with any adequate protection provided to the Prepetition ABL Secured Parties and Prepetition ABL Obligations hereunder) stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity. Nothing in the Interim Order or this Final Order shall impact the ability of the Court to unwind or partially unwind, after notice and a hearing, the pay down of Prepetition ABL Obligations under the Prepetition ABL

29

Credit Facility or any payments made pursuant to this Order or the Interim Order in the event

there is a timely and successful Challenge to the validity, enforceability, extent, perfection or

priority of the Prepetition ABL Secured Parties' liens or claims, or a determination that the

Prepetition ABL Obligations were undersecured as of the Petition Date, and the roll-up unduly

advantaged the Prepetition ABL Secured Parties.

5.      ABL DIP Liens.  In order to secure the DIP ABL Obligations, effective

immediately upon entry of the Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3),

and 364(d) of the Bankruptcy Code, the DIP ABL Agent, for the benefit of itself and the DIP

ABL Secured Parties and/or DIP ABL Obligations, were granted pursuant to the Interim Order

and are hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically

and properly perfected postpetition security interests in and liens on (collectively, the "DIP ABL

Liens") all real and personal property, whether now existing or hereafter arising and wherever

located, tangible and intangible, of, with respect to the DIP ABL Obligations, each of the DIP

ABL Loan Parties (the "DIP ABL Collateral" or "DIP Collateral"),[6] including without limitation:

(a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables

(including credit card receivables), chattel paper, contract rights, inventory (wherever located),

instruments, documents, securities (whether or not marketable), and investment property

(including, without limitation, all of the issued and outstanding capital stock of each of its

subsidiaries), furniture, fixtures, equipment, goods, franchise rights, trade names, trademarks,

servicemarks, copyrights, patents, intellectual property, general intangibles, rights to the payment

of money (including, without limitation, tax refunds and any other extraordinary payments),

supporting obligations, guarantees, letter of credit rights, causes of action (excluding commercial

---

[6]     For the avoidance of doubt, the DIP Term Collateral does not include ABL Canadian Collateral (as defined by
the DIP Intercreditor Agreement).

tort claims and avoidance actions (but including avoidance actions brought pursuant to section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral)) and all substitutions, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds and (b) all owned real property interests and all proceeds of leased real property, and including all DIP Collateral that was not otherwise subject to valid, perfected, enforceable and unavoidable liens on the Petition Date.  DIP Collateral that is of a type that would be ABL Priority Collateral (as defined the DIP Intercreditor Agreement) and the proceeds and products thereof shall in each case, constitute "DIP ABL Priority Collateral," DIP Collateral that is of a type that would be Term Loan Priority Collateral (as defined in the DIP Intercreditor Agreement) and the proceeds and products thereof and shall, in each case, constitute "DIP Term Loan Priority Collateral."  For the avoidance of doubt, nothing in this Order shall be deemed to be a final determination of the scope of the collateral that secures the DIP Term Loan Obligations or otherwise grant relief in respect of the DIP Term Loan on a final basis.

6.     DIP Lien Priority.  The DIP ABL Liens are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP ABL Liens shall be subject to the Carve Out, and shall otherwise be junior only to: (i) as to the DIP ABL Priority Collateral, Permitted Prior Liens; and (ii) as to the DIP Term Loan Priority Collateral, (A) Permitted Prior Liens; (B) the DIP Term Loan Liens; (C) the Prepetition Term Loan Liens; and (D) the Prepetition Term Loan Adequate Protection Liens.  Other than as set forth herein or in the DIP ABL Documents, the DIP ABL Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and

31

enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP ABL Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP ABL Liens. Notwithstanding anything herein to the contrary, none of the Prepetition Term Loan Adequate Protection Liens or DIP Term Loan Liens shall exist with respect to any ABL Canadian Collateral (as defined by the DIP Intercreditor Agreement).

7.     Superpriority Claims. The DIP ABL Agent and DIP ABL Secured Parties were pursuant to the Interim Order and hereby are granted on a final basis (as of the date of entry of the Interim Order), pursuant to Section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "DIP ABL Superpriority Claims") for all DIP ABL Obligations (including Last Out DIP Obligations):  (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 506(c) (in regard to surcharge claims against secured creditors other than the Prepetition ABL Secured Parties), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other

32

estate representative to the extent permitted by law; provided that the DIP ABL Agent and DIP ABL Secured Parties shall first use reasonably commercial efforts to seek recourse against the DIP ABL Priority Collateral before exercising any remedies against proceeds of avoidance actions. Notwithstanding the foregoing, the DIP ABL Superpriority Claims and the "DIP Superpriority Claims" (as defined in the Interim Order) of the DIP Term Loan Parties shall be *pari passu* with each other, without otherwise impairing the lien priorities as set forth herein, and subject to the terms of the DIP Intercreditor Agreement and Carve Out (including the caps and limitations therein).

8.      No Obligation to Extend Credit.  Except as required to fund the Carve Out in accordance with the terms of this Final Order, the DIP ABL Agent and DIP ABL Secured Parties shall have no obligation to make any loan or advance under the DIP ABL Documents unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal, or extension of such letter of credit or bankers' acceptance under the DIP ABL Documents and this Final Order have been satisfied in full or waived by the DIP ABL Agent (in its sole discretion) in accordance with the terms of the DIP ABL Credit Agreement.

9.      Use of Proceeds of DIP ABL Credit Facility.  The Debtors shall continue to use advances of credit under the DIP ABL Credit Facility, in accordance with the Approved Budget (subject to such variances as permitted in the DIP ABL Credit Agreement), only for the purposes specifically set forth in the Interim Order, this Final Order and the DIP ABL Documents, and in compliance with the terms and conditions in the Interim Order, this Final Order and the DIP ABL Documents.

10.      No Monitoring Obligation.  No DIP Secured Party or DIP ABL Agent shall have any obligation nor responsibility to monitor any DIP Party's use of DIP ABL Credit

33

Facility, and each DIP ABL Secured Party or DIP ABL Agent may rely upon each DIP Party's representation that the use of the DIP ABL Credit Facility at any time is in accordance with the requirements of the Interim Order, this Final Order, the DIP ABL Documents and Bankruptcy Rule 4001(c)(2).

**Authorization to Use Cash Collateral**

11.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order, the DIP ABL Credit Facility and the DIP ABL Documents and in accordance with the Approved Budget (subject to variances as permitted in the DIP ABL Credit Agreement), the Debtors were authorized pursuant to the Interim Order and hereby are authorized to use ABL Cash Collateral until the Termination Date.  Nothing in the Interim Order or this Final Order shall authorize the disposition of any assets of the Debtors outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order (including with respect to the Carve Out), the DIP ABL Credit Facility, the DIP ABL Documents, and in accordance with the Approved Budget (subject to such variances as permitted in the DIP Credit Agreement). All ABL Cash Collateral shall be applied to reduce the Prepetition ABL Obligations (if any) then to reduce the DIP ABL Obligations as set forth in the DIP ABL Credit Agreement (with a contemporaneous increase in availability under the DIP ABL Credit Facility, subject to the other terms, conditions, and provisions of the DIP ABL Credit Agreement).

12.    <u>Adequate Protection Liens</u>.  Subject to the terms of the DIP Intercreditor Agreement and the Carve Out and solely to the extent of any Diminution in Value:

(i)    *Prepetition ABL Adequate Protection Liens*.  Pursuant to Sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests

of the Prepetition ABL Secured Parties and the Prepetition ABL Obligations in the Prepetition Collateral solely against any Diminution in Value of such interests in the Prepetition Collateral, the DIP ABL Loan Parties granted pursuant to the Interim Order and hereby grant (as of the date of entry of the Interim Order) to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Secured Parties and the Prepetition ABL Obligations, continuing valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP ABL Collateral (the "Prepetition ABL Adequate Protection Liens" or "Adequate Protection Liens").

(ii)    [Reserved]

13.    Priority of Adequate Protection Liens.  Subject to the terms of the DIP Intercreditor Agreement:

(i)    The Prepetition ABL Adequate Protection Liens shall be subject to the Carve Out (and the caps and limitations set forth therein).  The Prepetition ABL Adequate Protection Liens shall otherwise be junior only to:  (a) with respect to the DIP ABL Priority Collateral (1) Permitted Prior Liens; (2) the DIP ABL Liens; and (3) the Prepetition ABL Liens; and (b) with respect to the DIP Term Loan Priority Collateral (1) Prepetition Term Loan Permitted Prior Liens; (2) the DIP Term Loan Liens; (3) the Prepetition Term Loan Liens; (4) the Prepetition Term Loan Adequate Protection Liens; (5) the DIP ABL Liens; and (6) the Prepetition ABL Liens.  The Prepetition ABL Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP ABL Loan Parties' assets.

(ii)    Except as provided herein, the Prepetition ABL Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal

35

of any of the Cases or Successor Cases.  The Prepetition ABL Adequate Protection Liens shall

not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided

and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall

be *pari passu* with or senior to the Prepetition ABL Liens or the Prepetition ABL Adequate

Protection Liens.

14.    <u>Adequate Protection Superpriority Claims</u>.  Subject to the terms of the DIP

Intercreditor Agreement and the Carve Out and solely to the extent of any Diminution in Value:

(i)    *Prepetition ABL Superpriority Claim*.    As further adequate

protection of the interests of the Prepetition ABL Secured Parties and Prepetition ABL

Obligations in the Prepetition Collateral solely against any Diminution in Value of such interests

in the Prepetition Collateral, the Prepetition ABL Agent, on behalf of itself and the Prepetition

ABL Secured Parties and Prepetition ABL Obligations, was granted pursuant to the Interim

Order and is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy

Code an allowed superpriority administrative expense claim solely to the extent of any

Diminution in Value in each of the Cases and any Successor Cases (the "<u>Prepetition ABL</u>

<u>Superpriority Claim</u>" or "<u>Adequate Protection Superpriority Claims</u>").

(ii)    [Reserved]

15.    <u>Priority of the Adequate Protection Superpriority Claims</u>.  Except as set

forth herein, including with respect to the Canadian Intercompany Superpriority Administrative

Claims, the Prepetition ABL Superpriority Claims shall have priority over all administrative

expense claims and unsecured claims against the Debtors or their estates, now existing or

hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative

expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331,

36

503(a), 503(b), 506(c) (solely with respect to surcharge claims against secured creditors other than the Prepetition ABL Secured Parties), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code; *provided*, *however*, that the Prepetition ABL Superpriority Claims and the Prepetition Term Loan Superpriority Claims shall be *pari passu* with each other (in each of the Cases other than the Recognition Proceedings, which shall be limited to Prepetition ABL Superpriority Claims in favor of the ABL Secured Parties), without otherwise impairing the lien priorities as set forth herein, and subject to the Carve Out and junior to the DIP ABL Superpriority Claims.

16.     Adequate Protection Payments and Protections for Prepetition ABL Secured Parties.  As further adequate protection and solely to the extent of any Diminution in Value and subject to the Carve Out (the "Prepetition ABL Adequate Protection Payments" or "Adequate Protection Payments"), the Debtors were pursuant to the Interim Order and hereby are authorized and directed to provide adequate protection to the (A) Prepetition ABL Secured Parties and Prepetition ABL Obligations in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of (i) interest payable monthly, at the default rate (other than on account of Last Out Loans and Last Out Obligations, provided that the Last Out Loans and Last Out Obligations shall accrue interest at the default rate as part of the Last Out Loans and Last Out Obligations), (ii) principal due under the Prepetition ABL Documents (other than on account of Last Out Loans and Last Out Obligations), subject to the rights preserved in paragraph 42 below, and (iii) payment of fees and expenses as provided in the DIP ABL Credit Agreement subject to the terms of this Final Order; *provided,* that Prepetition ABL Adequate Protection Payments with respect to clause (i) above shall be paid monthly, upon entry of this Final Order, and all accrued and unpaid Prepetition ABL Adequate Protection

Payments for the period prior to the entry of this Final Order shall be paid, in cash, upon entry of this Final Order.

17.     [Reserved].

18.     Adequate Protection Reservation.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition ABL Secured Parties and Prepetition ABL Obligations under the Interim Order or hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases. The receipt by the Prepetition ABL Secured Parties and Prepetition ABL Obligations of the adequate protection provided in the Interim Order or herein shall not be deemed an admission that the respective interests of the Prepetition ABL Secured Parties and Prepetition ABL Obligations are adequately protected.  Further, the Interim Order and this Final Order shall not prejudice or limit the rights of the Prepetition ABL Secured Parties and Prepetition ABL Obligations to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection or the rights of any party to oppose such requests for additional relief.

**Additional Provisions to DIP Financing and Use of ABL Cash Collateral**

19.     Amendment of the DIP ABL Documents.  The DIP ABL Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if:  (a) the amendment, modification, or supplement is in accordance with the DIP ABL Documents, and (b) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification, or supplement is provided to counsel to DIP Term Loan Agent, the Creditors' Committee and any other committee appointed under section 1102 or 1104 of the Bankruptcy Code, and the U.S. Trustee (collectively, the "Notice Parties") not less

38

than three (3) business days in advance in writing; and (c) the amendment, modification, or supplement is filed with the Court; *provided*, *however*, that neither consent of the Notice Parties nor approval of the Court will be necessary to effectuate any such amendment, modification or supplement and provided further that such amendment, modification, or supplement shall be without prejudice to the right of any party in interest to be heard; provided, further, that no such amendment, modification, or supplement shall modify the DIP ABL Documents in a manner that is materially different from that approved by the Court.

20.    <u>Budget Maintenance</u>.  The use of borrowings and letters of credit under the DIP ABL Credit Facility shall be in accordance with the Approved Budget (subject to such variances as permitted in the DIP ABL Credit Agreement) and the terms and conditions set forth in the DIP ABL Document.  The Approved Budget and any modification to, or amendment or update of, the Approved Budget shall be subject to the reasonable approval of, and in form and substance reasonably acceptable to the DIP ABL Agent in accordance with the DIP ABL Documents and DIP Term Loan Agent in accordance with the DIP Term Loan Documents.   The Debtors will promptly provide the Creditors' Committee with copies of the Approved Budget and any modifications, amendments, or updates thereto that have been approved by the DIP ABL Agent in accordance with the DIP ABL Documents and DIP Term Loan Agent in accordance with the DIP Term Loan Documents.  No amendment or modifications as to the DIP ABL Documents shall be made unless the Creditors' Committee is provided with three (3) business days' prior notice.  If an objection to the proposed modifications or amendments is expressed by the Creditors' Committee in writing within such time period, then the parties agree to seek an expedited hearing to resolve the objection if it cannot be resolved amongst themselves.

KE 61996516

21.     <u>Budget Compliance</u>.  The use of borrowings and letters of credit under the DIP ABL Credit Facility shall be in accordance with the Approved Budget (subject to such variances as permitted in the DIP ABL Credit Agreement) and the DIP ABL Documents; *provided*, *however*, that, in the case of the fees, costs and expenses of the DIP ABL Agent, the Debtors shall pay such fees, costs and expenses in accordance with the DIP ABL Documents and this Final Order without being limited by the Approved Budget.

22.     <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code was, pursuant to the Interim Order, and is hereby modified as necessary to effectuate all of the terms and provisions of the Interim Order and this Final Order, including, without limitation, to:  (a) permit the Debtors to grant on a final basis the DIP ABL Liens (as of the date of entry of the Interim Order), Prepetition ABL Adequate Protection Liens (as of the date of entry of the Interim Order), DIP ABL Superpriority Claims, and Prepetition ABL Superpriority Claims; (b) permit the Debtors on a final basis to perform such acts as the DIP ABL Agent, DIP ABL Secured Parties, or the Prepetition ABL Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors on a final basis to incur all liabilities and obligations to the DIP ABL Agent, DIP ABL Secured Parties, and the Prepetition ABL Secured Parties under the DIP ABL Documents, the DIP ABL Credit Facility, the Interim Order, and this Final Order; and (d) authorize the Debtors on a final basis to pay, and the DIP ABL Agent, the DIP ABL Secured Parties, and the Prepetition ABL Secured Parties to retain and apply, payments made in accordance with the terms of the Interim Order, this Final Order, and the DIP ABL Documents.

23.     <u>Perfection of ABL DIP Liens and Prepetition ABL Adequate Protection Liens</u>.  The Interim Order and this Final Order shall be sufficient and conclusive evidence of the

40

creation, validity, perfection, and priority of all liens granted therein and herein, including the DIP ABL Liens and the Prepetition ABL Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP ABL Liens, the Prepetition ABL Adequate Protection Liens, or to entitle the DIP ABL Agent, the DIP ABL Secured Parties, the DIP ABL Obligations, the Prepetition ABL Secured Parties, and the Prepetition ABL Obligations to the priorities granted herein (subject to the DIP Intercreditor Agreement, Existing Participation Agreement and Participation Agreement, as applicable). Notwithstanding the foregoing, the DIP ABL Agent and the Prepetition ABL Agent each are authorized to file, as in its reasonable discretion it deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP ABL Liens and the Prepetition ABL Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP ABL Liens, or the Prepetition ABL Adequate Protection Liens. The Debtors were, pursuant to the Interim Order, and hereby are authorized and directed to execute and deliver reasonably promptly to the DIP ABL Agent and Prepetition ABL Agent all such financing statements, mortgages, notices and other documents as the DIP ABL Agent and Prepetition ABL Agent may reasonably request; provided that nothing herein shall require the Debtors to obtain any required consent of third parties to any such financing statements,

41

mortgages, notices, and other documents.  The DIP ABL Agent and the Prepetition ABL Agent, each in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.  To the extent that any Prepetition ABL Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition ABL Documents or is listed as loss payee, lenders' loss payee, or additional insured under any of the Debtors' insurance policies, DIP ABL  Agent shall also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable.  The Prepetition ABL Agent shall serve as agent for the DIP ABL Agent for purposes of perfecting the DIP ABL Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

24.    <u>Application of Proceeds of Collateral</u>.  Subject to the Carve Out, as a condition to the entry of the DIP ABL Documents, the extension of credit under the DIP ABL Credit Facility and the authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply all net proceeds of DIP ABL Priority Collateral that is sold in the ordinary course or liquidated as follows:  (i) *first*, to costs and expenses of the DIP ABL Agent; (ii) *second*, to permanently reduce the Prepetition ABL Obligations (other than the Last Out Obligations); (iii) *third*, to reduce the DIP ABL Obligations (including the Last Out DIP Obligations or Last Out Obligations, as applicable, provided that any payment to the Put Purchasers on account of the Last Out DIP Obligations or

42

Last Out Obligations is subject to the rights of the Creditors' Committee set forth in paragraph 42 and subject to occurrence of the Disinterested Director's Determination and the Challenge Period Termination Date for claims and causes of action against the Put Purchasers solely as it relates to the Put Purchaser's interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement as set forth in paragraph 42 of this Final Order or further Court Order), (iv) *fourth*, to the repayment of the Canadian Intercompany Superpriority Administrative Claims, and (v) after indefeasible repayment in full in cash of the Prepetition ABL Obligations and the DIP ABL Obligations (including, in each case, provision for contingent obligations), the termination of the DIP ABL Credit Facility and all commitments thereunder, and "payment in full" of all other DIP ABL Obligations as provided under the DIP ABL Credit Agreement and repayment in full of the Canadian Intercompany Superpriority Administrative Claims, (x) to costs and expenses of the DIP Term Loan Agent, (y) to reduce the DIP Term Loan Obligations, and (z) then to reduce the Prepetition Term Loan Obligations. The reduction of the Prepetition ABL Obligations and Prepetition Term Loan Obligations is subject to the preservation of rights provided in paragraph 42 herein. Notwithstanding anything herein, or in the Prepetition ABL Documents or DIP ABL Documents, (a) all ABL Priority Collateral (other than ABL Canadian Collateral) of the Debtors (other than the Canadian Borrower) to be applied to the Prepetition ABL Obligations and DIP ABL Obligations as provided in this Paragraph 24 shall be applied first to reduce the Prepetition ABL Obligations and DIP ABL Obligations of the Debtors other than the Canadian Borrower; and thereafter to the remaining DIP ABL Obligations of the Canadian Borrower, if any; and (b) all ABL Canadian Collateral to be applied to the Prepetition ABL Obligations and DIP ABL Obligations as provided in this Paragraph 24 shall be applied first to reduce the Prepetition ABL Obligations of the Canadian Borrower, then to the

43

direct DIP ABL Obligations of the Canadian Borrower, and then to remaining Prepetition ABL Obligations and DIP ABL Obligations of the Debtors, if any, but only to the extent not paid under clause (a) above and after all ABL Priority Collateral (other than ABL Canadian Collateral) of the Debtors (other than the Canadian Borrower) has been applied.

25.    Protections of Rights of DIP ABL Agent, DIP ABL Secured Parties and Prepetition ABL Secured Parties.

(i)    Unless the DIP ABL Agent and the Prepetition ABL Agent shall have provided their prior written consent or all DIP ABL Obligations and all Prepetition ABL Obligations have been indefeasibly paid in full in cash and all commitments thereunder are terminated, there shall not be entered in any of these Cases or any Successor Cases (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following:  (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP ABL Liens, the DIP ABL Superpriority Claims, the Prepetition ABL Liens, the Prepetition ABL Adequate Protection Liens, and/or the Prepetition ABL Superpriority Claims, other than in connection with the Canadian Intercompany Superpriority Administrative Claims or the Administration Charge (as defined in the DIP ABL Credit Agreement); (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP ABL Documents, the Interim Order and this Final Order and the Approved Budget (subject to such variances as permitted in the DIP ABL Credit Agreement), the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its

44

prepetition indebtedness based upon any such return of goods pursuant to section 553 of the

Bankruptcy Code or otherwise, or (iii) any modification of any of the DIP ABL Agent's, DIP

ABL Secured Parties', or the Prepetition ABL Secured Parties' rights under the Interim Order,

this Final Order, the DIP ABL Documents or the Prepetition ABL Documents with respect any

DIP ABL Obligations or Prepetition ABL Obligations.

        (ii)     The Debtors (and/or their legal and financial advisors in the case of

clauses (ii) through (iv) below) will, whether or not the DIP ABL Obligations have been

indefeasibly paid in full in cash, (i) maintain books, records, and accounts to the extent and as

required by the DIP ABL Documents, (ii) reasonably cooperate with, consult with, and provide to

the DIP ABL Agent and the DIP ABL Secured Parties all such information and documents that

any or all of the Debtors are obligated (including upon reasonable request by any of the DIP ABL

Agent or the DIP ABL Secured Parties) to provide under the DIP ABL Documents or the

provisions of the Interim Order, this Final Order, or as reasonably requested by the DIP ABL

Agent or DIP ABL Secured Parties, in each case as and to the extent required by the DIP ABL

Documents, (iii) upon reasonable advance notice, permit consultants, advisors, and other

representatives (including third party representatives) of each of the DIP ABL Agent, the DIP

ABL Secured Parties and the Prepetition ABL Agent to visit and inspect any of the Debtors'

respective properties, to examine and make abstracts or copies from any of their respective books

and records, to tour the Debtors' business premises and other properties, and to discuss, and

provide advice with respect to, their respective affairs, finances, properties, business operations,

and accounts with their respective officers, employees, independent public accountants, and

other professional advisors as and to the extent required by the DIP ABL Documents and/or the

Prepetition ABL Documents, (iv) permit the DIP ABL Agent, the DIP ABL Secured Parties, and

45

the Prepetition ABL Agent, and their respective consultants, advisors and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, in each case as and to the extent required by the DIP ABL Documents, and (v) upon reasonable advance notice, permit the DIP ABL Agent, the DIP ABL Secured Parties and the Prepetition ABL Agent to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and Prepetition Collateral in each case as and to the extent required by the DIP ABL Documents.  The Creditors' Committee shall receive any financial reporting required to be provided by the Debtors contemporaneously with the provision of such reports to the DIP ABL Secured Parties or Prepetition ABL Secured Parties.

(iii)    No Debtor shall object to any DIP ABL Secured Parties' or any Prepetition ABL Secured Parties' credit bidding up to the full amount of the applicable outstanding DIP ABL Obligations and Prepetition ABL Obligations (as applicable), in each case, including any accrued interest and expenses, in any sale of any DIP Collateral or Prepetition Collateral, as applicable, and whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under Section 725 of the Bankruptcy Code, with the approval of the Canadian Court in respect of any sale of assets of the Canadian Loan Parties, or otherwise, subject, in each case, (w) to the rights and duties of the parties under the DIP Intercreditor Agreement, (x) to a Challenge (as defined herein), (y) to the provision of consideration sufficient to pay in full in cash any senior liens on the collateral that is subject to the credit bid, and (z) to the extent that any assets of the Canadian Loan Parties are to be

46

conveyed, such conveyance is acceptable to the Information Officer (as defined in the DIP ABL Credit Agreement).

26.     Proceeds of Subsequent Financing.  Except with respect to the DIP Term Loan Obligations contemplated by the DIP Motion, if the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) or in violation of the DIP ABL Documents at any time prior to the indefeasible repayment in full of all DIP ABL Obligations and Prepetition ABL Obligations, and the termination of the DIP ABL Agent's and DIP ABL Secured Parties' obligation to extend credit under the DIP ABL Credit Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP ABL Agent to be applied in accordance with this Final Order, the DIP ABL Documents and the DIP Intercreditor Agreement.

27.     Cash Collection.  From and after the date of the entry of the Interim Order, the Debtors shall continue to maintain cash management in accordance with the DIP ABL Documents, as modified by this Final Order.  Unless otherwise agreed to in writing by the DIP ABL Agent and Prepetition ABL Agent, the Debtors shall maintain no accounts except those identified in any interim and/or final order granting the *Debtors' Motions for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief* (the "Cash Management Order").  The Debtors and the financial

47

institutions where the Debtors' maintain deposit accounts (as identified in any Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such deposit accounts upon receipt of any direction to that effect from the DIP ABL Agent in accordance with the DIP ABL Documents.

28.    <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full of all DIP ABL Obligations (including "payment in full" of the DIP ABL Obligations as provided under the DIP ABL Credit Agreement), all Prepetition ABL Obligations, and the termination of the DIP ABL Agent's and the DIP ABL Secured Parties' obligation to extend credit under the DIP ABL Credit Facility, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP ABL Documents or the Prepetition ABL Documents, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any Cash Management Order which has first been agreed to by the DIP ABL Agent or as otherwise required by the DIP ABL Documents.

29.    <u>Disposition of DIP Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP ABL Priority Collateral or Prepetition ABL Priority Collateral other than in the ordinary course of business without the prior written consent of the DIP ABL Agent and Prepetition ABL Agent, except as otherwise provided for in the DIP ABL Documents, and subject to the DIP Intercreditor Agreement.

30.    <u>Termination Date</u>.  On the Termination Date, (a) all DIP ABL Obligations shall be immediately due and payable, all commitments to extend credit under the DIP ABL Credit Facility will terminate, other than as required in paragraph 39 with respect to the Carve Out, and (b) all authority to use Cash Collateral shall cease.  For the purposes of this Final Order, the "DIP ABL Termination Date" shall mean the date the commitments are terminated pursuant

48

to the terms of the DIP ABL Credit Agreement, including with respect to any cross termination rights with respect to the termination of the DIP Term Loan Credit Agreement in accordance with its terms.

31.    Events of Default.  The occurrence of any of the following events, unless waived by the DIP ABL Agent in writing and in accordance with the terms of the applicable DIP ABL Documents, shall constitute an event of default (collectively, the "Events of Default"): (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order or any Canadian Recognition Order, including, without limitation, failure to make any payment under this Final Order when due, (b) the occurrence of an "Event of Default" under, and as defined in, the DIP ABL Credit Agreement, (c) any adverse modifications, amendments, or reversal of the Interim Order or this Final Order, and no such waiver shall be implied by any other action, inaction or acquiescence by any party, (d) an order converting or dismissing any of the Cases, (e) an order appoint a chapter 11 trustee in the Cases, (f) an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code, and (g) a plan proposed by the Debtors or confirmation thereof that does not propose to indefeasibly repay the DIP ABL Obligations (other than the Last Out DIP Obligations) in full in cash, unless otherwise consented to by the DIP ABL Agent.

32.    Milestones.  As a condition to the DIP ABL Credit Facility and the use of Cash Collateral, the Debtors shall comply with the case milestones set forth in the DIP Credit Agreement, as modified by the order approving the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadline, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Disclosure Statement and Plan*

49

*Confirmation, and (III) Granting Related Relief* [Docket No 22], subject to waiver or extension on the terms set forth in the DIP ABL Credit Agreement.  For the avoidance of doubt, the terms herein with respect to any milestones shall after the date of this Final Order supersede any such language in the Interim Order.  As an additional milestone under the DIP ABL Credit Agreement, the Debtors shall obtain a final order in respect of the DIP Motion with respect to the DIP Term Credit Facility on or before July 19, 2019 (or such later date as DIP ABL Agent may agree in its sole discretion), on the terms and conditions contemplated by the DIP ABL Documents and otherwise in form and substance satisfactory to DIP ABL Agent.

33.    <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence and during the continuation of an Event of Default under the DIP ABL Documents, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order and the Canadian Recognition Orders (a) the DIP ABL Agent may declare (any such declaration shall be referred to herein as a "<u>Termination Declaration</u>") (1) all DIP ABL Obligations owing under the DIP ABL Documents to be immediately due and payable, (2) the termination, reduction, or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP ABL Credit Facility, (3) termination of the DIP ABL Credit Facility and the DIP ABL Documents as to any future liability or obligation of the DIP ABL Agent and the DIP ABL Secured Parties, but without affecting any of the DIP ABL Liens or the DIP ABL Obligations, and (4) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice to the Borrowers; (b) interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP ABL Documents, and (c)  the DIP ABL Agent may declare a termination, reduction, or restriction on the ability of the

Debtors to use ABL Cash Collateral (the date which is the earliest to occur of (i) any such date a Termination Declaration is delivered by DIP ABL Agent or a "Termination Declaration" (as defined in the Interim Order) is delivered by DIP Term Loan Agent and (ii) the DIP ABL Termination Date or DIP Term Loan Termination Date (as applicable), shall be referred to herein as the "Termination Date").  The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the DIP Term Loan Agent, counsel to the Creditors' Committee and any other committee appointed under section 1102 or 1104 of the Bankruptcy Code, and the U.S. Trustee.  The automatic stay in the Cases otherwise applicable to the DIP ABL Agent, the DIP ABL Secured Parties, and the Prepetition ABL Secured Parties is hereby modified so that seven (7) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period"):  (A) the DIP ABL Agent and the DIP ABL Secured Parties shall be entitled to exercise their rights and remedies in accordance with the respective DIP ABL Documents, the Interim Order and this Final Order and shall be permitted to satisfy the relevant DIP ABL Obligations, DIP Superpriority Claim and DIP ABL Liens, subject to the Carve Out, (B) the Prepetition ABL Secured Parties shall be entitled to exercise their rights and remedies to satisfy the relevant Prepetition ABL Secured Obligations, Prepetition ABL Superpriority Claims, and Prepetition ABL Adequate Protection Liens, subject to and consistent with (i) the Carve Out, (ii) this Final Order, and (iii) the DIP Intercreditor Agreement.  During the Remedies Notice Period, unless otherwise ordered by the Court, the Debtors and/or the Creditors' Committee shall be entitled to seek an emergency hearing within the Remedies Notice Period on any basis and the DIP ABL Agent shall consent to such an emergency hearing.  During the Remedies Notice Period, DIP ABL Agent or DIP ABL Secured Parties shall not be required to consent to the use of any Cash Collateral or provide any loans or other financial

accommodations under the DIP ABL Credit Facility other than for the payment of accrued and unpaid employee wages and benefits otherwise payable in the ordinary course and in accordance with the Approved Budget and subject to paragraph 39 and availability under the DIP ABL Credit Agreement. Unless the Court orders otherwise, the automatic stay, as to all of the DIP ABL Agent, DIP ABL Secured Parties, and Prepetition ABL Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP ABL Agent, DIP ABL Secured Parties, and the Prepetition ABL Secured Parties shall be permitted to exercise all remedies set forth herein, in the DIP ABL Documents, the Prepetition ABL Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with the DIP Intercreditor Agreement, Existing Participation Agreement, and Participation Agreement, as applicable.

34.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>. The DIP ABL Agent and DIP ABL Secured Parties have acted in good faith in connection with the Interim Order and this Final Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code. Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of the Interim Order or this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP ABL Agent, the DIP ABL Secured Parties, and the DIP ABL Obligations are entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously

52

made or made hereunder, or lien, claim or priority previously or hereby authorized or created. Notwithstanding the foregoing, any provisions or findings in this paragraph as applied to the Put Purchasers are solely with respect to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement and subject to and only effective upon the Disinterested Director's Determination and the Challenge Period Termination Date and subject to the rights of the Creditors' Committee set forth in paragraph 42.

35.    <u>DIP and Other Expenses</u>.  The Debtors are authorized and directed to pay all  reasonable and documented fees and expenses of (x) the DIP ABL Agent and DIP ABL Secured Parties in connection with the DIP ABL Credit Facility, as provided in the DIP ABL Documents (subject to applicable limitations on the DIP Parties' obligations to pay such amounts in the DIP ABL Documents), whether or not the transactions contemplated hereby are consummated, and (y) the Prepetition ABL Agent and Prepetition ABL Secured Parties (including the fees and expenses of counsel), as provided in the applicable Prepetition ABL Document, subject to the terms of this paragraph.  Payment of all such fees and expenses shall not be subject to allowance by the Court.  Professionals for the DIP ABL Agent, the DIP ABL Secured Parties, the Prepetition ABL Agent, and the Prepetition ABL Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines.  No attorney or advisor to the DIP ABL Agent, DIP ABL Secured Parties, Prepetition ABL Agent, or Prepetition ABL Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to (x) the DIP ABL Agent or DIP ABL Secured Parties in connection with or with respect to the DIP ABL Secured Parties, or (y) the Prepetition ABL Secured Parties in connection with or with respect to the Prepetition ABL Credit Facility, are, in each case, hereby

approved in full, subject to the provisions of this paragraph, provided, however, that any fees or expenses payable to the Put Purchasers shall not be paid until the earlier of (i) substantial consummation of a plan or (ii) further Court order.  No fees or expenses of the DIP ABL Secured Parties, DIP ABL Agent, or Prepetition ABL Secured Parties shall be paid prior to the provision of a monthly statement or invoice (which may be presented in summary form and/or redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney-work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney-work product doctrine) to counsel for the Creditors' Committee and the Office of the United States Trustee (hereinafter "Lender Expense Notice Parties").  Any Lender Expense Notice Party shall have ten (10) days after submission of such invoice to assert an objection to payment of the amounts sought in the subject invoice.  Provided no objection has been raised by any such Lender Expense Notice Party(ies) within the time period provided for herein, the Debtors (or DIP ABL Agent, as applicable) shall be authorized without further order of the Court to pay such invoice. In the event a Lender Expense Notice Party(ies) asserts an objection within the time period provided for herein, the Debtors (or DIP ABL Agent, as applicable) shall be authorized without further order of the Court to pay the undisputed portion of such invoice and any dispute with regard to amounts objected to shall be resolved by the Court.

36.    Budget.   The Approved Budget was approved pursuant to the Interim Order and the Budget attached hereto as **Exhibit A** hereby is approved and the proceeds of the DIP ABL Credit Facility and Cash Collateral under the Interim Order and Final Order shall be used by the Debtors in accordance with the Approved Budget (subject to such variances as

54

permitted in the DIP ABL Credit Agreement), the Interim Order, this Final Order, and the DIP ABL Documents and to fund the Carve Out, subject to the terms and limitations provided in paragraph 39 below. None of the DIP ABL Secured Parties' or DIP ABL Agent's consent (if any) to, or acknowledgement of, the Approved Budget shall be construed as consent to use the proceeds of the DIP ABL Credit Facility or Cash Collateral beyond the respective maturity dates set forth in the DIP ABL Documents, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

37. <u>Indemnification</u>. The Debtors shall indemnify and hold harmless the DIP ABL Agent and the DIP ABL Secured Parties in accordance with the terms and conditions of the DIP ABL Credit Agreement. Notwithstanding the foregoing, any provisions in this paragraph as applied to the Put Purchasers are solely with respect to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement and subject to and only effective upon the Disinterested Director's Determination and the Challenge Period Termination Date and subject to the rights of the Creditors' Committee set forth in paragraph 42.

38. <u>Master Proofs of Claim</u>. The DIP ABL Agent, the DIP ABL Secured Parties and the Prepetition ABL Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, and in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, Prepetition ABL Agent and/or each other Prepetition ABL Secured Party is authorized to file in the Debtors' lead chapter 11 Case, Case No. 19-11608, a single, master proof of claim on behalf of the

KE 61996516

relevant Prepetition ABL Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition ABL Documents and hereunder (each a "Master Proof of Claim") against each of the Debtors.  Upon the filing of a Master Proof of Claim against each of the Debtors, the Prepetition ABL Secured Parties, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition ABL Documents, and the claim of each Prepetition ABL Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Cases. The Master Proofs of Claim shall not be required to identify whether any Prepetition ABL Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition ABL Secured Party (or its successors in interest) to vote separately on any plan proposed in these Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition ABL Secured Parties, which instruments, agreements or other documents will be provided upon reasonable request to counsel to the Prepetition ABL Agent.

KE 61996516

39.    <u>Carve Out</u>.

(a)    <u>Carve Out</u>.  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "<u>Chapter 7 Trustee Carve-Out</u>") and all approved expenses incurred by members of the Creditors' Committee solely in their capacity as such (the "<u>Committee Expenses</u>"); (iii) to the extent allowed at any time, whether by interim order, final order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and the Creditors' Committee  pursuant to section 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") at any time before or on the first business day following delivery by the DIP ABL Agent or DIP Term Loan Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (v) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,250,000 incurred after the first business day following delivery by the DIP ABL Agent or the DIP Term Loan Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "<u>Post-Carve Out Trigger Notice Cap</u>").[7]  For purposes of the foregoing, "<u>Carve Out Trigger Notice</u>" shall mean a written notice delivered by email (or other

---

[7]    Notwithstanding the foregoing, up to $250,000 of the Post-Carve Out Trigger Notice Cap may be used to pay Allowed Professional Fees of Professional Persons incurred prior to the delivery of a Carve Out Trigger Notice to the extent such Allowed Professional Fees exceed the Professional Fee Carve Out Cap (as defined below).

57

electronic means) by the DIP ABL Agent or DIP Term Loan Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP ABL Obligations or an "Event of Default" under the DIP Term Loan Documents and acceleration of the DIP Term Loan Obligations, respectively, stating that the Post Carve Out Trigger Notice Cap has been invoked.

(b)    Fee Estimates.  Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Closing Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided, that* within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date.  For purposes of this paragraph 39(b) and paragraph 39(c), counsel to the Creditors' Committee will be deemed to be the party that has incurred the Committee Expenses, all references to a "Professional Person" shall be deemed to include the counsel to the Creditors' Committee in respect of the Committee Expenses and all

58

references to "Allowed Professional Fees" will be deemed to include the Committee Expenses. If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person; *provided*, *that* such Professional Person shall be entitled to be paid any unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person from a reserve to be funded by the Debtors from all cash on hand as of such date and any available cash thereafter held by any Debtor pursuant to paragraph 39(c) below.  Solely as it relates to the DIP ABL Agent and DIP ABL Secured Parties, any deemed draw and borrowing pursuant to paragraph  39(c)(i) for amounts under paragraph 39(a)(iii) above shall be limited to the greater of (x) the sum of (I) the aggregate unpaid amount of Estimated Fees and Expenses included in such Weekly Statements timely received by the Debtors prior to the Termination Declaration Date *plus*, without duplication, (II) the aggregate unpaid amount of Estimated Fees and Expenses included in the Final Statements timely received by the Debtors pertaining to the period through and including the Termination Declaration Date, and (y) the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for the period prior to the Termination Declaration Date (such amount, the "Professional Fee Carve Out Cap").  For the avoidance of doubt, the DIP ABL Agent and DIP ABL Lenders shall be entitled to maintain at all times a reserve (the "Carve-Out Reserve") in an amount (the "Carve-Out Reserve Amount") equal to the sum of (i) the greater of

59

(x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors, and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Approved Budget at the applicable time, *plus* (ii) the Post-Carve Out Trigger Notice Cap, *plus* (iii) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the following week occurring after the most recent Calculation Date, *plus* (iv) the amounts contemplated under paragraph 39(a)(i) and 39(a)(ii) above.  Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the Closing Date, the Debtors shall deliver to the DIP ABL Agent, the DIP Term Loan Agent, and the Creditors' Committee concurrently a report setting forth the Carve-Out Reserve Amount as of such time (the "Fee Report"), and, in setting the Carve-Out Reserve, the DIP ABL Agent and DIP ABL Lenders shall be entitled to rely upon such reports in accordance with the DIP ABL Credit Agreement or the DIP Term Loan Agreement.  Prior to the delivery of the first report setting forth the Carve-Out Reserve Amount, the DIP ABL Agent or the DIP Term Loan Agent may calculate the Carve-Out Reserve Amount by reference to the Approved Budget for subsection (i) of the Carve-Out Reserve Amount. Notwithstanding anything herein to the contrary, DIP ABL Agent may increase the Carve-Out Reserve Amount to include additional amounts with respect to any monitoring charge or other charge arising from the Canadian insolvency proceeding of the Canadian Borrower and for the projected amount of any success, completion, commission-based, or other non-hourly fees billed by or due to any financial advisor, investment banker (including any "Sale Transaction Fee" or "Supplemental Sale Transaction Fee" (each as defined below)), monitor, or other Professional engaged by any Debtor, the Creditors' Committee, or any committee in the Cases.

      (c)    <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by either the DIP ABL Agent or the DIP Term Loan Agent to the Debtors with a copy to counsel to the Creditors' Committee (the "<u>Termination Declaration Date</u>"), the Carve Out Trigger Notice shall be deemed (i) a draw request and notice of borrowing by the Debtors for DIP ABL Loans under the DIP ABL Credit Agreement in an amount equal to the sum of (x) the amounts set forth in paragraphs (a)(i) and (a)(ii), above, and (y) the then unpaid amounts of the Allowed Professional Fees up to the Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP ABL  Loans) and (ii) a draw request and notice of borrowing by the Debtors for DIP Term Loans under the DIP Term Loan Facility in an amount equal to the unpaid amounts of the Allowed Professional Fees in excess of the Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP Term Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees (which cash amounts shall reduce, on a dollar-for-dollar basis, the draw requests and applicable DIP ABL Loans and DIP Term Loans pursuant to the foregoing clauses (i) and (ii) of this sentence of this paragraph (c)).  The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Agent in trust exclusively to pay such unpaid Allowed Professional Fees (the "<u>Pre-Carve Out Trigger Notice Reserve</u>").  On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a request by the Debtors for (1) DIP ABL Loans under the DIP ABL Credit Agreement in an amount equal to the Post Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP ABL Loans) and, (2) to the extent not funded by the DIP ABL Lenders, for DIP Term Loans in an amount equal to any unfunded portion of the Post-Carve Out

Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Term Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (which cash amounts shall reduce, on a dollar-for-dollar basis, the draw requests and applicable DIP ABL Loans and DIP Term Loans pursuant to the foregoing clauses (1) and (2) of this sentence of this paragraph (c)). The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Agent in trust exclusively to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves"). On the third business day following the Termination Declaration Date and the deemed requests for the making of DIP ABL Loans and DIP Term Loans as provided in this paragraph (c), notwithstanding anything in the DIP ABL Credit Agreement or the DIP Term Loan Agreement to the contrary, including with respect to (1) the existence of a Default (as defined in the DIP ABL Credit Agreement or the DIP Term Loan Agreement), Event of Default or an "Event of Default" (as defined in the DIP Term Loan Credit Agreement), (2) the failure of the Debtors to satisfy any or all of the conditions precedent for the making of any DIP ABL Loan under the DIP ABL Credit Agreement or DIP Term Loans under the DIP Term Loan Agreement, respectively, (3) any termination of the DIP ABL Loan Commitments or commitments under the DIP Term Loan Credit Facility following an Event of Default or "Event of Default" (as defined in the DIP Term Loan Credit Agreement), or (4) the occurrence of the Maturity Date (as defined in the ABL DIP Credit Agreement or DIP Term Loan Credit Agreement), each DIP ABL Lender and DIP Term Loan Lender with an outstanding Commitment shall make available to the DIP ABL Agent or DIP Term Loan Agent, as

62

applicable, such DIP ABL Lender's or such DIP Term Loan Lender's pro rata share of such DIP ABL Loans or DIP Term Loans, as applicable.  For the avoidance of doubt, the Carve Out Reserves shall constitute the primary source for payment of Allowed Professional Fees entitled to benefit from the Carve Out, and any lien priorities or superpriority claims granted pursuant to this Final Order to secure payment of the Carve Out shall be limited to any shortfall in funding as provided below.

(d)     Application of Carve Out Reserves.

(i)     All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in subparagraphs (a)(i) through (a)(iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap (other than amounts up to $250,000 to the extent the Pre-Carve Out Amounts exceed the Professional Fee Carve Out Cap), until paid in full.  If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed *first* to the DIP ABL Agent on account of the applicable DIP ABL Obligations until indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable Issuing Bank), and *thereafter* to the Prepetition ABL Secured Parties in accordance with their rights and priorities as of the Petition Date.

(ii)     All funds in the Post-Carve Out Trigger Notice Reserve (other than up to $250,000, which may be used to pay Pre-Carve Out Amounts to the extent they exceed the Professional Fee Carve Out Cap) shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts").   If the

Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed *first* to the DIP ABL Agent on account of the applicable DIP ABL Obligations until indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable Issuing Bank), and *thereafter* to the Prepetition ABL Secured Parties in accordance with their rights and priorities as of the Petition Date.

(iii)    Notwithstanding anything to the contrary in the DIP ABL Credit Agreement, DIP Term Loan Credit Agreement or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph (c), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding prior to making any payments to the DIP ABL Agent or the Prepetition ABL Secured Parties, as applicable.

(iv)    Notwithstanding anything to the contrary in the DIP ABL Credit Agreement, DIP Term Loan Credit Agreement, or this Final Order, following the third business day after delivery of a Carve Out Trigger Notice, the DIP ABL Agent, the Prepetition ABL Agent, the DIP Term Loan Agent, and the Prepetition Term Loan Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid as provided in paragraphs (ii) and (iii) above.

64

(v)      Notwithstanding anything to the contrary in this Final Order, (i) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below), and (ii) subject to the limitations with respect to the DIP ABL Agent, DIP ABL Secured Parties, Prepetition ABL Agent and Prepetition ABL Secured Parties set forth in paragraph (b), above, in no way shall any Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP ABL Credit Agreement or the DIP Term Loan Agreement, the Carve Out subject to the Professional Fee Carve Out Cap shall be senior to all liens and claims securing the DIP ABL Credit Agreement or the DIP Term Loan Agreement, the Prepetition ABL Adequate Protection Liens, the Prepetition Term Loan Adequate Protection Liens, and the Diminution in Value claims, and any and all other forms of adequate protection, liens, or claims securing the DIP ABL Obligations, DIP Term Loan Obligations, the Prepetition ABL Obligations, or the Prepetition Term Loan Obligations and shall be deemed a true carve out from the Prepetition Term Loan Priority Collateral and not from any property of the Debtors' estates not subject to the Prepetition Term Loan Liens.

(vi)      Notwithstanding anything herein to the contrary, the Carve Out in respect of any "Transaction Fees" for Houlihan Lokey will be junior to the Prepetition ABL Obligations and DIP ABL Obligations to the extent secured by the DIP ABL Priority Collateral other than (x) the pro rata share (determined in proportion to the allocation of the "Transaction" proceeds as between the DIP ABL Priority Collateral and the DIP Term Priority Collateral) of any "Sale Transaction Fee" or "Supplemental Sale Transaction Fee" (as each term is defined in the

65

Debtors' engagement letter with Houlihan Lokey) authorized by the Court in respect of a "Sale Transaction" (as defined in such engagement letter) that is a going concern sale (and not a liquidation sale) of the DIP ABL Priority Collateral consented to by DIP ABL Agent or (y) to the extent otherwise agreed in writing by the DIP ABL Agent in its sole discretion.

(e)    <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  The DIP ABL Agent, DIP Term Loan Agent, DIP ABL Secured Parties and DIP Term Loan Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP ABL Agent, DIP Term Loan Agent, DIP ABL Secured Parties and DIP Term Loan Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(g)    <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP ABL Obligations or DIP Term Loan Obligations, as applicable, secured by the DIP Collateral and shall be otherwise entitled to the protections granted under the Interim

66

Order, this Final Order, the DIP ABL Documents, the DIP Term Loan Documents, the Bankruptcy Code, and applicable law.

(h)    <u>Reservation of Rights</u>. Nothing herein shall be construed to impair the right or ability of any party to object to the fees, expenses, reimbursement, or other compensation described with respect to these Carve-Out provisions.

40.    <u>Limitations on the Use of DIP Proceeds, Cash Collateral and Carve Out</u>. The DIP ABL Credit Facility, the DIP Term Loan Credit Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve Out may not be used in connection with:  (a) preventing, hindering, or delaying any of the DIP ABL Agent's, the DIP Term Loan Agent's, the DIP ABL Secured Parties', the DIP Term Loan Parties', the Prepetition ABL Secured Parties' or the Prepetition Term Loan Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the DIP ABL Agent or the DIP Term Loan Agent and the Required DIP Term Loan Lenders, as applicable; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP ABL Agent or the DIP Term Loan Agent and the Required DIP Term Loan Lenders, as applicable; (d) incurring Indebtedness (as defined in the DIP ABL Credit Agreement or the DIP Term Loan Credit Agreement, as applicable) without the prior consent of the DIP ABL Agent or the DIP Term Loan Agent and the Required DIP Term Loan Lenders, as applicable, except to the extent permitted under the DIP ABL Credit Agreement or DIP Term Loan Credit Agreement, as applicable; (e) seeking to amend or modify any of the rights granted to the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Parties under the Interim Order, this Final Order,

67

the DIP ABL Documents, the DIP Term Loan Documents, the Prepetition ABL Documents or the Prepetition Term Loan Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (f) objecting to or challenging in any way the DIP ABL Liens, DIP Term Loan Liens, DIP ABL Obligations, DIP Term Loan Obligations, Prepetition ABL Liens, Prepetition Term Loan Liens, Prepetition ABL Obligations, Prepetition Term Loan Obligations, DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Parties, respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP ABL Obligations, DIP Term Loan Obligations, the DIP ABL Liens, DIP Term Loan Liens, Prepetition ABL Liens, Prepetition Term Loan Liens, Prepetition ABL Obligations, Prepetition Term Loan Obligations or any other rights or interests of any of the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP ABL Obligations, DIP Term Loan Obligations, Prepetition ABL Obligations or Prepetition Term Loan Obligations; *provided*,

68

*however*, that the Carve Out and such collateral proceeds and loans under the DIP ABL Documents and DIP Term Loan Documents may be used for allowed fees and expenses, in an amount not to exceed $200,000 in the aggregate, incurred solely by the Creditors' Committee, in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition ABL Liens or Prepetition Term Loan Liens (the "Limited Amount"); provided, however, that nothing herein shall be deemed to limit the Debtors or the Creditors' Committee from taking any actions that they deem to be required in the exercise of their fiduciary obligations. Notwithstanding anything to the contrary in this Order, nothing herein shall be deemed to (a) limit the ability of the Creditors' Committee's professionals to be paid from unencumbered assets for services rendered in the investigation or prosecution of claims against the Prepetition ABL Secured Parties or Prepetition Term Loan Parties; (b) preclude the Court from awarding fees and expenses to the Creditors' Committee professionals pursuant to section 330 of the Bankruptcy Code for such services rendered; nor (c) relieve the Debtors or any plan proponent(s) from paying all allowed administrative expenses in connection with confirmation of any plan.

41.    <u>Payment of Compensation</u>.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default or "Event of Default" (as defined in the DIP Term Loan Credit Agreement) has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order of the Court (that has not been vacated or stayed, unless the stay has been vacated) under

KE 61996516

sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, as reflected in the most recent Approved Budget provided by the Debtors to the DIP ABL Agent and DIP Term Loan Agent.

42.    Effect of Stipulations on Third Parties.

(i)    *Generally*. Except as set forth in this Final Order, upon the expiration of the Challenge Period (as defined below) except and solely to the extent a Challenge or Challenge Motion has been interposed, unless and until such Challenge is overruled, settled, or denied by Final Order of the Court, the admissions, stipulations, agreements, releases, and waivers set forth in this Final Order are and shall be deemed effective and binding in all circumstances and for all purposes on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, any chapter 7 or chapter 11 trustee or examiner appoint or elected for any of the Debtors and official committee that may be appointed in these cases (each, a "Challenge Party"), unless, and solely to the extent that the Court rules in favor of the Challenge Party in any such timely and properly filed Challenge (as defined herein); *provided*, *however*, that any releases by the DIP Term Loan Parties and Prepetition Term Loan Parties of the Put Purchasers shall be governed by the Restructuring Support Agreement (as defined in the Plan).  For purposes of this paragraph 42: (a) "Challenge" means any claim against any of the Prepetition ABL Secured Parties or the Put Purchasers (as to the Put Purchasers, solely with respect to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement) by or on behalf of the Debtors, or to object to or to challenge the stipulations, findings or Debtors' Stipulations set forth herein, including, but not limited to those in relation to:  (i) the validity,

70

extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition ABL Secured Party; (ii) the validity, allowability, priority, or amount of the Prepetition ABL Obligations; or (iii) any liability of any of the Prepetition ABL Secured Parties or the Put Purchasers (as to the Put Purchasers, solely with respect to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement, and subject to and only effective upon the Disinterested Director's Determination and the Challenge Period Termination Date and subject to the rights of the Committee set forth in this paragraph 42) with respect to anything arising from any of the respective Prepetition ABL Documents and the entry into the Put Agreement and Existing Participation Agreement; and (b) "Challenge Period" means sixty (60) days after the entry of this Final Order (or such longer period as the Court orders for cause shown before the expiration of such period or is agreed to by the Prepetition ABL Agent in writing).  During the Challenge Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court, *provided* that nothing herein shall limit any party in interests rights, if any, to object to any claims pursuant to section 502(a) of the Bankruptcy Code until the expiration of the Challenge Period Termination Date, nor limit the rights of any other parties to contest any such claims asserted pursuant to section 502(a).  Notwithstanding anything to the contrary in this Final Order, the Debtors, if timely notified of a potential Challenge (a "Challenge Notice"), shall retain authority to prosecute, settle, or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of court.  Nothing herein shall limit the Creditors' Committee's ability to (x) file a motion in respect of any timely Challenge Notice (a "Challenge Motion"), provided that such Challenge Motion is filed before the Challenge Period

71

Termination Date (or such later date as may be agreed upon among the applicable Debtor(s) and the applicable parties subject to such Challenge Notice) and such Challenge Motion is in respect of a Challenge for which it cannot obtain standing, but meets the standard applicable to pursue such matters for the applicable Debtor(s) derivatively assuming the applicable Debtor were not a limited liability company, and (y) seek pursuant to that Challenge Motion a mechanism by which to prosecute such Challenge described in such Challenge Notice.   In the event the Creditors' Committee files a Challenge Motion for which it cannot obtain standing, the expiration of the Challenge Period solely for the specific Challenge set forth in the Challenge Motion shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process for the prosecution of any such Challenge.

(ii)      *Binding Effect*. Upon the expiration of the Challenge Period (the "Challenge Period Termination Date"), without the filing of a Challenge or Challenge Motion, or, upon the filing of a Challenge or Challenge Motion, a Final Order of the Court overruling, settling, or denying the Challenge:  (A) any and all such Challenges and objections by any party (including, without limitation, the Creditors' Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition ABL Secured Parties' claims, liens, interests, and validity of the Prepetition ABL Obligations shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases; and (C) any and all claims or causes

72

of action against (i) any of the Prepetition ABL Secured Parties or (ii) the Put Purchasers relating in any way to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement, shall, in each of clause (i) and clause (ii) be forever waived and released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases, provided that the binding effect of the findings, Debtors' Stipulations and release of the Put Purchasers is only effective as to third parties upon the later of the occurrence of the Disinterested Director's Determination and the Challenge Period Termination Date and the rights of the Creditors' Committee pursuant to this paragraph 42.

43.    No Third Party Rights/No Superior Rights of Reclamation.    Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.    Based on the findings and rulings herein concerning the integrated nature of the DIP ABL Credit Agreement and the Prepetition ABL Credit Facility and the relation back of the DIP ABL Liens, in no event shall any alleged right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP ABL Liens.

44.    Section 506(c) Claims.    No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP ABL Agent, DIP ABL Secured Parties, DIP ABL Obligations, the Prepetition ABL Secured Parties, the Prepetition ABL Obligations, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP ABL Agent, DIP ABL Secured

73

Parties, and Prepetition ABL Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

45.    No Marshaling/Applications of Proceeds.  Except as otherwise set forth in paragraph 7, the DIP ABL Agent, DIP ABL Secured Parties, DIP ABL Obligations, Prepetition ABL Secured Parties and Prepetition ABL Obligations shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Final Order, including, for the avoidance of doubt, in accordance with paragraph 24 hereof, and the DIP ABL Documents notwithstanding any other agreement or provision to the contrary.

46.    Section 552(b).  The Prepetition ABL Secured Parties and Prepetition ABL Obligations are each entitled to all of the rights and benefits of section 552(h) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition ABL Secured Parties and Prepetition ABL Obligations, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

47.    Access to DIP Collateral.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agents, exercisable on behalf of the DIP ABL Lenders and DIP Term Loan Lenders, respectively, contained in the Interim Order, this Final Order, the DIP ABL Documents, the DIP Term Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP ABL Documents and DIP Term Loan Documents, upon not less than three (3) Business Days' written notice to the landlord  of any leased premises that an Event of Default or a Termination Date has occurred and is continuing, the DIP ABL Agent or DIP Term Loan Agent, as applicable, subject to the

74

applicable notice provisions if any, in this Final Order, the Canadian Recognition Orders, and any separate applicable agreement by and between such landlord and the DIP ABL Agent or DIP Term Loan Agent may obtain access to Collateral subject to the following conditions: unless otherwise approved by landlord, (i) any such notice to landlord shall specifically identify any Collateral to be accessed and provide details of any removal actions; (ii) any access or removal actions shall be subject to reasonable rules and restrictions by landlord and shall not unreasonably interfere with the conduct of business at the leased premises; and (iii) any party accessing the leased premises shall pay the rent and operating expenses currently in effect on a per diem basis and such occupancy period shall not extend past 30 days without prior landlord approval, *provided, however*, that nothing in this Final Order shall be deemed to grant the DIP ABL Agent or DIP Term Loan Agent an assignment of the Debtors' rights under the lease or a waiver of any provisions under the lease or applicable non-bankruptcy law relating to notice or foreclosure, all of which are preserved in favor of the landlord and not waived or altered by this Final Order. Nothing herein shall require the DIP ABL Agent or DIP Term Loan Agent to assume any lease as a condition to the rights afforded in this paragraph.

48.    Exculpation. Nothing in the Interim Order, this Final Order, the DIP ABL Documents, the existing agreements, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP ABL Secured Parties or DIP ABL Agent any liability for any claims arising from the postpetition activities of the DIP Parties, including in the operation of their businesses, or in connection with their restructuring efforts and administration of these Cases. In addition, (a) the DIP ABL Secured Parties and DIP ABL Agent shall not, in any way or manner, be liable or responsible for: (i) the safekeeping of the DIP Collateral, (ii) any loss or damage

75

thereto occurring or arising in any manner or fashion from any cause, (iii) any Diminution in Value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne by the DIP Parties.

49.    <u>Limits on Lender Liability</u>.  The DIP ABL Agent, the DIP ABL Secured Parties and the Prepetition ABL Secured Parties, each in their capacities as such, solely by reason of entering into the DIP ABL Credit Facility and taking the actions permitted under the DIP ABL Documents, the Interim Order and this Final Order, shall not be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the DIP ABL Secured Parties' other actions do not otherwise constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state Government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).

50.    [Reserved].

51.    <u>Joint and Several Liability</u>.  Nothing in the Interim Order or this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Borrowers and the DIP ABL Guarantors shall be jointly and severally liable for the obligations hereunder and all DIP ABL Obligations in accordance with the terms hereof and of the DIP ABL Credit Facility and the DIP ABL Documents.

KE 61996516

52.     <u>Rights Preserved</u>.  Notwithstanding anything in the Interim Order or this Final Order to the contrary, the entry of the Interim Order and this Final Order are without prejudice to, and do not constitute a waiver of, expressly or implicitly:  (a) the DIP ABL Agent's, DIP ABL Secured Parties', and Prepetition ABL Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP ABL Agent, DIP ABL Secured Parties and Prepetition ABL Secured Parties  under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) subject to the DIP Intercreditor Agreement, any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP ABL Agent, DIP ABL Secured Parties, or Prepetition ABL Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Creditors' Committee's, or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.

53.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP ABL Agent, DIP ABL Secured Parties, or Prepetition ABL Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP ABL Documents, the Prepetition ABL Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP ABL Agent, DIP ABL Secured Parties,

77

Prepetition ABL Secured Parties, Prepetition Term Loan Parties, Creditors' Committee, or any party in interest.

54.    <u>Binding Effect of Interim Order and Final Order</u>.    Immediately upon execution by this Court, the terms and provisions of the Interim Order became valid and binding and the terms and provisions of this Final Order shall become valid and binding (in which any conflict shall be construed in favor of this Final Order) upon and inure to the benefit of the Debtors, DIP ABL Agent, DIP Term Loan Agent, DIP ABL Secured Parties, DIP Term Loan Parties, the DIP ABL Obligations, the DIP Term Loan Obligations, the Prepetition ABL Secured Parties, the Prepetition ABL Obligations, Prepetition Term Loan Parties, all other creditors of any of the Debtors, the Creditors' Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

55.    <u>No Modification of Final Order</u>.    Until and unless the DIP ABL Obligations and the Prepetition ABL Obligations have been indefeasibly paid in full in cash, and all letters of credit under the DIP ABL Credit Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP ABL Credit Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP ABL Credit Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP ABL Agent and the DIP ABL Secured Parties (or the Prepetition ABL Agent), (i) any material modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or

78

unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP ABL Superpriority Claims or Prepetition ABL Superpriority Claims, other than the Carve Out and the Canadian Intercompany Superpriority Administrative Claims, as set forth herein; (b) without the prior written consent of the DIP ABL Agent (or the Prepetition ABL Agent) any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP ABL Agent, any lien on any of the DIP Collateral with priority equal or superior to the DIP ABL Liens, except as specifically provided in the DIP ABL Documents; or (d) without the prior written consent of the Prepetition ABL Agent, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition ABL Liens or Prepetition ABL Adequate Protection Liens, except as specifically provided in the DIP ABL Documents.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP ABL Agent (or the Prepetition ABL Agent), and no such consent shall be implied by any other action, inaction or acquiescence of the DIP ABL Agent or the Prepetition ABL Agent.

56.    <u>Continuing Effect of DIP Intercreditor Agreement; Participation Agreement</u>.  The Debtors, DIP ABL Agent, DIP Term Loan Agent, DIP ABL Secured Parties, DIP Term Loan Parties, Prepetition ABL Secured Parties, and Prepetition Term Loan Parties each shall be bound by, and in all respects of the DIP ABL Credit Facility and DIP Term Loan Credit Facility shall be governed by, and be subject to all the terms, provisions, and restrictions of the

KE 61996516

DIP Intercreditor Agreement, except as may be expressly modified by this Final Order. The parties to the Participation Agreement shall continue to be bound by, governed by, and be subject to all the terms, provisions, and restrictions of the Participation Agreement.

57.    <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the Interim Order and of this Final Order or the DIP ABL Documents and of this Final Order, the provisions of this Final Order shall govern and control.  In the event of any inconsistency between the terms and conditions of any other order regarding any postpetition financing or use of cash collateral, the provisions of this Final Order shall govern and control to the extent such terms and conditions relate to the Prepetition ABL Credit Facility, Prepetition ABL Secured Parties, Prepetition ABL Obligations, Prepetition ABL Documents, Prepetition Collateral, Prepetition ABL Liens, Prepetition ABL Priority Collateral, Prepetition ABL Superpriority Claims, Prepetition ABL Adequate Protection Payments, Prepetition ABL Adequate Protection Liens, DIP ABL Credit Facility, DIP ABL Secured Parties, DIP ABL Obligations, DIP ABL Documents, DIP ABL Collateral, DIP ABL Liens, DIP ABL Priority Collateral, or DIP ABL Superpriority Claims.   Notwithstanding anything to the contrary in the Interim Order, upon entry of this Final Order, any modifications by the Interim Order to the DIP ABL Documents shall be superseded by this Final Order and such modifications shall no longer have any effect.

58.    <u>Discharge</u>.  The DIP ABL Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (and "payment in full" as provided by the DIP ABL Credit Agreement), on or

before the effective date of such confirmed plan of reorganization, or each of the DIP ABL Agent, DIP ABL Secured Parties and Prepetition ABL Agent, as applicable, has otherwise agreed in writing. None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP ABL Obligations, and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "Prohibited Plan or Sale") without the written consent of the DIP ABL Agent and the Prepetition ABL Agent, as applicable. For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP ABL Documents.

59.    Survival.  The provisions of the Interim Order, this Final Order, and any actions taken pursuant thereto and hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of the Interim Order and this Final Order, including the claims, liens, security interests, and other protections granted to the DIP ABL Agent, DIP ABL Secured Parties, DIP ABL Obligations, the Prepetition ABL Secured Parties and the Prepetition ABL Obligations granted pursuant to the Interim Order, this Final Order and/or the DIP ABL Documents, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by the Interim Order

81

and this Final Order until:  (i) in respect of the DIP ABL Credit Facility, all the DIP ABL Obligations, pursuant to the DIP ABL Documents, the Interim Order, and this Final Order, have been indefeasibly paid in full in cash and all letters of credit under the DIP ABL Credit Facility shall have been cancelled or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP ABL Credit Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP ABL Credit Facility are terminated and (ii) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations pursuant to the Prepetition ABL Documents, the Interim Order and this Final Order, have been indefeasibly paid in full in cash.  The terms and provisions concerning the indemnification of the DIP ABL Agent and DIP ABL Secured Parties shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP ABL Documents and/or the indefeasible repayment of the DIP ABL Obligations.

60.    <u>Dallas County, Texas Ad Valorem Taxes</u>.  Notwithstanding any other provisions of this Final Order, any valid liens currently held by Dallas County shall neither be primed by nor subordinated to any liens granted hereby. Subject to further order of this Court, up to a maximum of $380,000 of proceeds of the sales of assets located in the state of Texas that are subject to a lien held by Dallas County shall be deposited in a segregated account as adequate protection for the secured claims of Dallas County prior to the distribution of any such proceeds to any other creditor; *provided* that the segregated amount shall be reduced if the actual or estimated taxes are less than $380,000 at the time of any such sale; and provided further that such amount up to $380,000 shall be funded first from DIP Term Priority Collateral located in the state of Texas.  Any valid liens of Dallas County shall attach to these proceeds to the same

82

extent and with the same priority as such liens currently attach to the applicable property of the Debtors. These funds shall be in the nature of adequate protection and shall constitute neither the allowance of the claims of Dallas County, nor a cap on the amounts it may be entitled to receive. The claims and liens of Dallas County shall remain subject to any objections made by any party (including the Debtors) who would otherwise be entitled to raise any objection as to, among other things, the claim amount or the priority, validity, or extent of such liens. These segregated proceeds may be distributed upon agreement among Dallas County, the Debtors, the DIP ABL Secured Parties and the DIP Term Loan Parties, or upon order of the Court with notice to Dallas County. Nothing in this Final Order shall be deemed an admission as to the validity of any claim of Dallas County against a Debtor entity.

61. <u>Canadian Intercompany Superpriority Administrative Claims</u>. The Canadian Intercompany Superpriority Administrative Claims shall be subject to the Carve Out and shall otherwise be junior only to: (a) with respect to the DIP ABL Priority Collateral (1) Permitted Prior Liens; (2) the DIP ABL Liens; (3) the Prepetition ABL Liens; and (4) the Prepetition ABL Adequate Protection Liens; and (b) with respect to the DIP Term Loan Priority Collateral (1) Prepetition Term Loan Permitted Prior Liens; (2) the DIP Term Loan Liens; (3) the Prepetition Term Loan Liens; (4) the Prepetition Term Loan Adequate Protection Liens; (5) the DIP ABL Liens; (6) the Prepetition ABL Liens; and (7) the Prepetition ABL Adequate Protection Liens; and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Debtors' assets.

62. <u>Necessary Action</u>. The Debtors are authorized to take any and all such actions as are necessary or appropriate to implement the terms of the Interim Order and this Final Order.

83

63.    <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

64.    <u>Nunc Pro Tunc Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

65.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, or any local bankruptcy rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

66.    The Debtors shall within two (2) business days of its entry serve copies of this Final Order to the parties having been given notice of the Final Hearing and to any party that has filed a request for notices with this Court.


Dated:   New York, New York
　　　　　_____, 2019


　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　THE HONORABLE MICHAEL E. WILES
　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE

KE 61996516

**<u>Exhibit A</u>**

**Budget**

KE 61996516

## Exhibit B

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HOLLANDER SLEEP PRODUCTS, LLC, *et al.*,[1] | ) | Case No. 19–11608 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

~~INTERIM ORDER~~<span style="color:teal">FINAL ORDER WITH RESPECT TO PREPETITION ABL SECURED PARTIES AND DIP ABL SECURED PARTIES</span> **(A) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (B) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (C) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (D) GRANTING ADEQUATE PROTECTION TO**

**THE PREPETITION ~~LENDERS~~<span style="color:teal">ABL SECURED PARTIES</span>, (E) MODIFYING THE AUTOMATIC STAY, ~~(F) SCHEDULING A FINAL HEARING,~~ AND (~~G~~<span style="color:teal">F</span>) GRANTING RELATED RELIEF**

Upon the motion, dated May 19, 2019 (the "DIP Motion") of Hollander Sleep Products, LLC (the "DIP Term Loan Borrower") and Hollander Home Fashions Holdings, LLC, Hollander Sleep Products Kentucky, LLC, Hollander Sleep Products Canada Limited, Pacific Coast Feather, LLC and Pacific Coast Feather Cushion, LLC (collectively the "DIP ABL Borrowers" and together with the Term Loan Borrower, the "Borrowers") on behalf of themselves and their affiliated debtors and debtors–in possession (together with Dream II Holdings, LLC ("Parent"), collectively, the "Debtors") in the above–captioned chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this "~~Interim Order") and a~~ Final Order ~~(as defined herein)~~") pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), 507 and 552 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Dream II Holdings, LLC (7915); Hollander Home Fashions Holdings, LLC (2063); Hollander Sleep Products, LLC (2143); Pacific Coast Feather, LLC (1445); Hollander Sleep Products Kentucky, LLC (4119); Pacific Coast Feather Cushion, LLC (3119); and Hollander Sleep Products Canada Limited (3477). The location of the Debtors' service address is: 901 Yamato Road, Suite 250, Boca Raton, Florida 33431.

6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Local Rule 4001-2, *inter alia*:

(i)  authorizing on a final basis the Debtors to obtain $90 million senior secured postpetition financing on a superpriority basis (the "<u>DIP ABL Credit Facility</u>" and the loans under the DIP ABL Credit Facility, the "<u>DIP ABL Loans</u>") pursuant to the terms and conditions of that certain Debtor-in-Possession Credit Agreement (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "<u>DIP ABL Credit Agreement</u>"), by and among  the DIP ABL Borrowers, Parent, as guarantor, and such other guarantors thereto from time to time (the ""DIP ABL Guarantors,"; together with the DIP ABL Borrowers, the "<u>DIP ABL Loan Parties" or "DIP Parties</u>"), Wells Fargo Bank, National Association, as agent (in such capacity, the "<u>DIP ABL Agent</u>"), for and on behalf of itself and the other lenders party thereto (the "<u>DIP ABL Lenders</u>"), the Issuing Lenders (as therein defined) and the Bank Product Providers (as therein defined) (collectively, the ""DIP ABL Secured Parties"), substantially in the form of Exhibit B attached to the DIP Motion;

(ii)  authorizing on a final basis the Debtors party thereto to execute and deliver the DIP ABL Credit Agreement and any other agreements and documents related thereto (collectively with the DIP ABL Credit Agreement, the "<u>DIP ABL Documents</u>") and to perform such other acts as may be necessary or desirable in connection with the DIP ABL Documents;

(iii)  granting on a final basis the DIP ABL Credit Facility and all obligations owing thereunder and under the DIP ABL Documents to the DIP ABL Agent and DIP ABL Secured Parties (collectively, and including all "Obligations" as described in the DIP ABL Credit Agreement (including the Last Out DIP Obligations[2],) the "<u>DIP ABL Obligations</u>") allowed

---

[2] "Last Out DIP Obligations" shall have the meaning ascribed to the term "Last Out Obligations" in the DIP ABL Credit Agreement.

superpriority administrative expense claim status in each of the Cases and any Successor Cases
(as defined herein), subject to the Carve Out;);

(iv)    authorizing the Debtors (other than Debtor Hollander Sleep Products Canada
Limited) to obtain senior secured postpetition financing on a superpriority basis in the aggregate
principal amount of up to $28,000,000.00 (the "DIP Term Loan  Credit Facility," and the loans
thereunder, the "DIP Term Loans," and the DIP Term Loan Credit Facility together with the DIP
ABL Credit Facility, the "DIP Facilities") pursuant to the terms and conditions of that certain
superpriority secured Debtor in Possession Term Loan Credit Agreement (as the same may be
amended, restated, supplemented, or otherwise modified from time to time, the "DIP Term Loan
Credit Agreement," and together with the DIP ABL Credit Agreement, the "DIP Agreements"),
by and among the DIP Term Loan Borrower, the guarantors party thereto from time to time
(the "DIP Term Loan Guarantors," and together with the DIP ABL Guarantors, the "DIP
Guarantors") (the DIP Term Loan Guarantors, together with the DIP Term Loan Borrower, the
"DIP Term Loan Parties") (the DIP Term Loan Parties, together with the DIP ABL Loan Parties,
the "DIP Parties"), the financial institutions party thereto from time to time as lenders
(collectively, the "DIP Term Loan Lenders," and together with the DIP Term Loan Agent
(defined below), the "DIP Term Loan Secured Parties") (the DIP Term Loan Secured Parties,
together with the  DIP ABL Parties, the "DIP Lenders"), and Barings Finance LLC, as
administrative agent (in such capacity, the "DIP Term Loan Agent," and, together with the DIP
ABL Agent,  collectively, the "DIP Agents") for and on behalf of itself and the DIP Term Loan
Lenders, substantially in the form of **Exhibit C** attached to the DIP Motion;

(v)    authorizing the Debtors party thereto to execute and deliver the DIP Term Loan
Credit Agreement and any other agreements and documents related thereto (collectively with the

3

DIP Term Loan Credit Agreement, the "DIP Term Loan Documents," and together with the DIP ABL Documents, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Term Loan Documents;

(vi)    granting the DIP Term Loan Credit Facility and all obligations owing thereunder and under the DIP Term Loan Documents to the DIP Term Loan Agent and DIP Term Loan Lenders (collectively, and including all "Obligations" as described in the DIP Term Loan Credit Agreement, the "DIP Term Loan Obligations," and together with the DIP ABL Obligations, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases, in each case subject to the Carve Out (as defined herein);

(iv)    granting to the DIP Agents, for the benefit of themselves and the DIP Lenders and the DIP[reserved];

(v)    [reserved];

(vi)    [reserved];

(vii)    granting on a final basis to the DIP ABL Agent, for the benefit of itself and the DIP ABL Secured Parties and the DIP ABL Obligations, automatically perfected security interests in and liens on all of the DIP ABL Collateral (as defined below), or DIP Term Collateral (as defined herein), as applicable, including, without limitation, all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the Carve Out and the priorities set forth herein;

(viii)    authorizing and directing the Debtors on a final basis to pay the principal, interest, fees, expenses and other amounts payable under the DIP ABL Documents as such become due, including, without limitation, letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, liquidator fees, structuring

fees, administrative agent's fees, the reasonable fees and disbursements of the DIP ~~Agents'~~ABL Agent's and DIP ~~Lenders'~~ABL Secured Parties' respective attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the applicable DIP ABL Documents;

(ix)    authorizing the Debtors on a final basis to use the Prepetition Collateral, including the Cash Collateral (each as defined below) of the Prepetition ABL Secured Parties and Prepetition ABL Obligations under the Prepetition ABL Documents ~~and the Prepetition Term Loan Secured Parties under the Prepetition Term Loan Documents (each as defined below),~~, and providing adequate protection to the Prepetition ABL Secured Parties~~,~~ and Prepetition ABL Obligations ~~and Prepetition Term Loan Secured Parties~~ for any Diminution in Value (as defined below) of their ~~respective~~ interests in the Prepetition Collateral, including the Cash Collateral, as applicable, and subject to the Carve Out; and

(x)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP ABL Documents ~~and this,~~ the Interim Order~~;,~~ and this Final Order.

~~(xi)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.~~

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Saul Burian in Support of the Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Lenders, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief;*

[Docket No. 19], the DIP ABL Documents, the *Declaration of Marc Pfefferle, Chief Executive Officer of Hollander Sleep Products, LLC, in Support of Debtors' Chapter 11 Petitions and First Day Motions*, [Docket No. 3], and the evidence submitted and argument made at the interim hearing (the "Interim Hearing"); and the Court having entered after the Interim Hearing the *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Lenders, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 53] (the "Interim Order")[3] and notice of the Interim Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing final hearing (the "Final Hearing") with respect to the portion of the DIP Motion pertaining to the DIP ABL Credit Facility and the Prepetition ABL Credit Facility having been held on July 1, 2019, and concluded; and certain all objections, if any, to the relief requested in the DIP Motion pertaining to the DIP ABL Credit Facility and the Prepetition ABL Credit Facility having been withdrawn, resolved by modifications to the proposed interim order having been made at the direction of the Court, as reflected Final Order set forth herein, or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm pertaining to the Debtors and their estates pending the Final Hearing, DIP ABL Credit Facility and otherwise the Prepetition ABL Credit

---

[3]    To the extent used herein, the following terms will have the meanings ascribed thereto in the Interim Order: DIP Term Loan Credit Facility, DIP Term Loans, DIP Term Loan Credit Agreement, DIP Term Loan Guarantors, DIP Term Loan Parties, DIP Term Loan Lenders, Required DIP Term Loan Lenders, DIP Term Loan Agent, DIP Term Loan Documents, DIP Term Loan Obligations, DIP Term Collateral, Prepetition Term Loan Credit Agreement, Prepetition Term Loan Documents, Prepetition Term Loan Borrower, Prepetition Term Loan Parties, Prepetition Term Loan Administrative Agent, Prepetition Term Loan Lenders, Prepetition Term Loan Credit Facility, Prepetition Term Loan Permitted Prior Liens, Prepetition Term Loan Obligations, DIP Term Collateral, DIP Term Loan Liens, Prepetition Term Loan Liens, Prepetition Term Loan Adequate Protection Liens, Prepetition Term Loan Superiority Claim, and Prepetition Term Loan Adequate Protection Payments.

Facility is reasonable and in the best interests of the Debtors, their estates, and all parties-in--interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and the Court having determined that the legal and factual bases set forth in the DIP Motion establish just cause for the relief granted herein; and it appearing that the Debtors' entry into the DIP AgreementsABL Credit Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor, the Court hereby enters this Interim Order.;

**Deemed Modifications to DIP Loan Agreement and DIP Loan Documents**

Subject to the reserved rights of the parties pursuant to the last paragraph of this section, the DIP Agreements and the other DIP Documents are hereby deemed to have been amended as follows for purposes of this Interim Order and for purposes of the interim financing authorized under this Interim Order.  All references in this Interim Order to any of the DIP Agreements and DIP Documents shall constitute references to the DIP Agreements and DIP Documents as so amended.  Any provision in the DIP Agreements and DIP Documents that is contrary to the deemed modifications and amendments set forth below shall be deemed to have been stricken from the DIP Agreements and DIP Documents for purposes of this Interim Order and the interim financing authorized hereunder.

a.    The proposed milestones described in the DIP Agreements and DIP Documents have not been approved and will be considered only after the appointment of an Official Committee of Unsecured Creditors.  Except as expressly provided in Paragraph 31 of this Interim Order, any failure to meet or satisfy the milestones set forth

in the DIP Agreements or the DIP Documents shall not constitute a default during the period covered by this Interim Order.

b.      No restructuring support agreement or plan support agreement has been approved by the Court, and any provision of the DIP Agreements or DIP Documents that purports to obligate the Debtors to the terms of such an agreement, or that purports to make it a default if the Debtors breach any such agreement, shall not be effective during the period covered by this Interim Order.

c.      No provision of this Interim Order or of the DIP Agreements or DIP Documents shall: (i) permit payment of any amount owed with respect to secured financings that predated the filing of these bankruptcy cases except for the adequate protection payments that are explicitly authorized in this Interim Order and the gradual roll-up of the obligations under the Prepetition ABL Credit Agreement as provided below.

d.      During the period covered by this Interim Order, adequate protection payments shall be provided only to the extent set forth in this Interim Order.  Any provision of the proposed DIP Agreements or the proposed DIP Documents that purports to require other adequate protection payments, or that conditions the obligations of the DIP Lenders upon the receipt of other adequate protection payments, or that purports to declare a default in the event that other adequate protection payments are not made, shall be of no force and effect during the period covered by this Interim Order.

e.      Notwithstanding any other provision of the DIP Agreements and the DIP Documents, there shall be no waiver or limitation upon the potential effect of sections 506(c) or 552 of the Bankruptcy Code during the period covered by this Interim Order,

and the failure to provide for such a waiver or limitation shall not constitute a default under the DIP Agreements and the DIP Documents.

f.      Any provisions of the proposed DIP Agreements and proposed DIP Documents that contemplate that the DIP Lenders will have liens on avoidance actions pursuant to sections 544 through 551 of the Bankruptcy Code, or on the proceeds of such actions, shall be without effect and shall be deemed to have been deleted for purposes of the period covered by this Interim Order.

g.      All provisions in the proposed DIP Agreements and DIP Documents that purport to confirm the DIP Lender's credit bidding rights shall be of no force and effect for purposes of the financing authorized by this Interim Order.  Credit bidding rights (or disputes as to the same) will be resolved in connection with separate motions or proceedings.

h.      Any condition, default provision or other term in the proposed DIP Agreements and DIP Documents that purports to bar the Debtors or an official committee from making motions or requesting further relief of any kind, or that purport to establish defaults in the event motions or other requests are made, are deemed to be deleted and of no force and effect during the period covered by this Interim Order.

i.      Any proposed limits in the Budget regarding the fees payable to counsel for an Unsecured Creditors Committee, and any provision of the proposed DIP Agreements and DIP Documents that purports to limit such amounts, shall be subject to negotiation with the Unsecured Creditors Committee once that Committee has been approved and, if agreement is not reached, shall be in such amounts as the Court determines to be reasonable.  Any approval by the Court of a permitted amount of fees to

9

that is in excess of the amounts specified in the Budget for the period covered by this Interim Order shall not constitute a default under the DIP Agreements and the DIP Documents. Notwithstanding the foregoing, the amount that may be incurred by professionals retained by an Unsecured Creditors Committee in the investigation and pursuit of a Challenge (as defined in paragraph 42) shall be $50,000. Any prohibition in the proposed DIP Agreements or DIP Documents, and the proposed Budget, shall be deemed modified to conform to the provisions of this paragraph.

j.    No agreements with regard to exit financing, the terms of a plan of reorganization, or the distributions to be proposed or made in connection with a plan of reorganization have been approved at this stage of the case, and no such agreement in the DIP Agreements and DIP Documents shall be effective during the period covered by this Interim Order.

The DIP Agreements and DIP Documents, as amended by the foregoing terms, shall constitute the agreements pursuant to which the interim financing is provided. The parties shall retain the right, with respect to any provision deleted from the DIP Agreements and DIP Documents pursuant to the foregoing amendments, to seek the reinstatement and approval of such a provision at the final hearing and in connection with the entry of a final order.

**Findings of Fact and Conclusions of Law**

Based on the record at the Interim Hearing, the Court makes the following findings of fact and conclusions of law:[4]

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[5]**

A.    **Petition Date**.  On May 19, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court").

B.    **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.

C.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief sought in the DIP Motion and granted in this Interim Order and this Final Order are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Rules.

D.    **Committee Formation**.  ~~As of the date hereof~~On May 30, 2019, the United States Trustee for the Southern District of New York (the "U.S. Trustee") ~~has not~~ appointed an official

---

[5]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (~~a~~the "Creditors' Committee").

E.    **Notice**.    Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the ~~Interim~~Final Hearing or the entry of this ~~Interim~~Final Order shall be required.  The ~~interim~~ relief granted herein is necessary ~~to avoid immediate~~for the continued operation of the Debtors' businesses and ~~irreparable harm to the Debtors and their estates pending a Final Hearing~~the preservation of the value of the Debtors' assets.

F.    **Debtors' Stipulations**.    After consultation with their attorneys and financial advisors, and without prejudice to the rights of the Debtors and parties~~-~~in~~-~~interest as set forth in paragraph ~~39~~ 42 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xv) below are referred to herein, collectively, as the "Debtors' Stipulations"), which Debtors' Stipulations shall not constitute a finding of ~~fact, a conclusion of law or an Order of~~ this Court in accordance with Local Bankruptcy Rule 4001~~-~~2(g)(4~~):~~) and further, which Debtors' Stipulations shall be deemed not effective solely with respect to any Challenge timely brought or filed prior to the Challenge Period Termination Date, unless and until such Challenge is overruled, settled, or denied  by Final Order of the Court:

(i)    *Prepetition ABL Facility*.    Pursuant to that certain Third Amended and Restated Credit Agreement dated as of June 9, 2017 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Credit Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, each as

may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Documents")")), among (a) the borrowers thereunder (the "Prepetition ABL Borrowers" and together with the "Guarantors" as defined in the Prepetition ABL Credit Agreement, the "Prepetition ABL Loan Parties"), (b) Dream II Holdings, LLC as parent, (c) Wells Fargo Bank, National Association, as agent (in such capacity, the "Prepetition ABL Agent"), sole lead arranger and sole book runner, and (d) the lenders party thereto (the "Prepetition ABL Lenders";," and collectively with the Prepetition ABL Agent, the "Issuing Lenders" (as defined under the Prepetition ABL Credit Agreement), and the "Bank Product Providers" (as defined under the Prepetition ABL Credit Agreement) the "Prepetition ABL Secured Parties" or "Prepetition Secured Parties"), the Prepetition ABL LendersSecured Parties provided credit and other financial accommodations to, and issued letters of credit for the account of, the  Prepetition ABL Borrowers pursuant to the Prepetition ABL Documents (the "Prepetition ABL Credit Facility")." or "Prepetition Secured Facility").

(ii)    *Prepetition Put Agreement and Existing Participation Agreement.* Pursuant to that certain (i) Put Agreement dated as of November 27, 2018 (the "Put Agreement") among Sentinel Capital Partners V, L.P., Sentinel Dream Blocker, Inc., and Sentinel Capital Investors V, L.P. (the "Put Purchasers"), Wells Fargo Bank, National Association and SunTrust Bank, as lenders under the Prepetition ABL Credit Agreement, and the Prepetition ABL Agent, in consideration of providing the Prepetition ABL Borrowers with "Last Out Loans" (as defined in the Prepetition ABL Credit Agreement) (the "Last Out Loans") (the Last Out Loans and any interest, fees, costs, charges, indemnities and other amounts accrued thereon, the "Last Out Obligations"), the Put Purchasers agreed to purchase a one hundred percent subordinated participation interest in the Last Out Loans provided to the Prepetition ABL Borrowers pursuant

to the Prepetition ABL Credit Agreement and (ii) Existing Participation Agreement (as defined in the DIP ABL Credit Agreement) and the occurrence of the "Exercise Date" (as defined in the Existing Participation Agreement)), upon the occurrence of the Petition Date and "Notice of Put Exercise" (as defined in the Put Agreement) provided by Prepetition ABL Agent, the Put Purchasers acquired the Participation Interest (as defined in the Existing Participation Agreement) in respect of the Last Out Loans and Last Out Loan Obligations (as defined in the Prepetition ABL Credit Agreement).

(iii)    *Prepetition ABL Obligations*.  The Prepetition ABL Facility provided the Borrowers with, among other things, (x) $125,000,000 in aggregate Commitments (as defined in the Prepetition ABL Credit Agreement).  As of May 17, 2019, the aggregate principal amount of loans outstanding under the Prepetition ABL Facility was not less than $61,697,731 plus $5,136,180 in respect of letters of credit (together with accrued and unpaid interest, and outstanding letters of credit, any reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Borrower's and certain of the Prepetition ABL Guarantors' obligations pursuant to the Prepetition ABL Documents, including all "Obligations" as defined in the Prepetition ABL Credit Agreement, including the Last Out Obligations, "Existing Secured Canadian Obligations" (as defined in the DIP ABL Credit Agreement), and "Existing Secured US Obligations" (as defined in the DIP ABL Credit

Agreement) (collectively, the "Prepetition ABL Obligations").." or "Prepetition Secured Obligations").

       (iv)    *Prepetition ABL Liens and Prepetition ABL Priority Collateral*.  As more fully set forth in the Prepetition ABL Documents, prior to the Petition Date, the Prepetition ABL Borrowers and the Prepetition ABL Guarantors granted to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Secured Parties and Prepetition ABL Obligations, a security interest in and continuing lien on (the "Prepetition ABL Liens") on substantially all of their assets and property, including, without limitation, (a) a first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in that certain DIP Intercreditor Agreement referred to and as defined below) and all substitutions, replacements, accessions, products, and proceeds of any of the ABL Priority Collateral, in any form, including insurance proceeds and all claims against third parties for loss or damage to, or destruction of, or other voluntary conversion (including claims in respect of condemnation or expropriation) of any kind or nature of any or all of the foregoing (the "Prepetition ABL Priority Collateral"), and (b) a second priority security interest in and continuing lien on the Term Loan Priority Collateral (as defined in that certain DIP Intercreditor Agreement referred to and as defined below) and all substitutions, replacements, accessions, products, and proceeds of any of the Term Loan Priority Collateral, in any form, including insurance proceeds and all claims against third parties for loss or damage to, or destruction of, or other voluntary conversion (including claims in respect of condemnation or expropriation) of any kind or nature of any or all of the foregoing (collectively, the "Prepetition Term Loan Priority Collateral," and together with the Prepetition ABL Priority Collateral, the "Prepetition Collateral").[6]").

---

[6]    Prepetition Term Loan Obligations and doesare not includesecured by any ABL Canadian Collateral (as defined in the Intercreditor Agreement).

(v)    *Roll-Up of Obligations Under Prepetition ABL Credit Agreement*.  ~~All Cash Collateral (defined below) consisting of proceeds of Prepetition ABL Priority Collateral (defined below) securing the~~All Existing Secured Obligations (as defined under the DIP ABL Credit Agreement as ~~all~~ "Obligations" under the ~~-~~Prepetition ABL Credit Agreement (as defined below)), ~~shall be used exclusively to repay outstanding obligations under the Prepetition ABL Facility on a dollar for dollar basis~~including all accrued and ~~contemporaneously therewith, increase availability under the~~ unpaid interest thereon and fees, costs, other charges, and expenses are hereby repaid, deemed repaid, deemed issued or deemed incurred, or otherwise replaced, as applicable, as "Obligations" under the DIP ABL Credit ~~Facility, by a corresponding amount~~Agreement, subject to the ~~other~~ terms~~, conditions and provisions of the DIP ABL Credit Facility.~~ herein. Notwithstanding the foregoing, nothing in th~~is~~e Interim Order or this Final Order shall impact the ability for the Court to unwind or partially unwind, after notice and a hearing, the pay down of Obligations under the Prepetition ABL Credit Agreement, in the event there is a timely and successful Challenge (as defined below) to the validity, enforceability, extent, perfection, or priority of the Prepetition ABL Lenders' liens or claims, or a determination that the Prepetition ABL Obligations were undersecured as of the Petition Date, ~~or~~and that the roll-up of Obligations under the Prepetition ABL Credit Agreement unduly advantaged the Prepetition ABL Lenders.

(vi)    [Reserved]

~~(vi)~~    [Reserved]*Prepetition Term Loan Facilities*.  ~~Pursuant to that certain Term Loan Credit Agreement dated as of June 9, 2017 (as amended, restated or otherwise modified from time to time, the "Prepetition Term Loan Credit Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be~~

amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Loan Documents," and together with the Prepetition ABL Documents, the "Prepetition Documents") among (a) the borrower thereto (the "Prepetition Term Loan Borrower" and together with the "Guarantors" as defined in the Prepetition Term Loan Credit Agreement, the "Prepetition Term Loan Parties"), (b) Dream II Holdings, LLC and Hollander Home Fashions Holdings, LLC, as parent guarantors, (c) Barings Finance LLC, as administrative agent (in such capacity, the "Prepetition Term Loan Administrative Agent," and together with the Prepetition ABL Agent, the "Prepetition Agents"), and (d) the lenders party thereto (the "Prepetition Term Loan Lenders," and together with the Prepetition Term Loan Agent, the "Prepetition Term Loan Secured Parties") (the Prepetition Term Loan Lenders, together with the Prepetition ABL Lenders, the "Prepetition Lenders") (the Prepetition Term Loan Secured Parties, together with the Prepetition ABL Secured Parties, the "Prepetition Secured Parties"), the Prepetition Term Loan Lenders provided first lien term loans to the Prepetition Term Loan Borrower (the "Prepetition Term Loan Credit Facility," and together with the Prepetition ABL Facility, the "Prepetition Secured Facilities").

(vii)    *Prepetition Term Loan Obligations*.    The Prepetition Term Loan Credit Facility provided the Prepetition Term Loan Borrower with commitments to provide term loans in the aggregate principal amount of up to $190,000,000. As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Loan Credit Agreement Facility was $166,472,407.49 (together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not

17

contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Term Loan Borrowers' and certain Prepetition Term Loan Guarantors' obligations pursuant to the Prepetition Term Loan Documents, including all "Obligations" as defined in the Prepetition Term Loan Credit Agreement, the "Prepetition Term Loan Obligations," and together with the Prepetition ABL Obligations, the "Prepetition Secured Obligations").

(viii) *Prepetition Term Loan Liens and Prepetition Term Loan Priority Collateral.* As more fully set forth in the Prepetition Term Loan Documents, prior to the Petition Date, the Prepetition Term Loan Parties granted to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders security interests in and continuing liens on (the "Prepetition Term Loan Liens," and together with the Prepetition ABL Liens, the "Prepetition Liens") substantially all of their assets and property, including, without limitation, (a) first priority security interests in and continuing liens on the Prepetition Term Loan Priority Collateral, and (b) second priority security interests in and continuing liens on the Prepetition ABL Priority Collateral, provided however that the Prepetition Term Loan Secured Parties do not have liens on and security interests in the assets of the Canadian Loan Parties (as defined in the DIP Intercreditor Agreement).

(vii) *Priority of Prepetition Liens; Prepetition Intercreditor Agreement; DIP Intercreditor Agreement.* The Prepetition Agents

(viii) [Reserved]

(ix) *Priority of Prepetition ABL Liens; Prepetition Intercreditor Agreement; DIP Intercreditor Agreement.* The Prepetition ABL Agent and Prepetition Term Loan Administrative Agent entered into that certain Intercreditor Agreement dated as of June 9, 2017 (as amended, restated, supplemented, or otherwise modified in accordance with its terms prior to

the Petition Date, the "Prepetition Intercreditor Agreement") to govern the respective rights, interests, obligations, priority, and positions of the Prepetition ABL Secured Parties and Prepetition Term Loan Parties with respect to the assets and properties of the Debtors and other obligors, including the Prepetition ABL Priority Collateral and Prepetition Term Loan Priority Collateral.    Each of the Prepetition ABL Borrowers and Prepetition Term Loan Borrower acknowledged the Prepetition Intercreditor Agreement.  The Prepetition Intercreditor Agreement is binding and enforceable against the Borrowers, the other "Grantors" thereunder and, the Prepetition ABL Secured Parties, and the Prepetition Term Loan Parties in accordance with its terms and the Borrowers, such Grantors, the Prepetition ABL Secured Parties, and the Prepetition Secured Term Loan Parties are not entitled to take any action that would be contrary to the provisions thereof.  As of On May 23, 2019, the Petition Date, the DIP ABL Agent and DIP Term Loan Agent entered into the Amended and Restated Intercreditor Agreement, amending and restating the Prepetition Intercreditor Agreement in its entirety (the "DIP Intercreditor Agreement").    The DIP Intercreditor Agreement is binding and enforceable against the Borrowers, the other "Grantors" thereunder, the Prepetition ABL Secured Parties and, the Prepetition Term Loan Parties, the DIP Lenders ABL Secured Parties and the DIP Term Loan Parties in accordance with its terms and the Borrowers, the Prepetition ABL Secured Parties, the Prepetition Term Loan parties, the DIP ABL Secured Parties and DIP Lenders Term Loan Parties are not entitled to take any action that would be contrary to the provisions thereof.

(x)    *Validity, Extent, Perfection and Priority of Prepetition ABL Liens and Prepetition ABL Obligations*.    The Subject to paragraph 42 of this Order, the Debtors acknowledge and agree that as of the Petition Date:  (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected

and were granted to, or for the benefit of, the Prepetition ABL Secured Parties and Prepetition ABL Obligations, for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition Term Loan Liens on the Prepetition Term Loan Priority Collateral, (2) the Carve Out, and (23) certain liens otherwise permitted by the Prepetition ABL Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "~~Prepetition ABL Permitted Prior Liens~~"); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition ABL Loan Parties enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations (including the Last Out Obligations) is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise)  pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Secured Parties or the Put Purchasers ~~(as to the Put Purchasers, subject to and only effective upon the Disinterested Director's Determination (as defined below))~~ or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition ABL Facility (including the Last Out Obligations) ~~and entry into the Put Agreement and Existing~~

Participation Agreement~~or entry into the Put Agreement and Existing Participation Agreement (as to the Put Purchasers, solely with respect to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement, and subject to and only effective upon the Disinterested Director's Determination (as defined below) and the Challenge Period Termination Date (as defined below)) and subject to the rights of the Creditors' Committee set forth in paragraph 42~~; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations (including the Last Out Obligations), the priority of the Prepetition ABL Loan Parties' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (g) the Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.  Notwithstanding the foregoing or anything to the contrary herein, all of the Debtors' rights and remedies (whether at law or in equity) in connection with any potential claim or cause of action against the Put Purchasers which are, or may be, ~~the~~ subject to investigation by the Debtors' disinterested director or the Creditors' Committee in accordance with paragraph 42 are preserved (and nothing shall impair any of the Debtors' rights or remedies against the Put Purchasers) until (a) the completion of the investigation by the Debtors' disinterested director and ~~(b)~~ the disinterested director's determination that there are no such claims or causes of action against the Put Purchasers or their respective affiliates or agents (~~collectively (a) and (b), the "Disinterested Director's Determination"~~)~~.~~the "Disinterested Director's Determination") and (b) the Challenge Period Termination Date (as defined herein).  For the avoidance of doubt, any potential claim or cause of action against Sentinel Capital Partners, LLC and its affiliated investment funds or investment vehicles managed or advised by it, and its affiliates that directly or indirectly hold interests in the Debtors, in each case unrelated to the Put Purchasers' interests

in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement, are unaffected by this Final Order.

(xi)   *Validity, Extent, Perfection and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations*. The Debtors further acknowledge and agree that, as of the Petition Date: (a) the Prepetition Term Loan Liens were senior in priority over any and all other liens on the Prepetition Collateral (other than ABL Canadian Collateral), subject only to (1) the Prepetition ABL Liens on the Prepetition ABL Priority Collateral and (2) certain liens otherwise permitted by the Prepetition Term Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Term Loan Liens as of the Petition Date, the "Prepetition Term Loan Permitted Prior Liens," and together with the Prepetition ABL Permitted Prior Liens, the "Permitted Prior Liens");[7] (b) the Prepetition Term Loan Liens on the Prepetition Collateral (other than ABL Canadian Collateral) were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Term Loan Secured Parties for fair consideration and reasonably equivalent value; (c) the Prepetition Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Term Loan Parties enforceable in accordance with the terms of the applicable Prepetition Term Loan Documents; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance,

---

[7]   Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agents, the Prepetition ABL Parties, the Prepetition Term Loan Secured Parties, or a Creditors' Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien and/or security interests. The Debtors and the DIP Lenders have not agreed to treat the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code as a Permitted Prior Lien, and the priority of any such right will be determined by the Court.

disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Loan Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Term Loan Facilities; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Loan Obligations; and (g) the Prepetition Term Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(xi)    [Reserved]

(xii)    *Default by the Debtors*.  The Debtors acknowledge and stipulate that the Prepetition ABL Loan Parties are in default of their obligations under the Prepetition ABL Documents and Prepetition Term Loan Parties are in default of their obligations under the Prepetition Term Loan Documents.

(xiii)    [RESERVED]

(xiii)    *Releases*.  Subject to Paragraph 42 of this Order, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition ABL Secured Parties and the Put Purchasers (as to the Put Purchasers, solely with respect to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement, and subject to and only effective upon the Disinterested Director's

Determination and the Challenge Period Termination Date and subject to the rights of the Creditors' Committee set forth in paragraph 42) and their respective affiliates and each of their respective former, current or future officers, partners, directors, managers, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their respective capacity as such (collectively, the "Released Parties") from any and all obligations and liabilities to the Debtors (and theirs successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "Released Claims") of any kind, nature or description, whether known or unknown, foreseen or unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Prepetition ABL Documents or the Released Parties' entry into the Put Agreement and Existing Participation Agreement, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions reflected thereby and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order arising out of or related to (as applicable) the Prepetition ABL Documents or entry into the Put Agreement and Existing Participation Agreement, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions reflected thereby and the obligations and financial

obligations made thereunder, whether such Released Claims are matured, contingent, liquidated, unliquidated, unmatured, known, unknown, or otherwise.

(xiv)  *Cash Collateral*.  All cash, securities, or other properties of the DIP Parties (and the proceeds therefrom) to the extent subject to the valid, perfected, enforceable, and unavoidable liens as of the Petition Date of the Prepetition ABL Secured Parties, including, without limitation, all cash, securities, or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the DIP Parties in any account or accounts were subject to rights of set-off under the Prepetition ABL Documents and applicable law, for the benefit of the Prepetition ABL Secured Parties and Prepetition Secured ABL Obligations, subject to the terms of the DIP Intercreditor Agreement.  All proceeds of the Prepetition Collateral (including cash on deposit in any account or accounts as of the Petition Date, securities, or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) to the extent subject to the valid, perfected, enforceable, and unavoidable liens as of the Petition Date of the Prepetition ABL Secured Parties and/or Prepetition Term Loan Parties are "Cash Collateral" of the applicable Prepetition Secured Parties and Prepetition ABL Secured Parties, Prepetition Term Loan Parties, Prepetition Term Loan Obligations and Prepetition ABL Obligations within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral" and solely with respect to the Prepetition ABL Priority Collateral, the "ABL Cash Collateral"), subject to the Carve Out and the terms of the DIP Intercreditor Agreement.

(xv)  *DIP Intercreditor Agreement*.  Pursuant to section 510 of the Bankruptcy Code, except as expressly provided by the terms of this Interim Order, this Final Order, the DIP Intercreditor Agreement and any other intercreditor agreement or subordination agreement between and/or among any Prepetition ABL Loan Party, any Prepetition Term Loan Party, any

Debtor or affiliate thereof, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition ABL Documents or Prepetition Term Loan Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights and remedies of the Prepetition ABL Secured Parties and the Prepetition Term Loan Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under thise Interim Order, this Final Order, or any other order entered in respect of the DIP Motion or otherwise and the modification of the automatic stay), and (iii) shall not be deemed to be amended, altered, or modified by the terms of thise Interim Order, this Final Order, any other ordered entered in respect of the DIP Motion, the DIP ABL Documents, or the DIP Term Loan Documents, unless expressly set forth herein. The DIP ABL Credit Facility is an ABL Document as that term is used in the DIP Intercreditor Agreement, and any repayment of the Prepetition ABL Obligations pursuant to thise Interim Order or this Final Order shall not be deemed to constitute a "Payment in Full of ABL Debt" as such term is defined in the DIP Intercreditor Agreement. The DIP Term Loan Credit Facility is a Term Loan Document as that term is used in the DIP Intercreditor Agreement.

G.    **Findings Regarding Postpetition Financing**

(i)    *Request for Postpetition Financing.* The Debtors seek authority on a final basis to (a) enter into the DIP Facilities ABL Credit Facility on the terms described herein and in the DIP ABL Documents, and (b) use ABL Cash Collateral on the terms described herein to administer their Cases and fund their operations. At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which except as otherwise ordered by the

~~Court shall be in form and substance acceptable to each of the DIP Agents, and DIP Term Loan Lenders holding in excess of fifty percent (50%) of the outstanding loans and commitments under the DIP Term Loan Credit Facility (the "Required DIP Term Loan Lenders") (the Required DIP Term Loan Lenders or the "Required Lenders" under the DIP ABL Credit Agreement, as applicable, the "Required DIP Lenders").  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.~~

(ii)    *Priming of the Prepetition ABL Liens*.  The priming of the Prepetition ABL Secured Parties and Prepetition Term Loan Parties on the Prepetition ABL Priority Collateral (and the priming of the Prepetition ABL Secured Parties on the Prepetition Term Loan Priority Collateral) under section 364(d) of the Bankruptcy Code, as contemplated by the DIP ~~Facilities~~ABL Credit Facility, as authorized by the Interim Order and this Final Order, and as further described below, will enable the Debtors to ~~obtain~~continue borrowing under the DIP ~~Facilities~~ABL Credit Facility and to continue to operate their businesses to the benefit of their estates and creditors.  The Prepetition ABL Secured Parties~~, the Prepetition ABL Obligations~~ and the Prepetition ~~Term Loan Secured Parties~~ ABL Obligations are each entitled to receive adequate protection as set forth in th~~is~~e Interim Order and this Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, ~~for~~solely to the extent of any diminution in value ("Diminution in Value") of each of their respective interests in the Prepetition Collateral (including Cash Collateral), subject to the Carve Out.

(iii)    *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors continue to have ~~an immediate and~~a critical need to obtain the financing pursuant to the DIP ~~Facilities~~ABL Credit Facility and to continue to use the Prepetition ABL Priority Collateral (including ABL Cash Collateral) in order to, among other things, (i) permit the orderly

continuation of the operation of their businesses, (ii) maintain business relationships with customers, vendors and suppliers, (iii) make payroll, and (iv) satisfy other working capital and operational needs.  The access by the DIP Parties to sufficient working capital and liquidity through the use of ABL Cash Collateral and other Prepetition ABL Priority Collateral, incurrence of new indebtedness under the DIP ABL Documents and other financial accommodations provided under the DIP ABL Documents are necessary and vital to the preservation and maintenance of the going concern value of the DIP Parties and to a successful reorganization of the DIP Parties and DIP ABL Obligations.  The terms of the proposed financing are fair and reasonable, reflect each DIP Parties' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  The adequate protection provided in thise Interim Order and this Final Order and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.

(iv)    *No Revolving Credit Available on More Favorable Terms*.  The DIP Facilities areABL Credit Facility is the best source of asset-based, revolving debtor in possession financing available to the Debtors.  Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain asset-based financing from sources other than the DIP LendersABL Secured Parties on terms more favorable than the DIP FacilitiesABL Credit Facility.  The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been and are unable to obtain:  (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a)), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on

28

property of the Debtors and their estates that is subject to a lien.  ~~Financing~~Asset-based financing on a postpetition basis is not otherwise available without granting the DIP ~~Agents~~ABL Agent, for the benefit of ~~themselves~~itself and the DIP ~~Lenders~~ABL Secured Parties and on account of the obligations under the DIP ~~Facilities~~ABL Credit Facility (including the Last Out DIP Obligations):  (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after~~ ~~acquired assets with the priorities set forth in paragraph 6 hereof, (2) superpriority claims and liens, and (3) the other protections set forth in th~~is~~e Interim Order~~.~~ and this Final Order.

(v)     *Use of proceeds of the DIP* ~~*Facilities.*~~*ABL Credit Facility.*  As a condition to entry into the DIP ABL Documents, the extension of credit under the DIP ~~Facilities~~ABL Credit Facility, and the authorization to use ABL Cash Collateral, the DIP ~~Agents~~ABL Agent, the DIP ~~Lenders~~ABL Secured Parties, and the Prepetition ABL Secured Parties require~~d~~, and the Debtors ~~have~~ agreed, that proceeds of the DIP ~~Facilities~~ABL Credit Facility shall be used, in each case in a manner consistent with the terms and conditions of th~~is~~e Interim Order, this Final Order and the DIP ABL Documents and in accordance with the budget attached hereto as **Exhibit A**, as the same may be modified from time to time consistent with the terms of the DIP ABL Documents and the DIP Term Loan Documents, and subject to such variances as permitted in the DIP ~~Agreements~~ABL Credit Agreement (such budget, as so modified, the "Approved Budget"),[8] solely for: (a) working capital and letters of credit; (b) other general corporate purposes of the Debtors; (c) permitted payment of costs of administration of the Cases; (d)~~ (1) payment of such prepetition expenses of the Prepetition Term Loan Secured Parties as consented to by the DIP Term Agent and the Required DIP Term Loan Lenders, and (2)~~ payment

---

[8]     ~~A copy of the initial Approved Budget is attached hereto as **Exhibit 1**.~~

of such prepetition expenses of the Prepetition ABL Secured Parties as consented to by the DIP

ABL Agent in its sole discretion, in each case under clauses (1) and (2) as approved by the Court;

(e) payment of interest, fees, and expenses (including without limitation, legal and other

professionals' fees and expenses of the DIP ~~Agents~~ABL Agent) owed under the DIP ABL

Documents; (f) payment of certain adequate protection amounts to the Prepetition ABL Secured

Parties and Prepetition ~~Secured~~ABL Obligations, as set forth in paragraph 16 hereof; (g) the

reduction of the Prepetition ABL Obligations ~~pending entry of~~in accordance with the Final Order

(or as otherwise required under any recognition orders by the Canadian Court (as defined in the

DIP ABL Credit Agreement)) in respect of the Canadian Borrower (as defined in the DIP ABL

Credit Agreement) and payment in full of the Prepetition ABL Obligations as described in

paragraph F(v) above (or as otherwise required under such recognition orders of the Canadian

Court in respect of the Canadian Borrower); (h) the Canadian Borrower to borrow under the DIP

ABL Credit Agreement and lend such borrowed amounts to any Debtor other than the Canadian

Borrower on a superpriority administrative expense basis pursuant to section 507(b) of the

Bankruptcy Code (the "Canadian Intercompany Superpriority Administrative Claims"~~);;~~"); (i)

upon entry of this Final Order and ~~(i~~delivery of the Participation Agreement (as defined in the

DIP ABL Credit Agreement), deemed refinancing and replacement of the Last Out Obligations

with the Last Out DIP Obligations (as defined by the DIP ABL Credit Agreement), subject to the

rights preserved in paragraph 42 of this Final Order; and (j) payment of the Carve Out shall be in

accordance with paragraph 39 of this ~~Interim~~Final Order.  The reduction of the Prepetition ABL

Obligations from the ABL Cash Collateral ~~consisting of ABL Priority Collateral in~~ in accordance

with th~~is~~e Interim Order ~~is~~and the Roll-Up of the Prepetition ABL Obligations described in

paragraph F(v) was necessary as the Prepetition ABL Secured Parties have not otherwise

30

consented to the use of their ABL Cash Collateral or the subordination of their liens to the DIP

ABL Liens (as defined below), and the DIP ABL Agent and the DIP ABL ~~Lenders will~~Secured

Parties did not otherwise consent to providing the DIP ABL Credit Facility and extending credit

to the Debtors thereunder.  Further, the DIP ABL Agent and DIP ABL ~~Lenders are~~Secured Parties

were not willing to provide the DIP ABL Credit Facility unless the Canadian Borrower is a joint

and several obligor with respect to the DIP ABL Obligations.

      (vi)    *Application of Proceeds of Collateral*.  As a condition to entry into the DIP

~~Agreements~~ABL Credit Agreement, the extension of credit under the DIP ~~Facilities~~ABL Credit

Facility and authorization to use ABL Cash Collateral, the Debtors, the DIP ~~Agents~~ABL Agent,

the DIP Term Loan Agent, the DIP ABL Secured Parties, DIP Term Loan Lenders, the Prepetition

ABL Secured Parties, and the Prepetition Term Loan ~~Secured~~ Parties have agreed that, as of and

commencing on the date of the Interim Hearing, the Debtors shall continue to apply the proceeds

of DIP ABL Priority Collateral in accordance with th~~is~~e Interim Order, this Final Order and the

DIP Intercreditor Agreement.

      H.    **Adequate Protection**.  Subject to the Carve Out and solely to the extent of any

Diminution in Value, the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL

Secured Parties on account of the Prepetition ABL Obligations (including the Last Out

Obligations)~~, and the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition~~

~~Term Loan Secured Parties, are each~~) is entitled to receive adequate protection in the Prepetition

Collateral.  Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate

protection (but only to the extent of any Diminution in Value):  ~~(i)~~ the Prepetition ABL Secured

Parties and Prepetition ABL Obligations will receive adequate protection liens and superpriority

claims, as more fully set forth in paragraphs 11–14 herein and the Prepetition ABL Secured

Parties (other than on account of the Last Out Loans and Last Out Obligations) shall receive current payment of interest at the default rate (provided the Last Out Loans and Last Out Obligations shall accrue payment of interest at the default rate as part of the Last Out Loans and Last Out Obligations); ; and (ii) the Prepetition Term Loan Secured Parties will receive adequate protection liens and superpriority claims, as more fully set forth in paragraphs 11-14 herein and any payment to the Put Purchasers on account of the Last Out DIP Obligations or Last Out Obligations is subject to the rights of the Creditors' Committee set forth in paragraph 42 and subject to the occurrence of the Disinterested Director's Determination and the Challenge Period Termination Date for claims and causes of action against the Put Purchasers solely as it relates to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement as set forth in paragraph 42 of this Final Order or further Court Order), and reasonable and documented fees and expenses (including, without limitation, legal and other professionals' fees and expenses of the Prepetition ABL Agent, whether arising before or after the Petition Date) provided that the Put Purchasers' fees and expenses shall accrue and not be paid prior to substantial consummation of a plan or further Court Order.

I.       [Reserved].

I.       **Sections 506(c) and 552(b)**.  In light of (i) the DIP ABL Agent's and DIP ABL Secured Parties' agreement that their liens and superpriority claims shall be subject to the Carve Out (including the caps and limitations set forth therein) and (ii) the Prepetition ABL Secured Parties' agreement that, with respect to the Prepetition ABL Priority Collateral, their liens shall be subject to the Carve Out (and the caps and limitations set forth therein), subordinate to the DIP ABL Liens, and, in the case of the Prepetition Term Loan Priority Collateral, subordinate to the DIP Term Loan Liens and the Prepetition Term Loan Liens, (a)  the Prepetition ABL Secured

Parties and Prepetition ABL Obligations are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) the DIP ABL Agent, DIP ABL Secured Parties, DIP ABL Obligations, Prepetition ABL Secured Parties and Prepetition ABL Obligations are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code, subject to the terms of the DIP Intercreditor Agreement.

J.    **Good Faith of the DIP ABL Agents and DIP ~~Lenders~~ABL Secured Parties**.

(i)    *Willingness to Provide Financing*.  The DIP ~~Lenders~~ABL Secured Parties have indicated a willingness to provide and to continue to provide financing to the Debtors subject to:  (a) entry of th~~is~~e Interim Order and the~~is~~ Final Order; (b) final approval of the terms and conditions of the DIP ~~Facilities~~ABL Credit Facility and the DIP ABL Documents; (c) satisfaction of the closing conditions set forth in the DIP ABL Documents; (d) entry of the Canadian Recognition Orders (as defined by the DIP ABL Credit Agreement~~)~~); and (e) findings by this Court that the DIP ~~Financing~~ABL Credit Facility is essential to the Debtors' estates, that the DIP ~~Agents~~ABL Agent and DIP ~~Lenders~~ABL Secured Parties are extending credit to the Debtors pursuant to the DIP ABL Documents in good faith, and that the DIP ~~Agents'~~ABL Agent's and DIP ~~Lenders'~~ABL Secured Parties' claims, superpriority claims, security interests and liens, and other protections granted pursuant to th~~is~~e Interim Order and this Final Order and the DIP ABL Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)    *Business Judgment*.  Based on the DIP Motion, the declarations filed in support of the DIP Motion, and the record presented to the Court at the Interim Hearing and Final Hearing, (i) the terms of the financing provided by the DIP ~~Facilities~~ABL Credit Facility, (ii) the adequate protection provided by the Interim Order, this Final Order, and DIP ABL

Documents, and (iii) the terms on which the DIP Parties may continue to use the Prepetition Collateral (including Cash Collateral), in each case pursuant to this Interim Order, this Final Order, and the DIP ABL Documents, are in each case fair and reasonable, reflect the DIP Parties' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represents the best asset-based financing (and terms) presently available.

(iii)    *Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the DIP Facilities and the use of Cash Collateral ABL Credit Facility were negotiated in good faith and at arms' length among the Debtors, DIP Agents, ABL Agent, and DIP Lenders, Prepetition ABL Secured Parties and Prepetition Term Loan Secured Parties, with the assistance and counsel of their respective advisors.  Use of Cash Collateral and The credit to be extended under the DIP Facilities ABL Credit Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agents, ABL Agent and DIP Lenders, Prepetition ABL Secured Parties, and Prepetition Term Loan ABL Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

K.    **Immediate Entry**.  Sufficient cause exists ed for immediate entry of this the Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

L.    **Interim Final Hearing**.    Notice of the Interim Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier, or hand delivery, to certain parties-in-interest, including, among others: (i) the U.S. Trustee, (ii) those entities or individuals included on the Debtors' list of 50 largest unsecured creditors on a consolidated basis, (iii) counsel to the Prepetition ABL Agent, (iv) counsel to the Prepetition Term Loan Agent; (v) counsel to the Put Purchasers; (vi) the

34

Creditors' Committee; and (vii) all other parties entitled to notice under the Local Rules.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required in connection with the relief set forth in thise Interim Order or this Final Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1. ~~Interim Financing~~DIP ABL Credit Facility Approved.  The DIP Motion is granted, ~~the Interim Financing (as defined~~ on a final basis solely to the extent set forth below) ~~is,~~ the DIP ABL Credit Facility was authorized ~~and approved, and the use of Cash Collateral~~in part on an interim basis ~~is authorized~~pursuant to the Interim Order as modified therein, and hereby is authorized and approved on a final basis as set forth below (including any modifications in this Final Order as to the Interim Order), and the use of Cash Collateral was authorized pursuant to the terms of the Interim Order and the use of the ABL Cash Collateral is hereby authorized on a final basis, in each case, subject to the terms and conditions set forth in this ~~Interim~~Final Order. All objections to thise Interim Order and this Final Order as they relate to the DIP ABL Credit Facility and use of ABL Cash Collateral, to the extent not withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This ~~Interim~~Final Order shall become effective immediately upon its entry.  Nothing herein shall approve the DIP Term Loan Facility on a final basis.

**ABL DIP ~~Facilities~~Credit Facility Authorization**

2.      Authorization of the ABL DIP Financing.  The Interim Financing is hereby DIP ABL Credit Facility was approved on an interim basis pursuant to the Interim Order (as described therein) and is hereby approved on a final basis on the terms set forth in this Final Order.  The Debtors awere expressly and immediately authorized and empowered pursuant to the Interim Order to execute and deliver the DIP ABL Documents and are hereby expressly and immediately authorized and empowered on a final basis to continue borrowing under the DIP ABL Documents, and to incur and to perform the DIP ABL Obligations in accordance with, and subject to, the terms of thise Interim Order, this Final Order and the DIP ABL Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP FacilitiesABL Credit Facility and the creation and perfection of the DIP ABL Liens (as defined below) described in and provided for by thise Interim Order and this Final Order and the DIP ABL Documents.  The Debtors were authorized and directed pursuant to the Interim Order and are hereby authorized and directed on a final basis to pay, in accordance with the Interim Order and this InterimFinal Order, the principal, interest, fees, expenses and other amounts described in the DIP ABL Documents and all other documents comprising the DIP FacilitiesABL Credit Facility as such become due and without need to obtain further Court approval, including, without limitation, closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, continuing commitment fees, backstop fees, exit fees, servicing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agents'ABL Agent's attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated herebyby the Interim Order or this Final Order are consummated,

to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order, this Final Order or the DIP ABL Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnation or otherwise, will be deposited and applied as required by this Interim Final Order and the DIP ABL Documents. Upon As of the date of execution and delivery, the DIP ABL Documents shall continue to represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms. The Last Out DIP Obligations and Last Out Obligations (as applicable) shall include interest at the default rate and reasonable and documented fees and expenses of the Put Purchasers (such amounts not to be paid currently but to accrue as part of the Last Out DIP Obligations and Last Out Obligations (as applicable)). Any payment to the Put Purchasers on account of the Last Out Obligations or Last Out DIP Obligations is subject to the rights of the Creditors' Committee set forth in paragraph 42 and subject to the occurrence of the Disinterested Director's Determination and the Challenge Period Termination Date for claims and causes of action against the Put Purchasers solely as it relates to the Put Purchasers' interest in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement as set forth in paragraph 42 of this Final Order or further Court Order, provided that the fees and expenses of the Last Out Obligations or Last Out DIP Obligations shall not be paid prior to substantial consummation of a plan or further Court Order).

3.     Authorization to Borrow.  In order to prevent immediate and irreparable harm to the Debtors' estates, from From the entry of this Interim Final Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the Termination Declaration (as defined below), and subject to the terms, conditions, limitations on availability and reserves

set forth in the DIP ABL Documents and this, the Interim Order and this Final Order, the Debtors were authorized pursuant to the Interim Order and are hereby authorized to (a) forthwithi) borrow money pursuant to the DIP ABL Credit Agreement on a final basis and the DIP ABL Guarantors were authorized pursuant to the Interim Order and are hereby authorized to guaranty the DIP ABL Obligations on a final basis, in each case up to an aggregate principal or face amount equal to, on an interim basis, the amount of incremental funding$90 million under the DIP ABL Credit Facility as set forth in the Approved Budget and in accordance with the terms of this Interim Order pending entry of the Final Order, together with applicable interest, expenses, fees and other charges payable in connection with the DIP ABL Credit Facility, subject in each case to any limitations on borrowing under the DIP ABL Documents and used for all purposes permitted under the DIP Documents, and (ii) forthwith borrow money pursuant to the DIP Term Loan Credit Agreement and the DIP Term Loan Guarantors are hereby authorized to guaranty the DIP Term Loan Parties' DIP Term Loan Obligations with respect to such borrowings, in each case up to an aggregate principal amount equal to $15,000,000 on an interim basis (together with the interim financing under the DIP ABL Credit Agreement, the "Interim Financing") together with applicable interest, expenses, fees and other charges payable in connection with the DIP Term Loan Credit Facility, , together with applicable interest, expenses, fees and other charges payable in connection with the DIP Term Loan Credit Facility, subject to any limitations on borrowing under the DIP Term Loan Documents, which shall be used for all purposes permitted under the DIP ABL Documents, including, without limitation, to satisfy certain outstanding amountsrefinance the portions of the  Prepetition ABL Credit Facility and Prepetition ABL Obligations as provided hereinin this Final Order, to provide working capital for the DIP Parties and to pay interest, fees, costs, charges, and expenses in accordance with thise Interim Order, this

Final Order, the DIP ABL Documents and the Approved Budget (subject to the variances permitted by the DIP ~~Agreements~~ABL Credit Agreement and the DIP Term Loan Credit Agreement).  In connection with obtaining and using funds to enable the Debtors to pay the expenses set forth in the Approved Budget (subject to the variances permitted by the DIP ~~Agreements~~ABL Credit Agreement), the Debtors shall borrow and use (or in the case of amounts ~~already then~~ borrowed under the DIP Term Loan Credit Facility~~, use~~ pursuant to the Interim DIP Order or any additional orders pertaining to the DIP Term Loan Credit Facility and acceptable to the DIP Term Loan Agent), on a weekly and cumulative basis, an approximately equal amount from the DIP ABL Credit Facility (subject to Availability) and the amounts borrowed under the DIP Term Loan Credit Facility~~; provided, however, until the entry of the Canadian Initial Recognition Order (as defined in the DIP ABL Credit Agreement), the Canadian Borrowing Base is deemed to be $0~~.

4.      DIP ABL Obligations.  ~~Subject to~~The DIP ABL Documents, the ~~qualifications and modifications set forth in this~~ Interim Order~~, the DIP Documents~~ and this ~~Interim~~Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP ABL Obligations, which DIP ABL Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversa~~ti~~on of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").  Upon entry of this ~~Interim~~Final Order, the DIP ABL Obligations will include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP ~~Agents~~ABL Agent or any of the DIP ~~Lenders~~ABL

Secured Parties, under the DIP ABL Documents, the Interim Order or this ~~Interim~~Final Order, all, including, without limitation, all principal, accrued interest, costs, charges, fees, expenses, and other amounts under the DIP ABL Documents.  Upon entry of this ~~Interim~~Final Order, all (i) Bank Products, (ii) Cash Management Services, and (iii) Letters of Credit (each as defined in the Prepetition ABL Credit Agreement) shall continue in place and all obligations under or in connection therewith shall be subject to the DIP ABL Credit Agreement and shall constitute DIP ABL Obligations. The DIP ABL Loan Parties shall continue to be jointly and severally liable for the DIP ABL Obligations.  The DIP ~~Term Loan Parties shall be jointly and severally liable for the DIP Term Obligations.   The DIP~~ABL Obligations, as applicable, shall be due and payable, without notice or demand, and the use of ABL Cash Collateral shall automatically cease on each applicable Termination Date, as applicable, except as provided in paragraph 30 herein.   No obligation, payment, transfer, or grant of collateral security hereunder, under the Interim Order or under the DIP ABL Documents (including any DIP ABL Obligation or DIP ABL Liens, and including in connection with any adequate protection provided to the Prepetition ABL Secured Parties and Prepetition ~~Secured~~ABL Obligations hereunder) ~~shall be~~ stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross–claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.  Nothing in the Interim Order or this Final Order shall impact the ability of the Court to unwind or partially unwind, after notice and a

hearing, the pay down of Prepetition ABL Obligations under the Prepetition ABL Credit Facility or any payments made pursuant to this Order or the Interim Order in the event there is a timely and successful Challenge to the validity, enforceability, extent, perfection or priority of the Prepetition ABL Secured Parties' liens or claims, or a determination that the Prepetition ABL Obligations were undersecured as of the Petition Date, and the roll-up unduly advantaged the Prepetition ABL Secured Parties.

5.     ABL DIP Liens.  In order to secure the DIP ABL Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the applicable DIP AgentsABL Agent, for the benefit of themselvesitself and the DIP LendersABL Secured Parties and/or DIP ABL Obligations, were granted pursuant to the Interim Order and are hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP ABL Liens") all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of, with respect to the DIP ABL Obligations, each of the DIP ABL Loan Parties (the "DIP ABL Collateral") or, with respect to the DIP Term Loan Obligations, each of the DIP Term Loan Parties (the "DIP Term Collateral," together with the DIP ABL Collateral, the" or "DIP Collateral"),[9] including without limitation:   (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable), and investment property (including, without limitation, all of the issued and outstanding capital stock of each of its subsidiaries), furniture, fixtures, equipment, goods,

---

[9]     For the avoidance of doubt, the DIP Term Collateral does not include ABL Canadian Collateral (as defined by the DIP Intercreditor Agreement).

franchise rights, trade names, trademarks, servicemarks, copyrights, patents, intellectual property, general intangibles, rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, ~~commercial tort claims, causes of action~~causes of action (excluding commercial tort claims and avoidance actions (but including avoidance actions brought pursuant to section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral)) and all substitutions, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds and (b) all owned real property interests and all proceeds of leased real property~~.~~, and including all DIP Collateral that was not otherwise subject to valid, perfected, enforceable and unavoidable liens on the Petition Date.  DIP Collateral that is of a type that would be ABL Priority Collateral (as defined the DIP Intercreditor Agreement) and the proceeds and products thereof shall in each case, constitute "DIP ABL Priority Collateral," DIP Collateral that is of a type that would be Term Loan Priority Collateral (as defined in the DIP Intercreditor Agreement) and the proceeds and products thereof and shall, in each case, constitute "DIP Term Loan Priority Collateral"~~.~~."  For the avoidance of doubt, nothing in this Order shall be deemed to be a final determination of the scope of the collateral that secures the DIP Term Loan Obligations or otherwise grant relief in respect of the DIP Term Loan on a final basis.

6.    DIP Lien Priority.  The DIP ABL Liens ~~securing the DIP ABL Obligations (the "DIP ABL Liens")~~ are valid, automatically perfected, non-~~-~~avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP ABL Liens shall be subject to the Carve Out, and shall otherwise be junior only to: (i) as to the DIP ABL Priority Collateral, Permitted Prior Liens; and (ii) as to the DIP

Term Loan Priority Collateral, (A) Permitted Prior Liens; (B) the DIP Term Loan Liens (as defined below);, (C) the Prepetition Term Loan Liens; and (D) the Prepetition Term Loan Adequate Protection Liens.  The DIP Liens securing the DIP Term Loan Obligations (the "DIP Term Loan Liens") are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Term Loan Collateral, except that the DIP Term Loan Liens shall be (1) subject to the Carve Out and (2) shall otherwise be junior only to:  (i) as to the DIP Term Loan Priority Collateral, Permitted Prior Liens; and (ii) as to the DIP ABL Priority Collateral, (A) Permitted Prior Liens; (B) the DIP ABL Liens; (C) the Prepetition ABL Liens; (D) the Prepetition ABL Adequate Protection Liens; and (E) the Canadian Intercompany Superpriority Administrative Claims.  Other than as set forth herein or in the DIP Documents, the DIPOther than as set forth herein or in the DIP ABL Documents, the DIP ABL Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.  The DIP ABL Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP ABL Liens.  Notwithstanding anything herein to the contrary, none of the Prepetition Term Loan Adequate Protection Liens or DIP Term Loan Liens shall exist with respect to any ABL Canadian Collateral (as defined by the DIP Intercreditor Agreement).

7.    <u>Superpriority Claims</u>.  ~~Upon entry of this~~ The DIP ABL Agent and DIP ABL Secured Parties were pursuant to the Interim Order~~, the DIP Agents~~ and ~~DIP Lenders are~~ hereby are granted, on a final basis (as of the date of entry of the Interim Order), pursuant to Section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "<u>DIP</u> ABL <u>Superpriority Claims</u>") for all DIP ABL Obligations (including Last Out DIP Obligations):  (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 506(c) (in regard to surcharge claims against secured creditors other than the Prepetition ABL Secured Parties), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law~~.~~; provided that the DIP ABL Agent and DIP ABL Secured Parties shall first use reasonably commercial efforts to seek recourse against the DIP ABL Priority Collateral before exercising any remedies against proceeds of avoidance actions.  Notwithstanding the foregoing, the DIP ABL Superpriority Claims and the "DIP Superpriority Claims" (as defined in the Interim Order) of the DIP Term Loan Parties shall be *pari passu* with each other, without otherwise impairing the lien priorities as set forth herein, and subject to the terms of the DIP Intercreditor Agreement and Carve Out (including the caps and limitations therein).

8.      No Obligation to Extend Credit.  Except as required to fund the Carve Out
in accordance with the terms of this Final Order, the DIP ~~Agents~~ABL Agent and DIP
~~Lenders~~ABL Secured Parties shall have no obligation to make any loan or advance under the DIP
ABL Documents unless all of the conditions precedent to the making of such extension of credit
or the issuance, amendment, renewal, or extension of such letter of credit or bankers' acceptance
under the DIP ABL Documents and this ~~Interim~~Final Order have been satisfied in full or waived
by the DIP ABL Agent (in its sole discretion~~, DIP Term Loan Agent (acting at the direction of~~
~~the Required DIP Term Loan  Lenders), as applicable, and~~) in accordance with the terms of the
DIP ABL Credit Agreement ~~and the DIP Term Loan Credit Agreement, as applicable~~.

9.      Use of Proceeds of DIP ~~Facilities.   From and after the Petition Date,~~
~~the~~ABL Credit Facility.  The Debtors shall continue to use advances of credit under the DIP
~~Facilities~~ABL Credit Facility, in accordance with the Approved Budget (subject to such
variances as permitted in the DIP ~~Agreements~~ABL Credit Agreement), only for the purposes
specifically set forth in th~~is~~e Interim Order, this Final Order and the DIP ABL Documents, and in
compliance with the terms and conditions in the Interim Order, this ~~Interim~~Final Order and the
DIP ABL Documents.

10.     No Monitoring Obligation.  No DIP ~~Lender~~Secured Party or DIP ABL
Agent shall have any obligation nor responsibility to monitor any DIP Party's use of DIP
~~Facilities~~ABL Credit Facility, and each DIP ~~Lender~~ABL Secured Party or DIP ABL Agent may
rely upon each DIP Party's representation that the use of the DIP ~~Facilities~~ABL Credit Facility at
any time is in accordance with the requirements of th~~is~~e Interim Order, this Final Order, the DIP
ABL Documents and Bankruptcy Rule 4001(c)(2).

**Authorization to Use Cash Collateral**

11.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this ~~Interim~~Final Order, the DIP ~~Facilities~~ABL Credit Facility and the DIP ABL Documents and in accordance with the Approved Budget (subject to variances as permitted in the DIP ~~Agreements~~ABL Credit Agreement), the Debtors were authorized pursuant to the Interim Order and hereby are authorized to use ABL Cash Collateral until ~~each applicable~~the Termination Date. Nothing in the Interim Order or this ~~Interim~~Final Order shall authorize the disposition of any assets of the Debtors outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this ~~Interim~~Final Order (including with respect to the Carve Out), the DIP ~~Facilities~~ABL Credit Facility, the DIP ABL Documents, and in accordance with the Approved Budget (subject to such variances as permitted in the DIP ~~Agreements~~Credit Agreement). All ABL Cash Collateral ~~consisting of ABL Priority Collateral~~ shall be applied to reduce the Prepetition ABL Obligations (if any) then to reduce the DIP ABL Obligations as set forth in the DIP ABL Credit Agreement. (with a contemporaneous increase in availability under the DIP ABL Credit Facility, subject to the other terms, conditions, and provisions of the DIP ABL Credit Agreement).

12.     Adequate Protection Liens.  Subject to the terms of the DIP Intercreditor Agreement and the Carve Out and solely to the extent of any Diminution in Value:

(i)     *Prepetition ABL Adequate Protection Liens*.  Pursuant to Sections 361, 363(e)), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Secured Parties and the Prepetition ABL Obligations in the Prepetition Collateral solely against any Diminution in Value of such interests in the Prepetition Collateral, the DIP ABL Loan Parties ~~hereby grant~~granted pursuant to the Interim Order and hereby grant

(as of the date of entry of the Interim Order) to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Secured Parties and the Prepetition ABL Obligations, continuing valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP ABL Collateral (the "Prepetition ABL Adequate Protection Liens")." or "Adequate Protection Liens").

(ii)    ~~Prepetition Term Loan Adequate Protection Liens.  Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Loan Parties hereby grant to the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Secured Parties continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Term Collateral (the "Prepetition Term Loan Adequate Protection Liens," and together with the Prepetition ABL Adequate Protection Liens, the "Adequate Protection Liens").~~

(ii)    [Reserved]

13.    Priority of Adequate Protection Liens.  Subject to the terms of the DIP Intercreditor Agreement:

(i)    The Prepetition ABL Adequate Protection Liens shall be subject to the Carve Out (and the caps and limitations set forth therein).  The Prepetition ABL Adequate Protection Liens shall otherwise be junior only to:  (a) with respect to the DIP ABL Priority Collateral (~~other than to the extent securing the Last Out Loan Obligations) (~~1) Permitted Prior Liens; (2) the DIP ABL Liens; and (3) the Prepetition ABL Liens; and (b) with respect to the DIP Term Loan Priority Collateral (1) Prepetition Term Loan Permitted Prior Liens; (2) the DIP Term

Loan Liens; (3) the Prepetition Term Loan Liens; (4) the Prepetition Term Loan Adequate Protection Liens; (5) the DIP ABL Liens; and (6) the Prepetition ABL Liens.  ~~The Prepetition ABL Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP ABL Loan Parties' assets.~~

> (i)    ~~The Prepetition Term Loan Adequate Protection Liens shall be subject to the Carve Out and shall otherwise be junior only to:  (a) with respect to the DIP ABL Priority Collateral (1) Permitted Prior Liens; (2) the DIP ABL Liens; (3) the Canadian Intercompany Superpriority Administrative Claims (4) the Prepetition ABL Liens; (5) the Prepetition ABL Adequate Protection Liens; (6) the DIP Term Loan Liens; and (7) the Prepetition Term Loan Liens; and (b) with respect to the DIP Term Loan Priority Collateral (1) Permitted Prior Liens; (2) the DIP Term Loan Liens; and (3) the Prepetition Term Loan Liens.  The Prepetition Term Loan~~_The Prepetition ABL_ Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP ~~Term~~_ABL_ Loan Parties' assets.

> (ii)    Except as provided herein, the _Prepetition ABL_ Adequate Protection Liens shall not be made subject to or _pari passu_ with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  The _Prepetition ABL_ Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be _pari passu_ with or senior to the Prepetition _ABL_ Liens or the _Prepetition ABL_ Adequate Protection Liens.

48

14.    <u>Adequate Protection Superpriority Claims</u>.  Subject to the terms of the DIP Intercreditor Agreement and the Carve Out and solely to the extent of any Diminution in Value:

(i)    *Prepetition ABL Superpriority Claim*.  As further adequate protection of the interests of the Prepetition ABL Secured Parties and Prepetition ABL Obligations in the Prepetition Collateral <u>solely</u> against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL <u>Secured</u> Parties and Prepetition ABL Obligations, <u>was granted pursuant to the Interim Order and</u> is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim <u>solely to the extent of any Diminution in Value</u> in each of the Cases and any Successor Cases (the "<u>Prepetition ABL Superpriority Claim</u><u>" or "Adequate Protection Superpriority Claims</u>").

(ii)    *Prepetition Term Loan Superpriority Claim.  As further adequate protection of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral (other than the ABL Canadian Collateral) against any Diminution in Value of such interests in the Prepetition Collateral (other than the ABL Canadian Collateral), (x) the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Secured Parties, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (other than in the Case of the Canadian Borrower) (the "Prepetition Term Loan Superpriority Claim," and together with the Prepetition ABL Superpriority Claim, the "Adequate Protection Superpriority Claims").*

(ii)    [Reserved]

15.    <u>Priority of the Adequate Protection Superpriority Claims</u>.  Except as set forth herein, ~~the Adequate Protection~~including with respect to the Canadian Intercompany Superpriority Administrative Claims, the Prepetition ABL Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (solely with respect to surcharge claims against secured creditors other than the Prepetition ABL Secured Parties), 507(a), ~~,~~507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code; *provided*, *however*, that the ~~Adequate Protection~~Prepetition ABL Superpriority Claims and the Prepetition Term Loan Superpriority Claims shall be *pari passu* with each other (in each of the Cases other than the ~~Case of the Canadian Borrower~~Recognition Proceedings, which shall be limited to ~~Adequate Protection~~Prepetition ABL Superpriority Claims in favor of the ABL Secured Parties), without otherwise impairing the lien priorities as set forth herein, and subject to the Carve Out and junior to the DIP ABL Superpriority Claims.

16.    <u>Adequate Protection Payments and Protections for Prepetition ABL Secured Parties</u>.  As further adequate protection and solely to the extent of any Diminution in Value and subject to the Carve Out (the "Prepetition ABL Adequate Protection Payments" or "Adequate Protection Payments"), the Debtors were pursuant to the Interim Order and hereby are authorized and directed to provide adequate protection to the (A) Prepetition ABL Secured Parties and Prepetition ABL Obligations in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of (i) interest payable monthly, at the default rate (other than on account of Last Out Loans and Last Out Obligations,

provided that the Last Out Loans and Last Out Obligations shall accrue interest at the default rate as part of the Last Out Loans and Last Out Obligations), and (ii) principal due under the Prepetition ABL Documents (other than on account of Last Out Loans and Last Out Obligations), subject to the rights preserved in paragraph 42 below, and (iii) payment of fees and expenses as provided in the DIP ABL Credit Agreement subject to the terms of this Final Order; *provided,* that Prepetition ABL Adequate Protection Payments with respect to clause (i) above shall be paid monthly, upon entry of this Final Order, and all accrued and unpaid Prepetition ABL Adequate Protection Payments for the period prior to the entry of this Final Order shall be paid, in cash, upon entry of this Final Order.

17.    [RESERVED]

17.    [Reserved].

18.    <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition ABL Secured Parties and Prepetition SecuredABL Obligations under the Interim Order or hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.  The receipt by the Prepetition ABL Secured Parties and Prepetition SecuredABL Obligations of the adequate protection provided in the Interim Order or herein shall not be deemed an admission that the respective interests of the Prepetition ABL Secured Parties and Prepetition SecuredABL Obligations are adequately protected.  Further, the Interim Order and this InterimFinal Order shall not prejudice or limit the rights of the Prepetition ABL Secured Parties and Prepetition SecuredABL Obligations to seek additional relief with respect to the use

of Cash Collateral or for additional adequate protection or the rights of any party to oppose such requests for additional relief.

**Additional Provisions Common to DIP Financing and Use of ABL Cash Collateral**

19.      Amendment of the DIP ABL Documents.  The DIP ABL Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if:  (a) the amendment, modification, or supplement is in accordance with the DIP ABL Documents, and (b) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification, or supplement is provided to counsel to each of DIP Term Loan Agent, the other DIP Agents, a Creditors' Committee (if appointed) or and any other committee appointed under section 1102 or 1104 of the Bankruptcy Code, and the U.S. Trustee (collectively, the "Notice Parties");") not less than three (3) business days in advance in writing; and (c) the amendment, modification, or supplement is filed with the Court; *provided*, *however*, that neither consent of the Notice Parties nor approval of the Court will be necessary to effectuate any such amendment, modification or supplement and provided further that such amendment, modification, or supplement shall be without prejudice to the right of any party in interest to be heard; provided, further, that no such amendment, modification, or supplement shall modify the DIP ABL Documents in a manner that is materially different from that approved by the Court.

20.      Budget Maintenance.  The use of borrowings and letters of credit under the DIP Facilities ABL Credit Facility shall be in accordance with the Approved Budget (subject to such variances as permitted in the DIP Agreements ABL Credit Agreement) and the terms and conditions set forth in the DIP Documents ABL Document.  The Approved Budget and any modification to, or amendment or update of, the Approved Budget shall be subject to the

reasonable approval of, and in form and substance reasonably acceptable to the ~~applicable DIP Agents and the Required DIP Term Loan Lenders in accordance with the applicable DIP Documents~~DIP ABL Agent in accordance with the DIP ABL Documents and DIP Term Loan Agent in accordance with the DIP Term Loan Documents.   The Debtors will promptly provide the Creditors' Committee with copies of the Approved Budget and any modifications, amendments, or updates thereto that have been approved by the DIP ABL Agent in accordance with the DIP ABL Documents and DIP Term Loan Agent in accordance with the DIP Term Loan Documents.   No amendment or modifications as to the DIP ABL Documents shall be made unless the Creditors' Committee is provided with three (3) business days' prior notice.   If an objection to the proposed modifications or amendments is expressed by the Creditors' Committee in writing within such time period, then the parties agree to seek an expedited hearing to resolve the objection if it cannot be resolved amongst themselves.

21.    <u>Budget Compliance</u>.  The use of borrowings and letters of credit under the DIP ~~Facilities~~ABL Credit Facility shall be in accordance with the Approved Budget (subject to such variances as permitted in the DIP ~~Agreements~~ABL Credit Agreement) and the DIP ABL Documents; *provided*, *however*, that, in the case of the fees, costs and expenses of the DIP ~~Agents~~ABL Agent, the Debtors shall pay such fees, costs and expenses in accordance with the DIP ABL Documents and this ~~Interim~~Final Order without being limited by the Approved Budget.

22.    <u>Modification of Automatic Stay</u>.   The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code was, pursuant to the Interim Order, and is hereby modified as necessary to effectuate all of the terms and provisions of th~~is~~e Interim Order and this Final Order, including, without limitation, to:  (a) permit the Debtors to grant on a final basis the DIP ABL Liens, (as of the date of entry of the Interim Order), Prepetition ABL Adequate

Protection Liens, (as of the date of entry of the Interim Order), DIP ABL Superiority Claims, and Adequate Protection Prepetition ABL Superiority Claims; (b) permit the Debtors on a final basis to perform such acts as the DIP Agents ABL Agent, DIP Lenders ABL Secured Parties, or the Prepetition Agents ABL Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors on a final basis to incur all liabilities and obligations to the DIP Agents ABL Agent, DIP Lenders ABL Secured Parties, and the Prepetition ABL Secured Parties under the DIP ABL Documents, the DIP Facilities and this ABL Credit Facility, the Interim Order, and this Final Order; and (d) authorize the Debtors on a final basis to pay, and the DIP Agents ABL Agent, the DIP Lenders ABL Secured Parties, and the Prepetition ABL Secured Parties to retain and apply, payments made in accordance with the terms of this e Interim Order, this Final Order, and the DIP ABL Documents.

23.    Perfection of ABL DIP Liens and Prepetition ABL Adequate Protection Liens. This e Interim Order and this Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted therein and herein, including the DIP ABL Liens and the Prepetition ABL Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-–bankruptcy law) the DIP ABL Liens, the Prepetition ABL Adequate Protection Liens, or to entitle the DIP Agents ABL Agent, the DIP Lenders ABL Secured Parties, the DIP ABL Obligations, the Prepetition Secured Parties and the Prepetition ABL Secured Parties, and the Prepetition ABL Obligations to the priorities granted herein (subject to the DIP Intercreditor Agreement and, Existing Participation

Agreement and Participation Agreement, as applicable).  Notwithstanding the foregoing, the DIP ~~Agents~~ABL Agent and the Prepetition ~~Agents~~ABL Agent each are authorized to file, as in its reasonable discretion it deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP ABL Liens and the Prepetition ABL Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP ABL Liens, or the Prepetition ABL Adequate Protection Liens.  The Debtors were, pursuant to the Interim Order, and hereby are authorized and directed to execute and deliver reasonably promptly to the DIP ~~Agents~~ABL Agent and Prepetition ~~Agents~~ABL Agent all such financing statements, mortgages, notices and other documents as the DIP ~~Agents~~ABL Agent and Prepetition ~~Agents~~ABL Agent may reasonably request; provided that nothing herein shall require the Debtors to obtain any required consent of third parties to any such financing statements, mortgages, notices, and other documents.  The DIP ~~Agents~~ABL Agent and the Prepetition ~~Agents~~ABL Agent, each in its discretion, may file a photocopy of this ~~Interim~~Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.  To the extent that any Prepetition ABL Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition ABL Documents or is listed as loss payee, lenders' loss payee, or additional insured under any of the Debtors' insurance policies, ~~each~~ DIP ABL Agent

55

(as applicable) shall also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable.  The Prepetition AgentsABL Agent shall serve as agents for the DIP AgentsABL Agent for purposes of perfecting the DIP Agents'ABL Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this InterimFinal Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

24.    Application of Proceeds of Collateral.  Subject to the Carve Out, as a condition to the entry of the DIP ABL Documents, the extension of credit under the DIP FacilitiesABL Credit Facility and the authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply all net proceeds of DIP ABL Priority Collateral that is sold in the ordinary course or liquidated as follows: (a) with respect to DIP ABL Priority Collateral (i) *first*, to costs and expenses of the DIP ABL Agent; (ii) *second*, to permanently reduce the Prepetition ABL Obligations (other than the Last Out Obligations); (iii) *third*, to reduce the DIP ABL Obligations (including the Last Out DIP Obligations or Last Out Obligations, as applicable, provided that any payment to the Put Purchasers on account of the Last Out DIP Obligations or Last Out Obligations is subject to the rights of the Creditors' Committee set forth in paragraph 42 and subject to occurrence of the Disinterested Director's Determination and the Challenge Period Termination Date for claims and causes of action against the Put Purchasers solely as it relates to the Put Purchaser's interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement as set forth in paragraph 42 of this Final Order or further Court Order), (iv) *fourth*, to the repayment of the Canadian Intercompany Superpriority Administrative Claims, and (v) after indefeasible repayment in full in cash of the Prepetition ABL Obligations and the DIP ABL

Obligations (including, in each case, provision for contingent obligations), the termination of the DIP ABL Credit Facility and all commitments thereunder, and "payment in full" of all other DIP ABL Obligations as provided under the DIP ABL Credit Agreement and repayment in full of the Canadian Intercompany Superpriority Administrative Claims, (x) to costs and expenses of the DIP Term Loan Agent, (y) to reduce the DIP Term Loan Obligations, and (z) then (if and to the extent authorized by the Court) to reduce the Prepetition Term Loan Obligations; and (b) with respect to DIP Term Loan Priority Collateral, (i) *first*, to costs and expenses of the DIP Term Loan Agent; (ii) *second*, to reduce the DIP Term Loan.  The reduction of the Prepetition ABL Obligations; (iii) *third*, to reduce the Prepetition Term Loan Obligations (but only if and when authorized by the Court), and (iv) after indefeasible repayment in full in cash of the and Prepetition Term Loan Obligations and the DIP Term Loan Obligations (including, in each case, provision for contingent obligations), (w) to costs and expenses of the DIP ABL Agent, (x) to permanently reduce the Prepetition ABL Obligations, (y) to reduce the DIP ABL Obligations (including the Last Out DIP Obligations or Last Out Obligations, as applicable), and (z) to the repayment of the Canadian Intercompany Superpriority Administrative Claims.  The reduction of the Prepetition Secured Obligations is subject to the preservation of rights provided in paragraph 42 herein and to the deemed modifications to the DIP Agreements and the DIP Documents that are set forth in this Interim Order.  Notwithstanding anything herein, or in the Prepetition ABL Documents or DIP ABL Documents, (ia) all ABL Priority Collateral (other than ABL Canadian Collateral) of the Debtors (other than the Canadian Borrower) to be applied to the Prepetition ABL Obligations and DIP ABL Obligations as provided in this Paragraph 24 shall be applied first to reduce the Prepetition ABL Obligations and DIP ABL Obligations of the Debtors other than the Canadian Borrower; and thereafter to the remaining DIP ABL Obligations of the

Canadian Borrower, if any; and (iib) all ABL Canadian Collateral to be applied to the Prepetition

ABL Obligations and DIP ABL Obligations as provided in this Paragraph 24 shall be applied

first to reduce the Prepetition ABL Obligations of the Canadian Borrower, then to the direct DIP

ABL Obligations of the Canadian Borrower, and then to remaining Prepetition ABL Obligations

and DIP ABL Obligations of the Debtors, if any, but only to the extent not paid under clause (ia)

above and after all ABL Priority Collateral (other than ABL Canadian Collateral) of the Debtors

(other than the Canadian Borrower) has been applied.

25.    Protections of Rights of DIP AgentsABL Agent, DIP LendersABL Secured

Parties and Prepetition ABL Secured Parties.

(i)    Unless the DIP ABL Agent and the Prepetition ABL Agent shall

have provided their prior written consent or all DIP ABL Obligations and all Prepetition ABL

Obligations have been indefeasibly paid in full in cash and all commitments thereunder are

terminated, there shall not be entered in any of these Cases or any Successor Cases (including

any order confirming any plan of reorganization or liquidation) that authorizes any of the

following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a

security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral

or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that

is superior to or *pari passu* with the DIP ABL Liens, the DIP ABL Superpriority Claims, the

Prepetition ABL Liens, the Prepetition ABL Adequate Protection Liens, and/or the Prepetition

ABL Superpriority Claims, other than in connection with the Canadian Intercompany

Superpriority Administrative Claims or the Administration Charge (as defined in the DIP ABL

Credit Agreement); (ii) the use of Cash Collateral for any purpose other than as permitted in the

DIP ABL Documents, the Interim Order and this Final Order and the Approved Budget (subject

to such variances as permitted in the DIP ABL Credit Agreement), the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise, or (iii) any modification of any of the DIP ABL Agent's, DIP ABL Secured Parties', or the Prepetition ABL Secured Parties' rights under the Interim Order, this Final Order, the DIP ABL Documents or the Prepetition ABL Documents with respect any DIP ABL Obligations or Prepetition ABL Obligations.

(i)(ii)    The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will, whether or not the DIP ABL Obligations have been indefeasibly paid in full in cash, (i) maintain books, records, and accounts to the extent and as required by the DIP ABL Documents, (ii) reasonably cooperate with, consult with, and provide to the DIP AgentsABL Agent and the DIP LendersABL Secured Parties all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the DIP AgentsABL Agent or the DIP LendersABL Secured Parties) to provide under the DIP ABL Documents or the provisions of thise Interim Order, this Final Order, or as reasonably requested by the DIP AgentsABL Agent or DIP LendersABL Secured Parties, in each case as and to the extent required by the DIP ABL Documents, (iii) upon reasonable advance notice, permit consultants, advisors, and other representatives (including third party representatives) of each of the DIP AgentsABL Agent, the DIP LendersABL Secured Parties and the Prepetition AgentsABL Agent to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective

59

affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors as and to the extent required by the DIP ABL Documents and/or the Prepetition ABL Documents, (iv) permit the DIP Agents ABL Agent, the DIP Lenders ABL Secured Parties, and the Prepetition Agents ABL Agent, and their respective consultants, advisors and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, in each case as and to the extent required by the DIP ABL Documents, and (v) upon reasonable advance notice, permit the DIP Agents ABL Agent, the DIP Lenders ABL Secured Parties and the Prepetition Agents ABL Agent to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and Prepetition Collateral in each case as and to the extent required by the DIP Documents ABL Documents. The Creditors' Committee shall receive any financial reporting required to be provided by the Debtors contemporaneously with the provision of such reports to the DIP ABL Secured Parties or Prepetition ABL Secured Parties.

(iii)    No Debtor shall object to any DIP ABL Secured Parties' or any Prepetition ABL Secured Parties' credit bidding up to the full amount of the applicable outstanding DIP ABL Obligations and Prepetition ABL Obligations (as applicable), in each case, including any accrued interest and expenses, in any sale of any DIP Collateral or Prepetition Collateral, as applicable, and whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under Section 725 of the Bankruptcy Code, with the approval of the Canadian Court in respect of any sale of assets of the Canadian Loan Parties, or otherwise, subject, in each case, (w) to the rights and duties of the parties under the DIP

60

Intercreditor Agreement, (x) to a Challenge (as defined herein), (y) to the provision of consideration sufficient to pay in full in cash any senior liens on the collateral that is subject to the credit bid, and (z) to the extent that any assets of the Canadian Loan Parties are to be conveyed, such conveyance is acceptable to the Information Officer (as defined in the DIP ABL Credit Agreement).

25.26.  Proceeds of Subsequent Financing.  IfExcept with respect to the DIP Term Loan Obligations contemplated by the DIP Motion, if the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c)), or 364(d) or in violation of the DIP ABL Documents at any time prior to the indefeasible repayment in full of all DIP ABL Obligations and Prepetition SecuredABL Obligations, and the termination of the DIP Agents'ABL Agent's and DIP Lenders'ABL Secured Parties' obligation to extend credit under the DIP FacilitiesABL Credit Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP AgentsABL Agent to be applied in accordance with this InterimFinal Order, the DIP ABL Documents and the DIP Intercreditor Agreement.

26.27.  Cash Collection.  From and after the date of the entry of thise Interim Order, the Debtors shall continue to maintain cash management in accordance with the DIP ABL Documents, as modified by this Final Order.  Unless otherwise agreed to in writing by the DIP AgentsABL Agent and Prepetition AgentsABL Agent, the Debtors shall maintain no accounts except those identified in any interim and/or final order granting the *Debtors' Motions for Entry*

*of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, and (II)~ Granting Related Relief* (the "<u>Cash Management Order</u>").  The Debtors and the financial institutions where the Debtors' maintain deposit accounts (as identified in any Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such deposit accounts upon receipt of any direction to that effect from the ~~applicable DIP Agent in accordance with the DIP Documents.  Until such time as Debtors are able to establish a deposit account at a bank other than Wells Fargo Bank, National Association to serve as the TL Deposit Account (as defined in the DIP Term Loan Credit Agreement), the account established for such purpose at Wells Fargo Bank, National Association shall constitute such TL Deposit Account and shall be subject to a fully perfected first priority lien and security interest in favor of the DIP Term Loan Agent as fully as if it were subject to a control agreement in favor of the DIP Term Loan Agent. For the avoidance of doubt, any TL Deposit Account shall not be subject to any liens or security interests other than liens and security interests in favor of the DIP Term Loan Agent.~~DIP ABL Agent in accordance with the DIP ABL Documents.

~~27.~~28.  Maintenance of DIP Collateral.  Until the indefeasible payment in full of all DIP ABL Obligations (including "payment in full" of the DIP ABL Obligations as provided under the DIP ABL Credit Agreement), all Prepetition ~~Secured~~ABL Obligations, and the termination of the DIP ~~Agents~~ABL Agent's and the DIP ~~Lenders'~~ABL Secured Parties' obligation to extend credit under the DIP ~~Facilities~~ABL Credit Facility, the Debtors shall: (a) insure the DIP Collateral as required under the DIP ABL Documents or the Prepetition ABL Documents, as applicable; and (b) maintain the cash management system in effect as of the

Petition Date, as modified by any Cash Management Order which has first been agreed to by the DIP ~~Agents~~ABL Agent or as otherwise required by the DIP ABL Documents.

~~28.~~29.  Disposition of DIP Collateral.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP ABL Priority Collateral or Prepetition ABL Priority Collateral other than in the ordinary course of business without the prior written consent of the DIP ABL Agent and Prepetition ABL Agent, except as otherwise provided for in the DIP ABL Documents, and subject to the DIP Intercreditor Agreement.  ~~The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Term Loan Priority Collateral or Prepetition Term Loan Priority Collateral other than in the ordinary course of business without the prior written consent of the DIP Term Loan Agent (acting at the direction of the Required Term DIP Lenders) and the Prepetition Term Loan Agent (acting at the direction of the "Required Lenders" (as defined in the Prepetition Term Loan Credit Agreement) (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Term Loan Agent, DIP Term Loan Lenders, or Prepetition Term Loan Secured Parties), except as otherwise provided for in the DIP Term Loan Documents, and subject to the DIP Intercreditor Agreement.~~

~~29.~~30.  Termination Date.  On the ~~applicable termination date~~Termination Date, (a) all ~~applicable~~ DIP ABL Obligations shall be immediately due and payable, all commitments to extend credit under the ~~applicable~~ DIP ~~Facilities~~ABL Credit Facility will terminate, other than as required in paragraph 39 with respect to the Carve Out, and (b) all authority to use Cash Collateral shall cease.  For the purposes of this ~~Interim~~Final Order, ~~the "DIP Term Loan Termination Date" shall mean the date the commitments are terminated pursuant to the terms of the DIP Term Loan Credit Agreement; and~~ the "DIP ABL Termination Date" shall mean the date

the commitments are terminated pursuant to the terms of the DIP ABL Credit Agreement, including with respect to any cross termination rights with respect to the termination of the DIP Term Loan Credit Agreement in accordance with its terms.

30.31.  Events of Default.  The occurrence of any of the following events, unless waived by the DIP AgentsABL Agent in writing and in accordance with the terms of the applicable DIP ABL Documents, shall constitute an event of default (collectively, the "Events of Default"):  (a)(i) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this InterimFinal Order or any Canadian Recognition Order, including, without limitation, failure to make any payment under this Interim Order when due, (ii) the failure of the Debtors to obtain on or before the date that is 3 Business Days following the entry of this Interim Order, the Canadian Initial Recognition Order, the Canadian Recognition Order, and the Canadian Supplemental Order, in form and substance satisfactory to the DIP Agents, and (iii) the failure of the Debtors to obtain, on or before the date that is 40 days following the entry of this Interim Order, the entry the Final Order, on the terms and conditions contemplated by the DIP ABL Loan Documents and DIP Term Loan Documents and otherwise in form and substance satisfactory to the DIP Agents;  (b) subject to the qualifications and modifications set forth in this Interim Order, the occurrence of an "Event of Default" under, and as defined in, the DIP ABL Credit Agreement or the DIP Term Loan Credit Agreement, (c) entry of an order in these Cases that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the

~~Prepetition Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Interim Order and the Approved Budget, (iii) the sale or other disposition of DIP Collateral without the reasonable consent of the applicable DIP Agents and the applicable Required DIP Lenders, (iv) the use of any insurance proceeds constituting DIP Collateral without the consent of the applicable DIP Agents and the applicable Required DIP Lenders, (v) any Debtor's incurrence of Indebtedness (as defined in the DIP ABL Credit Agreement or the DIP Term Loan Credit Agreement, as applicable) without the prior consent of the applicable DIP Agents and the applicable Required DIP Lenders, except to the extent permitted under the applicable DIP Agreements; or (vi) any modification of any of the DIP Agents', DIP Lenders', or the Prepetition Secured Parties' rights under this Interim Order, the DIP Documents or the Prepetition Documents with respect any DIP Obligations or Prepetition Secured Obligations~~ <u>Final Order when due, (b) the occurrence of an "Event of Default" under, and as defined in, the DIP ABL Credit Agreement, (c) any adverse modifications, amendments, or reversal of the Interim Order or this Final Order, and no such waiver shall be implied by any other action, inaction or acquiescence by any party</u>, (d) an order converting or dismissing any of the Cases, (e) an order appoint a chapter 11 trustee in the Cases, (f) an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3<u>)</u> and (4) of the Bankruptcy Code, and (g) a plan proposed by the Debtors or confirmation thereof that does not propose to indefeasibly repay the DIP <u>ABL</u> Obligations (other than the Last Out DIP Obligations) in full in cash, unless otherwise consented to by the DIP ~~Agents~~<u>ABL Agent</u>.

31.    [RESERVED]

32.    Milestones.  As a condition to the DIP ABL Credit Facility and the use of Cash Collateral, the Debtors shall comply with the case milestones set forth in the DIP Credit Agreement, as modified by the order approving the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadline, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Disclosure Statement and Plan Confirmation, and (III) Granting Related Relief* [Docket No 22], subject to waiver or extension on the terms set forth in the DIP ABL Credit Agreement.  For the avoidance of doubt, the terms herein with respect to any milestones shall after the date of this Final Order supersede any such language in the Interim Order.  As an additional milestone under the DIP ABL Credit Agreement, the Debtors shall obtain a final order in respect of the DIP Motion with respect to the DIP Term Credit Facility on or before July 19, 2019 (or such later date as DIP ABL Agent may agree in its sole discretion), on the terms and conditions contemplated by the DIP ABL Documents and otherwise in form and substance satisfactory to DIP ABL Agent.

32.33.  Rights and Remedies Upon Event of Default.  Immediately uponUpon the occurrence and during the continuation of an Event of Default under either the DIP ABL Documents or the DIP Term Loan Documents, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this InterimFinal Order and the Canadian Recognition Orders (a) eachthe DIP ABL Agent may declare (any such declaration shall be referred to herein as a "Termination Declaration") (1) all DIP ABL Obligations owing under the respective DIP ABL Documents to be immediately due and payable, (2) the termination, reduction, or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the respective DIP FacilitiesABL Credit Facility, (3) termination of the respective

DIP ABL Credit Facilitiesy and the respective DIP ABL Documents as to any future liability or obligation of the applicable DIP AgentsABL Agent and the DIP LendersABL Secured Parties, but without affecting any of the DIP ABL Liens or the DIP ABL Obligations, and (4) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice to the Borrowers; (b) interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP ABL Documents, and (c) either the DIP ABL Agent (in the case of Cash Collateral of proceeds of the DIP ABL Priority Collateral) or the DIP Term Loan Agent (in the case of Cash Collateral of proceeds of the DIP Term Loan Priority Collateral), or both, may declare a termination, reduction, or restriction on the ability of the Debtors to use ABL Cash Collateral (the date which is the earliest to occur of (i) any such date a Termination Declaration is delivered by either DIP ABL Agent or a "Termination Declaration" (as defined in the Interim Order) is delivered by DIP Term Loan Agent and (ii) the DIP ABL Termination Date or DIP Term Loan Termination Date (as applicable), shall be referred to herein as the "Termination Date"). The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the DIP AgentsTerm Loan Agent, counsel to athe Creditors' Committee (if appointed) orand any other committee appointed under section 1102 or 1104 of the Bankruptcy Code, and the U.S. Trustee. The automatic stay in the Cases otherwise applicable to the DIP AgentsABL Agent, the DIP LendersABL Secured Parties, and the Prepetition ABL Secured Parties is hereby modified so that seven (7) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period"), and except as otherwise ordered by the Court:"): (A) the applicable DIP ABL Agent and the DIP LendersABL Secured Parties shall be entitled to exercise their rights and remedies in accordance with the respective DIP ABL Documents and this, the Interim Order and this Final Order and shall be permitted to

satisfy the relevant DIP ABL Obligations, DIP Superpriority Claim and DIP ABL Liens, subject to the Carve Out, (B) the ~~applicable~~ Prepetition ABL Secured Parties shall be entitled to exercise their rights and remedies to satisfy the relevant Prepetition ABL Secured Obligations, ~~Adequate~~ Prepetition ABL Superpriority Claims, and Prepetition ABL Adequate Protection Liens, subject to and consistent with (i) the Carve Out, (ii) this ~~Interim~~Final Order, and (iii) the DIP Intercreditor Agreement. During the Remedies Notice Period, ~~none of~~unless otherwise ordered by the Court, the Debtors and/or the Creditors' Committee shall be entitled to seek an emergency hearing within the Remedies Notice Period on any basis and the DIP ~~Agents or~~ABL Agent shall consent to such an emergency hearing. During the Remedies Notice Period, DIP ~~Lenders~~ABL Agent or DIP ABL Secured Parties shall not be required to consent to the use of any Cash Collateral or provide any loans or other financial accommodations under the DIP ~~Facilities.~~ABL Credit Facility other than for the payment of accrued and unpaid employee wages and benefits otherwise payable in the ordinary course and in accordance with the Approved Budget and subject to paragraph 39 and availability under the DIP ABL Credit Agreement. Unless the Court orders otherwise, the automatic stay, as to all of the DIP ~~Agents~~ABL Agent, DIP ~~Lenders~~ABL Secured Parties, and Prepetition ABL Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order~~, in which event.~~ Upon expiration of the Remedies Notice Period, the DIP ~~Agents~~ABL Agent, DIP ~~Lenders~~ABL Secured Parties, and the Prepetition ABL Secured Parties shall be permitted to exercise all remedies set forth herein, in the DIP ABL Documents, the Prepetition ABL Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with the DIP Intercreditor Agreement ~~and,~~ Existing Participation Agreement, and Participation Agreement, as applicable.

33.34.  Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Final Order.  The DIP Agents, DIP Lenders, ABL Agent and the Prepetition DIP ABL Secured Parties have acted in good faith in connection with this Interim Order and this Final Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.  Based on the findings set forth in this Interim Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order or this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agents ABL Agent, the DIP Lenders, the DIP Obligations, Prepetition ABL Secured Parties, and the Prepetition Secured DIP ABL Obligations are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby previously or hereby authorized or created.  Notwithstanding the foregoing, any provisions or findings in this paragraph as applied to the Put Purchasers are solely with respect to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement and subject to and only effective upon the Disinterested Director's Determination and the Challenge Period Termination Date and subject to the rights of the Creditors' Committee set forth in paragraph 42.

34.35.  DIP and Other Expenses.  The Debtors are authorized and directed to pay all  reasonable and documented fees and expenses of (x) the DIP Agents ABL Agent and DIP Lenders ABL Secured Parties in connection with the DIP Facilities ABL Credit Facility, as provided in the DIP ABL Documents (subject to applicable limitations on the DIP Parties'

obligations to pay such amounts in the DIP ABL Documents), whether or not the transactions contemplated hereby are consummated, and (y) the Prepetition ~~Agents~~ABL Agent and Prepetition ABL Secured Parties (including the fees and expenses of counsel), as provided in the applicable Prepetition ABL Document, subject to the terms of this paragraph. Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the DIP ~~Agents~~ABL Agent, the DIP ~~Lenders~~ABL Secured Parties, the Prepetition ABL Agent, and the Prepetition ~~Agents~~ABL Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines. No attorney or advisor to the DIP ~~Agents~~ABL Agent, DIP ~~Lenders~~ABL Secured Parties, Prepetition ABL Agent, or Prepetition ~~Agents~~ABL Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to (x) the DIP ~~Agents or DIP Lenders in connection with or with respect to the DIP Facilities, or (y) the Prepetition Secured Parties in connection with or with respect to the Prepetition Secured Facilities, are, in each case, hereby approved in full~~ABL Agent or DIP ABL Secured Parties in connection with or with respect to the DIP ABL Secured Parties, or (y) the Prepetition ABL Secured Parties in connection with or with respect to the Prepetition ABL Credit Facility, are, in each case, hereby approved in full, subject to the provisions of this paragraph, provided, however, that any fees or expenses payable to the Put Purchasers shall not be paid until the earlier of (i) substantial consummation of a plan or (ii) further Court order. No fees or expenses of the DIP ABL Secured Parties, DIP ABL Agent, or Prepetition ABL Secured Parties shall be paid prior to the provision of a monthly statement or invoice (which may be presented in summary form and/or redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney-work product, or

any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney-work product doctrine) to counsel for the Creditors' Committee and the Office of the United States Trustee (hereinafter "Lender Expense Notice Parties").  Any Lender Expense Notice Party shall have ten (10) days after submission of such invoice to assert an objection to payment of the amounts sought in the subject invoice.  Provided no objection has been raised by any such Lender Expense Notice Party(ies) within the time period provided for herein, the Debtors (or DIP ABL Agent, as applicable) shall be authorized without further order of the Court to pay such invoice. In the event a Lender Expense Notice Party(ies) asserts an objection within the time period provided for herein, the Debtors (or DIP ABL Agent, as applicable) shall be authorized without further order of the Court to pay the undisputed portion of such invoice and any dispute with regard to amounts objected to shall be resolved by the Court.

35.36.  Budget.  The Approved Budget was approved pursuant to the Interim Order and the Budget attached hereto as **Exhibit A** hereby is approved on an interim basis and the proceeds of the DIP FacilitiesABL Credit Facility and Cash Collateral under thise Interim Order and Final Order shall be used by the Debtors in accordance with the Approved Budget (subject to such variances as permitted in the DIP Agreements), this ABL Credit Agreement), the Interim Order, this Final Order, and the DIP ABL Documents and to fund the Carve Out, subject to the terms and limitations provided in paragraph 39 below.  None of the DIP Lenders'ABL Secured Parties' or DIP Agents'ABL Agent's consent (if any) to, or acknowledgement of, the Approved Budget shall be construed as consent to use the proceeds of the DIP FacilitiesABL Credit Facility or Cash Collateral beyond the respective maturity dates set forth in the DIP ABL

Documents, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

36.37.  Indemnification.  The Debtors shall indemnify and hold harmless the DIP AgentsABL Agent and the DIP Lenders ABL Secured Parties in accordance with the terms and conditions of the DIP AgreementsABL Credit Agreement.  Notwithstanding the foregoing, any provisions in this paragraph as applied to the Put Purchasers are solely with respect to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement and subject to and only effective upon the Disinterested Director's Determination and the Challenge Period Termination Date and subject to the rights of the Creditors' Committee set forth in paragraph 42.

37.38.  Master Proofs of Claim.  The DIP AgentsABL Agent, the DIP Lenders,ABL Secured Parties and the Prepetition ABL Secured Parties and the Prepetition Term Loan Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, and in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each Prepetition ABL Agent and/or each other Prepetition ABL Secured Party is authorized to file in the Debtors' lead chapter 11 Case, Case No. 19-116078, a single, master proof of claim on behalf of the relevant Prepetition ABL Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition ABL Documents and hereunder (each a "Master Proof of Claim") against each of the Debtors.  Upon the filing of a Master Proof of Claim against each of the Debtors, the Prepetition ABL Secured Parties, and each of their respective successors and assigns, shall be deemed to

have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition ABL Documents, and the claim of each Prepetition ABL Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition ABL Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition ABL Secured Party (or its successors in interest) to vote separately on any plan proposed in these Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition ABL Secured Parties, which instruments, agreements or other documents will be provided upon reasonable request to counsel to the ~~applicable~~ Prepetition ABL Agent.

38.39.  Carve Out.

(a)    Carve Out.  As used in this ~~Interim~~Final Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "Chapter 7 Trustee Carve- Out") and all approved expenses incurred by members of the Creditors' Committee solely in their capacity as such (the

"Committee Expenses"); (iii) to the extent allowed at any time, whether by interim order, final order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee  pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP ABL Agent or DIP Term Loan Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,250,000 incurred after the first business day following delivery by the DIP ABL Agent or the DIP Term Loan Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post Carve Out Trigger Notice Cap").[10]  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP ABL Agent or DIP Term Loan Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the Post-Petition DIP ABL Obligations or an "Event of Default" under the DIP ABL Agreement or Term Loan Documents and acceleration of the DIP Term Loan AgreementObligations, respectively, stating that the Post Carve Out Trigger Notice Cap has been invoked.

---

[10]    Notwithstanding the foregoing, up to $250,000 of the Post Carve Out Trigger Notice Cap may be used to pay Allowed Professional Fees of Professional Persons incurred prior to the delivery of a Carve Out Trigger Notice to the extent such Allowed Professional Fees exceed the Professional Fee Carve Out Cap (as defined below).

(b)      Fee Estimates.  Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Closing Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); provided, that within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date.  For purposes of this paragraph 39(b) and paragraph 39(c), counsel to the Creditors' Committee will be deemed to be the party that has incurred the Committee Expenses, all references to a "Professional Person" shall be deemed to include the counsel to the Creditors' Committee in respect of the Committee Expenses and all references to "Allowed Professional Fees" will be deemed to include the Committee Expenses. If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount

of Allowed Professional Fees included in the Approved Budget for such period for such

Professional Person; *provided*, *that* such Professional Person shall be entitled to be paid any

unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees included in

the Approved Budget for such period for such Professional Person from a reserve to be funded

by the Debtors from all cash on hand as of such date and any available cash thereafter held by

any Debtor pursuant to paragraph 39(c) below.  Solely as it relates to the DIP ABL Agent and

DIP ABL ~~Lenders~~Secured Parties, any deemed draw and borrowing pursuant to

paragraph 39(c)(i)~~(x)~~ for amounts under paragraph 39(a)(iii) above shall be limited to the greater

of (x) the sum of (I) the aggregate unpaid amount of Estimated Fees and Expenses included in

such Weekly Statements timely received by the Debtors prior to the Termination Declaration

Date *plus*, without duplication, (II) the aggregate unpaid amount of Estimated Fees and Expenses

included in the Final Statements timely received by the Debtors pertaining to the period through

and including the Termination Declaration Date, and (y) the aggregate unpaid amount of

Allowed Professional Fees included in the Approved Budget for the period prior to the

Termination Declaration Date (such amount, the "Professional Fee Carve Out Cap").  For the

avoidance of doubt, the DIP ABL Agent and DIP ABL Lenders shall be entitled to maintain at all

times a reserve (the "Carve-Out Reserve") in an amount (the "Carve-Out Reserve Amount")

equal to the sum of (i) the greater of (x) the aggregate unpaid amount of Estimated Fees and

Expenses included in all Weekly Statements timely received by the Debtors, and (y) the

aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Approved

Budget at the applicable time, *plus* (ii) the Post-Carve Out Trigger Notice Cap, *plus* (iii) an

amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for

the following week occurring after the most recent Calculation Date, *plus* (iv) the amounts

contemplated under paragraph 39(a)(i) and 39(a)(ii) above.  Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the Closing Date, the Debtors shall deliver to the DIP ABL Agent or, the DIP Term Loan Agent, and the Creditors' Committee concurrently a report setting forth the Carve-Out Reserve Amount as of such time (the "Fee Report"), and, in setting the Carve-Out Reserve, the DIP ABL Agent and DIP ABL Lenders shall be entitled to rely upon such reports in accordance with the DIP ABL Credit Agreement or the DIP Term Loan Agreement.  Prior to the delivery of the first report setting forth the Carve-Out Reserve Amount, the DIP ABL Agent or the DIP Term Loan Agent may calculate the Carve-Out Reserve Amount by reference to the Approved Budget for subsection (i) of the Carve-Out Reserve Amount.  Notwithstanding anything herein to the contrary, DIP ABL Agent may increase the Carve-Out Reserve Amount to include additional amounts with respect to any monitoring charge or other charge arising from the Canadian insolvency proceeding of the Canadian Borrower and for the projected amount of any success, completion, commission-based, or other non-hourly fees billed by or due to any financial advisor, investment banker, (including any "Sale Transaction Fee" or "Supplemental Sale Transaction Fee" (each as defined below)), monitor, or other Professional engaged by any Debtor or any, the Creditors' Committee, or any committee in the Cases.

(c)    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by either the DIP ABL Agent or the DIP Term Loan Agent to the Debtors with a copy to counsel to the Creditors' Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall be deemed (i) a draw request and notice of borrowing by the Debtors for DIP ABL Loans under the DIP ABL Credit Agreement in an amount equal to the sum of (x) the amounts set forth in paragraphs (a)(i) and (a)(ii), above, and (y) the then unpaid amounts of the

Allowed Professional Fees up to the ~~ABL~~ Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP ABL  Loans) and (ii) a draw request and notice of borrowing by the Debtors for DIP Term Loans under the DIP Term Loan Facility in an amount equal to the unpaid amounts of the Allowed Professional Fees in excess of the Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP Term Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees (which cash amounts shall reduce, on a dollar-for-dollar basis, the draw requests and applicable DIP ABL Loans and DIP Term Loans pursuant to the foregoing clauses (i) and (ii) of this sentence of this paragraph (c)).  The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Agent in trust exclusively to pay such unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve").  On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a request by the Debtors for (~~x~~1) DIP ABL Loans under the DIP ABL Credit Agreement in an amount equal to the Post Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP ABL Loans) and, (~~y~~2) to the extent not funded by the DIP ABL Lenders, for DIP Term Loans in an amount equal to any unfunded portion of the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Term Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (which cash amounts shall reduce, on a dollar-for-dollar basis, the draw requests and applicable DIP ABL Loans and DIP Term Loans pursuant to the foregoing clauses (~~x~~1) and (~~y~~2) of this sentence of this paragraph (c)).  The Debtors shall deposit and hold

such amounts in a segregated account at the DIP ABL Agent in trust exclusively to pay such Allowed Professional Fees benefiting from the Post- Carve Out Trigger Notice Cap (the "Post Carve Out Trigger Notice Reserve" and, together with the Pre- Carve Out Trigger Notice Reserve, the "Carve Out Reserves").   On the third business day following the Termination Declaration Date and the deemed requests for the making of DIP ABL Loans and DIP Term Loans as provided in this paragraph (c), notwithstanding anything in the DIP ABL Credit Agreement or the DIP Term Loan Agreement to the contrary, including with respect to (1) the existence of a Default (as defined in the DIP ABL Credit Agreement or the DIP Term Loan Agreement) or), Event of Default, or an "Event of Default" (as defined in the DIP Term Loan Credit Agreement), (2) the failure of the Debtors to satisfy any or all of the conditions precedent for the making of any DIP ABL Loan under the DIP ABL Credit Agreement or DIP Term Loans under the DIP Term Loan Agreement, respectively, (3) any termination of the DIP ABL Loan Commitments or commitments under the DIP Term Loan CommitmentsCredit Facility following an Event of Default, or "Event of Default" (as defined in the DIP Term Loan Credit Agreement), or (4) the occurrence of the Maturity Date, (as defined in the ABL DIP Credit Agreement or DIP Term Loan Credit Agreement), each DIP ABL Lender and DIP Term Loan Lender with an outstanding Commitment shall make available to the DIP ABL Agent or DIP Term Loan Agent, as applicable, such DIP ABL Lender's or such DIP Term Loan Lender's pro rata share of such DIP ABL Loans or DIP Term Loans, as applicable.   For the avoidance of doubt, the Carve Out Reserves shall constitute the primary source for payment of Allowed Professional Fees entitled to benefit from the Carve Out, and any lien priorities or superpriority claims granted pursuant to this InterimFinal Order to secure payment of the Carve Out shall be limited to any shortfall in funding as provided below.

79

(d)      Application of Carve Out Reserves.  (i)

(i)      All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in subparagraphs (a)(i) through (a)(iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap (other than amounts up to $250,000 to the extent the Pre-Carve Out Amounts exceed the Professional Fee Carve Out Cap), until paid in full.  If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed *first* to the DIP ABL Agent on account of the applicable DIP ABL Obligations until indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable Issuing Bank), and *thereafter* to the Prepetition ABL LendersSecured Parties in accordance with their rights and priorities as of the Petition Date.

(ii)      All funds in the Post-Carve Out Trigger Notice Reserve (other than up to $250,000, which may be used to pay Pre-Carve Out Amounts to the extent they exceed the Professional Fee Carve Out Cap) shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts").  If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed *first* to the DIP ABL Agent on account of the applicable DIP ABL Obligations until indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the

80

applicable Issuing Bank), and *thereafter* ~~~to~~ to the Prepetition ABL ~~Lenders~~Secured Parties in accordance with their rights and priorities as of the Petition Date.

(iii)    Notwithstanding anything to the contrary in the ~~Financing Agreements or this Interim~~DIP ABL Credit Agreement, DIP Term Loan Credit Agreement or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph (c), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-~~-~~Carve Out Amounts and Post-~~-~~Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding prior to making any payments to the DIP ABL Agent or the Prepetition ABL ~~Lenders~~Secured Parties, as applicable.

(iv)    Notwithstanding anything to the contrary in the ~~Financing Agreements~~DIP ABL Credit Agreement, DIP Term Loan Credit Agreement, or ~~the Interim~~this Final Order, following the third business day after delivery of a Carve Out Trigger Notice, the DIP ABL Agent, the Prepetition ABL Agent, the DIP Term Loan Agent, and the Prepetition Term Loan Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid as provided in paragraphs (ii) and (iii) above.

(v)    Notwithstanding anything to the contrary in this ~~Interim~~Final Order, (i) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below), and (ii) subject to the limitations with respect to the DIP ABL Agent, DIP ABL ~~Lenders~~Secured Parties, Prepetition ABL Agent and Prepetition ABL ~~Lenders~~Secured Parties set forth in paragraph (b), above, in no way shall ~~the Initial Budget,~~ any Approved Budget, ~~Annual Operating Forecast,~~ Carve Out, Post-

Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP ABL Credit Agreement or the DIP Term Loan Agreement, the Carve Out subject to the Professional Fee Carve Out Cap shall be senior to all liens and claims securing the DIP ABL Credit Agreement or the DIP Term Loan Agreement, the Prepetition ABL Adequate Protection Liens, the Prepetition Term Loan Adequate Protection Liens, and the Diminution in Value claims, and any and all other forms of adequate protection, liens, or claims securing the Post-Petition Obligations or the Pre-Petition Obligations. DIP ABL Obligations, DIP Term Loan Obligations, the Prepetition ABL Obligations, or the Prepetition Term Loan Obligations and shall be deemed a true carve out from the Prepetition Term Loan Priority Collateral and not from any property of the Debtors' estates not subject to the Prepetition Term Loan Liens.

(vi)    Notwithstanding anything herein to the contrary, the Carve Out in respect of any "Transaction Fees" for Houlihan Lokey will be junior to the Prepetition ABL Obligations and DIP ABL Obligations to the extent secured by the DIP ABL Priority Collateral, unless and other than (x) the pro rata share (determined in proportion to the allocation of the "Transaction" proceeds as between the DIP ABL Priority Collateral and the DIP Term Priority Collateral) of any "Sale Transaction Fee" or "Supplemental Sale Transaction Fee" (as each term is defined in the Debtors' engagement letter with Houlihan Lokey) authorized by the Court in respect of a "Sale Transaction" (as defined in such engagement letter) that is a going concern sale (and not a liquidation sale) of the DIP ABL Priority Collateral consented to by DIP ABL Agent or (y) to the extent otherwise agreed in writing by the DIP ABL Agent in its sole discretion.

82

(d)(e)  No Direct Obligation To Pay Allowed Professional Fees.  The DIP ~~Agents~~ABL Agent, DIP Term Loan Agent, DIP ABL Secured Parties and ~~the~~ DIP ~~Lenders~~Term Loan Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this ~~Interim~~Final Order or otherwise shall be construed to obligate the DIP ~~Agents or the~~ABL Agent, DIP ~~Lenders, or any Issuing Bank~~Term Loan Agent, DIP ABL Secured Parties and DIP Term Loan Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)(f)  Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(f)(g)  Payment of Carve Out On or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP ABL Obligations or DIP Term Loan Obligations, as applicable, secured by the ~~Post-Petition~~DIP Collateral and shall be otherwise entitled to the protections granted under th~~is~~e Interim Order, ~~the Financing Agreements~~this Final Order, the DIP ABL Documents, the DIP Term Loan Documents, the Bankruptcy Code, and applicable law.

83

(g)(h)  Reservation of Rights. Nothing herein shall be construed to impair the right or ability of any party to object to the fees, expenses, reimbursement, or other compensation described with respect to these Carve-Out provisions.

40.    Limitations on the Use of DIP Proceeds, Cash Collateral and Carve Out. The DIP ABL Credit Facility, the DIP Term Loan Credit Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve Out may not be used in connection with:  (a) preventing, hindering, or delaying any of the DIP ABL Agent's, the DIP Term Loan Agent's, the DIP ABL Secured Parties', the DIP Term Loan Parties', the Prepetition ABL Secured Parties' or the Prepetition Term Loan Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the DIP ABL Agent or the DIP Term Loan Agent and the Required DIP Term Loan Lenders, as applicable; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP ABL Agent or the DIP Term Loan Agent and the Required DIP Term Loan Lenders, as applicable; (d) incurring Indebtedness (as defined in the DIP ABL Credit Agreement or the DIP Term Loan Credit Agreement, as applicable) without the prior consent of the DIP ABL Agent or the DIP Term Loan Agent and the Required DIP Term Loan Lenders, as applicable, except to the extent permitted under the DIP ABL Credit Agreement or DIP Term Loan Credit Agreement, as applicable; (e) seeking to amend or modify any of the rights granted to the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Parties under the Interim Order, this Final Order, the DIP ABL Documents, the DIP Term Loan Documents, the Prepetition ABL Documents or the Prepetition Term Loan Documents, including seeking to use Cash Collateral and/or DIP

Collateral on a contested basis; (f) objecting to or challenging in any way the DIP ABL Liens, DIP Term Loan Liens, DIP ABL Obligations, DIP Term Loan Obligations, Prepetition ABL Liens, Prepetition Term Loan Liens, Prepetition ABL Obligations, Prepetition Term Loan Obligations, DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Parties, respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP ABL Obligations, DIP Term Loan Obligations, the DIP ABL Liens, DIP Term Loan Liens, Prepetition ABL Liens, Prepetition Term Loan Liens, Prepetition ABL Obligations, Prepetition Term Loan Obligations or any other rights or interests of any of the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP ABL Obligations, DIP Term Loan Obligations, Prepetition ABL Obligations or Prepetition Term Loan Obligations; *provided*, *however*, that the Carve Out and such collateral proceeds and loans under the DIP ABL Documents and DIP Term Loan Documents may be used for allowed fees and expenses, in an

amount not to exceed $200,000 in the aggregate, incurred solely by the Creditors' Committee, in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition ABL Liens or Prepetition Term Loan Liens (the "Limited Amount"); provided, however, that nothing herein shall be deemed to limit the Debtors or the Creditors' Committee from taking any actions that they deem to be required in the exercise of their fiduciary obligations. Notwithstanding anything to the contrary in this Order, nothing herein shall be deemed to (a) limit the ability of the Creditors' Committee's professionals to be paid from unencumbered assets for services rendered in the investigation or prosecution of claims against the Prepetition ABL Secured Parties or Prepetition Term Loan Parties; (b) preclude the Court from awarding fees and expenses to the Creditors' Committee professionals pursuant to section 330 of the Bankruptcy Code for such services rendered; nor (c) relieve the Debtors or any plan proponent(s) from paying all allowed administrative expenses in connection with confirmation of any plan.

39.    [Reserved]

40.41.  Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the DIP AgentsABL Agent, DIP Term Loan Agent, the DIP LendersABL Secured Parties, the DIP Term Loan Parties, the Prepetition ABL Secured Parties, or the Prepetition Term Loan Secured Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default or "Event of Default" (as defined in the DIP Term Loan Credit Agreement) has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order of the Court (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may

86

be due and payable, as reflected in the most recent Approved Budget provided by the Debtors to

the DIP ~~Agents~~ABL Agent and DIP Term Loan Agent.

41.42.  Effect of Stipulations on Third Parties.

(i)    *Generally*. Except as set forth in this ~~Interim Order~~Final Order, upon the expiration of the Challenge Period (as defined below) except and solely to the extent a Challenge or Challenge Motion has been interposed, unless and until such Challenge is overruled, settled, or denied by Final Order of the Court, the admissions, stipulations, agreements, releases, and waivers set forth in this ~~Interim Order (collectively, the "Prepetition Lien and Claim Matters")~~Final Order are and shall be deemed effective and binding in all circumstances and for all purposes on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest~~,~~ and all of their successors in interest and assigns, including, without limitation, any chapter 7 or chapter 11 trustee or examiner appoint or elected for any of the Debtors~~,~~ and ~~any~~ official committee that may be appointed in these cases (each, a "Challenge Party"), unless, and solely to the extent that ~~(a) the Debtors received from a Challenge Party notice of a potential Challenge (defined below) during the Challenge Period (defined below) and (b)~~ the Court rules in favor of the ~~plaintiff~~Challenge Party in any such timely and properly filed Challenge (as defined herein); *provided*, *however*, that any releases by the DIP Term Loan ~~Secured~~ Parties and Prepetition Term Loan ~~Secured~~ Parties of the Put Purchasers shall be governed by the Restructuring Support Agreement (as defined in the Plan).~~.~~ For purposes of this paragraph 42: (a) "Challenge" means any claim against any of the Prepetition ABL Secured Parties or the Put Purchasers (as to the Put Purchasers, solely with respect to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement) by

or on behalf of the Debtors or the Debtors' creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtors' Stipulations set forth herein, including, but not limited to those in relation to: (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition ABL Secured Party; (ii) the validity, allowability, priority, or amount of the Prepetition Secured Obligations (including any fees included therein); (iii) the secured status of the Prepetition SecuredABL Obligations; or (ivii) any liability of any of the Prepetition ABL Secured Parties or the Put Purchasers (as to the Put Purchasers, solely with respect to the Put Purchasers' interests in the Last Out Obligations and entry into the Put Agreement and Existing Participation Agreement, and subject to and only effective upon the Disinterested Director's Determination and the Challenge Period Termination Date and subject to the rights of the Committee set forth in this paragraph 42) with respect to anything arising from any of the respective Prepetition ABL Documents and the entry into the Put Agreement and Existing Participation Agreement; and (b) "Challenge Period" means (i) if the Creditors' Committee is not formed, seventy-five (75) calendar days (or such longer period as the Court orders for cause shown before the expiration of such period) from the entry of the Final Order and (ii) if the Creditors' Committee is formed, sixty (60) days after the entry of thesixty (60) days after the entry of this Final Order (or such longer period as the Court orders for cause shown before the expiration of such period). or is agreed to by the Prepetition ABL Agent in writing). During the Challenge Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, it must notify the Debtors during the Challenge Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto and from the date that the Debtors are so notified, the Debtors shall have five (5) days to notify the Challenge Party of whether the Debtors intend

~~to initiate such action (or a settlement in lieu of an adversary) and ten (10) days to initiate such action. If the Debtors notify such Challenge Party that the Debtors do not intend to initiate an action, settlement, or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to seek standing to initiate an action or adversary proceeding.~~ Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court~~. The~~, *provided* that nothing herein shall limit any party in interests rights, if any, to object to any claims pursuant to section 502(a) of the Bankruptcy Code until the expiration of the Challenge Period Termination Date, nor limit the rights of any other parties to contest any such claims asserted pursuant to section 502(a). Notwithstanding anything to the contrary in this Final Order, the Debtors, if timely notified of a potential Challenge, (a "Challenge Notice"), shall retain authority to prosecute, settle, or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of court. Nothing herein shall limit the Creditors' Committee's ability to (x) file a motion in respect of any timely Challenge Notice (a "Challenge Motion"), provided that such Challenge Motion is filed before the Challenge Period Termination Date (or such later date as may be agreed upon among the applicable Debtor(s) and the applicable parties subject to such Challenge Notice) and such Challenge Motion is in respect of a Challenge for which it cannot obtain standing, but meets the standard applicable to pursue such matters for the applicable Debtor(s) derivatively assuming the applicable Debtor were not a limited liability company, and (y) seek pursuant to that Challenge Motion a mechanism by which to prosecute such Challenge described in such Challenge Notice. In the event the Creditors' Committee files a Challenge Motion for which it cannot obtain standing, the expiration of the Challenge Period solely for the specific Challenge set forth in the Challenge Motion shall be tolled pending further order of the Court, and applicable parties shall

meet and confer with respect to an appropriate process for the prosecution of any such Challenge.

(ii)     *Binding Effect*. Upon the expiration of the Challenge Period (subject to such ten (10) day periods described above) (the "Challenge Period Termination Date"), without the filing of a Challenge or Challenge Motion, or, upon the filing of a Challenge or Challenge Motion, a Final Order of the Court overruling, settling, or denying the Challenge:  (A) any and all such Challenges and objections by any party (including, without limitation, the Creditors' Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition ABL Secured Parties' claims, liens, interests, and validity of the Prepetition SecuredABL Obligations shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases; and (C) any and all claims or causes of action against (i) any of the Prepetition ABL Secured Parties or (ii) the Put Purchasers relating in any way to the Debtors orPut Purchasers' interests in the Prepetition DocumentsLast Out Obligations and entry into the Put Agreement and Existing Participation Agreement, shall, in each of clause (i) and clause (ii) be forever waived and released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases, provided that the binding effect of the findings, Debtors' Stipulations and release of the Put Purchasers is only effective as to third parties upon the later of the occurrence of the Disinterested Director's Determination and

the Challenge Period Termination Date. and the rights of the Creditors' Committee pursuant to this paragraph 42.

42.43.  No Third Party Rights/No Superior Rights of Reclamation.  Except as explicitly provided for herein, this InterimFinal Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  Based on the findings and rulings herein concerning the integrated nature of the DIP AgreementsABL Credit Agreement and the Prepetition Secured FacilitiesABL Credit Facility and the relation back of the DIP ABL Liens, in no event shall any alleged right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP ABL Liens.

43.    [RESERVED]

44.    [RESERVED]

45.    [RESERVED]

44.    Section 506(c) Claims.  No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP ABL Agent, DIP ABL Secured Parties, DIP ABL Obligations, the Prepetition ABL Secured Parties, the Prepetition ABL Obligations, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP ABL Agent, DIP ABL Secured Parties, and Prepetition ABL Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

45.    No Marshaling/Applications of Proceeds.  Except as otherwise set forth in paragraph 7, the DIP ABL Agent, DIP ABL Secured Parties, DIP ABL Obligations, Prepetition

ABL Secured Parties and Prepetition ABL Obligations shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Final Order, including, for the avoidance of doubt, in accordance with paragraph 24 hereof, and the DIP ABL Documents notwithstanding any other agreement or provision to the contrary.

46.    Section 552(b).  The Prepetition ABL Secured Parties and Prepetition ABL Obligations are each entitled to all of the rights and benefits of section 552(h) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition ABL Secured Parties and Prepetition ABL Obligations, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

46.47.  Access to DIP Collateral.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agents, exercisable on behalf of the DIP ABL Lenders and DIP Term Loan Lenders, respectively, contained in thise Interim Order, this Final Order, the DIP ABL Documents, the DIP Term Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP ABL Documents and DIP Term Loan Documents, upon not less than three (3) Business Days' written notice to the landlord of any leased premises that an Event of Default or a Termination Date has occurred and is continuing, the DIP ABL Agent or DIP Term Loan Agent, as applicable, may, subject to the applicable notice provisions, if any, in this InterimFinal Order, the Canadian Recognition Orders, and any separate applicable agreement by and between such landlord and the DIP ABL Agent or DIP Term Loan Agent, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, *provided* that the DIP ABL

Agent and/or DIP Term Loan Agent, as applicable, shall be obligated only to pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP ABL Agent and/or DIP Term Loan Agent, as applicable, calculated on a daily per diem basis. may obtain access to Collateral subject to the following conditions: unless otherwise approved by landlord, (i) any such notice to landlord shall specifically identify any Collateral to be accessed and provide details of any removal actions; (ii) any access or removal actions shall be subject to reasonable rules and restrictions by landlord and shall not unreasonably interfere with the conduct of business at the leased premises; and (iii) any party accessing the leased premises shall pay the rent and operating expenses currently in effect on a per diem basis and such occupancy period shall not extend past 30 days without prior landlord approval, *provided, however*, that nothing in this Final Order shall be deemed to grant the DIP ABL Agent or DIP Term Loan Agent an assignment of the Debtors' rights under the lease or a waiver of any provisions under the lease or applicable non-bankruptcy law relating to notice or foreclosure, all of which are preserved in favor of the landlord and not waived or altered by this Final Order. Nothing herein shall require the DIP ABL Agent or DIP Term Loan Agent to assume any lease as a condition to the rights afforded in this paragraph.

47.48. Exculpation. Nothing in thise Interim Order, this Final Order, the DIP ABL Documents, the existing agreements, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Lender, DIP Agent, or PrepetitionABL Secured PartyParties or DIP ABL Agent any liability for any claims arising from the prepetition or postpetition activities of the DIP Parties, including in the operation of their businesses, or in connection with their restructuring efforts and administration of these Cases. In addition, (a) the DIP LendersABL

Secured Parties and DIP AgentsABL Agent shall not, in any way or manner, be liable or responsible for: (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any Diminution in Value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne by the DIP Parties.

48.49. **Limits on Lender Liability**.    The DIP AgentsABL Agent, the DIP LendersABL Secured Parties and the Prepetition ABL Secured Parties, each in their capacityies as such, solely by reason of entering into the DIP FacilitiesABL Credit Facility and taking the actions permitted under the DIP ABL Documents, the Interim Order and this InterimFinal Order, shall not be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the DIP Lenders'ABL Secured Parties' other actions do not otherwise constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state gGovernment or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ §§ 9601 *et seq.*, as amended, or any similar federal or state statute).

49.    [RESERVED]

50.    [Reserved].

50.51. **Joint and Several Liability**.  Nothing in thise Interim Order or this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates,

it being understood, however, that the Borrowers and the DIP ABL Guarantors shall be jointly and severally liable for the obligations hereunder and all DIP ABL Obligations in accordance with the terms hereof and of the DIP ~~Facilities~~ABL Credit Facility and the DIP ABL Documents.

51. 52.  Rights Preserved.  Notwithstanding anything ~~herein~~in the Interim Order or this Final Order to the contrary, the entry of th~~is~~e Interim Order ~~is~~and this Final Order are without prejudice to, and do~~es~~ not constitute a waiver of, expressly or implicitly:  (a) the DIP ~~Agents'~~ABL Agent's, DIP ~~Lenders'~~ABL Secured Parties', and Prepetition ABL Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP ~~Agents~~ABL Agent, DIP ~~Lenders ~~ ABL Secured Parties  and Prepetition ABL Secured Parties  under the Bankruptcy Code or under non-~~-~~bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) subject to the DIP Intercreditor Agreement, any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP ~~Agents~~ABL Agent, DIP ~~Lenders~~ABL Secured Parties, or Prepetition ABL Secured Parties. Notwithstanding anything herein to the contrary, the entry of this ~~Interim~~Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', ~~a~~the Creditors' Committee's ~~(if appointed)~~, or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this ~~Interim Order.  Entry of this Order is without prejudice to any and all rights of any party in~~

interest with respect to the terms and approval of the Final Order and any other position which any party in interest deems appropriate to raise in the Debtors' Cases.Final Order.

52.53.  No Waiver by Failure to Seek Relief.  The failure of the DIP AgentsABL Agent, DIP LendersABL Secured Parties, or Prepetition ABL Secured Parties to seek relief or otherwise exercise their rights and remedies under this InterimFinal Order, the DIP ABL Documents, the Prepetition ABL Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP ABL Agent, DIP LendersABL Secured Parties, Prepetition ABL Secured Parties, Prepetition Term Loan Secured Parties, Creditors' Committee (if appointed), or any party in interest.

53.54.  Binding Effect of Interim Order. and Final Order.  Immediately upon execution by this Court, the terms and provisions of thise Interim Order became valid and binding and the terms and provisions of this Final Order shall become valid and binding (in which any conflict shall be construed in favor of this Final Order) upon and inure to the benefit of the Debtors, DIP AgentsABL Agent, DIP Lenders, the DIPTerm Loan Agent, DIP ABL Secured Parties, DIP Term Loan Parties, the DIP ABL Obligations, the DIP Term Loan Obligations, the Prepetition ABL Secured Parties, the Prepetition ABL Obligations, Prepetition Term Loan Secured Parties, all other creditors of any of the Debtors, anythe Creditors' Committee (or any other court appointed committee) appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

54.    [Reserved].

96

55.    No Modification of Final Order.    Until and unless the DIP ABL Obligations and the Prepetition ABL Obligations have been indefeasibly paid in full in cash, and all letters of credit under the DIP ABL Credit Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP ABL Credit Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP ABL Credit Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP ABL Agent and the DIP ABL Secured Parties (or the Prepetition ABL Agent), (i) any material modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP ABL Superpriority Claims or Prepetition ABL Superpriority Claims, other than the Carve Out and the Canadian Intercompany Superpriority Administrative Claims, as set forth herein; (b) without the prior written consent of the DIP ABL Agent (or the Prepetition ABL Agent) any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP ABL Agent, any lien on any of the DIP Collateral with priority equal or superior to the DIP ABL Liens, except as specifically provided in the DIP ABL Documents; or (d) without the prior written consent of the Prepetition ABL Agent, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition ABL Liens or Prepetition ABL Adequate Protection Liens, except as specifically

provided in the DIP ABL Documents.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP ABL Agent (or the Prepetition ABL Agent), and no such consent shall be implied by any other action, inaction or acquiescence of the DIP ABL Agent or the Prepetition ABL Agent.

55.56.  Continuing Effect of DIP Intercreditor Agreement; Existing Participation Agreement.  The Debtors, DIP AgentsABL Agent, DIP Lenders, Prepetition ABL Secured Parties and Prepetition Term Loan Agent, DIP ABL Secured Parties, DIP Term Loan Parties, Prepetition ABL Secured Parties, and Prepetition Term Loan Parties each shall be bound by, and in all respects of the DIP FacilitiesABL Credit Facility and DIP Term Loan Credit Facility shall be governed by, and be subject to all the terms, provisions, and restrictions of the DIP Intercreditor Agreement, except as may be expressly modified by this InterimFinal Order.  The parties to the Existing Participation Agreement shall continue to be bound by, and governed by, and be subject to all the terms, provisions, and restrictions of the Existing Participation Agreement.

56.    Interim Order Controls.  In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

57.    [RESERVED]

57.    Survival.  The provisions of thisFinal Order Controls.  In the event of any inconsistency between the terms and conditions of the Interim Order and of this Final Order or the DIP ABL Documents and of this Final Order, the provisions of this Final Order shall govern and control.  In the event of any inconsistency between the terms and conditions of any other order regarding any postpetition financing or use of cash collateral, the provisions of this Final

Order shall govern and control to the extent such terms and conditions relate to the Prepetition ABL Credit Facility, Prepetition ABL Secured Parties, Prepetition ABL Obligations, Prepetition ABL Documents, Prepetition Collateral, Prepetition ABL Liens, Prepetition ABL Priority Collateral, Prepetition ABL Superpriority Claims, Prepetition ABL Adequate Protection Payments, Prepetition ABL Adequate Protection Liens, DIP ABL Credit Facility, DIP ABL Secured Parties, DIP ABL Obligations, DIP ABL Documents, DIP ABL Collateral, DIP ABL Liens, DIP ABL Priority Collateral, or DIP ABL Superpriority Claims.   Notwithstanding anything to the contrary in the Interim Order, upon entry of this Final Order, any modifications by the Interim Order to the DIP ABL Documents shall be superseded by this Final Order and such modifications shall no longer have any effect.

58.    Discharge.  The DIP ABL Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (and "payment in full" as provided by the DIP ABL Credit Agreement), on or before the effective date of such confirmed plan of reorganization, or each of the DIP ABL Agent, DIP ABL Secured Parties and Prepetition ABL Agent, as applicable, has otherwise agreed in writing.   None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP ABL Obligations, and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "Prohibited Plan or Sale") without the

written consent of the DIP ABL Agent and the Prepetition ABL Agent, as applicable.  For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP ABL Documents.

58.59.  Survival.  The provisions of the Interim Order, this Final Order, and any actions taken pursuant thereto and hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of thise Interim Order and this Final Order, including the claims, liens, security interests, and other protections granted to the DIP AgentsABL Agent, DIP LendersABL Secured Parties, DIP ABL Obligations, the Prepetition ABL Secured Parties and the Prepetition SecuredABL Obligations granted pursuant to thise Interim Order, this Final Order and/or the DIP ABL Documents, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by thise Interim Order and this Final Order until:  (i) in respect of the DIP ABL Credit Facility, all the DIP ABL Obligations, pursuant to the DIP ABL Documents, the Interim Order, and this InterimFinal Order, have been indefeasibly paid in full in cash and all letters of credit under the DIP ABL Credit Facility shall have been cancelled or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP ABL Credit Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP ABL Credit Facility are terminated; and (ii) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations pursuant to the

Prepetition ABL Documents and this, the Interim Order, have been indefeasibly paid in full in cash; (iii) in respect of the DIP Term Loan Credit Facility, all the DIP Term Loan Obligations, pursuant to the DIP Term Loan Documents and this Interim and this Final Order, have been indefeasibly paid in full in cash or otherwise satisfied to the satisfaction of the DIP Term Loan Agent and DIP Term Loan Lenders; and (iv) in respect of the Prepetition Term Loan Credit Agreement, all of the Prepetition Term Loan Obligations pursuant to the Prepetition Term Loan Documents and this Interim Order have been indefeasibly paid in full in cash or otherwise satisfied to the satisfaction of the Prepetition Secured Parties.. The terms and provisions concerning the indemnification of the DIP AgentsABL Agent and DIP LendersABL Secured Parties shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP ABL Documents and/or the indefeasible repayment of the DIP ABL Obligations.

In addition, the terms and provisions of this Interim Order shall continue in full force and effect for the benefit of the Prepetition Term Loan Secured Parties notwithstanding the repayment in full or termination of the DIP ABL Obligations or the Prepetition ABL Obligations.

59.    Final Hearing.  The Final Hearing to consider entry of the Final Order and final, approval of the DIP Facilities is scheduled for June 13, 2019, at 11:00 a.m., prevailing Eastern Time., 2019, before the Honorable United States Bankruptcy Judge Michael E. Wiles, in Courtroom 617, at the United States Bankruptcy Court for the Southern District of New York. On or before May 27, 2019, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order, the proposed Final Order and the DIP

Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Creditors' Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than at 4:00 p.m., on June 6, 2019, which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. and Christopher T. Greco, P.C., and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, Attn: Joe Graham and Laura Krucks; (ii) counsel to the DIP ABL Agent and Prepetition ABL Agent, Goldberg Kohn Ltd. 55 East Monroe, Suite 3300, Chicago, Illinois 60603, Attn: Randall Klein and Prisca Kim, and Orrick, 51 W. 52nd Street, New York, New York, 10019, Attn: Laura Metzger and Peter Amend; and (iii) counsel to the DIP Term Loan Agent and Prepetition Term Loan Agent, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036, Attn: W. Austin Jowers, Christopher Boies, and Stephen M. Blank.

60.    **Dallas County, Texas Ad Valorem Taxes.** Notwithstanding any other provisions of this Final Order, any valid liens currently held by Dallas County shall neither be primed by nor subordinated to any liens granted hereby. Subject to further order of this Court, up to a maximum of $380,000 of proceeds of the sales of assets located in the state of Texas that are subject to a lien held by Dallas County shall be deposited in a segregated account as adequate protection for the secured claims of Dallas County prior to the distribution of any such proceeds to any other creditor; *provided* that the segregated amount shall be reduced if the actual or estimated taxes are less than $380,000 at the time of any such sale; and provided further that

such amount up to $380,000 shall be funded first from DIP Term Priority Collateral located in the state of Texas. Any valid liens of Dallas County shall attach to these proceeds to the same extent and with the same priority as such liens currently attach to the applicable property of the Debtors. These funds shall be in the nature of adequate protection and shall constitute neither the allowance of the claims of Dallas County, nor a cap on the amounts it may be entitled to receive. The claims and liens of Dallas County shall remain subject to any objections made by any party (including the Debtors) who would otherwise be entitled to raise any objection as to, among other things, the claim amount or the priority, validity, or extent of such liens. These segregated proceeds may be distributed upon agreement among Dallas County, the Debtors, the DIP ABL Secured Parties and the DIP Term Loan Parties, or upon order of the Court with notice to Dallas County. Nothing in this Final Order shall be deemed an admission as to the validity of any claim of Dallas County against a Debtor entity.

61. **Canadian Intercompany Superpriority Administrative Claims.** The Canadian Intercompany Superpriority Administrative Claims shall be subject to the Carve Out and shall otherwise be junior only to: (a) with respect to the DIP ABL Priority Collateral (1) Permitted Prior Liens; (2) the DIP ABL Liens; (3) the Prepetition ABL Liens; and (4) the Prepetition ABL Adequate Protection Liens; and (b) with respect to the DIP Term Loan Priority Collateral (1) Prepetition Term Loan Permitted Prior Liens; (2) the DIP Term Loan Liens; (3) the Prepetition Term Loan Liens; (4) the Prepetition Term Loan Adequate Protection Liens; (5) the DIP ABL Liens; (6) the Prepetition ABL Liens; and (7) the Prepetition ABL Adequate Protection Liens; and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Debtors' assets.

60.62.  Necessary Action.  The Debtors are authorized to take any and all such actions as are necessary or appropriate to implement the terms of this e Interim Order and this Final Order.

61.63.  Bankruptcy Rules.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

62.64.  Nunc Pro Tunc Effect of this Interim Final Order.  This Interim Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

63.65.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, or any local bankruptcy rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim order Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Final Order.

64.66.  The Debtors shall within two (2) business days of its entry serve copies of this Interim Final Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of right under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the interim Final Hearing, and to any party that has filed a request for notices with this Court.

Dated:   New York, New York
              May 23, _____, 2019

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

**Exhibit ~~1~~ A**

**Budget**

2

KE 61996516