UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HOLLANDER SLEEP PRODUCTS, LLC, *et al.*,[1] | ) | Case No. 19-11608 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### FINAL ORDER WITH RESPECT TO DIP TERM LOAN SECURED PARTIES AND PREPETITION TERM LOAN SECURED PARTIES (A) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (B) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (C) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (D) GRANTING ADEQUATE PROTECTION TO THE PREPETITION TERM LOAN SECURED PARTIES, (E) MODIFYING THE AUTOMATIC STAY, AND (F) GRANTING RELATED RELIEF

Upon the motion, dated May 19, 2019 (the "DIP Motion") of Hollander Sleep Products, LLC (the "DIP Term Loan Borrower") and Hollander Home Fashions Holdings, LLC, Hollander Sleep Products Kentucky, LLC, Hollander Sleep Products Canada Limited, Pacific Coast Feather, LLC and Pacific Coast Feather Cushion, LLC (collectively the "DIP ABL Borrowers" and together with the DIP Term Loan Borrower, the "Borrowers") on behalf of themselves and their affiliated debtors and debtors in possession (together with Dream II Holdings, LLC ("Parent"), collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this "Final Order") pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), 507 and 552 of chapter 11 of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Dream II Holdings, LLC (7915); Hollander Home Fashions Holdings, LLC (2063); Hollander Sleep Products, LLC (2143); Pacific Coast Feather, LLC (1445); Hollander Sleep Products Kentucky, LLC (4119); Pacific Coast Feather Cushion, LLC (3119); and Hollander Sleep Products Canada Limited (3477).  The location of the Debtors' service address is:  901 Yamato Road, Suite 250, Boca Raton, Florida 33431.

"Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Rule 4001-2, *inter alia*:

(i)    authorizing on a final basis the Debtors (other than Debtor Hollander Sleep Products Canada Limited) to obtain senior secured postpetition financing on a superpriority basis in the aggregate principal amount of up to $28,000,000.00 (the "DIP Term Loan  Credit Facility," and the loans thereunder, the "DIP Term Loans") pursuant to the terms and conditions of that certain superpriority secured Debtor-in-Possession Term Loan Credit Agreement (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Term Loan Credit Agreement"), by and among the DIP Term Loan Borrower, the guarantors party thereto from time to time (the "DIP Term Loan Guarantors") (the DIP Term Loan Guarantors, together with the DIP Term Loan Borrower, the "DIP Term Loan Parties" or "DIP Parties"), the financial institutions party thereto from time to time as lenders (collectively, the "DIP Term Loan Lenders," and together with the DIP Term Loan Agent (defined below), the "DIP Term Loan Secured Parties" or "DIP Lenders"), and Barings Finance LLC, as administrative agent (in such capacity, the "DIP Term Loan Agent") for and on behalf of itself and the DIP Term Loan Lenders, substantially in the form of Exhibit C attached to the DIP Motion;

(ii)    authorizing on a final basis the Debtors party thereto to execute and deliver the DIP Term Loan Credit Agreement and any other agreements and documents related thereto (collectively with the DIP Term Loan Credit Agreement, the "DIP Term Loan Documents" or "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Term Loan Documents;

(iii)    granting on a final basis the DIP Term Loan Credit Facility and all obligations owing thereunder and under the DIP Term Loan Documents to the DIP Term Loan Agent and DIP

Term Loan Lenders (collectively, and including all "Obligations" as described in the DIP Term Loan Credit Agreement, the "DIP Term Loan Obligations" or "DIP Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases, in each case subject to the Carve Out (as defined herein);

(iv)    granting on a final basis to the DIP Term Loan Agent, for the benefit of itself and the other DIP Term Loan Secured Parties, automatically perfected security interests in and liens on all of the DIP Term Collateral (as defined below), including, without limitation, all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the Carve Out and the priorities set forth herein;

(v)    authorizing and directing the Debtors on a final basis to pay the principal, interest, fees, expenses and other amounts payable under the DIP Term Loan Documents as such become due, including, without limitation, continuing commitment fees, closing fees, audit fees, appraisal fees, exit fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Term Loan Agent's and DIP Term Loan Secured Parties' respective attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the applicable DIP Term Loan Documents;

(vi)    authorizing the Debtors on a final basis to use the Prepetition Collateral, including the Cash Collateral (each as defined below) of the Prepetition Term Loan Secured Parties under the Prepetition Term Loan Documents, and providing adequate protection to the Prepetition Term Loan Secured Parties for any Diminution in Value (as defined below) of their interests in the Prepetition Collateral, including the Cash Collateral, as applicable, and subject to the Carve Out; and

(vii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Term Loan Documents, the Interim Order, the Second Interim Order (as defined below), and this Final Order.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Saul Burian in Support of the Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Lenders, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 19], the DIP Term Loan Documents, the *Declaration of Marc Pfefferle, Chief Executive Officer of Hollander Sleep Products, LLC, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 3], and the evidence submitted and argument made at the first interim hearing (the "First Interim Hearing"); and the Court having entered after the First Interim Hearing the *Interim Orders (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Lenders, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 53] (the "First Interim Order");[2] and the Court having conducted an additional hearing on the DIP Motion on July 1, 2019 (as such hearing pertains to the approval of the DIP Term Loan Facility, the "Second Interim Hearing" and, collectively with the First Interim Hearing, the "Interim Hearings"), and

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Interim Order.

with respect to the DIP Term Loan Credit Facility, the Court having entered the *Second Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Lenders, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 176] (the "Second Interim Order" and, collectively with the First Interim Order, the "Interim Orders")[3]; and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the final hearing (the "Final Hearing") with respect to the portion of the DIP Motion pertaining to the DIP Term Loan Credit Facility and the Prepetition Term Loan Credit Facility having been held on July 17, 2019, and concluded; and the Committee having consented to this form of Final Order following extensive good-faith negotiations that resulted in a global settlement, the terms of which will be incorporated into an amended and restated Restructuring Support Agreement, by and between the Debtors, the Prepetition Term Loan Lenders, Sentinel Capital Partners, LLC, on behalf of itself and each of its affiliated investment funds or investment vehicles managed or advised by it, and the Committee (as may be amended, restated, or modified from time to time) and reflected in a revised proposed chapter 11 plan; and all objections, if any, to the relief requested in the DIP Motion pertaining to the DIP Term Loan Credit Facility and the Prepetition Term Loan Credit Facility having been withdrawn, resolved by modifications to the Final Order set forth herein, or overruled by the Court; and it appearing that approval of the relief requested in the DIP Motion pertaining to the DIP Term Loan Credit Facility and the Prepetition Term Loan Credit Facility is reasonable and in the best

---

[3] With respect to the DIP ABL Facility, the Court entered a final order on July 3, 2019 [Docket No. 175] (the "Final ABL Order").

interests of the Debtors, their estates, and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and the Court having determined that the legal and factual bases set forth in the DIP Motion establish just cause for the relief granted herein; and it appearing that the Debtors' entry into the DIP Term Loan Credit Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARINGS AND FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]

**Deemed Modifications to DIP Term Loan Credit Agreement and DIP Term Loan Documents**

1.    No restructuring support agreement or plan support agreement has been approved by the Court, and any provision of the DIP Term Loan Credit Agreement or DIP Term Loan Documents that purports to obligate the Debtors to the terms of such an agreement, or that purports to make it a default if the Debtors breach any such agreement, shall not be effective unless such agreements are authorized by further order of this Court.

2.    No provision in this Final Order or in the DIP Term Loan Credit Agreement or DIP Term Loan Documents shall prevent the Debtors from seeking to refinance the obligations thereunder or from seeking the Court's approval of such a refinancing (including the issuance of liens that are superior to or equal in standing to the liens that secure the obligations under the DIP

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Term Loan Credit Agreement or DIP Term Loan Documents), and it shall not be a default if the Debtors seek or obtain approval of such a refinancing or of such liens, *provided* that the DIP Term Loan Obligations are repaid in full in accordance with the terms of the DIP Term Loan Documents upon the consummation of and with the proceeds of any such refinancing.

The DIP Term Loan Credit Agreement and DIP Term Loan Documents are deemed to have been amended by the foregoing.

### **Findings of Fact**

A.      Petition Date.  On May 19, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court").

B.      Debtors in Possession.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.

C.      Jurisdiction and Venue.  This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief sought in the DIP Motion and granted in the Interim Orders and this Final Order are sections 105, 361, 362, 363, 364, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Rules.

D.      Committee Formation.  On May 30, 2019, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured

creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

E.    Notice.  Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.  The relief granted herein is necessary for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets.

F.    Debtors' Stipulations.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of the Debtors and parties-in-interest as set forth in paragraph 41 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xv) below are referred to herein, collectively, as the "Debtors' Stipulations"), which Debtors' Stipulations shall not constitute a finding of this Court in accordance with Local Bankruptcy Rule 4001-2(g)(4); and further, which Debtors' Stipulations shall be deemed not effective solely with respect to any Challenge timely brought or filed prior to the Challenge Period Termination Date, unless and until such Challenge is overruled, settled, or denied by final order of the Court:

(i)    *Prepetition Term Loan Facilities.*  Pursuant to that certain Term Loan Credit Agreement dated as of June 9, 2017 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Loan Credit Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Loan Documents" or "Prepetition Documents") among (a) the borrower thereto (the "Prepetition

Term Loan Borrower" and together with the "Guarantors" as defined in the Prepetition Term Loan Credit Agreement, the "Prepetition Term Loan Parties"), (b) Dream II Holdings, LLC and Hollander Home Fashions Holdings, LLC, as parent guarantors, (c) Barings Finance LLC, as administrative agent (in such capacity, the "Prepetition Term Loan Administrative Agent"), and (d) the lenders party thereto (the "Prepetition Term Loan Lenders," and together with the Prepetition Term Loan Administrative Agent, the "Prepetition Term Loan Secured Parties"), the Prepetition Term Loan Lenders provided first lien term loans to the Prepetition Term Loan Borrower (the "Prepetition Term Loan Credit Facility").

(ii)    *Prepetition Term Loan Obligations*.  The Prepetition Term Loan Credit Facility provided the Prepetition Term Loan Borrower with commitments to provide term loans in the aggregate principal amount of up to $190,000,000.  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Loan Credit Facility was $166,472,407.49 (together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of the Prepetition Term Loan Borrowers and certain Prepetition Term Loan Guarantors' obligations pursuant to the Prepetition Term Loan Documents, including all "Obligations" as defined in the Prepetition Term Loan Credit Agreement, the "Prepetition Term Loan Obligations").

(iii)    *Prepetition Term Loan Liens and Prepetition Term Loan Priority Collateral*. As more fully set forth in the Prepetition Term Loan Documents, prior to the Petition Date, the Prepetition Term Loan Borrowers and the Prepetition Term Loan Guarantors granted to the Prepetition Term Loan Administrative Agent, for the benefit of itself and the Prepetition Term Loan

Secured Parties, a security interest in and continuing lien (the "Prepetition Term Loan Liens") on substantially all of their assets and property, including, without limitation, (a) a first priority security interest in and continuing lien on the Term Loan Priority Collateral (as defined in that certain DIP Intercreditor Agreement referred to and as defined below) and all substitutions, replacements, accessions, products, and proceeds of any of the Term Loan Priority Collateral, in any form, including insurance proceeds and all claims against third parties for loss or damage to, or destruction of, or other voluntary conversion (including claims in respect of condemnation or expropriation) of any kind or nature of any or all of the foregoing (the "Prepetition Term Loan Priority Collateral"), and (b) a second priority security interest in and continuing lien on the ABL Priority Collateral (as defined in that certain DIP Intercreditor Agreement referred to and as defined below) and all substitutions, replacements, accessions, products, and proceeds of any of the ABL Priority Collateral, in any form, including insurance proceeds and all claims against third parties for loss or damage to, or destruction of, or other voluntary conversion (including claims in respect of condemnation or expropriation) of any kind or nature of any or all of the foregoing (collectively, the "Prepetition ABL Priority Collateral," and together with the Prepetition Term Loan Priority Collateral, the "Prepetition Collateral").[5]  The Prepetition Term Loan Secured Parties do not have liens on and security interests in the assets of the Canadian Loan Parties (as defined in the DIP Intercreditor Agreement).

(iv)    *Priority of Prepetition Term Loan Liens; Prepetition Intercreditor Agreement; DIP Intercreditor Agreement*.  The Prepetition ABL Agent and Prepetition Term Loan Administrative Agent entered into that certain Intercreditor Agreement dated as of June 9, 2017

---

[5]    Prepetition Term Loan Obligations are not secured by any ABL Canadian Collateral (as defined in the Intercreditor Agreement).

(as amended, restated, supplemented, or otherwise modified in accordance with its terms prior to the Petition Date, the "Prepetition Intercreditor Agreement") to govern the respective rights, interests, obligations, priority, and positions of the Prepetition ABL Secured Parties and Prepetition Term Loan Secured Parties with respect to the assets and properties of the Debtors and other obligors, including the Prepetition ABL Priority Collateral and Prepetition Term Loan Priority Collateral.    Each of the Prepetition ABL Borrowers and Prepetition Term Loan Borrower acknowledged the Prepetition Intercreditor Agreement.    The Prepetition Intercreditor Agreement is binding and enforceable against the Prepetition ABL Loan Parties, Prepetition Term Loan Parties, Prepetition ABL Secured Parties, and Prepetition Term Loan Secured Parties in accordance with its terms and the Prepetition ABL Loan Parties, Prepetition Term Loan Parties, Prepetition ABL Secured Parties, and Prepetition Term Loan Secured Parties are not entitled to take any action that would be contrary to the provisions thereof.    On May 23, 2019, the DIP ABL Agent and DIP Term Loan Agent entered into the Amended and Restated Intercreditor Agreement, amending and restating the Prepetition Intercreditor Agreement in its entirety (the "DIP Intercreditor Agreement").    The DIP Intercreditor Agreement is binding and enforceable against the Prepetition Term Loan Parties, Prepetition ABL Loan Parties, Prepetition ABL Secured Parties, the Prepetition Term Loan Secured Parties, the DIP ABL Secured Parties, the DIP Term Loan Secured Parties, the DIP Term Loan Parties, and the DIP ABL Loan Parties in accordance with its terms and the Prepetition ABL Secured Parties, Prepetition Term Loan Secured Parties, DIP ABL Secured Parties, DIP Term Loan Secured Parties, Prepetition Term Loan Parties, Prepetition ABL Loan Parties, DIP Term Loan Parties, and DIP ABL Loan Parties are not entitled to take any action that would be contrary to the provisions thereof.

(v)     *Validity, Extent, Perfection and Priority of Prepetition Term Loan Liens*.
Subject to paragraph 41 of this Final Order, the Debtors further acknowledge and agree that, as of the Petition Date:  (a) the Prepetition Term Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Term Loan Secured Parties, for fair consideration and reasonably equivalent value; (b) the Prepetition Term Loan Liens were senior in priority over any and all other liens on the Prepetition Collateral (other than ABL Canadian Collateral (as defined in the DIP Intercreditor Agreement)), subject only to (1) the Prepetition ABL Liens on the Prepetition ABL Priority Collateral, (2) the Carve Out, and (3) certain liens otherwise permitted by the Prepetition Term Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Term Loan Liens as of the Petition Date, the "Permitted Prior Liens"); (c) the Prepetition Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Term Loan  Parties enforceable in accordance with the terms of the applicable Prepetition Term Loan Documents; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Loan Secured Parties, or any of their respective affiliates,

agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Term Loan Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Loan Obligations; and (g) the Prepetition Term Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code to the extent of the value of the Prepetition Collateral upon which the Prepetition Term Loan Secured Parties have Prepetition Term Loan Liens.

(vi)    *Default by the Debtors*.  The Debtors acknowledge and stipulate that the Prepetition Term Loan Parties are in default of their obligations under the Prepetition Term Loan Documents.

(vii)    *Releases*.  Subject to Paragraph 41 of this Final Order, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition Term Loan Secured Parties and their respective affiliates and each of their respective former, current or future officers, partners, directors, managers, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their respective capacity as such (collectively, the "Released Parties") from any and all obligations and liabilities to the Debtors (and theirs successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "Released Claims") of any kind, nature or description, whether known or unknown, foreseen or unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or

federal law or otherwise, arising out of or related to (as applicable) the Prepetition Term Loan Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions reflected thereby and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order arising out of or related to (as applicable) the Prepetition Term Loan Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions reflected thereby and the obligations and financial obligations made thereunder, whether such Released Claims are matured, contingent, liquidated, unliquidated, unmatured, known, unknown, or otherwise.

(viii)    *Cash Collateral*.  All cash, securities, or other properties of the DIP Parties (and the proceeds therefrom) to the extent subject to the valid, perfected, enforceable, and unavoidable liens as of the Petition Date of the Prepetition Term Loan Secured Parties, including, without limitation, all cash, securities, or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the DIP Parties in any account or accounts subject to rights of set-off under the Prepetition Term Loan Documents and applicable law, for the benefit of the Prepetition Term Loan Secured Parties, subject to the terms of the DIP Intercreditor Agreement. All proceeds of the Prepetition Collateral (including cash on deposit in any account or accounts as of the Petition Date, securities, or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) to the extent subject to the valid, perfected, enforceable, and unavoidable liens as of the Petition Date of the Prepetition ABL Secured Parties and/or Prepetition Term Loan Secured Parties are "Cash Collateral" of the

applicable Prepetition ABL Secured Parties and Prepetition Term Loan Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral" and solely with respect to the Prepetition Term Loan Priority Collateral, the "Term Loan Cash Collateral"), subject to the Carve Out and the terms of the DIP Intercreditor Agreement.

(ix)    *DIP Intercreditor Agreement*.  Pursuant to section 510 of the Bankruptcy Code, except as expressly provided by the terms of the Interim Orders, this Final Order, the DIP Intercreditor Agreement and any other intercreditor agreement or subordination agreement between and/or among any Prepetition ABL Loan Party, any Prepetition Term Loan Party, any Debtor or affiliate thereof, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition ABL Documents or Prepetition Term Loan Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights and remedies of the Prepetition ABL Secured Parties and the Prepetition Term Loan Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under the Interim Orders, this Final Order, or any other order entered in respect of the DIP Motion or otherwise and the modification of the automatic stay), and (iii) shall not be deemed to be amended, altered, or modified by the terms of the Interim Orders, this Final Order, any other ordered entered in respect of the DIP Motion, the DIP ABL Documents, or the DIP Term Loan Documents, unless expressly set forth herein.  The DIP ABL Credit Facility is an ABL Document as that term is used in the DIP Intercreditor Agreement, and the DIP Term Loan Credit Facility is a Term Loan Document as that term is used in the DIP Intercreditor Agreement.

G.    Findings Regarding Postpetition Financing

(i)    *Request for Postpetition Financing*.  The Debtors seek authority on a final basis to (a) enter into the DIP Term Loan Credit Facility on the terms described herein and in the DIP Term Loan Documents, and (b) use Term Loan Cash Collateral on the terms described herein to administer their Cases and fund their operations.

(ii)    *Priming of the Prepetition Liens*.  The priming of the Prepetition Term Loan Secured Parties on the Prepetition Term Loan Priority Collateral (and the priming of the Prepetition Term Loan Secured Parties on the Prepetition ABL Priority Collateral) under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Term Loan Credit Facility, as authorized by the Interim Orders;

(iii)    and this Final Order, and as further described below, will enable the Debtors to continue borrowing under the DIP Term Loan Credit Facility and to continue to operate their businesses to the benefit of their estates and creditors.  The Prepetition Term Loan Secured Parties are entitled to receive adequate protection as set forth in the Interim Orders; and this Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, solely to the extent of any diminution in value ("Diminution in Value") of each of their respective interests in the Prepetition Collateral (including Cash Collateral), subject to the Carve Out.

(iv)    *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors continue to have a critical need to obtain the financing pursuant to the DIP Term Loan Credit Facility and to continue to use the Prepetition Term Loan Priority Collateral (including Term Loan Cash Collateral) in order to, among other things, (i) permit the orderly continuation of the operation of their businesses, (ii) maintain business relationships with customers, vendors and suppliers, (iii) make payroll, and (iv) satisfy other working capital and operational needs.  The access by the DIP

16

Parties to sufficient working capital and liquidity through the use of Term Loan Cash Collateral and other Prepetition Term Loan Priority Collateral, incurrence of new indebtedness under the DIP Term Loan Documents and other financial accommodations provided under the DIP Term Loan Documents are necessary and vital to the preservation and maintenance of the going concern value of the DIP Parties and to a successful reorganization of the DIP Parties and DIP Term Loan Obligations. The terms of the proposed financing are fair and reasonable, reflect each DIP Parties' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The adequate protection provided in the Interim Orders and this Final Order and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.

(v) *No Term Loan Credit Available on More Favorable Terms*. The DIP Term Loan Credit Facility is the best source of term loan debtor in possession financing available to the Debtors. Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain term loan financing from sources other than the DIP Term Loan Secured Parties on terms more favorable than the DIP Term Loan Credit Facility. The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been and are unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Term loan financing on a postpetition basis is not otherwise available without granting the DIP Term Loan Agent, for the benefit of itself and the DIP Term Loan Secured Parties and on

account of the obligations under the DIP Term Loan Credit Facility: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof, (2) superpriority claims and liens, and (3) the other protections set forth in the Interim Orders and this Final Order.

(vi)    *Use of proceeds of the DIP Term Loan Credit Facility*. As a condition to entry into the DIP Term Loan Documents, the extension of credit under the DIP Term Loan Credit Facility, and the authorization to use Term Loan Cash Collateral, the DIP Term Loan Agent, the DIP Term Loan Secured Parties, and the Prepetition Term Loan Secured Parties required, and the Debtors agreed, that proceeds of the DIP Term Loan Credit Facility shall be used, in each case in a manner consistent with the terms and conditions of the Interim Orders, this Final Order and the DIP Term Loan Documents and in accordance with the budget attached hereto as Exhibit A, as the same may be modified from time to time consistent with the terms of the DIP ABL Documents and DIP Term Loan Documents, and subject to such variances as permitted in the DIP Term Loan Credit Agreement (such budget, as so modified, the "Approved Budget"), solely for: (a) working capital and letters of credit; (b) other general corporate purposes of the Debtors; (c) permitted payment of costs of administration of the Cases; (d) payment of such prepetition expenses of the Prepetition Term Loan Secured Parties as consented to by the DIP Term Loan Agent and the "Required Lenders" under the DIP Term Loan Credit Agreement (the "Required DIP Term Loan Lenders"); (e) payment of interest, fees, and expenses (including without limitation, legal and other professionals' fees and expenses of the DIP Term Loan Agent) owed under the DIP Term Loan Documents; (f) payment of certain adequate protection amounts to the Prepetition Term Loan Secured Parties as set forth in paragraph 16 hereof; and (g) payment of the Carve Out shall be in accordance with paragraph 38 of this Final Order.

18

(vii)    *Application of Proceeds of Collateral*.  As a condition to entry into the DIP Term Loan Credit Agreement, the extension of credit under the DIP Term Loan Credit Facility and authorization to use Term Loan Cash Collateral, the Debtors, the DIP ABL Agent, the DIP Term Loan Agent, the DIP ABL Secured Parties, DIP Term Loan Lenders, the Prepetition ABL Secured Parties, and the Prepetition Term Loan Secured Parties have agreed that, as of and commencing on the date of the First Interim Hearing, the Debtors shall continue to apply the proceeds of DIP Term Loan Priority Collateral in accordance with the Interim Orders, this Final Order and the DIP Intercreditor Agreement.

H.    Adequate Protection.  Subject to the Carve Out and solely to the extent of any Diminution in Value, the Prepetition Term Loan Administrative Agent, for the benefit of itself and the Prepetition Term Loan Secured Parties is entitled to receive adequate protection in the Prepetition Collateral.  Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection (but only to the extent of any Diminution in Value):  the Prepetition Term Loan Secured Parties will receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12-16 herein and (b) current payment of reasonable and documented fees and expenses (including, without limitation, legal and other professionals' fees and expenses of the Prepetition Term Loan Administrative Agent, whether arising before or after the Petition Date).

I.    Sections 506(c) and 552(b).  In light of (i) the DIP Term Loan Agent's and DIP Term Loan Secured Parties' agreement that their liens and superpriority claims shall be subject to the Carve Out (including the caps and limitations set forth therein), (ii) the Prepetition Term Loan Secured Parties' agreement that, with respect to the Prepetition Term Loan Priority Collateral, their liens shall be subject to the Carve Out (and the caps and limitations set forth therein), subordinate to the DIP Term Loan Liens, and, in the case of the Prepetition ABL Priority Collateral, subordinate

19

to the DIP ABL Liens and the Prepetition ABL Liens, and (iii) the Prepetition Term Loan Secured Parties' agreement that, with respect to the Prepetition Term Loan Priority Collateral, their liens shall not include the ABL Canadian Collateral and shall be subject to the Carve Out and subordinate to the DIP Term Loan Liens and, in the case of the ABL Priority Collateral, subordinate to the DIP ABL Liens, the Prepetition ABL Liens, the Canadian Intercompany Superpriority Administrative Claims, and the DIP Term Loan Liens, (a) the Prepetition Term Loan Secured Parties are entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) the Debtors are entitled to grant a waiver of the provisions of section 506(c) of the Bankruptcy Code to the DIP Agents, DIP Lenders, DIP Obligations, Prepetition ABL Secured Parties, Prepetition ABL Obligations, and Prepetition Term Loan Secured Parties, subject to the terms of the DIP Intercreditor Agreement. For the avoidance of doubt, any determination hereunder on the relief sought in the DIP Motion concerning the section 506(c) waiver shall be binding on, and adhere to the benefit of, the DIP ABL Secured Parties and Prepetition ABL Secured Parties notwithstanding anything to the contrary in the Final ABL Order.

J.      Good Faith of the DIP Term Loan Agents and DIP Term Loan Secured Parties.

(i)     *Willingness to Provide Financing*.  The DIP Term Loan Secured Parties have indicated a willingness to provide and to continue to provide financing to the Debtors subject to:  (a) entry of the Interim Orders and this Final Order; (b) final approval of the terms and conditions of the DIP Term Loan Credit Facility and the DIP Term Loan Documents; (c) satisfaction of the closing conditions set forth in the DIP Term Loan Documents; and (d) findings by this Court that the DIP Term Loan Credit Facility is essential to the Debtors' estates, that the DIP Term Loan Agent and DIP Term Loan Secured Parties are extending credit to the Debtors pursuant to the DIP Term Loan Documents in good faith, and that the DIP Term Loan

Agent's and DIP Term Loan Secured Parties' claims, superpriority claims, security interests and liens, and other protections granted pursuant to the Interim Orders and this Final Order and the DIP Term Loan Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)    *Business Judgment*.    Based on the DIP Motion, the declarations filed in support of the DIP Motion, and the record presented to the Court at the Interim Hearings and Final Hearing, (i) the terms of the financing provided by the DIP Term Loan Credit Facility, (ii) the adequate protection provided by the Interim Orders, this Final Order, and DIP Term Loan Documents, and (iii) the terms on which the DIP Parties may continue to use the Prepetition Collateral (including Cash Collateral), in each case pursuant to the Interim Orders, this Final Order, and the DIP Term Loan Documents, are in each case fair and reasonable, reflect the DIP Parties' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represents the best financing (and terms) presently available.

(iii)    *Good Faith Pursuant to Section 364(e)*.    The terms and conditions of the DIP Term Loan Credit Facility were negotiated in good faith and at arms' length among the Debtors, the Prepetition Term Loan Secured Parties, and the DIP Term Loan Secured Parties, with the assistance and counsel of their respective advisors.    The credit to be extended under the DIP Term Loan Credit Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Term Loan Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

K.    Immediate Entry.    Sufficient cause existed for immediate entry of the Interim Orders pursuant to Bankruptcy Rule 4001(c)(2).

L.    <u>Final Hearing</u>.  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier, or hand delivery, to certain parties-in-interest, including, among others:   (i) the U.S. Trustee, (ii) those entities or individuals included on the Debtors' list of 50 largest unsecured creditors on a consolidated basis, (iii) counsel to the Prepetition ABL Agent, (iv)  counsel to the Prepetition Term Loan Administrative Agent; (v) counsel to the Put Purchasers; (vi) the Creditors' Committee; and (vii) all other parties entitled to notice under the Local Rules.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required in connection with the relief set forth in the Interim Orders or this Final Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.    <u>DIP Term Loan Credit Facility Approved</u>.  The DIP Motion is granted on a final basis solely to the extent set forth below, the DIP Term Loan Credit Facility was authorized in part on an interim basis pursuant to the Interim Orders as modified therein, and hereby is authorized and approved on a final basis as set forth below (including any modifications in this Final Order as to the Interim Orders), and the use of Cash Collateral was authorized pursuant to the terms of the Interim Orders and the use of the Term Loan Cash Collateral is hereby authorized on a final basis, in each case, subject to the terms and conditions set forth in this Final Order.  All objections to the Interim Orders and this Final Order as they relate to the DIP Term Loan Credit Facility and use of Term Loan Cash Collateral, to the extent not withdrawn, waived, settled, or

resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits. This Final Order shall become effective immediately upon its entry.

DIP Term Loan Credit Facility Authorization

2.    <u>Authorization of the DIP Term Loan Financing</u>.  The DIP Term Loan Credit Facility was approved on an interim basis pursuant to the Interim Orders (as described therein) and is hereby approved on a final basis on the terms set forth in this Final Order.  The Debtors were expressly and immediately authorized and empowered pursuant to the Interim Orders to execute and deliver the DIP Term Loan Documents and are hereby expressly and immediately authorized and empowered on a final basis to continue borrowing under the DIP Term Loan Documents, and to incur and to perform the DIP Term Loan Obligations in accordance with, and subject to, the terms of the Interim Orders, this Final Order and the DIP Term Loan Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Term Loan Credit Facility and the creation and perfection of the DIP Term Loan Liens (as defined below) described in and provided for by the Interim Orders and this Final Order and the DIP Term Loan Documents.  The Debtors were authorized and directed pursuant to the Interim Orders and are hereby authorized and directed on a final basis to pay, in accordance with the Interim Orders and this Final Order, the principal, interest, fees, expenses and other amounts described in the DIP Term Loan Documents and all other documents comprising the DIP Term Loan Credit Facility as such become due and without need to obtain further Court approval, including, without limitation, closing fees, unused facility fees, continuing commitment fees, backstop fees, exit fees, servicing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Term Loan Agent's attorneys, advisors, accountants, and other

consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated by the Interim Orders or this Final Order are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in the Interim Orders, this Final Order or the DIP Term Loan Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order and the DIP Term Loan Documents. As of the date of execution and delivery, the DIP Term Loan Documents continue to represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.    Authorization to Borrow.  From the entry of this Final Order through and including the Termination Declaration (as defined below), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Term Loan Documents, the Interim Orders and this Final Order, the Debtors were authorized pursuant to the Interim Orders and are hereby authorized to (i) borrow money pursuant to the DIP Term Loan Credit Agreement and the DIP Term Loan Guarantors were authorized pursuant to the Interim Orders and are hereby authorized by this Final Order to guaranty the DIP Term Loan Parties' DIP Term Loan Obligations with respect to such borrowings, in each case up to an aggregate principal amount equal to $28,000,000 on a final basis together with applicable interest, expenses, fees and other charges payable in connection with the DIP Term Loan Credit Facility, subject to any limitations on borrowing under the DIP Term Loan Documents, which shall be used for all purposes permitted under the DIP Term Loan Documents, including, without limitation, to provide working capital for the DIP Parties and to pay interest, fees, costs, charges, and expenses in accordance with the

Interim Orders, this Final Order, and the Approved Budget (subject to the variances permitted by

the DIP ABL Credit Agreement and the DIP Term Loan Credit Agreement).  In connection with

obtaining and using funds to enable the Debtors to pay the expenses set forth in the Approved

Budget (subject to the variances permitted by the DIP ABL Credit Agreement and the DIP Term

Loan Credit Agreement), the Debtors shall borrow and use (or in the case of amounts already

borrowed under the DIP Term Loan Credit Facility, use), on a weekly and cumulative basis, an

equal amount from the DIP ABL Credit Facility (subject to Excess Availability (as defined in the

DIP ABL Credit Agreement)) and the amounts borrowed under the DIP Term Loan Credit Facility.

        4.     <u>DIP Term Loan Obligations</u>.  The DIP Term Loan Documents, the Interim

Orders and this Final Order shall constitute and evidence the validity and binding effect of the

Debtors' DIP Term Loan Obligations, which DIP Term Loan Obligations shall be enforceable

against the Debtors, their estates and any successors thereto, including without limitation, any

trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the

conversion of any of the Cases, or in any other proceedings superseding or related to any of the

foregoing (collectively, the "<u>Successor Cases</u>").  Upon entry of this Final Order, the DIP Term

Loan Obligations will include all loans, and any other indebtedness or obligations, contingent or

absolute, which may now or from time to time be owing by any of the Debtors to any of the DIP

Term Loan Secured Parties, under the DIP Term Loan Documents, the Interim Orders or this Final

Order, including, without limitation, all principal, accrued interest, costs, charges, fees, expenses,

and other amounts under the DIP Term Loan Documents.  The DIP Term Loan Parties shall

continue to be jointly and severally liable for the DIP Term Loan Obligations.  The DIP Term Loan

Obligations, as applicable, shall be due and payable, without notice or demand, and the use of

Term Loan Cash Collateral shall automatically cease on each applicable Termination Date, as

applicable, except as provided in paragraph 29 herein.  No obligation, payment, transfer, or grant

of collateral security hereunder, under the Interim Orders or under the DIP Term Loan Documents

(including any DIP Term Loan Obligation or DIP Term Loan Liens, and including in connection

with any adequate protection provided to the Prepetition Term Loan Secured Parties) stayed,

restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable

law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy

Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent

Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff,

recoupment, offset, recharacterization, subordination (whether equitable, contractual, or

otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code

or any applicable law or regulation by any person or entity.

5.    <u>DIP Term Loan Liens</u>.  In order to secure the DIP Term Loan Obligations,

effective immediately upon entry of the First Interim Order, pursuant to sections 361, 362,

364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Term Loan Agent, for the benefit

of itself and the DIP Term Loan Secured Parties, were granted pursuant to the Interim Orders and

are hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and

properly perfected postpetition security interests in and liens on (collectively, the "<u>DIP Term Loan

Liens</u>") all real and personal property, whether now existing or hereafter arising and wherever

located, tangible and intangible, of, with respect to the DIP Term Loan Obligations, each of the

DIP Term Loan Parties (the "<u>DIP Term Loan Collateral</u>" or "<u>DIP Collateral</u>"),[6] including without

limitation:  (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other

---

[6]    For the avoidance of doubt, the DIP Term Loan Collateral does not include ABL Canadian Collateral (as
defined by the DIP Intercreditor Agreement).

receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable), and investment property (including, without limitation, all of the issued and outstanding capital stock of each of its subsidiaries), furniture, fixtures, equipment, goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, intellectual property, general intangibles, rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, causes of action (excluding commercial tort claims and avoidance actions (but including avoidance actions brought pursuant to section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral)) and all substitutions, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, (b) all owned real property interests and all proceeds of leased real property, and (c) proceeds of any avoidance actions brought pursuant to section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral.  DIP Collateral that is of a type that would be ABL Priority Collateral (as defined the DIP Intercreditor Agreement) and the proceeds and products thereof shall in each case, constitute "DIP ABL Priority Collateral," DIP Collateral that is of a type that would be Term Loan Priority Collateral (as defined in the DIP Intercreditor Agreement) and the proceeds and products thereof and shall, in each case, constitute "DIP Term Loan Priority Collateral".

6.    DIP Lien Priority.  The DIP Term Loan Liens are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Term Loan Liens shall be subject to the Carve Out, and shall otherwise be junior only to: (i) as to the DIP Term Loan Priority Collateral, Permitted Prior Liens; and (ii) as to the DIP ABL Priority Collateral, (A) Permitted

Prior Liens; (B) the DIP ABL Liens; (C) the Prepetition ABL Liens; (D) the Prepetition ABL Adequate Protection Liens; and (E) the Canadian Intercompany Superpriority Administrative Claims. Other than as set forth herein or in the DIP Term Loan Documents, the DIP Term Loan Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Term Loan Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Term Loan Liens. Notwithstanding anything herein to the contrary, none of the Prepetition Term Loan Adequate Protection Liens or DIP Term Loan Liens shall exist with respect to any ABL Canadian Collateral (as defined by the DIP Intercreditor Agreement).

7.      <u>Superpriority Claims</u>.  The DIP Term Loan Secured Parties were pursuant to the Interim Orders and hereby are granted on a final basis (as of the date of entry of the First Interim Order), pursuant to Section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "<u>DIP Term Loan Superpriority Claims</u>") for all DIP Term Loan Obligations:  (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 506(c) (in regard to surcharge claims against secured creditors other than the

Prepetition Term Loan Secured Parties), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law; provided that the DIP Term Loan Agent and DIP Term Loan Secured Parties shall first use reasonably commercial efforts to seek recourse against the DIP Term Loan Priority Collateral before exercising any remedies against proceeds of avoidance actions.  Notwithstanding the foregoing, the DIP Term Loan Superpriority Claims and the "DIP Superpriority Claims" (as defined in the Interim Orders) of the DIP Term Loan Parties shall be *pari passu* with each other, without otherwise impairing the lien priorities as set forth herein, and subject to the terms of the DIP Intercreditor Agreement and Carve Out (including the caps and limitations therein).

8.      No Obligation to Extend Credit.  Except as required to fund the Carve Out in accordance with the terms of this Final Order, the DIP Term Loan Agent and DIP Term Loan Secured Parties shall have no obligation to make any loan or advance under the DIP Term Loan Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Term Loan Documents and this Final Order have been satisfied in full or waived by the DIP Term Loan Agent (acting at the direction of the Required DIP Term Loan Lenders) in accordance with the terms of the DIP Term Loan Credit Agreement.

9.      Use of Proceeds of DIP Term Loan Credit Facility.  The Debtors shall continue to use advances of credit under the DIP Term Loan Credit Facility, in accordance with the Approved Budget (subject to such variances as permitted in the DIP Term Loan Credit Agreement), only for the purposes specifically set forth in the Interim Orders, this Final Order and

the DIP Term Loan Documents, and in compliance with the terms and conditions in the Interim Orders, this Final Order and the DIP Term Loan Documents.

10.    No Monitoring Obligation.  No DIP Term Loan Secured Party shall have any obligation nor responsibility to monitor any DIP Term Loan Party's use of DIP Term Loan Credit Facility, and each DIP Term Loan Secured Party may rely upon each DIP Term Loan Party's representation that the use of the DIP Term Loan Credit Facility at any time is in accordance with the requirements of the Interim Orders, this Final Order, the DIP Term Loan Documents and Bankruptcy Rule 4001(c)(2).

11.    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order, the DIP Term Loan Credit Facility and the DIP Term Loan Documents and in accordance with the Approved Budget (subject to variances as permitted in the DIP Term Loan Credit Agreement), the Debtors were authorized pursuant to the Interim Orders and hereby are authorized to use Term Loan Cash Collateral until the Termination Date.  Nothing in the Interim Orders or this Final Order shall authorize the disposition of any assets of the Debtors outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order (including with respect to the Carve Out), the DIP Term Loan Credit Facility, the DIP Term Loan Documents, and in accordance with the Approved Budget (subject to such variances as permitted in the DIP Term Loan Credit Agreement).

12.    Prepetition Term Loan Adequate Protection Liens.  Subject to the terms of the DIP Intercreditor Agreement and the Carve Out and solely to the extent of any Diminution in Value:  pursuant to Sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral solely against any Diminution in Value of such interests in the Prepetition Collateral, the

Prepetition Term Loan Parties granted pursuant to the Interim Orders and hereby grant (as of the date of entry of the First Interim Order) to the Prepetition Term Loan Administrative Agent, for the benefit of itself and the Prepetition Term Loan Secured Parties continuing valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Term Loan Collateral (the "Prepetition Term Loan Adequate Protection Liens" or "Adequate Protection Liens").

13.    _Priority of Prepetition Term Loan Adequate Protection Liens_.  Subject to the terms of the DIP Intercreditor Agreement:  the Prepetition Term Loan Adequate Protection Liens shall be subject to the Carve Out (and the caps and limitations set forth therein) and  shall otherwise be junior only to:  (a) with respect to the DIP ABL Priority Collateral (1) Permitted Prior Liens; (2) the DIP ABL Liens; (3) the Canadian Intercompany Superpriority Administrative Claims; (4) the Prepetition ABL Liens; (5) the Prepetition ABL Adequate Protection Liens; (6) the DIP Term Loan Liens; and (7) the Prepetition Term Loan Liens; and (b) with respect to the DIP Term Loan Priority Collateral (1) Permitted Prior Liens;  (2) the DIP Term Loan Liens;  and (3) the Prepetition Term Loan Liens.  The Prepetition Term Loan Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Term Loan Parties' assets.  Except as provided herein, the Prepetition Term Loan Adequate Protection Liens shall not be made subject to or _pari passu_ with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  The Prepetition Term Loan Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of

the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Term Loan Liens or the Prepetition Term Loan Adequate Protection Liens.

14.    <u>Prepetition Term Loan Adequate Protection Superpriority Claims</u>.  Subject to the terms of the DIP Intercreditor Agreement and the Carve Out and solely to the extent of any Diminution in Value, as further adequate protection of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral (other than the ABL Canadian Collateral) solely against any Diminution in Value of such interests in the Prepetition Collateral (other than the ABL Canadian Collateral), the Prepetition Term Loan Administrative Agent, on behalf of itself and the Prepetition Term Loan Secured Parties, was pursuant to the Interim Orders and is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code as allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (other than in the Case of the Canadian Borrower) (the "<u>Prepetition Term Loan Superpriority Claim</u>" or "<u>Adequate Protection Superpriority Claims</u>").

15.    <u>Priority of the Prepetition Term Loan Adequate Protection Superpriority Claims</u>.  Except as set forth herein, including with respect to the Canadian Intercompany Superpriority Administrative Claims, the Prepetition Term Loan Superpriority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (solely with respect to surcharge claims against secured creditors other than the Prepetition Term Loan Secured Parties), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code; *provided*, *however*, that the Prepetition ABL Superpriority Claims and the Prepetition Term Loan Superpriority Claims shall be *pari passu* with

each other (in each of the Cases other than the Recognition Proceedings, which shall be limited to Prepetition ABL Superpriority Claims in favor of the ABL Secured Parties), without otherwise impairing the lien priorities as set forth herein, and subject to the Carve Out and junior to the DIP Term Loan Superpriority Claims.

16.     <u>Adequate Protection Payments and Protections for Prepetition Term Loan Secured Parties</u>.  As further adequate protection and solely to the extent of any Diminution in Value and subject to the Carve Out (the "<u>Prepetition Term Loan Adequate Protection Payments</u>"), the Debtors are authorized and directed to provide adequate protection to the Prepetition Term Loan Secured Parties in the form of payment in cash in connection with the Cases and the Case of the Canadian Borrower (and as to fees and expenses without the need for the filing of formal fee applications) upon entry of this Final Order, as provided in the DIP Term Loan Credit Agreement.

17.     <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Term Loan Secured Parties under the Interim Orders or hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.  The receipt by the Prepetition Term Loan Secured Parties of the adequate protection provided in the Interim Orders or herein shall not be deemed an admission that the respective interests of the Prepetition Term Loan Secured Parties are adequately protected.  Further, the Interim Orders and this Final Order shall not prejudice or limit the rights of the Prepetition Term Loan Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection or the rights of any party to oppose such requests for additional relief.

<u>Additional Provisions to DIP Financing and Use of Term Loan Cash Collateral</u>

18.    <u>Amendment of the DIP Term Loan Documents</u>.    The DIP Term Loan Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if:    (a) the amendment, modification, or supplement is in accordance with the DIP Term Loan Documents, and (b) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification, or supplement is provided to counsel to DIP ABL Agent, the Creditors' Committee and any other committee appointed under section 1102 or 1104 of the Bankruptcy Code, and the U.S. Trustee (collectively, the "<u>Notice Parties</u>") not less than three (3) business days in advance in writing; and (c) the amendment, modification, or supplement is filed with the Court; *provided*, *however*, that neither consent of the Notice Parties nor approval of the Court will be necessary to effectuate any such amendment, modification or supplement and provided further that such amendment, modification, or supplement shall be without prejudice to the right of any party in interest to be heard; provided, further, that no such amendment, modification, or supplement shall modify the DIP Term Loan Documents in a manner that is materially different from that approved by the Court.

19.    <u>Budget Maintenance</u>.    The use of borrowings and letters of credit under the DIP Term Loan Credit Facility shall be in accordance with the Approved Budget (subject to such variances as permitted in the DIP Term Loan Credit Agreement) and the terms and conditions set forth in the DIP Term Loan Document.    The Approved Budget and any modification to, or amendment or update of, the Approved Budget shall be subject to the reasonable approval of, and in form and substance reasonably acceptable to the DIP ABL Agent in accordance with the DIP ABL Documents and DIP Term Loan Agent in accordance with the DIP Term Loan Documents. The Debtors will promptly provide the Creditors' Committee with copies of the Approved Budget and any modifications, amendments, or updates thereto that have been approved by the DIP ABL

Agent in accordance with the DIP ABL Documents and DIP Term Loan Agent in accordance with the DIP Term Loan Documents. No amendment or modifications as to the DIP Term Loan Documents shall be made unless the Creditors' Committee is provided with three (3) business days' prior notice. If an objection to the proposed modifications or amendments is expressed by the Creditors' Committee in writing within such time period, then the parties agree to seek an expedited hearing to resolve the objection if it cannot be resolved amongst themselves.

20. <u>Budget Compliance</u>. The use of borrowings and letters of credit under the DIP Term Loan Credit Facility shall be in accordance with the Approved Budget (subject to such variances as permitted in the DIP Term Loan Credit Agreement) and the DIP Term Loan Documents; *provided*, *however*, that, in the case of the fees, costs and expenses of the DIP Term Loan Agent, the Debtors shall pay such fees, costs and expenses in accordance with the DIP Term Loan Documents and this Final Order without being limited by the Approved Budget.

21. <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code was, pursuant to the Interim Orders, and is hereby modified as necessary to effectuate all of the terms and provisions of the Interim Orders and this Final Order, including, without limitation, to: (a) permit the Debtors to grant on a final basis the DIP Term Loan Liens (as of the date of entry of the First Interim Order), Prepetition Term Loan Adequate Protection Liens (as of the date of entry of the First Interim Order), DIP Term Loan Superpriority Claims, and Prepetition Term Loan Superpriority Claims; (b) permit the Debtors on a final basis to perform such acts as the DIP Term Loan Agent, DIP Term Loan Secured Parties, or the Prepetition Term Loan Administrative Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors on a final basis to incur all liabilities and obligations to the DIP Term Loan Secured Parties, and the Prepetition Term Loan

Secured Parties under the DIP Term Loan Documents, the DIP Term Loan Credit Facility, the

Interim Orders, and this Final Order; and (d) authorize the Debtors on a final basis to pay, and the

DIP Term Loan Agent, the DIP Term Loan Secured Parties, and the Prepetition Term Loan Secured

Parties to retain and apply, payments made in accordance with the terms of the Interim Orders, this

Final Order, and the DIP Term Loan Documents.

22.      Perfection of DIP Term Loan Liens and Prepetition Term Loan Adequate

Protection Liens.  The Interim Orders and this Final Order shall be sufficient and conclusive

evidence of the creation, validity, perfection, and priority of all liens granted therein and herein,

including the DIP Term Loan Liens and the Prepetition Term Loan Adequate Protection Liens,

without the necessity of filing or recording any financing statement, mortgage, notice, or other

instrument or document which may otherwise be required under the law or regulation of any

jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into

any deposit account control agreement) to validate or perfect (in accordance with applicable

non-bankruptcy law) the DIP Term Loan Liens, the Prepetition Term Loan Adequate Protection

Liens, or to entitle the DIP Term Loan Secured Parties and the Prepetition Term Loan Secured

Parties to the priorities granted herein (subject to the DIP Intercreditor Agreement).

Notwithstanding the foregoing, the DIP Term Loan Agent and the Prepetition Term Loan

Administrative Agent each are authorized to file, as in its reasonable discretion it deems necessary

or advisable, such financing statements, security agreements, mortgages, notices of liens, and other

similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise

evidence the DIP Term Loan Liens and the Prepetition Term Loan Adequate Protection Liens, and

all such financing statements, mortgages, notices, and other documents shall be deemed to have

been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation

shall be necessary or required in order to create or perfect the DIP Term Loan Liens, or the Prepetition Term Loan Adequate Protection Liens. The Debtors were, pursuant to the Interim Orders, and hereby are authorized and directed to execute and deliver reasonably promptly to the DIP Term Loan Agent and Prepetition Term Loan Administrative Agent all such financing statements, mortgages, notices and other documents as the DIP Term Loan Agent and Prepetition Term Loan Administrative Agent may reasonably request; provided that nothing herein shall require the Debtors to obtain any required consent of third parties to any such financing statements, mortgages, notices, and other documents. The DIP Term Loan Agent and the Prepetition Term Loan Administrative Agent, each in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument. To the extent that any Prepetition Term Loan Administrative Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition Term Loan Documents or is listed as loss payee, lenders' loss payee, or additional insured under any of the Debtors' insurance policies, DIP Term Loan Agent shall also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable. The Prepetition Term Loan Administrative Agent shall serve as agent for the DIP Term Loan Agent for purposes of perfecting the DIP Term Loan Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

23. <u>Application of Proceeds of Collateral</u>.  Subject to the Carve Out, as a condition to the entry of the DIP Term Loan Documents, the extension of credit under the DIP Term Loan Credit Facility and the authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the First Interim Hearing, the Debtors shall apply all net proceeds of DIP Term Loan Priority Collateral that is sold in the ordinary course or liquidated as follows:  (i) *first*, to costs and expenses of the DIP Term Loan Agent; (ii) *second*, to reduce the DIP Term Loan Obligations; (iii) *third*, to reduce the Prepetition Term Loan Obligations; and (iv) after indefeasible repayment in full in cash of the Prepetition Term Loan Obligations and the DIP Term Loan Obligations (including, in each case, provision for contingent obligations), (w) to costs and expenses of the DIP ABL Agent, (x) to reduce the Prepetition ABL Obligations, (y) to reduce the DIP ABL Obligations, and (z) to the repayment of the Canadian Intercompany Superpriority Administrative Claims.  The reduction of the Prepetition ABL Obligations and Prepetition Term Loan Obligations is subject to the preservation of rights provided in paragraph 41 herein.

24. <u>Protections of Rights of DIP Term Loan Secured Parties and Prepetition Term Loan Secured Parties</u>.

(i)       Unless the DIP Term Loan Agent and the Prepetition Term Loan Administrative Agent shall have provided their prior written consent or all DIP Term Loan Obligations and all Prepetition Term Loan Obligations have been indefeasibly paid in full in cash and all commitments thereunder are terminated, there shall not be entered in any of these Cases or any Successor Cases (including any order confirming any plan of reorganization or liquidation) any order that authorizes any of the following:  (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative

priority status, in each case that is superior to or *pari passu* with the DIP Term Loan Liens, the DIP

Term Loan Superpriority Claims, the Prepetition Term Loan Liens, the Prepetition Term Loan

Adequate Protection Liens, and/or the Prepetition Term Loan Superpriority Claims; (ii) the use of

Cash Collateral for any purpose other than as permitted in the DIP Term Loan Documents, the

Interim Orders and this Final Order and the Approved Budget (subject to such variances as

permitted in the DIP Term Loan Credit Agreement), the return of goods pursuant to section 546(h)

of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to

any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition

indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code

or otherwise, or (iii) any modification of any of the DIP Term Loan Agent's, DIP Term Loan

Secured Parties', or the Prepetition Term Loan Secured Parties' rights under the Interim Orders,

this Final Order, the DIP Term Loan Documents or the Prepetition Term Loan Documents with

respect any DIP Term Loan Obligations or Prepetition Term Loan Obligations.

(ii)    The Debtors (and/or their legal and financial advisors in the case of

clauses (ii) through (iv) below) will, whether or not the DIP Term Loan Obligations have been

indefeasibly paid in full in cash, (i) maintain books, records, and accounts to the extent and as

required by the DIP Term Loan Documents, (ii) reasonably cooperate with, consult with, and

provide to the DIP Term Loan Secured Parties all such information and documents that any or all

of the Debtors are obligated (including upon reasonable request by any of the DIP Term Loan

Agent or the DIP Term Loan Secured Parties) to provide under the DIP Term Loan Documents or

the provisions of the Interim Orders, this Final Order, or as reasonably requested by the DIP Term

Loan Secured Parties, in each case as and to the extent required by the DIP Term Loan Documents,

(iii) upon reasonable advance notice, permit consultants, advisors, and other representatives

(including third party representatives) of each of the DIP Term Loan Secured Parties and the Prepetition Term Loan Administrative Agent to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors as and to the extent required by the DIP Term Loan Documents and/or the Prepetition Term Loan Documents, (iv) permit the DIP Term Loan Agent, the DIP Term Loan Secured Parties, and the Prepetition Term Loan Administrative Agent, and their respective consultants, advisors and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, in each case as and to the extent required by the DIP Term Loan Documents, and (v) upon reasonable advance notice, permit the DIP Term Loan Agent, the DIP Term Loan Secured Parties and the Prepetition Term Loan Administrative Agent to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and Prepetition Collateral in each case as and to the extent required by the DIP Term Loan Documents.  The Creditors' Committee shall receive any financial reporting required to be provided by the Debtors contemporaneously with the provision of such reports to the DIP Term Loan Secured Parties or Prepetition Term Loan Secured Parties.

(iii)     No Debtor shall object to any DIP Term Loan Secured Parties' or any Prepetition Term Loan Secured Parties' credit bidding up to the full amount of the applicable outstanding DIP Term Loan Obligations and Prepetition Term Loan Obligations (as applicable), in

each case, including any accrued interest and expenses, in any sale of any DIP Collateral or

Prepetition Collateral, as applicable, and whether such sale is effectuated through Section 363 or

1129 of the Bankruptcy Code, by a Chapter 7 trustee under Section 725 of the Bankruptcy Code,

with the approval of the Canadian Court in respect of any sale of assets of the Canadian Loan

Parties, or otherwise, subject, in each case, (w) to the rights and duties of the parties under the DIP

Intercreditor Agreement, (x) to a Challenge (as defined herein) and (y) to the provision of

consideration sufficient to pay in full in cash any senior liens on the collateral that is subject to the

credit bid.  For the avoidance of doubt, nothing in this paragraph 24 shall prejudice the rights of

the Debtors to refinance the DIP Term Loan Obligations, *provided* that the DIP Term Loan

Obligations are repaid in full in accordance with the terms of the DIP Term Loan Documents.

      25.    Proceeds of Subsequent Financing.  Except with respect to the DIP ABL

Obligations contemplated by the DIP Motion, if the Debtors, any trustee, any examiner with

expanded powers, or any responsible officer subsequently appointed in these Cases or any

Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b),

364(c), or 364(d) or in violation of the DIP Term Loan Documents at any time prior to the

indefeasible repayment in full of all DIP Term Loan Obligations and Prepetition Term Loan

Obligations, and the termination of the DIP Term Loan Secured Parties' obligation to extend credit

under the DIP Term Loan Credit Facility, including subsequent to the confirmation of any plan

with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by

any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately

be turned over to the DIP Term Loan Agent to be applied in accordance with this Final Order, the

DIP Term Loan Documents and the DIP Intercreditor Agreement.

26.    <u>Cash Collection</u>.  From and after the date of the entry of the First Interim Order, the Debtors shall continue to maintain cash management in accordance with the DIP Term Loan Documents, as modified by this Final Order.  Unless otherwise agreed to in writing by the DIP Term Loan Agent and Prepetition Term Loan Administrative Agent, the Debtors shall maintain no accounts except those identified in any interim and/or final order granting the *Debtors' Motions for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief* (the "<u>Cash Management Order</u>").  Until such time as Debtors are able to establish a deposit account at a bank other than Wells Fargo Bank, National Association to serve as the TL Deposit Account (as defined in the DIP Term Loan Credit Agreement), the account established for such purpose at Wells Fargo Bank, National Association shall constitute such TL Deposit Account and shall be subject to a fully perfected first priority lien and security interest in favor of the DIP Term Loan Agent as fully as if it were subject to a control agreement in favor of the DIP Term Loan Agent.  For the avoidance of doubt, any TL Deposit Account shall not be subject to any liens or security interests other than liens and security interests in favor of the DIP Term Loan Agent.

27.    <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full of all DIP Term Loan Obligations, all Prepetition Term Loan Obligations, and the termination of the DIP Term Loan Secured Parties' obligation to extend credit under the DIP Term Loan Credit Facility, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP Term Loan Documents or the Prepetition Term Loan Documents, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any Cash Management Order which has

42

first been agreed to by the DIP Term Loan Agent or as otherwise required by the DIP Term Loan Documents.

28.    <u>Disposition of DIP Collateral</u>.    The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Term Loan Priority Collateral or Prepetition Term Loan Priority Collateral other than in the ordinary course of business without the prior written consent of the DIP Term Loan Agent (acting at the direction of the Required Term DIP Lenders) and the Prepetition Term Loan Administrative Agent (acting at the direction of the "Required Lenders" (as defined in the Prepetition Term Loan Credit Agreement) (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Term Loan Secured Parties, or Prepetition Term Loan Secured Parties), except as otherwise provided for in the DIP Term Loan Documents, and subject to the DIP Intercreditor Agreement.

29.    <u>Termination Date</u>.    On the Termination Date, (a) all DIP Term Loan Obligations shall be immediately due and payable, all commitments to extend credit under the DIP Term Loan Credit Facility will terminate, other than as required in paragraph 38 with respect to the Carve Out, and (b) all authority to use Cash Collateral shall cease.  For the purposes of this Final Order, the "DIP Term Loan Termination Date" shall mean the date the commitments are terminated pursuant to the terms of the DIP Term Loan Credit Agreement, including with respect to any cross termination rights with respect to the termination of the DIP ABL Credit Agreement in accordance with its terms.

30.    <u>Events of Default</u>.    The occurrence of any of the following events, unless waived by the DIP Term Loan Agent in writing and in accordance with the terms of the applicable DIP Term Loan Documents, shall constitute an event of default (collectively, the "<u>Events of Default</u>"):  (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions,

conditions, covenants, or obligations under this Final Order or any Canadian Recognition Order, including, without limitation, failure to make any payment under this Final Order when due, (b) the occurrence of an "Event of Default" under, and as defined in, the DIP Term Loan Credit Agreement, (c) any adverse modifications, amendments, or reversal of the Interim Orders or this Final Order, and no such waiver shall be implied by any other action, inaction or acquiescence by any party, (d) an order converting or dismissing any of the Cases, (e) an order appointing a chapter 11 trustee in the Cases, (f) an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code, and (g) a plan proposed by the Debtors or confirmation thereof that does not propose to indefeasibly repay the DIP Term Loan Obligations in full in cash, unless otherwise consented to by the DIP Term Loan Agent.

31.    Milestones.  As a condition to the DIP Term Loan Credit Facility and the use of Cash Collateral, the Debtors shall comply with the case milestones set forth in the DIP Term Loan Credit Agreement, as modified by the order approving the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadline, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Disclosure Statement and Plan Confirmation, and (III) Granting Related Relief* [Docket No 22], subject to waiver or extension on the terms set forth in the DIP Term Loan Credit Agreement.  For the avoidance of doubt, the terms herein with respect to any milestones shall after the date of this Final Order supersede any such language in the Interim Orders.

32.    Rights and Remedies Upon Event of Default.  Upon the occurrence and during the continuation of an Event of Default under the DIP Term Loan Documents, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application,

motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final

Order and the Canadian Recognition Orders (a) the DIP Term Loan Agent may declare (any such

declaration shall be referred to herein as a "Termination Declaration") (1) all DIP Term Loan

Obligations owing under the DIP Term Loan Documents to be immediately due and payable,

(2) the termination, reduction, or restriction of any further commitment to extend credit to the

Debtors to the extent any such commitment remains under the DIP Term Loan Credit Facility,

(3) termination of the DIP Term Loan Credit Facility and the DIP Term Loan Documents as to any

future liability or obligation of the DIP Term Loan Secured Parties, but without affecting any of

the DIP Term Loan Liens or the DIP Term Loan Obligations, and (4) that the application of the

Carve Out has occurred through the delivery of the Carve Out Trigger Notice to the Borrowers;

(b) interest, including, where applicable, default interest, shall accrue and be paid as set forth in

the DIP Term Loan Documents, and (c)  the DIP Term Loan Agent may declare a termination,

reduction, or restriction on the ability of the Debtors to use Term Loan Cash Collateral (the date

which is the earliest to occur of (i) any such date a Termination Declaration is delivered by DIP

Term Loan Agent or a "Termination Declaration" (as defined in the Interim Orders) is delivered

by DIP ABL Agent and (ii) the DIP ABL Termination Date or DIP Term Loan Termination Date

(as applicable), shall be referred to herein as the "Termination Date").   The Termination

Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors,

counsel to the DIP ABL Agent, counsel to the Creditors' Committee and any other committee

appointed under section 1102 or 1104 of the Bankruptcy Code, and the U.S. Trustee.   The

automatic stay in the Cases otherwise applicable to the DIP Term Loan Secured Parties, and the

Prepetition Term Loan Secured Parties is hereby modified so that seven (7) business days after the

date a Termination Declaration is delivered (the "Remedies Notice Period"):  (A) the DIP Term

Loan Secured Parties shall be entitled to exercise their rights and remedies in accordance with the respective DIP Term Loan Documents, the Interim Orders and this Final Order and shall be permitted to satisfy the relevant DIP Term Loan Obligations, DIP Superpriority Claim and DIP Term Loan Liens, subject to the Carve Out, (B) the Prepetition Term Loan Secured Parties shall be entitled to exercise their rights and remedies to satisfy the relevant Prepetition Term Loan Secured Obligations, Prepetition Term Loan Superpriority Claims, and Prepetition Term Loan Adequate Protection Liens, subject to and consistent with (i) the Carve Out, (ii) this Final Order, and (iii) the DIP Intercreditor Agreement.  During the Remedies Notice Period, unless otherwise ordered by the Court, the Debtors and/or the Creditors' Committee shall be entitled to seek an emergency hearing within the Remedies Notice Period on any basis and the DIP Term Loan Agent shall consent to such an emergency hearing.  During the Remedies Notice Period, DIP Term Loan Secured Parties shall not be required to consent to the use of any Cash Collateral or provide any loans or other financial accommodations under the DIP Term Loan Credit Facility other than for the payment of accrued and unpaid employee wages and benefits otherwise payable in the ordinary course and in accordance with the Approved Budget and subject to paragraph 38 and availability under the DIP Term Loan Credit Agreement.  Unless the Court orders otherwise, the automatic stay, as to all of the DIP Term Loan Secured Parties, and Prepetition Term Loan Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the DIP Term Loan Secured Parties, and the Prepetition Term Loan Secured Parties shall be permitted to exercise all remedies set forth herein, in the DIP Term Loan Documents, the Prepetition Term Loan Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with the DIP Intercreditor Agreement.

33.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification</u> <u>or Stay of this Final Order</u>.  The DIP Term Loan Secured Parties have acted in good faith in connection with the Interim Orders and this Final Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.  Based on the findings set forth in this Final Order and the record made during the Interim Hearings and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of the Interim Orders or this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Term Loan Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority previously or hereby authorized or created.

34.    <u>DIP and Other Expenses</u>.  The Debtors are authorized and directed to pay all  reasonable and documented fees and expenses of (x) the DIP Term Loan Agent and DIP Term Loan Secured Parties in connection with the DIP Term Loan Credit Facility, as provided in the DIP Term Loan Documents (subject to applicable limitations on the DIP Parties' obligations to pay such amounts in the DIP Term Loan Documents), whether or not the transactions contemplated hereby are consummated, and (y) the Prepetition Term Loan Administrative Agent and Prepetition Term Loan Secured Parties (including the fees and expenses of counsel), as provided in the applicable Prepetition Term Loan Document, subject to the terms of this paragraph.  Payment of all such fees and expenses shall not be subject to allowance by the Court.  Professionals for the DIP Term Loan Agent, the DIP Term Loan Secured Parties, the Prepetition Term Loan Administrative Agent, and the Prepetition Term Loan Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines.  No attorney or advisor to the DIP Term Loan Agent,

DIP Term Loan Secured Parties, Prepetition Term Loan Administrative Agent, or Prepetition Term Loan Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. No fees or expenses of the DIP Term Loan Secured Parties, DIP Term Loan Agent, or Prepetition Term Loan Secured Parties shall be paid prior to the provision of a monthly statement or invoice (which may be presented in summary form and/or redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney-work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney-work product doctrine) to counsel for the Creditors' Committee and the Office of the United States Trustee (hereinafter "Lender Expense Notice Parties"). Any Lender Expense Notice Party shall have ten (10) days after submission of such invoice to assert an objection to payment of the amounts sought in the subject invoice. Provided no objection has been raised by any such Lender Expense Notice Party(ies) within the time period provided for herein, the Debtors (or DIP Term Loan Agent, as applicable) shall be authorized without further order of the Court to pay such invoice. In the event a Lender Expense Notice Party(ies) asserts an objection within the time period provided for herein, the Debtors (or DIP Term Loan Agent, as applicable) shall be authorized without further order of the Court to pay the undisputed portion of such invoice and any dispute with regard to amounts objected to shall be resolved by the Court.

35.    Budget. The Approved Budget was approved pursuant to the Interim Orders and the Budget attached hereto as Exhibit A hereby is approved and the proceeds of the DIP Term Loan Credit Facility and Cash Collateral under the Interim Orders and Final Order shall be used by the Debtors in accordance with the Approved Budget (subject to such variances as permitted in

the DIP Term Loan Credit Agreement), the Interim Orders, this Final Order, and the DIP Term

Loan Documents and to fund the Carve Out, subject to the terms and limitations provided in

paragraph 38 below. None of the DIP Term Loan Secured Parties' consent (if any) to, or

acknowledgement of, the Approved Budget shall be construed as consent to use the proceeds of

the DIP Term Loan Credit Facility or Cash Collateral beyond the respective maturity dates set forth

in the DIP Term Loan Documents, regardless of whether the aggregate funds shown on the

Approved Budget have been expended.

36.    <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP

Term Loan Secured Parties in accordance with the terms and conditions of the DIP Term Loan

Credit Agreement.

37.    <u>Master Proofs of Claim</u>.  The DIP Term Loan Secured Parties and the

Prepetition Term Loan Secured Parties will not be required to file proofs of claim in any of the

Cases or Successor Cases for any claim allowed herein.  Notwithstanding any order entered by the

Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the

contrary, and in order to facilitate the processing of claims, to ease the burden upon the Court and

to reduce an unnecessary expense to the Debtors' estates, the Prepetition Term Loan Administrative

Agent and/or each other Prepetition Term Loan Secured Party is authorized to file in the Debtors'

lead chapter 11 Case, Case No. 19-11608, a single, master proof of claim on behalf of the relevant

Prepetition Term Loan Secured Parties on account of any and all of their respective claims arising

under the applicable Prepetition Term Loan Documents and hereunder (each a "<u>Master Proof of</u>

<u>Claim</u>") against each of the Debtors.  Upon the filing of a Master Proof of Claim against each of

the Debtors, the Prepetition Term Loan Secured Parties, and each of their respective successors

and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its

49

name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Term Loan Documents, and the claim of each Prepetition Term Loan Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition Term Loan Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Term Loan Secured Party (or its successors in interest) to vote separately on any plan proposed in these Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Term Loan Secured Parties, which instruments, agreements or other documents will be provided upon reasonable request to counsel to the Prepetition Term Loan Administrative Agent.

38.    <u>Carve Out</u>.

(a)    <u>Carve Out</u>.  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "<u>Chapter 7 Trustee Carve-Out</u>") and all approved expenses incurred by members of the Creditors' Committee solely in their capacity as such (the "<u>Committee Expenses</u>"); (iii) to the extent allowed at any time, whether by interim order, final order, procedural

order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by

persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy

Code (the "Debtor Professionals") and the Creditors' Committee  pursuant to section 328 or 1103

of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor

Professionals, the "Professional Persons") at any time before or on the first business day following

delivery by the DIP ABL Agent or DIP Term Loan Agent of a Carve Out Trigger Notice (as

defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger

Notice; and (v) Allowed Professional Fees of Professional Persons in an aggregate amount not to

exceed $1,250,000 incurred after the first business day following delivery by the DIP ABL Agent

or the DIP Term Loan Agent of the Carve Out Trigger Notice, to the extent allowed at any time,

whether by interim order, procedural order, or otherwise (the amounts set forth in this clause

(iv) being the "Post-Carve Out Trigger Notice Cap").[7]  For purposes of the foregoing, "Carve Out

Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the

DIP ABL Agent or DIP Term Loan Agent to the Debtors, their lead restructuring counsel, the U.S.

Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the

occurrence and during the continuation of an Event of Default and acceleration of the DIP Term

Loan Obligations or an "Event of Default" under the DIP ABL Documents and acceleration of the

DIP ABL Obligations, respectively, stating that the Post Carve Out Trigger Notice Cap has been

invoked.

> (b)    Fee Estimates.  Not later than 7:00 p.m. New York time on the third business

day of each week starting with the first full calendar week following the Closing Date, each

---

[7]    Notwithstanding the foregoing, up to $250,000 of the Post-Carve Out Trigger Notice Cap may be used to pay
Allowed Professional Fees of Professional Persons incurred prior to the delivery of a Carve Out Trigger Notice
to the extent such Allowed Professional Fees exceed the Professional Fee Carve Out Cap (as defined below).

Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided*, *that* within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date.  For purposes of this paragraph 38(b) and paragraph 38(c), counsel to the Creditors' Committee will be deemed to be the party that has incurred the Committee Expenses, all references to a "Professional Person" shall be deemed to include the counsel to the Creditors' Committee in respect of the Committee Expenses and all references to "Allowed Professional Fees" will be deemed to include the Committee Expenses.  If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person; *provided*, *that* such Professional Person shall be entitled to be paid any unpaid amount of Allowed Professional Fees

in excess of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person from a reserve to be funded by the Debtors from all cash on hand as of such date and any available cash thereafter held by any Debtor pursuant to paragraph 38(c) below. Solely as it relates to the DIP ABL Agent and DIP ABL Secured Parties, any deemed draw and borrowing pursuant to paragraph 38(c)(i) for amounts under paragraph 38(a)(iii) above shall be limited to the greater of (x) the sum of (I) the aggregate unpaid amount of Estimated Fees and Expenses included in such Weekly Statements timely received by the Debtors prior to the Termination Declaration Date *plus*, without duplication, (II) the aggregate unpaid amount of Estimated Fees and Expenses included in the Final Statements timely received by the Debtors pertaining to the period through and including the Termination Declaration Date, and (y) the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for the period prior to the Termination Declaration Date (such amount, the "Professional Fee Carve Out Cap").  For the avoidance of doubt, the DIP ABL Agent and DIP ABL Lenders shall be entitled to maintain at all times a reserve (the "Carve-Out Reserve") in an amount (the "Carve-Out Reserve Amount") equal to the sum of (i) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors, and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Approved Budget at the applicable time, *plus* (ii) the Post-Carve Out Trigger Notice Cap, *plus* (iii) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the following week occurring after the most recent Calculation Date, *plus* (iv) the amounts contemplated under paragraph 38(a)(i) and 38(a)(ii) above.  Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the Closing Date, the Debtors shall deliver to the DIP ABL Agent, the DIP Term Loan Agent, and

the Creditors' Committee concurrently a report setting forth the Carve-Out Reserve Amount as of such time (the "Fee Report"), and, in setting the Carve Out Reserve, the DIP ABL Agent and DIP ABL Lenders shall be entitled to rely upon such reports in accordance with the DIP ABL Credit Agreement or the DIP Term Loan Credit Agreement. Prior to the delivery of the first report setting forth the Carve-Out Reserve Amount, the DIP ABL Agent or the DIP Term Loan Agent may calculate the Carve-Out Reserve Amount by reference to the Approved Budget for subsection (i) of the Carve-Out Reserve Amount. Notwithstanding anything herein to the contrary, DIP ABL Agent may increase the Carve-Out Reserve Amount to include additional amounts with respect to any monitoring charge or other charge arising from the Canadian insolvency proceeding of the Canadian Borrower and for the projected amount of any success, completion, commission-based, or other non-hourly fees billed by or due to any financial advisor, investment banker (including any "Sale Transaction Fee" or "Supplemental Sale Transaction Fee" (each as defined below)), monitor, or other Professional engaged by any Debtor, the Creditors' Committee, or any committee in the Cases.

(c)     Carve Out Reserves. On the day on which a Carve Out Trigger Notice is given by either the DIP ABL Agent or the DIP Term Loan Agent to the Debtors with a copy to counsel to the Creditors' Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall be deemed (i) a draw request and notice of borrowing by the Debtors for DIP ABL Loans under the DIP ABL Credit Agreement in an amount equal to the sum of (x) the amounts set forth in paragraphs (a)(i) and (a)(ii), above, and (y) the then unpaid amounts of the Allowed Professional Fees up to the Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP ABL  Loans) and (ii) a draw request and notice of borrowing by the Debtors for DIP Term Loans under the DIP Term Loan Facility in an amount equal to the unpaid amounts

of the Allowed Professional Fees in excess of the Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP Term Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees (which cash amounts shall reduce, on a dollar-for-dollar basis, the draw requests and applicable DIP ABL Loans and DIP Term Loans pursuant to the foregoing clauses (i) and (ii) of this sentence of this paragraph (c)).  The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Agent in trust exclusively to pay such unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve").  On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a request by the Debtors for (1) DIP ABL Loans under the DIP ABL Credit Agreement in an amount equal to the Post Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP ABL Loans) and, (2) to the extent not funded by the DIP ABL Lenders, for DIP Term Loans in an amount equal to any unfunded portion of the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Term Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (which cash amounts shall reduce, on a dollar-for-dollar basis, the draw requests and applicable DIP ABL Loans and DIP Term Loans pursuant to the foregoing clauses (1) and (2) of this sentence of this paragraph (c)).  The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Agent in trust exclusively to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves").  On the third business day following the

Termination Declaration Date and the deemed requests for the making of DIP ABL Loans and DIP

Term Loans as provided in this paragraph (c), notwithstanding anything in the DIP ABL Credit

Agreement or the DIP Term Loan Credit Agreement to the contrary, including with respect to

(1) the existence of a Default (as defined in the DIP ABL Credit Agreement or the DIP Term Loan

Credit Agreement), Event of Default or an "Event of Default" (as defined in the DIP ABL Credit

Agreement), (2) the failure of the Debtors to satisfy any or all of the conditions precedent for the

making of any DIP ABL Loan under the DIP ABL Credit Agreement or DIP Term Loans under

the DIP Term Loan Credit Agreement, respectively, (3) any termination of the DIP ABL Loan

Commitments or commitments under the DIP Term Loan Credit Facility following an Event of

Default or "Event of Default" (as defined in the DIP ABL Credit Agreement), or (4) the occurrence

of the Maturity Date (as defined in the ABL DIP Credit Agreement or DIP Term Loan Credit

Agreement), each DIP ABL Lender and DIP Term Loan Lender with an outstanding Commitment

shall make available to the DIP ABL Agent or DIP Term Loan Agent, as applicable, such DIP

ABL Lender's or such DIP Term Loan Lender's pro rata share of such DIP ABL Loans or DIP

Term Loans, as applicable.  For the avoidance of doubt, the Carve Out Reserves shall constitute

the primary source for payment of Allowed Professional Fees entitled to benefit from the Carve

Out, and any lien priorities or superpriority claims granted pursuant to this Final Order to secure

payment of the Carve Out shall be limited to any shortfall in funding as provided below.

(d)    <u>Application of Carve Out Reserves</u>.

(i)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first

to pay the obligations set forth in subparagraphs (a)(i) through (a)(iii) of the definition of Carve

Out set forth above (the "<u>Pre-Carve Out Amounts</u>"), but not, for the avoidance of doubt, the

Post-Carve Out Trigger Notice Cap (other than amounts up to $250,000 to the extent the Pre-Carve

Out Amounts exceed the Professional Fee Carve Out Cap), until paid in full. If the Pre-Carve Out

Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining

funds shall be distributed *first* to the DIP ABL Agent on account of the applicable DIP ABL

Obligations until indefeasibly paid in full, in cash, all Commitments have been terminated, and all

Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash

collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable Issuing

Bank), and *thereafter* to the Prepetition ABL Secured Parties in accordance with their rights and

priorities as of the Petition Date.

      (ii)    All funds in the Post-Carve Out Trigger Notice Reserve (other than up to

$250,000, which may be used to pay Pre-Carve Out Amounts to the extent they exceed the

Professional Fee Carve Out Cap) shall be used first to pay the obligations set forth in clause (iv)

of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"). If the Post-Carve

Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all

remaining funds shall be distributed *first* to the DIP ABL Agent on account of the applicable DIP

ABL Obligations until indefeasibly paid in full, in cash, all Commitments have been terminated,

and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash

collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable Issuing

Bank), and *thereafter* to the Prepetition ABL Secured Parties in accordance with their rights and

priorities as of the Petition Date.

      (iii)    Notwithstanding anything to the contrary in the DIP ABL Credit

Agreement, DIP Term Loan Credit Agreement or this Final Order, if either of the Carve Out

Reserves is not funded in full in the amounts set forth in this paragraph (c), then, any excess funds

in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and

Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding prior to making any payments to the DIP ABL Agent or the Prepetition ABL Secured Parties, as applicable.

(iv)    Notwithstanding anything to the contrary in the DIP ABL Credit Agreement, DIP Term Loan Credit Agreement, or this Final Order, following the third business day after delivery of a Carve Out Trigger Notice, the DIP ABL Agent, the Prepetition ABL Agent, the DIP Term Loan Agent, and the Prepetition Term Loan Administrative Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid as provided in paragraphs (ii) and (iii) above.

(v)    Notwithstanding anything to the contrary in this Final Order, (i) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below), and (ii) subject to the limitations with respect to the DIP ABL Agent, DIP ABL Secured Parties, Prepetition ABL Agent and Prepetition ABL Secured Parties set forth in paragraph (b), above, in no way shall any Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP ABL Credit Agreement or the DIP Term Loan Credit Agreement, the Carve Out subject to the Professional Fee Carve Out Cap shall be senior to all liens and claims securing the DIP ABL Credit Agreement or the DIP Term Loan Credit Agreement, the Prepetition ABL Adequate Protection Liens, the Prepetition Term Loan Adequate Protection Liens, and the

Diminution in Value claims, and any and all other forms of adequate protection, liens, or claims securing the DIP ABL Obligations, DIP Term Loan Obligations, the Prepetition ABL Obligations, or the Prepetition Term Loan Obligations and shall be deemed a true carve out from the Prepetition Term Loan Priority Collateral and not from any property of the Debtors' estates not subject to the Prepetition Term Loan Liens.

(vi)    Notwithstanding anything herein to the contrary, the Carve Out in respect of any "Transaction Fees" for Houlihan Lokey will be junior to the Prepetition ABL Obligations and DIP ABL Obligations to the extent secured by the DIP ABL Priority Collateral other than (x) the pro rata share (determined in proportion to the allocation of the "Transaction" proceeds as between the DIP ABL Priority Collateral and the DIP Term Priority Collateral) of any "Sale Transaction Fee" or "Supplemental Sale Transaction Fee" (as each term is defined in the Debtors' engagement letter with Houlihan Lokey) authorized by the Court in respect of a "Sale Transaction" (as defined in such engagement letter) that is a going concern sale (and not a liquidation sale) of the DIP ABL Priority Collateral consented to by DIP ABL Agent or (y) to the extent otherwise agreed in writing by the DIP ABL Agent in its sole discretion.

(e)    <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  The DIP ABL Agent, DIP Term Loan Agent, DIP ABL Secured Parties and DIP Term Loan Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP ABL Agent, DIP Term Loan Agent, DIP ABL Secured Parties and DIP Term Loan Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional

Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f) <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(g) <u>Payment of Carve Out On or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to, and made a part of, the DIP ABL Obligations or DIP Term Loan Obligations, as applicable, secured by the DIP Collateral and shall be otherwise entitled to the protections granted under the Interim Orders, this Final Order, the DIP ABL Documents, the DIP Term Loan Documents, the Bankruptcy Code, and applicable law.

(h) <u>Reservation of Rights</u>. Nothing herein shall be construed to impair the right or ability of any party to object to the fees, expenses, reimbursement, or other compensation described with respect to these Carve-Out provisions.

39. <u>Limitations on the Use of DIP Proceeds, Cash Collateral and Carve Out</u>. The DIP ABL Credit Facility, the DIP Term Loan Credit Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP ABL Agent's, the DIP Term Loan Agent's, the DIP ABL Secured Parties', the DIP Term Loan Secured Parties', the Prepetition ABL Secured Parties' or the Prepetition Term Loan Secured Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral without the

consent of the DIP ABL Agent or the DIP Term Loan Agent and the Required DIP Term Loan

Lenders; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without

the consent of the DIP ABL Agent or the DIP Term Loan Agent and the Required DIP Term Loan

Lenders, as applicable, *provided*, *however* that the Debtors may use or seek to use any insurance

proceeds constituting DIP Collateral if  the DIP Obligations are repaid in full in accordance with

the terms of the DIP Documents; (d) incurring Indebtedness (as defined in the DIP ABL Credit

Agreement or the DIP Term Loan Credit Agreement, as applicable) secured by liens senior or *pari*

*passu* to the DIP ABL Liens, the Prepetition ABL Liens, and/or the Prepetition ABL Adequate

Protection Liens without the prior consent of the DIP ABL Agent or the DIP Term Loan Agent and

the Required DIP Term Loan Lenders, as applicable, except to the extent permitted under the DIP

ABL Credit Agreement or DIP Term Loan Credit Agreement, as applicable; (e) seeking to amend

or modify any of the rights granted to the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL

Secured Parties, the DIP Term Loan Secured Parties, the Prepetition ABL Secured Parties or the

Prepetition Term Loan Secured Parties under the Interim Orders, this Final Order, the DIP ABL

Documents, the DIP Term Loan Documents, the Prepetition ABL Documents or the Prepetition

Term Loan Documents, including seeking to use Cash Collateral and/or DIP Collateral on a

contested basis; (f) objecting to or challenging in any way the DIP ABL Liens, DIP Term Loan

Liens, DIP ABL Obligations, DIP Term Loan Obligations, Prepetition ABL Liens, Prepetition

Term Loan Liens, Prepetition ABL Obligations, Prepetition Term Loan Obligations, DIP Collateral

(including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or

liens, held by or on behalf of any of the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL

Secured Parties, the DIP Term Loan Secured Parties, the Prepetition ABL Secured Parties or the

Prepetition Term Loan Secured Parties, respectively; (g) asserting, commencing or prosecuting

any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Secured Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP ABL Obligations, DIP Term Loan Obligations, the DIP ABL Liens, DIP Term Loan Liens, Prepetition ABL Liens, Prepetition Term Loan Liens, Prepetition ABL Obligations, Prepetition Term Loan Obligations or any other rights or interests of any of the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Secured Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP ABL Obligations, DIP Term Loan Obligations, Prepetition ABL Obligations or Prepetition Term Loan Obligations; *provided*, *however*, that the Carve Out and such collateral proceeds and loans under the DIP ABL Documents  and DIP Term Loan Documents may be used for allowed fees and expenses, in an amount not to exceed $200,000 in the aggregate, incurred solely by the Creditors' Committee, in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition ABL Liens or Prepetition Term Loan Liens (the "<u>Limited Amount</u>"); provided, however, that nothing herein shall be deemed to limit the Debtors or the Creditors' Committee from taking any actions that they deem to be required in the exercise of their fiduciary obligations. Notwithstanding anything to the contrary in this Final Order, nothing herein shall be deemed to (a) limit the ability of the Creditors' Committee's professionals to be paid from

unencumbered assets for services rendered in the investigation or prosecution of claims against the Prepetition ABL Secured Parties or Prepetition Term Loan Secured Parties; (b) preclude the Court from awarding fees and expenses to the Creditors' Committee professionals pursuant to section 330 of the Bankruptcy Code for such services rendered; nor (c) relieve the Debtors or any plan proponent(s) from paying all allowed administrative expenses in connection with confirmation of any plan.

40.    <u>Payment of Compensation</u>.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the DIP ABL Agent, DIP Term Loan Agent, the DIP ABL Secured Parties, the DIP Term Loan Secured Parties, the Prepetition ABL Secured Parties or the Prepetition Term Loan Secured Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default or "Event of Default" (as defined in the DIP ABL Credit Agreement) has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order of the Court (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, as reflected in the most recent Approved Budget provided by the Debtors to the DIP ABL Agent and DIP Term Loan Agent.

41.    <u>Effect of Stipulations on Third Parties</u>.

(i)    *Generally*.  Except as set forth in this Final Order, upon the expiration of the Challenge Period (as defined below) except and solely to the extent a Challenge or Challenge Motion has been interposed, unless and until such Challenge is overruled, settled, or denied by Final Order of the Court, the admissions, stipulations, agreements, releases, and waivers set forth in this Final Order are and shall be deemed effective and binding in all circumstances and

for all purposes on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, any chapter 7 or chapter 11 trustee or examiner appoint or elected for any of the Debtors and official committee that may be appointed in these cases (each, a "Challenge Party"), unless, and solely to the extent that the Court rules in favor of the Challenge Party in any such timely and properly filed Challenge (as defined herein); *provided*, *however*, that any releases by the DIP Term Loan Secured Parties and Prepetition Term Loan Secured Parties of the Put Purchasers shall be governed by the Restructuring Support Agreement (as defined in the Plan).  For purposes of this paragraph 41: (a) "Challenge" means any claim against any of the Prepetition Term Loan Secured Parties by or on behalf of the Debtors, or to object to or to challenge the stipulations, findings or Debtors' Stipulations set forth herein, including, but not limited to those in relation to:  (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition Term Loan Secured Party; (ii) the validity, allowability, priority, or amount of the Prepetition Term Loan Obligations; or (iii) any liability of any of the Prepetition Term Loan Secured Parties with respect to anything arising from any of the respective Prepetition Term Loan Documents and the entry into the Put Agreement and Existing Participation Agreement; and (b) "Challenge Period" means sixty (60) days after the entry of the Final ABL Order (or such longer period as the Court orders for cause shown before the expiration of such period or is agreed to by the Prepetition Term Loan Administrative Agent in writing).  During the Challenge Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court, *provided* that nothing herein shall limit any party in interests rights, if any, to object to any claims pursuant to section

502(a) of the Bankruptcy Code until the expiration of the Challenge Period Termination Date, nor limit the rights of any other parties to contest any such claims asserted pursuant to section 502(a). Notwithstanding anything to the contrary in this Final Order, the Debtors, if timely notified of a potential Challenge (a "Challenge Notice"), shall retain authority to prosecute, settle, or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of court. Nothing herein shall limit the Creditors' Committee's ability to (x) file a motion in respect of any timely Challenge Notice (a "Challenge Motion"), provided that such Challenge Motion is filed before the Challenge Period Termination Date (or such later date as may be agreed upon among the applicable Debtor(s) and the applicable parties subject to such Challenge Notice) and such Challenge Motion is in respect of a Challenge for which it cannot obtain standing, but meets the standard applicable to pursue such matters for the applicable Debtor(s) derivatively assuming the applicable Debtor were not a limited liability company, and (y) seek pursuant to that Challenge Motion a mechanism by which to prosecute such Challenge described in such Challenge Notice. In the event the Creditors' Committee files a Challenge Motion for which it cannot obtain standing, the expiration of the Challenge Period solely for the specific Challenge set forth in the Challenge Motion shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process for the prosecution of any such Challenge.

(ii)    *Binding Effect*. Upon the expiration of the Challenge Period (the "Challenge Period Termination Date"), without the filing of a Challenge or Challenge Motion, or, upon the filing of a Challenge or Challenge Motion, a Final Order of the Court overruling, settling, or denying the Challenge: (A) any and all such Challenges and objections by any party (including, without limitation, the Creditors' Committee, any Chapter 11 trustee, and/or any examiner or other

estate representative appointed in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition Term Loan Secured Parties' claims, liens, interests, and validity of the Prepetition Term Loan Obligations shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases; and (C) any and all claims or causes of action against (i) any of the Prepetition Term Loan Secured Parties shall be forever waived and released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases.

42.    <u>No Third Party Rights/No Superior Rights of Reclamation</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  Based on the findings and rulings herein concerning the integrated nature of the DIP Term Loan Credit Agreement and the Prepetition Term Loan Credit Facility and the relation back of the DIP Term Loan Liens, in no event shall any alleged right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Term Loan Liens.

43.    <u>Section 506(c) Claims</u>.  The Debtors have waived the right (and the Professional Persons have waived any derivative rights) to charge any expense of administration of the Cases, and Successor Cases, or any future proceeding that may result therefrom, and no costs or expenses of administration which have been or may be incurred in the Cases at any time

shall be charged against the DIP Agents, DIP Lenders, DIP Obligations, the Prepetition Secured Parties, the Prepetition Secured Obligations, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP Agents, DIP Lenders, and Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.  For the avoidance of doubt, notwithstanding anything to the contrary in the Final ABL Order, this paragraph 43 shall be binding upon, and adhere to the benefit of, the DIP ABL Secured Parties and Prepetition ABL Secured Parties.

44.    <u>No Marshaling/Applications of Proceeds</u>.  Except as otherwise set forth in paragraph 7, the DIP Term Loan Agent, DIP Term Loan Secured Parties, and Prepetition Term Loan Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Final Order, including, for the avoidance of doubt, in accordance with paragraph 23 hereof, and the DIP Term Loan Documents notwithstanding any other agreement or provision to the contrary.

45.    <u>Section 552(b)</u>.  The Prepetition Term Loan Secured Parties are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Term Loan Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

46.    <u>Access to DIP Collateral</u>.  Without limiting any other rights or remedies of the DIP Term Loan Agent, and subject to and consistent with any applicable rights that a landlord

may have under applicable nonbankruptcy law  (except to the extent that such rights are modified by the Court upon a separate motion with notice to the applicable landlords of the leased premises and an opportunity for such landlords to respond and be heard), upon not less than three (3) Business Days' written notice to the landlord of any leased premises that an Event of Default or a Termination Date has occurred and is continuing, the DIP ABL Agent or DIP Term Loan Agent, as applicable, subject to the applicable notice provisions if any, in this Final Order, the Canadian Recognition Orders, and any separate applicable agreement by and between such landlord and the DIP ABL Agent or DIP Term Loan Agent may obtain access to Collateral subject to the following conditions: unless otherwise approved by landlord, (i) any such notice to landlord shall specifically identify any Collateral to be accessed and provide details of any removal actions; (ii) any access or removal actions shall be subject to reasonable rules and restrictions by landlord and shall not unreasonably interfere with the conduct of business at the leased premises; and (iii) any party accessing the leased premises shall pay the rent and operating expenses currently in effect on a per diem basis and such occupancy period shall not extend past 30 days without prior landlord approval, *provided*, *however*, that nothing in this Final Order shall be deemed to grant the DIP ABL Agent or DIP Term Loan Agent an assignment of the Debtors' rights under the lease or a waiver of any provisions under the lease or applicable non-bankruptcy law relating to notice or foreclosure, all of which are preserved in favor of the landlord and not waived or altered by this Final Order.  Nothing herein shall require the DIP ABL Agent or DIP Term Loan Agent to assume any lease as a condition to the rights afforded in this paragraph.

47.    <u>Exculpation</u>. Nothing in the Interim Orders, this Final Order, the DIP Term Loan Documents, the existing agreements, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition

upon any DIP Term Loan Secured Party any liability for any claims arising from the postpetition activities of the DIP Parties, including in the operation of their businesses, or in connection with their restructuring efforts and administration of these Cases. In addition, (a) the DIP Term Loan Secured Parties shall not, in any way or manner, be liable or responsible for: (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any Diminution in Value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne by the DIP Parties.

48.    Limits on Lender Liability. The DIP Term Loan Secured Parties and the Prepetition Term Loan Secured Parties, each in their capacities as such, solely by reason of entering into the DIP Term Loan Credit Facility and taking the actions permitted under the DIP Term Loan Documents, the Interim Orders and this Final Order, shall not be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the DIP Term Loan Secured Parties' other actions do not otherwise constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state Government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).

49.    Joint and Several Liability. Nothing in the Interim Orders or this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it

being understood, however, that the Borrowers and the DIP Term Loan Guarantors shall be jointly and severally liable for the obligations hereunder and all DIP Term Loan Obligations in accordance with the terms hereof and of the DIP Term Loan Credit Facility and the DIP Term Loan Documents.

50.    <u>Rights Preserved</u>.  Notwithstanding anything in the Interim Orders or this Final Order to the contrary, the entry of the Interim Orders and this Final Order are without prejudice to, and do not constitute a waiver of, expressly or implicitly:  (a) the DIP Term Loan Secured Parties' and Prepetition Term Loan Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Term Loan Agent, DIP Term Loan Secured Parties and Prepetition Term Loan Secured Parties  under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) subject to the DIP Intercreditor Agreement, any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Term Loan Secured Parties, or Prepetition Term Loan Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Creditors' Committee's, or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.

51.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Term Loan Secured Parties, or Prepetition Term Loan Secured Parties to seek relief or otherwise exercise their

rights and remedies under this Final Order, the DIP Term Loan Documents, the Prepetition Term Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Term Loan Secured Parties, Prepetition Term Loan Secured Parties, Creditors' Committee, or any party in interest.

52.    <u>Binding Effect of Interim Orders and Final Order</u>.    Immediately upon execution by this Court, the terms and provisions of the Interim Orders became valid and binding and the terms and provisions of this Final Order shall become valid and binding (in which any conflict shall be construed in favor of this Final Order) upon and inure to the benefit of the Debtors, DIP ABL Agent, DIP Term Loan Agent, DIP ABL Secured Parties, DIP Term Loan Secured Parties, the DIP ABL Obligations, the DIP Term Loan Obligations, the Prepetition ABL Secured Parties, the Prepetition ABL Obligations, Prepetition Term Loan Secured Parties, the Prepetition Term Loan Secured Obligations, all other creditors of any of the Debtors, the Creditors' Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

53.    <u>No Modification of Final Order</u>.    Until and unless the DIP Term Loan Obligations and the Prepetition Term Loan Obligations have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Term Loan Credit Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Term Loan Secured Parties (or the Prepetition Term Loan Administrative Agent acting at the direction of the "Required Lenders" (as defined in the Prepetition Term Loan Credit Agreement)), (i) any material modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense

or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Term Loan Superpriority Claims or Prepetition Term Loan Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Term Loan Agent (or the Prepetition Term Loan Administrative Agent acting at the direction of the "Required Lenders" (as defined in the Prepetition Term Loan Credit Agreement)) any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP Term Loan Agent, any lien on any of the DIP Collateral with priority equal or superior to the DIP Term Loan Liens, except as specifically provided in the DIP Term Loan Documents; or (d) without the prior written consent of the Prepetition Term Loan Administrative Agent (acting at the direction of the "Required Lenders" (as defined in the Prepetition Term Loan Credit Agreement)), any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Term Loan Liens or Prepetition Term Loan Adequate Protection Liens, except as specifically provided in the DIP Term Loan Documents.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Term Loan Agent (or the Prepetition Term Loan Administrative Agent (acting at the direction of the "Required Lenders" as defined in the Prepetition Term Loan Credit Agreement)), and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Term Loan Agent or the Prepetition Term Loan Administrative Agent.

54. <u>Continuing Effect of DIP Intercreditor Agreement</u>.  The Debtors, DIP ABL Agent, DIP Term Loan Agent, DIP ABL Secured Parties, DIP Term Loan Secured Parties, Prepetition ABL Secured Parties and Prepetition Term Loan Secured Parties each shall be bound by, and in all respects of the DIP ABL Credit Facility and DIP Term Loan Credit Facility shall be governed by, and be subject to all the terms, provisions, and restrictions of the DIP Intercreditor Agreement, except as may be expressly modified by this Final Order.

55. <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the Interim Orders and of this Final Order or the DIP Term Loan Documents and of this Final Order, the provisions of this Final Order shall govern and control.  In the event of any inconsistency between the terms and conditions of any other order regarding any postpetition financing or use of cash collateral, the provisions of this Final Order shall govern and control to the extent such terms and conditions relate to the (i) Prepetition Term Loan Credit Facility, Prepetition Term Loan Secured Parties, Prepetition Term Loan Obligations, Prepetition Term Loan Documents, Prepetition Collateral, Prepetition Term Loan Liens, Prepetition Term Loan Priority Collateral, Prepetition Term Loan Superpriority Claims, Prepetition Term Loan Adequate Protection Payments, Prepetition Term Loan Adequate Protection Liens, DIP Term Loan Credit Facility, DIP Term Loan Secured Parties, DIP Term Loan Obligations, DIP Term Loan Documents, DIP Term Loan Collateral, DIP Term Loan Liens, DIP Term Loan Priority Collateral, or DIP Term Loan Superpriority Claims, and (ii) the Prepetition ABL Secured Parties and DIP ABL Secured Parties but only with respect to the waiver of 506(c) as set forth in this Final Order. Notwithstanding anything to the contrary in the Interim Orders, upon entry of this Final Order, any modifications by the Interim Orders to the DIP Term Loan Documents shall be superseded by this Final Order and such modifications shall no longer have any effect.

56.    <u>Discharge</u>.    The DIP Term Loan Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Term Loan Agent, DIP Term Loan Secured Parties and Prepetition Term Loan Administrative Agent, as applicable, has otherwise agreed in writing. None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP Term Loan Obligations, and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "<u>Prohibited Plan or Sale</u>") without the written consent of the DIP Term Loan Agent and the Prepetition Term Loan Administrative Agent, as applicable. For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Term Loan Documents.

57.    <u>Survival</u>.    The provisions of the Interim Orders, this Final Order, and any actions taken pursuant thereto and hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of the Interim Orders and this Final Order, including the claims,

liens, security interests, and other protections granted to the DIP Term Loan Agent, DIP Term Loan Secured Parties, and the Prepetition Term Loan Secured Parties granted pursuant to the Interim Orders, this Final Order and/or the DIP Term Loan Documents, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by the Interim Orders and this Final Order until:  (i) in respect of the DIP Term Loan Credit Facility, all the DIP Term Loan Obligations, pursuant to the DIP Term Loan Documents, the Interim Orders and this Final Order, have been indefeasibly paid in full in cash or otherwise satisfied to the satisfaction of the DIP Term Loan Secured Parties; and (ii) in respect of the Prepetition Term Loan Credit Agreement, all of the Prepetition Term Loan Obligations pursuant to the Prepetition Term Loan Documents, the Interim Orders and this Final Order have been indefeasibly paid in full in cash or otherwise satisfied to the satisfaction of the Prepetition Term Loan Secured Parties.  The terms and provisions concerning the indemnification of the DIP Term Loan Agent and DIP Term Loan Secured Parties shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Term Loan Documents and/or the indefeasible repayment of the DIP Term Loan Obligations.

58.    Dallas County, Texas Ad Valorem Taxes. Notwithstanding any other provisions of this Final Order, any valid liens currently held by Dallas County shall neither be primed by nor subordinated to any liens granted hereby. Subject to further order of this Court, up to a maximum of $380,000 of proceeds of the sales of assets located in the state of Texas that are subject to a lien held by Dallas County shall be deposited in a segregated account as adequate protection for the secured claims of Dallas County prior to the distribution of any such proceeds to any other creditor; *provided* that the segregated amount shall be reduced if the actual or estimated taxes are less than $380,000 at the time of any such sale; and provided further that such

amount up to $380,000 shall be funded first from DIP Term Priority Collateral located in the state of Texas. Any valid liens of Dallas County shall attach to these proceeds to the same extent and with the same priority as such liens currently attach to the applicable property of the Debtors. These funds shall be in the nature of adequate protection and shall constitute neither the allowance of the claims of Dallas County, nor a cap on the amounts it may be entitled to receive. The claims and liens of Dallas County shall remain subject to any objections made by any party (including the Debtors) who would otherwise be entitled to raise any objection as to, among other things, the claim amount or the priority, validity, or extent of such liens. These segregated proceeds may be distributed upon agreement among Dallas County, the Debtors, the DIP ABL Secured Parties and the DIP Term Loan Secured Parties, or upon order of the Court with notice to Dallas County. Nothing in this Final Order shall be deemed an admission as to the validity of any claim of Dallas County against a Debtor entity.

59. <u>Canadian Intercompany Superpriority Administrative Claims</u>. The Canadian Intercompany Superpriority Administrative Claims shall be subject to the Carve Out and shall otherwise be junior only to: (a) with respect to the DIP ABL Priority Collateral (1) Permitted Prior Liens; (2) the DIP ABL Liens; (3) the Prepetition ABL Liens; and (4) the Prepetition ABL Adequate Protection Liens; and (b) with respect to the DIP Term Loan Priority Collateral (1) Permitted Prior Liens; (2) the DIP Term Loan Liens; (3) the Prepetition Term Loan Liens; (4) the Prepetition Term Loan Adequate Protection Liens; (5) the DIP ABL Liens; (6) the Prepetition ABL Liens; and (7) the Prepetition ABL Adequate Protection Liens; and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Debtors' assets.

60.    <u>Necessary Action</u>.  The Debtors are authorized to take any and all such actions as are necessary or appropriate to implement the terms of the Interim Orders and this Final Order.

61.    <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

62.    <u>Nunc Pro Tunc Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

63.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, or any local bankruptcy rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

64.    The Debtors shall within two (2) business days of its entry serve copies of this Final Order to the parties having been given notice of the Final Hearing and to any party that has filed a request for notices with this Court.


Dated:  New York, New York
        July 19, 2019

                        /s/ Michael E. Wiles
                        THE HONORABLE MICHAEL E. WILES
                        UNITED STATES BANKRUPTCY JUDGE

<u>Exhibit A</u>

Budget

**DREAM II HOLDINGS**
**CASH FORECAST - WEEKLY**

**CONSOLIDATED - USD**

| Week # | 0 | Actual 1 | Actual 2 | Actual 3 | Actual 4 | Actual 5 | Actual 6 | Actual 7 | Actual 8 | Forecast 9 | Forecast 10 | Forecast 11 | Forecast 12 | Forecast 13 | Forecast 14 | Forecast 15 | Forecast 16 | Forecast 17 | TOTAL 17 WEEKS | 18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Start Date | 5/13/19 | 5/20/19 | 5/27/19 | 6/3/19 | 6/10/19 | 6/17/19 | 6/24/19 | 7/1/19 | 7/8/19 | 7/15/19 | 7/22/19 | 7/29/19 | 8/5/19 | 8/12/19 | 8/19/19 | 8/26/19 | 9/2/19 | 9/9/19 | | 9/16/19 |
| Week End Date | 5/17/19 | 5/24/19 | 5/31/19 | 6/7/19 | 6/14/19 | 6/21/19 | 6/28/19 | 7/5/19 | 7/12/19 | 7/19/19 | 7/26/19 | 8/2/19 | 8/9/19 | 8/16/19 | 8/23/19 | 8/30/19 | 9/6/19 | 9/13/19 | | 9/20/19 |
| **RECEIPTS:** | | | | | | | | | | | | | | | | | | | | |
| Customer Accounts Receivable Collection | | 6,395 | 6,880 | 11,360 | 8,271 | 7,448 | 7,135 | 6,826 | 7,901 | 8,575 | 9,462 | 7,968 | 8,026 | 11,789 | 10,999 | 9,328 | 9,611 | 9,598 | 147,573 | |
| **TOTAL CASH RECEIPTS** | - | 6,395 | 6,880 | 11,360 | 8,271 | 7,448 | 7,135 | 6,826 | 7,901 | 8,575 | 9,462 | 7,968 | 8,026 | 11,789 | 10,999 | 9,328 | 9,611 | 9,598 | 147,573 | |
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | | | | | |
| **Material Purchases** | | | | | | | | | | | | | | | | | | | | |
| Material Purchases | | 2,293 | 2,503 | 4,034 | 7,069 | 10,331 | 6,377 | 2,460 | 5,251 | 4,300 | 5,148 | 5,142 | 4,231 | 4,104 | 4,312 | 4,721 | 3,192 | 5,105 | 80,574 | |
| Critical Vendor Payments | | 913 | 97 | 363 | 1,078 | 500 | 340 | 309 | 340 | - | 148 | 250 | - | - | - | - | - | - | 4,338 | |
| 503(b)(9) Payments | | | | | | | | | | | | | | | | | | | | 5,081 |
| **Material Purchases Subtotal** | - | 3,207 | 2,600 | 4,397 | 8,147 | 10,831 | 6,717 | 2,769 | 5,591 | 4,300 | 5,296 | 5,392 | 4,231 | 4,104 | 4,312 | 4,721 | 3,192 | 5,105 | 84,912 | |
| **Other A/P** | | | | | | | | | | | | | | | | | | | | |
| Other A/P | | 419 | 766 | 570 | 1,164 | 1,530 | 2,228 | 778 | 1,174 | 2,327 | 2,685 | 2,685 | 2,685 | 2,685 | 1,935 | 1,935 | 1,935 | 4,935 | 32,433 | |
| Pre-Closing Plant Consolidation Initiatives | | | | | | | | | | 35 | 60 | 64 | 66 | 103 | 431 | 64 | 40 | 247 | 1,111 | |
| IT Migration & Plant Equipment Deposits | | | | | | | | | | - | 233 | 192 | - | - | - | - | - | - | 425 | |
| Utility Deposits | | | | | | | | | | - | - | - | - | - | - | - | - | - | | |
| Contingency/Cure Payments | | | | | | | | | | - | - | 83 | - | 83 | - | - | 83 | - | 250 | 2,000 |
| **Other A/P Subtotal** | - | 419 | 766 | 570 | 1,164 | 1,530 | 2,228 | 778 | 1,174 | 2,363 | 3,061 | 2,940 | 2,834 | 2,788 | 2,366 | 1,999 | 2,058 | 5,181 | 34,219 | |
| **Rent** | | | | | | | | | | | | | | | | | | | | |
| Current Rent | | 129 | - | 929 | 292 | - | (0) | 1,272 | - | - | - | 1,471 | - | - | - | - | 1,471 | - | 5,565 | |
| Stub & Cure Rent | | - | - | - | - | 342 | 91 | - | - | - | - | - | - | - | - | - | - | - | 433 | 745 |
| **Rent Sub-Total** | - | 129 | - | 929 | 292 | 342 | 91 | 1,272 | - | - | - | 1,471 | - | - | - | - | 1,471 | - | 5,998 | |
| **Royalty** | | | | | | | | | | | | | | | | | | | | |
| Royalty Payments | | - | - | - | 1,595 | - | - | - | 1,595 | - | 84 | 809 | - | 84 | - | - | - | 1,070 | 5,238 | |
| **Royalty Sub-Total** | - | - | - | - | 1,595 | - | - | - | 1,595 | - | 84 | 809 | - | 84 | - | - | - | 1,070 | 5,238 | |
| **Payroll** | | | | | | | | | | | | | | | | | | | | |
| Ordinary Course Payroll | | 1,150 | 1,868 | 1,243 | 1,896 | 1,117 | 1,882 | 1,201 | 1,825 | 1,243 | 1,890 | 1,243 | 1,890 | 1,243 | 1,890 | 1,243 | 1,890 | 1,243 | 25,957 | |
| Severance Payments | | 7 | 27 | 4 | 23 | 3 | - | - | - | - | - | - | - | - | - | - | - | - | 64 | |
| Board Fees | | - | - | 8 | - | - | - | 8 | - | - | - | 8 | - | - | - | - | - | - | 33 | |
| KEIP / KERP | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 125 | 125 | 125 | 500 | |
| **Payroll Sub-Total** | - | 1,156 | 1,894 | 1,255 | 1,919 | 1,120 | 1,882 | 1,210 | 1,825 | 1,243 | 1,890 | 1,251 | 1,890 | 1,243 | 2,015 | 1,368 | 2,023 | 1,368 | 26,554 | |
| **Restructuring Costs** | | | | | | | | | | | | | | | | | | | | |
| Restructuring Costs | | - | 1,580 | - | - | 182 | 404 | 585 | 435 | 119 | 994 | 2,330 | 469 | 1,105 | 927 | 384 | - | 6,047 | 3,187 | 1,500 |
| D&O Tail | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 150 | 150 | |
| **Restructuring Costs Sub-Total** | - | - | 1,580 | - | - | 182 | 404 | 585 | 435 | 119 | 994 | 2,330 | 469 | 1,105 | 927 | 384 | - | 6,197 | 15,711 | |
| **Interest & Financing Payments** | | | | | | | | | | | | | | | | | | | | |
| Pre-Petition ABL Interest | | - | - | - | - | - | - | 247 | - | - | - | - | - | - | - | - | - | - | 247 | |
| ABL DIP Interest & Fees | | 1,350 | 8 | - | - | (1) | 290 | - | - | - | - | 311 | - | - | - | - | 311 | 128 | 2,398 | |
| Term DIP Interest & Fees | | 825 | - | - | - | 148 | - | - | - | - | - | 151 | - | - | - | 1,500 | 169 | 71 | 2,864 | |
| **Interest Payments Sub-Total** | - | 2,175 | 8 | - | - | 147 | 537 | - | - | - | - | 462 | - | - | - | 1,500 | 480 | 199 | 5,509 | |
| **TOTAL DISBURSEMENTS** | - | 7,086 | 6,849 | 7,153 | 13,117 | 14,005 | 11,469 | 7,151 | 10,620 | 8,025 | 11,324 | 14,657 | 9,423 | 9,324 | 9,620 | 9,972 | 9,226 | 19,121 | 178,142 | |
| **TOTAL NET OPERATING CASH FLOW** | - | (691) | 31 | 4,208 | (4,846) | (6,557) | (4,333) | (325) | (2,720) | 550 | (1,863) | (6,689) | (1,397) | 2,465 | 1,379 | (643) | 386 | (9,523) | (30,569) | |

**DREAM II HOLDINGS**
**CASH FORECAST - WEEKLY**

| CONSOLIDATED - USD | | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week # | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | | | 18 |
| Week Start Date | | 5/13/19 | 5/20/19 | 5/27/19 | 6/3/19 | 6/10/19 | 6/17/19 | 6/24/19 | 7/1/19 | 7/8/19 | 7/15/19 | 7/22/19 | 7/29/19 | 8/5/19 | 8/12/19 | 8/19/19 | 8/26/19 | 9/2/19 | 9/9/19 | | | 9/16/19 |
| Week End Date | | 5/17/19 | 5/24/19 | 5/31/19 | 6/7/19 | 6/14/19 | 6/21/19 | 6/28/19 | 7/5/19 | 7/12/19 | 7/19/19 | 7/26/19 | 8/2/19 | 8/9/19 | 8/16/19 | 8/23/19 | 8/30/19 | 9/6/19 | 9/13/19 | TOTAL 17 WEEKS | | 9/20/19 |
| **CASH BALANCE & AVAILABILITY** | | | | | | | | | | | | | | | | | | | | | | |
| **Operating Cash Balance** | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Cash Balance | | 523 | 472 | 516 | 736 | 643 | 738 | 850 | 890 | 698 | 698 | 698 | 698 | 698 | 698 | 698 | 698 | 698 | 523 | | |
| Net Operating Cash Flow | | (691) | 31 | 4,208 | (4,846) | (6,557) | (4,333) | (325) | (2,720) | 550 | (1,863) | (6,689) | (1,397) | 2,465 | 1,379 | (643) | 386 | (9,523) | (30,569) | | |
| Term DIP Cash Disbursement | | 825 | 3,000 | | | 300 | 8,000 | 2,500 | 1,050 | 1,350 | | 2,207 | 744 | | 879 | 1,145 | | 6,000 | 28,000 | | |
| ABL Draw/(Repayment) / Timing | | (186) | (2,986) | (3,988) | 4,753 | 6,352 | (3,554) | (2,135) | 1,478 | (1,900) | 1,863 | 4,482 | 653 | (2,465) | (2,258) | (501) | (386) | 3,523 | 2,744 | | |
| **Net Operating Cash On Hand** | | 472 | 516 | 736 | 643 | 738 | 850 | 890 | 698 | 698 | 698 | 698 | 698 | 698 | 698 | 698 | 698 | 698 | 698 | | |
| **Term DIP Cash Balance** | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Balance | | 15,000 | 14,175 | 11,175 | 11,175 | 11,175 | 10,875 | 2,875 | 375 | 2,525 | 1,175 | 4,975 | 2,768 | 2,024 | 2,024 | 1,145 | - | - | - | | |
| Term DIP Draws | 15,000 | - | - | - | - | - | - | - | 3,200 | - | 3,800 | - | - | - | - | - | - | 6,000 | 28,000 | | |
| Disbursements | | (825) | (3,000) | - | - | (300) | (8,000) | (2,500) | (1,050) | (1,350) | - | (2,207) | (744) | - | (879) | (1,145) | - | (6,000) | (28,000) | | |
| **Term DIP Cash Ending Balance** | 15,000 | 14,175 | 11,175 | 11,175 | 11,175 | 10,875 | 2,875 | 375 | 2,525 | 1,175 | 4,975 | 2,768 | 2,024 | 2,024 | 1,145 | - | - | - | - | | |
| **Total Cash Balance** | | 14,647 | 11,692 | 11,912 | 11,819 | 11,613 | 3,726 | 1,265 | 3,223 | 1,873 | 5,673 | 3,466 | 2,722 | 2,722 | 1,843 | 698 | 698 | 698 | 698 | | |
| **Professional Fees Carve Out Balance** | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Balance | | - | 2,608 | 3,626 | 3,860 | 4,342 | 5,017 | 5,366 | 5,257 | 5,717 | 6,310 | 6,728 | 6,213 | 6,417 | 5,885 | 5,530 | 5,719 | 6,012 | - | | |
| Funding/Disbursement | | 2,608 | 1,019 | 233 | 483 | 675 | 349 | (109) | 460 | 593 | 418 | (515) | 204 | (532) | (355) | 189 | 293 | (6,012) | - | | |
| **Professional Fees Carve Out Ending Balance** | | 2,608 | 3,626 | 3,860 | 4,342 | 5,017 | 5,366 | 5,257 | 5,717 | 6,310 | 6,728 | 6,213 | 6,417 | 5,885 | 5,530 | 5,719 | 6,012 | - | - | | |
| **ABL Availability** | | | | | | | | | | | | | | | | | | | | | | |
| ABL Total Borrowing Base After Reserves | | 66,671 | 70,449 | 70,682 | 66,158 | 64,072 | 63,182 | 62,858 | 64,417 | 64,856 | 64,434 | 64,570 | 65,427 | 62,762 | 60,566 | 60,346 | 59,437 | 58,249 | 58,249 | | |
| ABL Balance | | (45,104) | (42,219) | (37,800) | (42,188) | (47,864) | (44,676) | (41,715) | (43,932) | (42,032) | (43,895) | (48,377) | (49,030) | (46,565) | (44,306) | (43,805) | (43,419) | (46,943) | (46,943) | | |
| L/C Balance | | (5,136) | (5,136) | (5,136) | (5,136) | (5,136) | (5,136) | (5,136) | (5,136) | (4,980) | (4,980) | (4,980) | (4,980) | (4,980) | (4,980) | (4,980) | (4,980) | (4,980) | (4,980) | | |
| Professional Fee Carve Out (Week Delay) | | (2,608) | (3,626) | (3,860) | (4,342) | (5,017) | (5,366) | (5,257) | (5,717) | (6,310) | (6,728) | (6,213) | (6,417) | (5,885) | (5,530) | (5,719) | (6,012) | - | - | | |
| **Total Availability** | | 13,823 | 19,467 | 23,886 | 14,492 | 6,055 | 8,003 | 10,750 | 9,632 | 11,534 | 8,832 | 5,000 | 5,000 | 5,333 | 5,750 | 5,842 | 5,025 | 6,327 | 6,327 | | |
| **Net Cash on Hand + Availability** | | 28,469 | 31,159 | 35,798 | 26,310 | 17,668 | 11,728 | 12,015 | 12,855 | 13,407 | 14,505 | 8,466 | 7,722 | 8,055 | 7,593 | 6,539 | 5,723 | 7,024 | 7,024 | | |
| **Pre-Petition ABL Balance** | | | | | | | | | | | | | | | | | | | | | | |
| Pre-Petition ABL Beginning Balance | 61,648 | 46,648 | 39,654 | 33,291 | 22,116 | 13,503 | 6,125 | 756 | - | - | - | - | - | - | - | - | - | - | $ 61,648 | | |
| Draws | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | | |
| Repayments | | (6,993) | (6,363) | (11,176) | (8,613) | (7,378) | (5,369) | (756) | - | - | - | - | - | - | - | - | - | - | (46,648) | | |
| Balance Transfer | (15,000) | | | | | | | | | | | | | | | | | | (15,000) | | |
| **Pre-Petition ABL Ending Balance** | 46,648 | 39,654 | 33,291 | 22,116 | 13,503 | 6,125 | 756 | - | - | - | - | - | - | - | - | - | - | - | - | | |
| **ABL DIP Balance** | | | | | | | | | | | | | | | | | | | | | | |
| ABL DIP Beginning Balance | - | - | 5,450 | 8,928 | 15,685 | 28,685 | 41,738 | 43,920 | 41,715 | 43,932 | 42,032 | 43,895 | 48,377 | 49,030 | 46,565 | 44,306 | 43,805 | 43,419 | $ - | | |
| Draws | - | 5,450 | 3,478 | 6,757 | 13,000 | 13,053 | 3,421 | 3,937 | 10,151 | 6,675 | 11,324 | 12,450 | 8,680 | 9,324 | 8,741 | 8,827 | 9,226 | 13,121 | 147,614 | | |
| Repayments | | - | - | - | - | - | (1,239) | (6,143) | (7,934) | (8,575) | (9,462) | (7,968) | (8,026) | (11,789) | (10,999) | (9,328) | (9,611) | (9,598) | (100,672) | | |
| **ABL DIP Ending Balance** | - | 5,450 | 8,928 | 15,685 | 28,685 | 41,738 | 43,920 | 41,715 | 43,932 | 42,032 | 43,895 | 48,377 | 49,030 | 46,565 | 44,306 | 43,805 | 43,419 | 46,943 | 46,943 | | |
| **Total Wells ABL/ABL DIP Balance** | 46,648 | 45,104 | 42,219 | 37,800 | 42,188 | 47,864 | 44,676 | 41,715 | 43,932 | 42,032 | 43,895 | 48,377 | 49,030 | 46,565 | 44,306 | 43,805 | 43,419 | 46,943 | 46,943 | | |
| **Term DIP Balance** | | | | | | | | | | | | | | | | | | | | | | |
| DIP Beginning Balance | - | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 18,200 | 18,200 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | $ - | | |
| Draws | 15,000 | - | - | - | - | - | - | - | 3,200 | - | 3,800 | - | - | - | - | - | - | 6,000 | 28,000 | | |
| Repayments | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | | |
| **DIP Ending Balance** | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 18,200 | 18,200 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 28,000 | 28,000 | | |
| **Sentinel ABL** | | | | | | | | | | | | | | | | | | | | | | |
| Sentinel ABL Beginning Balance | - | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | $ - | | |
| Balance Transfer | 15,000 | | | | | | | | | | | | | | | | | | 15,000 | | |
| **Sentinel ABL Ending Balance** | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | | |